# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DANIEL, | : | CASE NO. 1:18cv1661 |
| | : | |
| Petitioner, | : | JUDGE ADAMS |
| | : | |
| v. | : | MAGISTRATE JUDGE KNEPP, II |
| | : | |
| WARDEN, RONALD ERDOS, | : | |
| | : | **HABEAS CORPUS** |
| Respondent. | : | |

---

## STATE COURT RECORD
_____


DAVE YOST
Ohio Attorney General


HILDA ROSENBERG (0043814)
Assistant Attorney General
Lead Counsel
Criminal Justice Section
441 Vine Street, 1600 Carew Tower
Cincinnati, Ohio 45202
(513) 852-1564
Fax (866) 916-2649

Counsel for Respondent

Indictment (23 Counts)
Cuyahoga County CCP, Case No. CR-14-589487-A…………..…………………………….…….……1

Journal Entry of 610/1/14
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................2

Motion to Sever Counts for Trial
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................3

Journal Entry of 2/5/15
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................4

Journal Entry of 2/5/15
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................5

Journal Entry of 2/5/15
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................6

Motion to Disqualify Counsel
Cuyahoga County CCP, Case No. CR-14-589487-A-A ...............................................................7

Journal Entry of 3/10/15
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................8

Journal Entry of 4/9/15
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................9

Journal Entry of 4/24/15
Cuyahoga County CCP, Case No. CR-14-589487-A .................................................................10

Journal Entry 4/24/15
Cuyahoga County CCP, Case No. CR-14-589487-A .................................................................11

Journal Entry of 6/8/15
Cuyahoga County CCP, Case No. CR-14-589487-A .................................................................12

Journal Entry of 5/5/15
Cuyahoga County CCP, Case No. CR-14-589487-A .................................................................13

Motion to Disqualify Counsel
Cuyahoga County CCP, Case No. CR-14-589487-A .................................................................14

Journal Entry of 6/8/15
Cuyahoga County CCP, Case No. CR-14-589487-A …………….………………………..15

Journal Entry of 6/8/15
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................16

Journal Entry of 6/8/15
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................17

Journal Entry of 6/22/15
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................18

Journal Entry of 7/17/15
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................19

Motion to Withdraw Plea pursuant to Ohio Crim. R. 32.1
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................20

Motion to Withdraw Plea Pursuant to Ohio Crim. R. 32.1
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................21

State's Response to Defendant's Motion to Withdraw Guilty Plea
Cuyahoga County CCP, Case No. CR-14-589487-A …..………………………….…..22

Notice of Appeal
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................23

Appellant's Merit Brief
Cuyahoga County COA, Case No. CA-15-103258........................................................24

Brief of Appellee
Cuyahoga County COA, Case No. CA-15-103258........................................................25

Journal Entry of 2/3/16
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................26

Journal Entry of 2/26/16
Cuyahoga County CCP, Case No. CR-14-589487-A ....................................................27

Journal Entry and Opinion of 8/4/16
Cuyahoga County COA, Case No. CA-15-103258........................................................28

Notice of Appeal of Appellant Jesus A. Vega
Supreme Court of Ohio, Case No. 2016-1377 ........................................................................29

Memorandum in Support of Jurisdiction of Appellant James W. Daniel
Supreme Court of Ohio, Case No. 2016-1377 ........................................................................30

Memorandum in Response to Jurisdiction
Supreme Court of Ohio, Case No. 2016-1377 ........................................................................31

Entry of 4/19/17
Supreme Court of Ohio, Case No. 2016-1377…………………………………………………...32

Docket Sheets
Cuyahoga County CCP, Case No. CR-14-589487-A ...................................................................33

Docket Sheets
Cuyahoga County COA, Case No. CA-15-103258…………………………………………34

Docket Sheet
Supreme Court of Ohio, Case No. 2016-1377…………………………………………………...35

# Cuyahoga County Court of Common Pleas
## Criminal Court Division

| State of Ohio, | | A True Bill Indictment For |
|---|---|---|
| | Plaintiff | **Aggravated Burglary - F1** |
| vs. | | §2911.11(A)(1) |
| James W. Daniel, | | |
| | Defendant | 22 Additional Count(s) |

| Dates of Offense (on or about) | The Term Of | Case Number |
|---|---|---|
| 02/07/2000 to 09/02/2014 | September of 2014 | 589487-14-CR |

The State of Ohio, } SS.
Cuyahoga County

CR14589487-A          86086998

| Count 1 | **Aggravated Burglary - F1** |
|---|---|
| | §2911.11(A)(1) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  February 7, 2000 |

*The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully*

did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when Jane Doe I (DOB: 05/19/1968), a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure a criminal offense, to wit: Rape &/or Kidnapping, RC 2907.02 A2 &/or RC 2905.01 A4, and the offender recklessly inflicted, or attempted or threatened to inflict physical harm on Jane Doe I (DOB: 05/19/1968).

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

RECEIVED FOR FILING

SEP 2 6 2014

CUYAHOGA COUNTY CLERK OF
THE COURT OF COMMON PLEAS
By ——————— Deputy

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Page 1 of 24


EXHIBIT
1

Cuyahoga County Court of Common Pleas                                A True Bill Indictment

| **Count 2** | **Aggravated Burglary - F1** |
|---|---|
| | §2911.11(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  February 7, 2000 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when Jane Doe I (DOB: 05/19/1968), a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure a criminal offense, to wit: Rape &/or Kidnapping, RC 2907.02 A2 &/or RC 2905.01 A4, and the offender had a deadly weapon or dangerous ordnance, to wit: a Knife, on or about his person or under his control.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| **Count 3** | **Rape - F1** |
|---|---|
| | §2907.02(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  February 7, 2000 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did engage in sexual conduct, to wit: Vaginal Penetration, with Jane Doe I (DOB: 05/19/1968) by purposely compelling her to submit by force or threat of force.

**Sexually Violent Predator Specification - §2941.148(A)**

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____          _____
Foreperson of the Grand Jury                    Prosecuting Attorney

Cuyahoga County Court of Common Pleas

A True Bill Indictment

| | |
|---|---|
| **Count 4** | **Kidnapping - F1**<br>§2905.01(A)(4) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  February 7, 2000 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe I (DOB: 05/19/1968) from the place where she was found or restrain the liberty of her for the purpose of engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Jane Doe I (DOB: 05/19/1968) against her will.

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

### Sexually Violent Predator Specification - §2941.148(A)

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| | |
|---|---|
| **Count 5** | **Rape - F1**<br>§2907.02(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did engage in sexual conduct, to wit: Digital Vaginal Penetration, with Jane Doe II (DOB: 11/24/1988) by purposely compelling her to submit by force or threat of force.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault,

| Foreperson of the Grand Jury | Prosecuting Attorney |
|---|---|

Cuyahoga County Court of Common Pleas | A True Bill Indictment

respectively; and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to use a certified copy of the prior conviction as proof of that conviction..

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

### Sexually Violent Predator Specification - §2941.148(A)

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

---

| Count 6 | **Rape - F1** |
|---|---|
| | **§2907.02(A)(2)** |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did engage in sexual conduct, to wit: Digital Anal Penetration, with Jane Doe II (DOB: 11/24/1988) by purposely compelling her to submit by force or threat of force.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

| | |
|---|---|
| Foreperson of the Grand Jury | Prosecuting Attorney |

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

### Sexually Violent Predator Specification - §2941.148(A)

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| Count 7 | **Rape - F1** |
|---|---|
| | §2907.02(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did engage in sexual conduct, to wit: Oral/"Fellatio", with Jane Doe II (DOB: 11/24/1988) by purposely compelling her to submit by force or threat of force.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense..

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

_____          _____
Foreperson of the Grand Jury                              Prosecuting Attorney

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

### Sexually Violent Predator Specification - §2941.148(A)

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to use a certified copy of the prior conviction as proof of that conviction..

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

| | |
|---|---|
| **Count 8** | **Kidnapping - F1**<br>§2905.01(A)(4) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe II (DOB: 11/24/1988) from the place where she was found or restrain the liberty of her for the purpose of engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Jane Doe II (DOB: 11/24/1988) against her will.

FURTHERMORE, and the victim of the offense is eighteen years of age or older.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

_____                    _____
Foreperson of the Grand Jury                                    Prosecuting Attorney

Cuyahoga County Court of Common Pleas                              A True Bill Indictment

**Sexually Violent Predator Specification - §2941.148(A)**

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____          _____
Foreperson of the Grand Jury                                Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

| | |
|---|---|
| **Count 9** | **Aggravated Robbery - F1**<br>§2911.01(A)(1) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Jane Doe II (DOB: 11/24/1988) did have a deadly weapon, to wit: a Handgun/Firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____                          _____
Foreperson of the Grand Jury                                  Prosecuting Attorney

Cuyahoga County Court of Common Pleas

A True Bill Indictment

| | |
|---|---|
| **Count 10** | **Kidnapping – F1** §2905.01(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe II (DOB: 11/24/1988) from the place where she was found or restrain the liberty of her for the purpose of facilitating the commission of a felony to wit: Rape (RC 2907.02 A2) &/or Aggravated Robbery (RC 2911.01 A1) or flight thereafter.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

**Notice of Prior Conviction - §2929.13(F)(6)**

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Court of Common Pleas, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

**Repeat Violent Offender Specification, "RVO" - §2941.149(A)**

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Court of Common Pleas, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                          A True Bill Indictment

| | |
|---|---|
| **Count 11** | **Having Weapons Under Disability – F3** |
| | §2923.13(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about August 30, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did knowingly acquire, have, carry, or use any firearm or dangerous ordnance and he was under indictment for or has been convicted of any felony offense of violence, to wit: the said James W. Daniel, with counsel, on or about the the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, Case No. in Case Nos. CR 536809 & CR 448691, respectively, having been indicted for or convicted of the crime of Robbery & Felonious Assault, respectively, in violation of Revised Code Section RC 2911.02 & RC 2903.11, respectively of the State of Ohio.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas

A True Bill Indictment

| | |
|---|---|
| **Count 12** | **Aggravated Robbery - F1** §2911.01(A)(1) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  September 1, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Jane Doe III (DOB: 04/25/1987) did have a deadly weapon, to wit: a Handgun/Firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

**Notice of Prior Conviction - §2929.13(F)(6)**

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

**Repeat Violent Offender Specification, "RVO" - §2941.149(A)**

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas | A True Bill Indictment

| | |
|---|---|
| **Count 13** | **Kidnapping - F1**<br>§2905.01(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  September 1, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe III (DOB: 04/25/1987) from the place where she was found or restrain the liberty of her for the purpose of facilitating the commission of a felony to wit: Aggravated Robbery (RC 2911.01 A1) or flight thereafter.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

**Notice of Prior Conviction - §2929.13(F)(6)**

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

**Repeat Violent Offender Specification, "RVO" - §2941.149(A)**

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to   Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____ | _____
Foreperson of the Grand Jury | Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

| Count 14 | Aggravated Robbery - F1 |
|---|---|
| | §2911.01(A)(1) |
| Defendants | James W. Daniel |
| Date of Offense | On or about September 1, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Jane Doe IV (DOB: 07/21/1988) did have a deadly weapon, to wit: a Handgun/Firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____               _____
Foreperson of the Grand Jury                              Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                           A True Bill Indictment

| | |
|---|---|
| **Count 15** | **Kidnapping - F1** |
| | §2905.01(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about September 1, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe IV (DOB: 07/21/1988) from the place where she was found or restrain the liberty of her for the purpose of facilitating the commission of a felony to wit: Aggravated Robbery (RC 2911.01 A1) or flight thereafter.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

**Notice of Prior Conviction - §2929.13(F)(6)**

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

**Repeat Violent Offender Specification, "RVO" - §2941.149(A)**

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to   Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____          _____
Foreperson of the Grand Jury                              Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                          A True Bill Indictment

| | | |
|---|---|---|
| **Count 16** | **Having Weapons Under Disability – F3** | |
| | §2923.13(A)(2) | |
| **Defendants** | James W. Daniel | |
| **Date of Offense** | On or about  September 1, 2014 | |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did knowingly acquire, have, carry, or use any firearm or dangerous ordnance and he was under indictment for or has been convicted of any felony offense of violence, to wit: the said James W. Daniel, with counsel, on or about the the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, Case No. in Case Nos. CR 536809 & CR 448691, respectively, having been indicted for or convicted of the crime of Robbery & Felonious Assault, respectively, in violation of Revised Code Section RC 2911.02 & RC 2903.11, respectively of the State of Ohio.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| | | |
|---|---|---|
| **Count 17** | **Rape - F1** | |
| | §2907.02(A)(2) | |
| **Defendants** | James W. Daniel | |
| **Date of Offense** | On or about  September 2, 2014 | |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did engage in sexual conduct, to wit: Oral/"Fellatio", with Jane Doe V (DOB: 09/09/1967) by purposely compelling her to submit by force or threat of force.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it

_____          _____
Foreperson of the Grand Jury                     Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

to facilitate the offense.

**Sexual Motivation Specification - §2941.147(A)**

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

**Sexually Violent Predator Specification - §2941.148(A)**

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

**Repeat Violent Offender Specification, "RVO" - §2941.149(A)**

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction.

**Notice of Prior Conviction - §2929.13(F)(6)**

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| | |
|---|---|
| **Count 18** | **Rape - F1** |
| | **§2907.02(A)(2)** |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  September 2, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did engage in sexual conduct, to wit: Anal Penetration, with Jane Doe V (DOB: 09/09/1967) by purposely compelling her to submit by force or threat of force.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

_____              _____
Foreperson of the Grand Jury                    Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

### Sexually Violent Predator Specification - §2941.148(A)

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to   Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to use a certified copy of the prior conviction as proof of that conviction..

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____                    _____
Foreperson of the Grand Jury                              Prosecuting Attorney

Cuyahoga County Court of Common Pleas

A True Bill Indictment

| | |
|---|---|
| **Count 19** | **Kidnapping - F1** |
| | §2905.01(A)(4) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  September 2, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe V (DOB: 09/09/1967) from the place where she was found or restrain the liberty of her for the purpose of engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Jane Doe V (DOB: 09/09/1967) against her will.

FURTHERMORE, and the victim of the offense is eighteen years of age or older.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

### Sexual Motivation Specification - §2941.147(A)

*The Grand Jurors further find and specify that*

the offender committed the offense with a sexual motivation.

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas

A True Bill Indictment

**Sexually Violent Predator Specification - §2941.148(A)**

*The Grand Jurors further find and specify that*

the offender is a sexually violent predator.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

| | |
|---|---|
| **Count 20** | **Aggravated Robbery - F1** |
| | **§2911.01(A)(1)** |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about September 2, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Jane Doe V (DOB: 09/09/1967) did have a deadly weapon, to wit: a Handgun/Firearm, on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

**Notice of Prior Conviction - §2929.13(F)(6)**

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

**Repeat Violent Offender Specification, "RVO" - §2941.149(A)**

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to use a certified copy of the prior conviction as proof of that conviction..

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| | |
|---|---|
| Richard L Walsh | T. J. McGinty |
| Foreperson of the Grand Jury | Prosecuting Attorney |

Cuyahoga County Court of Common Pleas

A True Bill Indictment

| | |
|---|---|
| **Count 21** | **Felonious Assault - F2**<br>§2903.11(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about September 2, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did knowingly cause or attempt to cause physical harm to Jane Doe V (DOB: 09/09/1967) by means of a deadly weapon or dangerous ordnance, to wit: a Handgun/Firearm,.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to use a certified copy of the prior conviction as proof of that conviction..

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

| | |
|---|---|
| **Count 22** | **Kidnapping - F1** |
| | **§2905.01(A)(2)** |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  September 2, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did, by force, threat, or deception, purposely remove Jane Doe V (DOB: 09/09/1967) from the place where she was found or restrain the liberty of her for the purpose of facilitating the commission of a felony to wit: Aggravated Robbery (RC 2911.01 A1) &/or Rape (RC 2907.02 A2) or flight thereafter.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

### Repeat Violent Offender Specification, "RVO" - §2941.149(A)

*The Grand Jurors further find and specify that*

James W. Daniel was convicted of or pleaded guilty to  Robbery & Felonious Assault, respectively, to wit: the said James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of the crime of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio. The State hereby gives notice of its intention to  use a certified copy of the prior conviction as proof of that conviction..

### Notice of Prior Conviction - §2929.13(F)(6)

*The Grand Jurors further find and specify that*

James W. Daniel previously was convicted of or pleaded guilty to Robbery & Felonious Assault, respectively, and James W. Daniel, with counsel, on or about the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, in Case Nos. CR 536809 & CR 448691, respectively, was convicted of Robbery & Felonious Assault, respectively, in violation of RC 2911.02 & RC 2903.11, respectively, of the State of Ohio.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

| | |
|---|---|
| _Foreperson of the Grand Jury_ | _Prosecuting Attorney_ |

Cuyahoga County Court of Common Pleas                                    A True Bill Indictment

| | |
|---|---|
| **Count 23** | **Having Weapons Under Disability - F3**<br>§2923.13(A)(2) |
| **Defendants** | James W. Daniel |
| **Date of Offense** | On or about  September 2, 2014 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did knowingly acquire, have, carry, or use any firearm or dangerous ordnance and he was under indictment for or has been convicted of any felony offense of violence, to wit: the said James W. Daniel, with counsel, on or about the the 27th day of July, 2010 & the 21st day of July, 2004, respectively, in the Common Pleas Court, Cuyahoga County, Ohio, Case No. in Case Nos. CR 536809 & CR 448691, respectively, having been indicted for or convicted of the crime of Robbery & Felonious Assault, respectively, in violation of Revised Code Section RC 2911.02 & RC 2903.11, respectively of the State of Ohio.

**Firearm Specification - 1 year - §2941.141(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

**Firearm Specification - 3 year - §2941.145(A)**

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____                    _____
Foreperson of the Grand Jury                                         Prosecuting Attorney



86124945

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: PAMELA A BARKER

JAMES W DANIEL
Defendant

INDICT: 2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

CAPIAS RECALLED ON 10/01/2014.
DEFENDANT DECLARED INDIGENT.
COURT ASSIGNED PUBLIC DEFENDER AS COUNSEL.
READING OF INDICTMENT WAIVED.
TWENTY-FOUR HOUR SERVICE WAIVED.
DEFENDANT PLEAD NOT GUILTY TO INDICTMENT.
BOND SET AT 1,000,000.00 DOLLARS. BOND TYPE: CASH/SURETY/PROP...
BOND CONDITIONS: NO CONTACT WITH VICTIM.
JUDGE MATIA, DAVID T (329) ASSIGNED (RANDOM ).
FIRST PRETRIAL SET FOR 10/09/2014 AT 09:00 AM IN COURT ROOM JC17D JUDGE MATIA, DAVID T.
HIV ORDER

    THE DEFENDANT JAMES WALTER DANIEL  III , HAVING BEEN CHARGED WITH AND ARRAIGNED UPON
VIOLATION(S) OF 2907.02 OR 2907.03 OR 2907.04 OF THE OHIO REVISED CODE, IS ORDERED TO SUBMIT TO
MEDICAL TESTS AS REQUIRED BY 2907.27 (B). THE SHERIFF OF CUYAHOGA COUNT SHALL TAKE THE
NECESSARY STEPS TO CAUSE THE DEFENDANT TO BE EXAMINED BY A PHYSICIAN WHO SHALL PERFORM OR
ORDER THE PERFORMANCE OF ONE OR MORE TESTS TO DETERMINE IF THE DEFENDANT IS A CARRIER OF THE
VIRUS THAT CAUSES ACQUIRED IMMUNODEFICIENCY SYNDROME (AIDS). SUCH STEPS SHALL INCLUDE THE
DETENTION OF THE DEFENDANT IN CUSTODY FOR A REASONABLE PERIOD TO HAVE THE AIDS TESTS
PERFORMED. THE RESULTS OF ANY TESTS ARE TO BE COMMUNICATED IN THE STRICTEST CONFIDENCE TO THE
COURT ADMINISTRATOR'S OFFICE WHO SHALL IMMEDIATELY NOTIFY THE ASSIGNED JUDGE BY FORWARDING
A COPY OF THE SAID RESULTS

ASSIGNED JUDGE:  MATIA, DAVID T

*Pamela A. Barker*
Judge Signature        10/01/2014

EXHIBIT
2

10/01/2014



**KELLEY A. SWEENEY**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION Electronically Filed:**
**January 28, 2015 13:10**

By: FRANK CAVALLO 0073428

Confirmation Nbr. 344787

THE STATE OF OHIO                                        CR 14 589487-A

vrs.

JAMES W DANIEL                                          **Judge:**

DAVID T. MATIA

Pages Filed:  6

EXHIBIT
3



...RT OF COMMON PLEAS
...GA COUNTY, OHIO
...INAL DIVISION

STATE OF OHIO                    :        Case No. 589487

    Plaintiff                    :        JUDGE DAVID MATIA

vs.

JAMES DANIEL                     :        **MOTION TO SEVER COUNTS FOR TRIAL**

    Defendant.


Now comes JAMES DANIEL, by and through undersigned counsel, and respectfully requests this Honorable Court to grant severance of trials in the case currently set for trial by jury on February 2, 2015.

    Brief in support follows.


Respectfully submitted,

ROBERT L. TOBIK
Chief Public Defender

*/s/ Frank Cavallo*
Frank Cavallo
Sup Ct. Reg No.: 0073428
Attorney for Defendant
310 Lakeside Ave.
Cleveland, Ohio 44113
(216) 443-8396



**BRIEF**

This Honorable Court has before it an indictment which contains four sets of factually distinct offenses, separated by time and distance.

1. Counts 1-4 are alleged to have taken place on February 7, 2000, in or around 3679 East 76th St., Cleveland, OH.

2. Counts 5-11 are alleged to have taken place on August 30, 2014, in or around 1590 Warren Rd, Lakewood, OH.

.3. Counts 12-16 are alleged to have taken place on September 1, 2014 in and around 1346 Marlowe Ave, Lakewood, OH.

4. Counts 17-23 are alleged to have taken place on September 2, 2014 in and around West 104th St., Cleveland OH

The Ohio Supreme Court has recognized that"[i]mproper joinder may not only confuse a jury but may create an unfavorable impression in their minds as to an [accused's] character before any evidence has been admitted as to his guilt or innocence." *State v. Minnecker* (1971), 27 Ohio St. 2d 155, 157-158. In finding ground for reversal because of "prejudice in the joinder," the United States Circuit Court of Appeals for the District of Columbia discussed the practice of consolidation of cases and its effect on the defendant's right to a fair trial in *Drew v. United States,* (1964) 331 F.2d 85 at page 88.

> The justification for a liberal rule on joinder of offenses appears to be the economy of a single trial. The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons:
>
> (1) He may become embarrassed or confounded in presenting defenses;



nce of the crimes charged to infer a
part of the defendant from which is found
his guilt of the other crime or crimes charged; or

> **(3) The jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.**
>
> **A less tangible, but perhaps equally persuasive element of prejudice may reside in the latent feeling of hostility engendered by the charging of several crimes as distinct from one. Thus, in any given case the court must weigh the prejudice on the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.**

The court further stated:

> It is the principle of long standing in our law that evidence of one crime is inadmissible to prove <u>disposition</u> to commit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose. The same dangers appear to exist when two crimes are joined for trial, and the same principles of prophylaxis are applicable.

*Id.* At 91-92 (Emphasis in original).

From these cases emerges the following litmus test: If the evidence of other crimes would be admissible at separate trials, and "prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials," and a court need not inquire further. (Citations omitted), *State v. Schaim* (1992), 65 Ohio St. 3d 51, 59-60. Conversely, if the evidence of the untried allegations would not be admissible at trial of the remaining charges, then separate trials should be ordered.

For this reason, the court must first address the extent to which evidence of each of these crimes sought to be severed would be admissible in the other trials if the counts were severed. In this regard, the *Schaim* Court recognized:



evidence is carefully limited because of
jury will convict the defendant solely
endant has a propensity to commit criminal
acts, or deserves punishment regardless of whether he or she committed
the crimes charged in the indictment. See, *State v. Curry* (1975), 43 Ohio
St. 2d 66, 68. This danger is particularly high when the other acts are very
similar to the charged offense...

*Id.* At 59-60. *Accord,* Evid. R. 404(B).

In *State v. Schaim* (1992), 65 Ohio St.3d 51, the Court ultimately held that sex offense

charged involving three different victims should have been severed. In *Schaim,* the appellant

was prosecuted for rape of his eldest daughter and gross sexual imposition involving his

youngest daughter. Both children were allegedly molested in identical ways. At the same time,

the appellant was indicted for rape of a female employee. All three claims were joined for trial.

After a detailed discussion involving the different levels of prejudice sustained by the

appellant, the Court vacated the appellant's trial and ordered a new trial. In reversing the trial

court, the Court reasoned:

> It is evident that the joinder of these counts allowed the jury to consider
> significant amounts of other acts evidence that would not have been
> admissible had the charges had been severed for trial. Instead of separate
> trials that carefully limited the admissibility of other acts of evidence, the
> defendant was subjected to one trial where the jury was permitted to
> simultaneously consider the evidence of three different offenses.

Ibid. at 62. *See also, State v. Frazier,* 2004 Ohio 1211, Cuyahoga App. No 83024.

The analysis in *Schaim* is equally applicable to the instant case. According to the

material provided by the state in regard to the allegations giving rise to this single indictment,

the charges that the state seeks to join for trial involve different alleged conduct on the part of

the defendant, and on four separate dates in four separate locations, in two different

municipalities. As a result, there is a distinct risk that the jury will not keep the evidence of

each offense segregated and will be more likely to convict the defendant of "something" as a



...mes allegedly occurring on multiple occasions. The ...are sex offenses further increases the likelihood that the jurors might tend to conflate distinct instances rather than consider them separately.

In such a case, severance is required by Rule 14 of the Ohio Rules of Criminal Procedure, which provides in part:

> If it appears that a defendant or the State is prejudiced by a joinder of offenses or defendants in an indictment, information or complaint, or by such joinder for trial together of indictments, information or complaint, the Court <u>shall</u> order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. (Emphasis added).

Finally, in that the state's burden of proof requires the presentation of evidence to support every element of an alleged offense, independent of all proof as to the elements of the other charges, there will be no appreciable saving of time by joinder of these offenses. Thus, when balancing the consideration of joinder against the defendant's right to a fair trial, thoughts of economy and expediency cannot prevail.

Wherefore, based on the foregoing, Defendant respectfully requests that the motion for severance be granted in order to deter possible prejudice towards the defendant.

Respectfully submitted,

ROBERT L. TOBIK
Chief Public Defender

/s/ Frank Cavallo
Frank Cavallo
Sup Ct. Reg No.: 0073428
Attorney for Defendant
310 Lakeside Ave.
Cleveland, Ohio 44113
(216) 443-8396



**CATE OF SERVICE**

e foregoing was served upon the State of Ohio by deposit with the Clerk and/or by electronic service to the prosecuting attorney on this 28th day of January, 2015.

/s/ Frank Cavallo

Frank Cavallo
Attorney for Defendant



87750184

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
    Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
    Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT'S MOTION TO SEVER COUNTS FOR TRIAL IS GRANTED.
COURT SEVERS COUNTS 1 THROUGH 5.

02/03/2015
CPCG1 02/03/2015 09:38:50

_____
Judge Signature        02/05/2015

HEAR
02/03/2015

RECEIVED FOR FILING
02/05/2015 15:46:34
KELLEY A. SWEENEY, CLERK



EXHIBIT
4

Page 1 of 1



87753027

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

PER JUDGE MATIA REGARDING DEFENDANT JAMES W. DANIEL, BIFURCATE THE NOTICE OF PRIOR CONVICTION, REPEAT VIOLENT OFFENDER SPECIFICATION, SEXUAL MOTIVATION SPECIFICATION AND SEXUALLY VIOLENT PREDATOR SPECIFICATION ON COUNTS 5, 6, 7, AND 8.
BIFURCATE REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 9 AND 10.
BIFURCATE NOTICE OF PRIOR CONVICTION, AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 12, 13, 14 AND 15.
BIFURCATE SEXUAL MOTIVATION SPECIFICATION, SEXUALLY VIOLENT PREDATOR SPECIFICATION, REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 17, 18, AND 19.
BIFURCATE NOTICE OF PRIOR CONVICTION AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 20, 21 AND 22.

02/02/2015
CPDEJ 02/03/2015 10:41:37

_David T. Matia_

Judge Signature                02/05/2015

HEAR
02/02/2015

RECEIVED FOR FILING
02/05/2015 15:46:41
KELLEY A. SWEENEY, CLERK

EXHIBIT
tabbies®
**5**

Page 1 of 1



87761275

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

PRETRIAL SET FOR 03/03/2015 AT 09:00 AM.
AT THE REQUEST OF DEFENDANT.
DEFENDANT IS REFERRED TO COURT PSYCHIATRIC CLINIC.
DIRECTOR, PSYCHIATRIC CLINIC:
IN ACCORDANCE WITH PROVISIONS OF THE OHIO REVISED CODE, 2945.371 COMPETENCE TO STAND TRIAL; ETC.
2945.371 SANITY AT THE TIME OF THE ACT
YOU ARE DIRECTED TO EXAMINE JAMES W DANIEL, WHO IS AWAITING TRIAL ON CHARGE(S) OF 2911.11
AGGRAVATED BURGLARY, 2907.02 RAPE, 2905.01 KIDNAPPING, 2907.02 RAPE, 2907.02 RAPE,
2905.01 KIDNAPPING, 2911.01 AGGRAVATED ROBBERY, 2905.01 KIDNAPPING, 2923.13 HAVING WEAPONS WHILE
UNDER DISABILITY, 2911.01 AGGRAVATED ROBBERY, 2905.01 KIDNAPPING, 2911.01 AGGRAVATED ROBBERY,
2905.01 KIDNAPPING, 2923.13 HAVING WEAPONS WHILE UNDER DISABILITY, 2907.02 RAPE, 2905.01
KIDNAPPING, 2911.01 AGGRAVATED ROBBERY, 2903.11 FELONIOUS ASSAULT, 2905.01 KIDNAPPING, 2923.13
HAVING WEAPONS WHILE UNDER DISABILITY, 2911.11 AGGRAVATED BURGLARY.

02/03/2015
CPCG1 02/03/2015 14:18:54

Judge Signature                        02/05/2015

EXHIBIT
6

HEAR
02/03/2015

RECEIVED FOR FILING
02/05/2015 15:47:16
KELLEY A. SWEENEY, CLERK

Page 1 of 1

Judge

RECEIVED FOR FILING

FEB 1 3 2015

CUYAHOGA COUNTY.
CLERK OF COURTS
By _____ Deputy

CR14589487-A          87931809

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

State Of Ohio                )        Case No: CR-14-589487-A
                             )
      -vs-                   )        Judge: David T. Matia
                             )
James w. Daniel III          )        Motion To Disqualify Counsel
      Defendant              )

James w. Daniel III ____, Defendant moves the court to disqualify

_____ Frank Cavallo _____ [name of counsel] from representing me in the

above-captioned case. An affidavit is hereto attached with demonstrates that [counsel ha

the conflict of interest or is otherwise disqualified from participation in the case). The

legal basis for this motion is set forth below. [Attach memorandum].

_____
Defendant
P.o. Box 5600 _____

Cleveland, Ohio 44101 _____
Address

EXHIBIT
17

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I am writing this memorandum with regards to several issues. First, I wish to disqualify my attorney an obtain my own personal representitive. My attorney has neglected several issues pretaining to my case, such as my mental Health issues an history of diagnorises on medications. The restrictions that have been placed on my phone and mail by the County Jail an Prosecution. I have brought these issues up to him several times. These restrictions are enabling me to contact an gather information from potential witnesses. i've written grievences for the Sheriff's department regarding these matters an given it to him, in which he has never passed along. i've asked him to contact the warden with the same results. i've even given him paperwork from the wardens office stating that the Prosecution was interfering with my mail, which is causing my incoming an outgoing mail to take several weeks to reach it's destination if at all. He has neglected to contact any of my witnesses i tried to present to him at a visit, he wouldn't even take the list I tried to give him. He has misled me on my case an charges. I don't even know what his defense strategy is or whats going on. I would like to hire my own attorney. I do not feel this attorney has my best interest an i believe he is against me. He doesn't believe I can win my case an wants me to take a plea although in innocent of the charges. Furthermore there is a conflict of intrest. My fiancee who is a witness in a couple of my cases feels uncomfortable around my attorney

as don't want to have any contact with him. She was a victim of a rape 3 years ago an he represented one of the five men involved an got him off the charges at trial.

I beg the court to grant this motion

Respectfully submitted,

_____
Defendant, Pro-se

P. Box 5666
Cleveland, Ohio 44101
Address

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by regular U.S. Mail to:

_Clerk of Courts_____ ; _Cuyahoga_ . County

at _1200 Ontario St. Cleveland, Ohio 44113_ .

On this ___5ᵗʰ___ day of _February_____ , 20_15_.

_____
Defendant, Pro-Se



88268337

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT INDIGENT; ATTORNEY FRANK CAVALLO ASSIGNED.
HEARING HELD.  HEARING HELD IN OPEN COURT AND ON THE RECORD.
ON A FORMER DAY, THE DEFENDANT WAS REFERRED TO THE COURT PSYCHIATRIC CLINIC FOR A COMPETENCY
EVALUATION.  IN HIS/HER REPORT DATED 03/06/2015, DR. NOFFSINGER OPINED THAT THE DEFENDANT REFUSED
OR WAS UNABLE TO COOPERATE WITH THE EVALUATION.  ACCORDINGLY, DR. NOFFSINGER, M.D.,
PSYCHIATRIST, WAS UNABLE TO RENDER AN OPINION AS TO THE DEFENDANT'S COMPETENCY TO STAND TRIAL.

THEREFORE, AND PURSUANT TO R.C. 2945.371(C) AND (D), THE COURT ORDERS THE DEFENDANT TO TWIN
VALLEY BEHAVIORAL HEALTHCARE IN COLUMBUS, OHIO FOR AN INPATIENT COMPETENCY EVALUATION FOR
A REASONABLE PERIOD OF TIME NOT TO EXCEED TWENTY (20) DAYS.

THE DEFENDANT IS ORDERED REMANDED TO THE CUYAHOGA COUNTY JAIL UNTIL A BED BECOMES
AVAILABLE.  UPON NOTIFICATION BY THE FORENSIC LIAISON OF RECOVERY RESOURCES (A CONTRACT
AGENCY OF THE ADAMHS BOARD) THAT A BED IS AVAILABLE, THE CUYAHOGA COUNTY SHERIFF'S
DEPARTMENT IS HEREBY ORDERED TO TRANSPORT THE DEFENDANT TO TWIN VALLEY BEHAVIORAL HEALTH
IN COLUMBUS, OHIO.

UPON COMPLETION OF THE EVALUATION, OR AT THE END OF THE TWENTY (20) DAY PERIOD OF
HOSPITALIZATION, WHICHEVER COMES FIRST, AND UPON NOTIFICATION BY THE FORENSIC LIAISON OF
RECOVERY RESOURCES THAT THE DEFENDANT IS READY FOR RETURN, THE CUYAHOGA COUNTY SHERIFF IS
HEREBY ORDERED TO TRANSPORT THE DEFENDANT BACK TO THE CUYAHOGA COUNTY JAIL.

TWIN VALLEY BEHAVIORAL HEALTH'S EXAMINER SHALL FILE A WRITTEN REPORT WITH THE COURT WITHIN
THIRTY (30) DAYS AFTER ENTRY OF A COURT ORDER FOR EVALUATION.  SAID EVALUATION SHALL STATE
EITHER,

THAT THE DEFENDANT IS COMPETENT TO STAND TRIAL AND THEREFORE THE EXAMINER IS REQUESTING
THAT THE DEFENDANT'S LEGAL STATUS BE UPDATED TO INCOMPETENT TO STAND TRIAL; OR
THAT THE DEFENDANT IS COMPETENT TO STAND TRIAL AND CAN BE TRANSPORTED BACK TO THE CUYAHOGA
COUNTY JAIL TO AWAIT TRAIL.

SAID NOTIFICATION SHALL BE MADE BY VIA CERTIFIED U.S. MAIL TO JUDGE DAVID T. MATIA IN COURTROOM
17-D, JUSTICE CENTER, 1200 ONTARIO STREET, CLEVELAND, OHIO 44113.

IT IS SO ORDERED.

SHERIFF IS ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER:  MALE, RACE:
BLACK.

MISC
03/09/2015

Sheriff Signature

EXHIBIT

8

Page 1 of 2

James Danell
CR 589487-A

88268337

03/09/2015
CPDEJ 03/09/2015 15:17:24

_____
Judge Signature            Date

MISC
03/09/2015



88715086

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
   Plaintiff

JAMES W DANIEL
   Defendant

Case No: CR-14-589487-A

Judge: DAVID T MATIA

INDICT: 2911.11 AGGRAVATED BURGLARY
        2911.11 AGGRAVATED BURGLARY
        2907.02 RAPE /SVPS
        ADDITIONAL COUNTS...

## JOURNAL ENTRY

HEARING HELD 04/08/2015.
DEFENDANT FOUND COMPETENT TO STAND TRIAL. TRIAL REMAINS SET APRIL 13, 2015 AT 9:00 A.M.

04/08/2015
CPCG1 04/08/2015 15:47:59

_____
Judge Signature           04/09/2015

EXHIBIT
9

HEAR
04/08/2015

RECEIVED FOR FILING
04/09/2015 16:36:15
NAILAH K. BYRD, CLERK

Page 1 of 1



88938599

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

JAMES W DANIEL
Defendant

Case No: CR-14-589487-A

Judge: DAVID T MATIA

INDICT: 2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT'S MOTION FILED BY MULTI(S) JAMES W. DANIEL III (DI) ATTORNEY FRANK CAVALLO 0073428
MOTION TO SEVER COUNTS FOR TRIAL IS GRANTED.

04/20/2015
CPCG1 04/23/2015 16:59:01

_____
Judge Signature          04/24/2015

HEAR
04/20/2015



EXHIBIT
10

Page 1 of 1



88938699

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT'S MOTION TO DISQUALIFY COUNSEL IS DENIED.

04/20/2015
CPCG1 04/23/2015 17:08:41

_David T. Matia_

Judge Signature                    04/24/2015

HEAR
04/20/2015

RECEIVED FOR FILING
04/24/2015 17:05:39
NAILAH K. BYRD, CLERK



EXHIBIT

11

Page 1 of 1



89649569

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
    Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
    Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
          2911.11  AGGRAVATED BURGLARY
          2907.02  RAPE /SVPS
          ADDITIONAL COUNTS...

## JOURNAL ENTRY

PER REQUEST OF DEFENDANT JAMES W. DANIEL, THE COURT ORDERS BIFURCATION THE NOTICES OF PRIOR CONVICTION, REPEAT VIOLENT OFFENDER SPECIFICATIONS, SEXUAL MOTIVATION SPECIFICATIONS AND SEXUALLY VIOLENT PREDATOR SPECIFICATIONS ON COUNTS 5,6,7, AND 8. ALL BIFURCATED SPECIFICATIONS ARE TO BE TRIED TO THE BENCH.
BIFURCATE REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 9 AND 10.
BIFURCATE NOTICE OF PRIOR CONVICTION, AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 12, 13, 14 AND 15.
BIFURCATE SEXUAL MOTIVATION SPECIFICATION, SEXUALLY VIOLENT PREDATOR SPECIFICATION, REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 17, 18, AND 19.
BIFURCATE NOTICE OF PRIOR CONVICTION AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 20, 21 AND 22.

04/20/2015
CPDTM 06/08/2015 15:14:45

_David T. Matia_
_____
Judge Signature          06/08/2015

HEAR
04/20/2015

RECEIVED FOR FILING
06/08/2015 15:25:45
NAILAH K. BYRD, CLERK



EXHIBIT
_12_

Page 1 of 1


89211033

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT IN COURT WITH COUNSEL FRANK CAVALLO.  PROSECUTING ATTORNEY(S) BRIAN RADIGAN,
MAXWELL M. MARTIN AND AQUEELAH A. JORDAN PRESENT.
COURT REPORTER KRISTIN BEUTLER PRESENT.

THE JURY RETURNS A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR
(2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147
UNDER COUNT(S) 1, 2, 3, 11, 12 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11, 12 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 1, 2, 3, 11, 12 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN
COUNT(S) 1, 2, 3, 11, 12 OF THE INDICTMENT.

THE JURY RETURNS A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM SPECIFICATION(S) - 1
YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S)
2941.147 UNDER COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN
COUNT(S) 4, 13 OF THE INDICTMENT.

THE JURY RETURNS A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 5, 7, 9, 14
OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 5, 7, 9, 14 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 5, 7, 9, 14 OF THE INDICTMENT.

THE JURY RETURNS A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1
YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10, 16 OF THE
INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT.

MISC
04/29/2015

EXHIBIT
13

Page 1 of 2



89211033

THE COURT FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT.

THE JURY RETURNS A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A(2) F2 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 15 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT.

THE COURT FINDS THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT).  THESE COUNTS HAVE NOT BEEN RE-NUMBERED.

THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 1 OF AGGRAVATED BURGLARY 2911.11 A(1)  AS CHARGED IN COUNT(S) 1 OF THE ORIGINAL INDICTMENT.

THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 2 OF AGGRAVATED BURGLARY 2911.11 A(2)  AS CHARGED IN COUNT(S) 2 OF THE ORIGINAL INDICTMENT.

THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 3 OF RAPE 2907.02 A(2)  WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 3 OF THE ORIGINAL INDICTMENT.

THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 4 OF KIDNAPPING 2905.01 A(4)  WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 4 OF THE ORIGINAL INDICTMENT.

SENTENCING SET FOR 05/08/2015 AT 09:00 AM.


04/29/2015
CPDEJ 05/04/2015 15:40:14

_David T. Matia_

_____
Judge Signature                    05/05/2015


MISC
04/29/2015

*Judge*

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

CR14589487-A          89434064

State of Ohio

Plaintiff

v.

James W. Daniel
[Name of defendant]

P.o. Box 5600
Cleve, Oh 44101
[Address of defendant]
Defendant

)
)  Case No. CR-14-589487-A
)
)
)
)  JUDGE: David Matia
)
)
)
)
)
)  MOTION TO DISQUALIFY RECEIVED FOR FILING
)
)                    MAY 19 2015
)
)              CUYAHOGA COUNTY
)              CLERK OF COURTS
)            By_____ Deputy

_Daniel_, Defendant moves the court to disqualify Frank Cavallo

[name of counsel]

from representing me in the above-captioned case.  An affidavit is hereto attached which

demonstrates that [counsel has the conflict of interest or is otherwise disqualified from

participation in the case].  The legal basis for this motion is set forth below.  [Attach

memorandum.]

Respectfully submitted,

Defendant

EXHIBIT
14

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I don't believe Mr. Cavallo is properly representing me. In my previous trial Mr. Cavallo misrepresented me, inwhich I believe lead me to losing my trial. Mr. Cavallo failed to contact and call back several of my witnesses. He also failed to file a timely motion for my alibi witnesses and even after the courts allowed for my witnesses, Mr. Cavallo did not call upon the five witnesses that showed up to testify on my behalf. Furthermore Mr. Cavallo brought on two other attorneys to represent me, neither being adequally pre-pared for my defense, due to the untimely manner inwhich they were assigned to my case, one a week before my trial date, the other the day of my trial. One of these attorneys was very inexperienced and admitted to being so and to that trial being his first. lastly, Mr. Cavallo has not spoken with me nor gone over my defense with me for these charges.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by regular U.S. Mail to:

_Clerk of Courts_, _Cuyahoga_ County

at _1200 Ontario St. Cleveland, Ohio 44113_.

On this _18th_ day of _May_, 20 _15_.

_____
Defendant Pro-Se



89642373

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## __JOURNAL ENTRY__

DEFENDANT'S MOTION TO DISQUALIFY COUNSEL IS WITHDRAWN.

06/08/2015
CPCG1 06/08/2015 11:46:20

_____
Judge Signature            06/08/2015

HEAR
06/08/2015

RECEIVED FOR FILING
06/08/2015 15:16:27
NAILAH K. BYRD, CLERK



**EXHIBIT**

15

Page 1 of 1



89629530

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

JAMES W DANIEL
Defendant

Case No: CR-14-589487-A

Judge: DAVID T MATIA

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

PARTIES AGREE TO TH STATE OF OHIO AMENDING INDICTMENT AS FOLLOWS:  COUNTS 1 THROUGH 4 ARE
AMENDED AND RENAMED AS COUNTS 20 THROUGH 23.

06/05/2015
CPCG1 06/05/2015 14:56:02

_____
Judge Signature                    06/08/2015

HEAR
06/05/2015

RECEIVED FOR FILING
06/08/2015 15:16:09
NAILAH K. BYRD, CLERK



**EXHIBIT**

16

Page 1 of 1



89641956

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No: CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT: 2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT IN COURT WITH COUNSEL FRANK CAVALLO. PROSECUTING ATTORNEY(S) MAX MARTIN PRESENT.
COURT REPORTER NANCY GEIGER PRESENT.
DEFENDANT FULLY ADVISED IN OPEN COURT OF HIS/HER CONSTITUTIONAL RIGHTS AND PENALTIES.
COUNTS 1 THROUGH 4 ARE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23.
DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO AGGRAVATED
BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT.
DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO AGGRAVATED
BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT.
DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1
WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT.
DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO KIDNAPPING 2905.01
A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S)
AS CHARGED IN COUNT(S) 23 OF THE INDICTMENT.
COURT ACCEPTS DEFENDANT'S GUILTY PLEA.
STATE OF OHIO ORDERED TO NOTIFY VICTIM OF DATE & TIME OF SENTENCING.
SENTENCING SET FOR 06/17/2015 AT 01:30 PM.
DEFENDANT REMANDED.

06/05/2015
CPEDB 06/08/2015 11:35:28

_David T. Matia_

Judge Signature                06/08/2015



EXHIBIT
17

HEAR
06/05/2015

RECEIVED FOR FILING
06/08/2015 15:25:39
NAILAH K. BYRD, CLERK

Page 1 of 1



89829931

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

JAMES W DANIEL
Defendant

Case No: CR-14-589487-A

Judge: DAVID T MATIA

INDICT: 2911.11  AGGRAVATED BURGLARY
2911.11  AGGRAVATED BURGLARY
2907.02  RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT IN COURT.  COUNSEL FRANK CAVALLO PRESENT.
PROSECUTING ATTORNEY(S) AQUEELAH A. JORDAN AND RICK BELL PRESENT.
COURT REPORTER RICHARD HAMSKI PRESENT.

DEFENDANT INDIGENT.  STEVE CANFIL WILL BE ASSIGNED FOR APPEAL.
TRANSCRIPT ORDERED AT STATE'S EXPENSE.

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147 UNDER COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147 UNDER COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH
FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER
COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION

MISC
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK


**EXHIBIT**
tabbies
18

Page 1 of 5



89829931

SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9 AND 14.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10,
16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8, 10 AND 16.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A(2) F2 WITH
FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER
COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO COUNT 15.)

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER
DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3
YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT).
THESE COUNTS HAVE NOT BEEN RE-NUMBERED.

COUNTS 1 THROUGH 4 IN THE ORIGINAL INDICTMENT WERE AMENDED AND RENAMED AS COUNTS 20 THROUGH
23 ON OR ABOUT JUNE 5, 2015.
ON JUNE 5, 2015, DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO
AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED
BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2)
F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO KIDNAPPING
2905.01 A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR
SPECIFICATION(S) AS CHARGED IN COUNT(S) 23 OF THE INDICTMENT.

COURT ACCEPTED DEFENDANT'S GUILTY PLEA.
THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW.
THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11.

A SENTENCING HEARING WAS HELD ON JUNE 17, 2015.
PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT.
DEFENSE COUNSEL FRANK CAVALLO ADDRESSED THE COURT.
DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE.

THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE
CONSTRUCTED IN THE FOLLOWING MANNER:

FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL
NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL
INDICTMENT.
MISC
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK



89829931

THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3.

DEFENDANT TO SERVE 10 YEARS ON COUNT 2.
DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3. COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2. COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS.

THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9.
THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7. THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9 AND 11.

1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 9 FOR A TOTAL OF 13 YEARS.

DEFENDANT TO SERVE 3 YEARS ON COUNT 11.

DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11. THE COUNTS ARE TO RUN CONSECUTIVE TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING.
THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14. THE COURT WILL SENTENCE ON COUNTS 12, 14 AND 16.

THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE ON COUNT 12. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT 14. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 14.

DEFENDANT TO SERVE 3 YEARS ON COUNT 16.

DEFENDANT TO SERVE A TOTAL SENTENCE OF 29 YEARS ON COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE

MISC
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK



89829931

TO RUN CONSECUTIVE.  COUNTS TO RUN CONSECUTIVE TO COUNTS 5 THROUGH 11 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO HAVE COUNT 22 MERGE INTO COUNT 19 FOR PURPOSES OF SENTENCING.
NO OTHER COUNTS WILL MERGE FOR PURPOSES OF SENTENCING.  THE COURT WILL SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 17.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 17.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 18.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 19.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 19.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 20.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS ON BASE CHARGE ON COUNT 21.
DEFENDANT TO SERVE 15 YEARS CONSECUTIVE ON FIREARM SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21.

DEFENDANT TO SERVE 3 YEARS ON COUNT 23.

DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

COUNTS 5, 6, 7, 9, 11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN CONSECUTIVE TO EACH OTHER.
COUNTS 2 AND 3 ARE TO RUN CONSECUTIVE TO EACH OTHER BUT CONCURRENT TO COUNTS 5 THROUGH 23.

THE COURT FINDS THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC AND PUNISH THE DEFENDANT AND ARE NOT DISPROPORTIONATE TO OTHER SENTENCES FOR SIMILAR OFFENSES.
ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED TO PROTECT THE PUBLIC.

DEFENDANT TO SERVE TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE.

POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE FELONY(S) UNDER R.C.2967.28.  DEFENDANT ADVISED THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER RC 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE OFFENDER.
PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1.
PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3.
MISC
06/22/2015



89829931

*** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD OFFENDER REGISTRANT. *** COURT EXPLAINED ALL DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX OFFENDER. DEFENDANT, WHEN NOT INCARCERATED UNDER ANY OF THE SENTENCES MUST PERSONALLY REGISTER HIS RESIDENCE, EMPLOYMENT OR SCHOOL (OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES WITH THE COUNTY SHERIFF OF THE COUNTY CONTAINING THESE ADDRESSES AND VERIFY SAME FOR LIFETIME WITH IN PERSON VERIFICATION EVERY 90 DAYS BY PERSONALLY APPEARING AT THE SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR NOTICE OF ANY RESIDENCE OR SCHOOL ADDRESS CHANGE TO THE COUNTY SHERIFF WITH WHOM HE MOST RECENTLY REGISTERED AND TO THE COUNTY SHERIFF OF THE COUNTY IN WHICH THE NEW ADDRESS IS LOCATED. HE MUST REGISTER A NEW EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING SUCH NEW ADDRESS WITH SUCH SHERIFF. THESE PROVISIONS APPLY WITH EQUAL FORCE SHOULD DEFENDANT RESIDE, ATTEND SCHOOL OR WORK IN ANY OTHER STATE OF THE UNITED STATES.

DEFENDANT IS ORDERED TO SUBMIT TO A DNA SPECIMAN COLLECTION PROCEDURE UNDER R.C. 2901.07.

SHERIFF ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE: BLACK.

06/22/2015
CPDEJ 06/22/2015 14:33:00

_David T. Matia_

Judge Signature                    06/22/2015

MISC
06/22/2015


90158433

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

JAMES W DANIEL
Defendant

Case No: CR-14-589487-A

Judge: DAVID T MATIA

INDICT: 2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

NUNC PRO TUNC ENTRY AS OF AND FOR 06/22/2015.
SENTENCING ENTRY DATED 6/22/2015 IS CORRECTED TO REFLECT CORRECT ENTRY DATE OF 6/17/2015.

** CHANGE SEXUALLY VIOLENT PREDATOR SPECIFICATION IN COUNTS 6, 7, 17, 18 AND 19 TO REFLECT A TOTAL OF 10 YEARS IN PRISON ON EACH COUNT.  ON COUNT 9, CHANGE THE WORDING AND DELETE "TO LIFE." **

DEFENDANT IN COURT.  COUNSEL FRANK CAVALLO PRESENT.
PROSECUTING ATTORNEY(S) AQUEELAH A. JORDAN AND RICK BELL PRESENT.
COURT REPORTER RICHARD HAMSKI PRESENT.

DEFENDANT INDIGENT.  STEVE CANFIL WILL BE ASSIGNED FOR APPEAL.
TRANSCRIPT ORDERED AT STATE'S EXPENSE.

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.)

MISC
07/17/2015


EXHIBIT
19

Page 1 of 5



90158433

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9 AND 14.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8, 10 AND 16.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A(2) F2 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO COUNT 15.)

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT). THESE COUNTS HAVE NOT BEEN RE-NUMBERED.

COUNTS 1 THROUGH 4 IN THE ORIGINAL INDICTMENT WERE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23 ON OR ABOUT JUNE 5, 2015.
ON JUNE 5, 2015, DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO KIDNAPPING 2905.01 A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 23 OF THE INDICTMENT.

COURT ACCEPTED DEFENDANT'S GUILTY PLEA.
THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW.
THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11.

A SENTENCING HEARING WAS HELD ON JUNE 11, 2015.
PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT.
DEFENSE COUNSEL FRANK CAVALLO ADDRESSED THE COURT.
DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE.
MISC
07/17/2015

RECEIVED FOR FILING
07/17/2015 16:24:52
NAILAH K. BYRD, CLERK



90158433

THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE CONSTRUCTED IN THE FOLLOWING MANNER:

FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL INDICTMENT.

THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3.

DEFENDANT TO SERVE 10 YEARS ON COUNT 2.
DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3. COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2. COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS.

THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9.
THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7. THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9 AND 11.

1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 9 FOR A TOTAL OF 13 YEARS.

DEFENDANT TO SERVE 3 YEARS ON COUNT 11.

DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11. THE COUNTS ARE TO RUN CONSECUTIVE TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING.
THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14. THE COURT WILL SENTENCE ON COUNTS 12, 14 AND 16.

THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE

MISC
07/17/2015

RECEIVED FOR FILING
07/17/2015 16:24:52
NAILAH K. BYRD, CLERK

Page 3 of 5


90158433

ON COUNT 12.  DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT 14.  DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE ON COUNT 14.

DEFENDANT TO SERVE 3 YEARS ON COUNT 16.

DEFENDANT TO SERVE A TOTAL SENTENCE OF 29 YEARS ON COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE TO RUN CONSECUTIVE.  COUNTS TO RUN CONSECUTIVE TO COUNTS 5 THROUGH 11 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO HAVE COUNT 22 MERGE INTO COUNT 19 FOR PURPOSES OF SENTENCING.
NO OTHER COUNTS WILL MERGE FOR PURPOSES OF SENTENCING.  THE COURT WILL SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 17.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 17.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 18.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 19.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 19.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 20.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS ON BASE CHARGE ON COUNT 21.
DEFENDANT TO SERVE 15 YEARS CONSECUTIVE ON FIREARM SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21.

DEFENDANT TO SERVE 3 YEARS ON COUNT 23.

DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

COUNTS 5, 6, 7, 9, 11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN CONSECUTIVE TO EACH OTHER.
COUNTS 2 AND 3 ARE TO RUN CONSECUTIVE TO EACH OTHER BUT CONCURRENT TO COUNTS 5 THROUGH 23.

THE COURT FINDS THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC AND PUNISH THE DEFENDANT AND ARE NOT DISPROPORTIONATE TO OTHER SENTENCES FOR SIMILAR OFFENSES.
ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED TO PROTECT THE PUBLIC.

DEFENDANT TO SERVE TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE.

POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE
MISC
07/17/2015

RECEIVED FOR FILING
07/17/2015 16:24:52
NAILAH K. BYRD, CLERK



90158433

FELONY(S) UNDER R.C.2967.28.  DEFENDANT ADVISED THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS
IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR
CONDITION OF POST RELEASE CONTROL UNDER R.C 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS
PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE
OFFENDER.
PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1.
PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3.

*** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD OFFENDER REGISTRANT. *** COURT
EXPLAINED ALL DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX OFFENDER. DEFENDANT, WHEN NOT
INCARCERATED UNDER ANY OF THE SENTENCES MUST PERSONALLY REGISTER HIS RESIDENCE, EMPLOYMENT
OR SCHOOL (OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES WITH THE COUNTY SHERIFF OF THE COUNTY
CONTAINING THESE ADDRESSES AND VERIFY SAME FOR LIFETIME WITH IN PERSON VERIFICATION EVERY 90
DAYS BY PERSONALLY APPEARING AT THE SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR NOTICE OF ANY
RESIDENCE OR SCHOOL ADDRESS CHANGE TO THE COUNTY SHERIFF WITH WHOM HE MOST RECENTLY
REGISTERED AND TO THE COUNTY SHERIFF OF THE COUNTY IN WHICH THE NEW ADDRESS IS LOCATED. HE
MUST REGISTER A NEW EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING SUCH NEW ADDRESS WITH
SUCH SHERIFF. THESE PROVISIONS APPLY WITH EQUAL FORCE SHOULD DEFENDANT RESIDE, ATTEND SCHOOL
OR WORK IN ANY OTHER STATE OF THE UNITED STATES.

DEFENDANT IS ORDERED TO SUBMIT TO A DNA SPECIMAN COLLECTION PROCEDURE UNDER R.C. 2901.07.

SHERIFF ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE:
BLACK.


07/17/2015
CPDEJ 07/17/2015 13:51:14

David T. Matia

_____
Judge Signature            07/17/2015


MISC
07/17/2015

RECEIVED FOR FILING
07/17/2015 16:24:52
NAILAH K. BYRD, CLERK

Page 5 of 5

CR14589487-A                    90167918

IN THE COMMON PLEAS COURT
_Cuyahoga_____ COUNTY, OHIO

STATE OF OHIO,                  :        CASE NO. _CR-14-589487-A_
        Plaintiff,              :        (Hearing requested)
                                :
vs.                             :
                                :        MOTION TO WITHDRAW
_James Daniel_,                 :        PLEA PURSUANT TO
        Defendant.              :        OHIO CRIM. R. 32.1

---

Now comes Defendant, _James Daniel_, pursuant to Ohio Crim. R. 32.1, and hereby respectfully MOVES this Honorable Court to order a WITHDRAWAL of his guilty/no contest plea made herein on ___6-12-15____. Further, Defendant respectfully MOVES this Honorable Court vacate the sentence imposed herein.

Defendant further represents that said sentence that had been imposed should be vacated to prevent a manifest injustice.

Moreover, Defendant attaches his affidavit in support of the recitals contained in this motion and asks for a hearing at which he may more fully establish his cause.

Respectfully submitted,

Defendant, _pro se_
Inmate No.:
Lorain Correctional Inst.
2075 Avon-Beldon Road
Grafton, Ohio 44044

RECEIVED FOR FILING

JUL 1 7 2015

CUYAHOGA COUNTY
CLERK OF COURTS
By_____ Deputy

EXHIBIT
20

## AFFIDAVIT

___James Daniel___, being first duly sworn, says that he is the Movant in the above-captioned matter and that the following is true to the best of his knowledge: On 6-12-15 I agreed on a plea deal presented to me By my attorney Frank Cavallo and the prosecution For the charges of aggravated Burglary, Rape and Kidnapping, the agreement was these Charges would be ran concurrent to each other, then to the sentencing of my other case with a undetermined time which would not exceed 10 years to life the max amount of time For my serious Charge. This agreement was agreed upon in open court and on my sentencing day was not Fulfilled. and i was sentenced to the max of 20 years to life with my Charges Ran consecutive to each other.

I hereby represent that the information set forth above is true and complete to the best of my knowledge and belief.

_____
Defendant, *pro se*

Sworn and subscribed in my presence this 13 day of July, 2015.

_____ (Laura A. Schick)
NOTARY PUBLIC- State of Ohio
My commission expires. 12-10-2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing MOTION TO WITHDRAW PLEA  was sent via U.S. regular mail, postage prepaid, to the Prosecuting Attorney for _Cuyahoga_ County, Ohio this _13_ day of _July_ , _15_.

_____
Defendant, *pro se*

CR14589487-A                90195209

IN THE COMMON PLEAS COURT
_Cuyahoga_ COUNTY, OHIO

STATE OF OHIO,                    :        CASE NO. CR-14-589487-A
Plaintiff,                        :        (Hearing requested)
                                  :
vs.                               :
                                  :        MOTION TO WITHDRAW
_James Daniel_                    :        PLEA PURSUANT TO
Defendant.                        :        OHIO CRIM. R. 32.1

Now comes Defendant, _James Daniel_, pursuant to Ohio Crim. R. 32.1, and hereby respectfully MOVES this Honorable Court to order a WITHDRAWAL of his guilty/no contest plea made herein on ___6-12-15___. Further, Defendant respectfully MOVES this Honorable Court vacate the sentence imposed herein.

Defendant further represents that said sentence that had been imposed should be vacated to prevent a manifest injustice.

Moreover, Defendant attaches his affidavit in support of the recitals contained in this motion and asks for a hearing at which he may more fully establish his cause.

RECEIVED FOR FILING

JUL 2 0 2015

CUYAHOGA COUNTY
CLERK OF COURTS
By_____ Deputy

Respectfully submitted,

Defendant, *pro se*
Inmate No.:
Lorain Correctional Inst.
2075 Avon-Belden Road
Grafton, Ohio 44044

EXHIBIT
21

**AFFIDAVIT**

_____James Daniel_____, being first duly sworn, says that he is the
Movant in the above-captioned matter and that the following is true to the best of his
knowledge: On 6-12-15 I agreed on a plee deal presented
to me by my attorney Frank Cavallo and the prosecution
for the charges of aggravated Burglary, Rape, and kidnapping.
The agreement was that these charges would be ran
concurrent to each other, than to the sentencing of my
other case with an undetermined amount of time
which would not exceed 10 years to life the max amount
of time for my most serious charge. this agreement
was agreed upon in open court and on my sentencing
date was not fulfilled and I was sentenced to the
max of 20 years to life with my charges ran
consecutive to each other.

    I hereby represent that the information set forth above is true and complete to the
best of my knowledge and belief.

_____
Defendant, *pro se*

Sworn and subscribed in my presence this 13 day of July 2005.

_____
Laura A. Schick
NOTARY PUBLIC State of Ohio
My commission expires 12-10-2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing MOTION TO WITHDRAW PLEA  was sent via U.S. regular mail, postage prepaid, to the Prosecuting Attorney for  Cuyahoga  County, Ohio this  13  day of  July  15 .

_____
Defendant, *pro se*

_Cuyahoga_ County Courthouse
Attn: Clerk of Courts
_1200 Ontario St_
_Cleveland Ohio 44113_

**To Whom It May Concern:**

Please be advised of my request to obtain a duplicate copy of my trial court

sentencing journal entry (Case # _CR-14-589482 A_    ) on ( _6-17-15_   ) for

purpose of appeal in the _8th_ District Appellate Court, _Cleveland_, Ohio.

Your immediate attention to this matter would be highly appreciated, obviously.

Thank you very much for helping me!

Sincerely,   _James Daniel_

_# 671-658_

**Lorain Correctional Institution**
**2075 S. Avon-Belden Road**
**Grafton, Ohio 44044**

RECEIVED FOR FILING

JUL 17 2015

CUYAHOGA COUNTY
CLERK OF COURTS
By _____ Deputy

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS _13_ DAY OF _July_ ———→ 2015

_Laura A. Solnik_

Notary Public _State of Ohio_

_My Commission Expires: 12-10-2017_



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**MOTION Electronically Filed:**
**August 13, 2015 14:48**

By: ERIC L. FOSTER 0092722

Confirmation Nbr. 517370

THE STATE OF OHIO

vrs.

JAMES W DANIEL

CR 14 589487-A

**Judge:**

DAVID T. MATIA

Pages Filed:  7



EXHIBIT
22

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO.  CR-14-589487 |
| | ) | |
| Plaintiff | ) | JUDGE DAVID T. MATIA |
| | ) | |
| vs. | ) | |
| | ) | **STATE'S RESPONSE TO** |
| JAMES W. DANIEL | ) | **DEFENDANT'S MOTION TO** |
| | ) | **WITHDRAW GUILTY PLEA** |
| Defendant | ) | |
| | ) | |

Now comes the State of Ohio, by and through its Assistant Prosecuting Attorney,

hereby requesting this Honorable Court to deny Defendant's Motion to Withdraw Guilty

Plea for the reasons more fully stated in the accompanying memorandum, attached hereto

and incorporated herein by reference.

Respectfully submitted,

TIMOTHY J. MCGINTY
CUYAHOGA COUNTY PROSECUTOR

_/s/ Eric L. Foster_____
Eric L. Foster #0092722
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

## MEMORANDUM

During Labor Day weekend 2014, James Daniel III (hereinafter "Defendant") went on a criminal spree that can be most accurately characterized as a "war on women."  On August 30, 2014, Defendant attacked and raped a woman as she was returning home from working late shift at a bar.  On September 1, 2014, Defendant robbed at gunpoint two women who were waiting on a ride.  Defendant then attacked and raped a woman who was jogging in the early morning on September 2, 2014.

On September 26, 2014, James W. Daniel (hereinafter "Defendant") was charged under the following indictment:

| COUNT | CHARGE |
|-------|--------|
| 1 | Aggravated Burglary §2911.11(A)(1) |
| 2 | Aggravated Burglary §2911.11(A)(2) |
| 3 | Rape §2907.02(A)(2) |
| 4 | Kidnapping §2905.01(A)(4) |
| 5 | Rape §2907.02(A)(2) |
| 6 | Rape §2907.02(A)(2) |
| 7 | Rape §2907.02(A)(2) |
| 8 | Kidnapping §2905.01(A)(4) |
| 9 | Aggravated Robbery §2911.01(A)(1) |
| 10 | Kidnapping §2905.01(A)(2) |
| 11 | Having Weapons Under Disability §2923.13(A)(2) |
| 12 | Aggravated Robbery §2911.01(A)(1) |

| 13 | Kidnapping §2905.01(A)(2) |
| 14 | Aggravated Robbery §2911.01(A)(1) |
| 15 | Kidnapping §2905.01(A)(2) |
| 16 | Having Weapons Under Disability §2923.13(A)(2) |
| 17 | Rape §2907.02(A)(2) |
| 18 | Rape §2907.02(A)(2) |
| 19 | Kidnapping §2905.01(A)(4) |
| 20 | Aggravated Robbery §2911.01(A)(1) |
| 21 | Felonious Assault §2903.11(A)(2) |
| 22 | Kidnapping §2905.01(A)(2) |
| 23 | Having Weapons Under Disability §2923.13(A)(2) |

Counts 1 through 4 were related to a separate incident in 2000 when Defendant broke into a woman's apartment on the East side of Cleveland and raped her.

Prior to trial, Defendant filed a motion to bifurcate counts 1 through 4, which was granted. Thereafter, Defendant went to trial on the remaining counts on April 21, 2015.

On April 29, 2015, a jury found Defendant guilty on the remaining counts. Defendant then pled guilty to Counts 1 through 4 on June 5, 2015. On June 22, 2015, Defendant was sentenced to 144 years in prison.

Defendant appealed from his sentence on July 13, 2015 through appointed counsel. His appeal is currently pending. However, on July 20, 2015, Defendant filed a pro se motion to withdraw his guilty plea. For the following reasons, this Court should deny Defendant's motion.

**I. This Court lacks jurisdiction to grant Defendant's motion**

The general rule is that when an appeal is taken from [a trial court] the [trial court] is divested of jurisdiction, except to take action in aid of the appeal, until the case is remanded to it by the appellate court. *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978). The trial court does retain jurisdiction over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt, appointment of a receiver and injunction. *Id.* at 97. A trial court does not retain jurisdiction over motions to withdraw guilty pleas once an appeal is taken. *See State v. Richard*, 8th Dist. Cuyahoga, Nos. 76984, 76985, 2000 Ohio App. LEXIS 1371 (Mar. 30, 2000).

The validity of Defendant's guilty plea is an issue consistent with that of the appellate court to review, affirm, modify, or reverse the appealed judgment. While Defendant has not yet filed his appellant brief, he will likely raise the issue in his appeal. Further, the appellate court could consider the issue *sua sponte*. Thus, this Court should deny Defendant's motion as he may not seek the same remedy from two different courts at the same time.

Therefore, this Court should deny Defendant's motion.

## II. Defendant has not provided this Court with sufficient evidence

Defendant asks this Court to grant him a hearing on his motion based upon nothing but his own perception of the circumstances surrounding his plea deal. He makes mention of an agreement being made on the record, but provides this Court with no transcript to corroborate his statements. This Court should not allow Defendant to expect that the judicial system will cater to his blanket, unsubstantiated statements.

When assessing whether or not to grant a hearing, the trial court should examine the contents of the affidavits offered in support of the petition. *State v. Nix*, 8th Dist. Cuyahoga Nos. 75630, 75631, 1999 Ohio App. LEXIS 6392 (Dec. 30, 1999). A trial court may discount self-serving affidavits from the petitioner or his family members, identical affidavits, or affidavits which rely on hearsay as not being affidavits, or affidavits which rely on hearsay as not being credible. *Id. citing State v. Moore*, 99 Ohio App.3d 748, 651 N.E.2d 1319 (1st Dist.1994).

Defendant's statements are simply not credible. He has provided this Court with no corroborative evidence of his claims. His self-serving affidavit is utterly insufficient to compel this Court to hold a hearing.

Therefore, this Court should deny Defendant's motion.

### III. The trial court was not bound by the plea deal

It is axiomatic that a plea agreement between a prosecutor and a criminal defendant does not supersede a trial court's sentencing discretion. A trial court is not bound by a plea agreement unless there has been active participation by the trial court in the agreement. *State v. Latimore*, 8th Dist. Cuyahoga No. 92490, 2010-Ohio-1052.

Here, Defendant has offered no evidence of the trial court's participation in the plea agreement such that the trial court should be bound by it. Defendant, in his own self-serving affidavit, mentions only that a deal was reached between him and the prosecutor. He does not contend that the judge played a role in the negotiations as well. Without this evidence, any mention of a plea deal was only a sentencing recommendation to the trial judge.

Therefore, this Court should deny Defendant's motion.

**IV. Conclusion**

For the foregoing reasons, the State of Ohio respectfully requests that this Court

deny Defendant's motion.

Respectfully Submitted,

TIMOTHY J. MCGINTY
CUYAHOGA COUNTY PROSECUTOR

___/s/ Eric L. Foster_____
Eric L. Foster #0092722
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Response was sent, by US Mail or electronically, to:

James W. Daniel #A671658
Lorain Correctional Institution
2075 Avon-Beldon Road
Grafton, OH 44044

TIMOTHY J. MCGINTY
CUYAHOGA COUNTY PROSECUTOR

___/s/ Eric L. Foster_____
Eric L. Foster #0092722
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113



CA15103258                90095225

**FILED**
COURT OF APPEALS

JUL 14 2015

Clerk of Courts
Cuyahoga County, Ohio

# IN THE COURT OF COMMON PLEAS
## COUNTY OF CUYAHOGA, OHIO
### CRIMINAL DIVISION

STATE OF OHIO                  :    CASE NO: CR-14-589487(A)

   Plaintiff                   :    JUDGE: DAVID T. MATIA

-vs-                           :    <u>NOTICE OF APPEAL</u>
                               Pursuant to App. R. 4(A)
JAMES W. DANIEL                :

   Defendant                   :

The defendant, James W. Daniel, by and through his undersigned counsel, appeals to the Court of Appeals of Cuyahoga County, Ohio, Eighth Appellate District, from the judgments of conviction and sentencing on June 17, 2015 and entered on the 22d day of June, 2015.

A certified copy of this Honorable Court's Journal Entries are attached with findings that the defendant is indigent, appointing undersigned appellate counsel and ordering transcripts at State's expense.

This appeal is taken pursuant to Ohio Rules of Appellate Procedure 4(A) and is filed as matter of right.

Respectfully submitted,

/s/ Steve W. Canfil
STEVE W. CANFIL (0001297)
55 Public Square - Suite 2100
Cleveland, Ohio 44113
(216) 363-6033
ATTORNEY FOR DEFENDANT

Judge:

CA 15 103258

**EXHIBIT**
23

89829931

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

Case No. CR-14-589487-A

Judge: DAVID T MATIA

JAMES W DANIEL
Defendant

INDICT:2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT IN COURT. COUNSEL FRANK CAVALLO PRESENT.
PROSECUTING ATTORNEY(S) AQUEELA H. JORDAN AND RICK BELL PRESENT.
COURT REPORTER RICHARD HAMSKI PRESENT.

DEFENDANT INDIGENT. STEVE CANFIL WILL BE ASSIGNED FOR APPEAL.
TRANSCRIPT ORDERED AT STATE'S EXPENSE.

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147 UNDER COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147 UNDER COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH
FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER
COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION

MISC
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK

Page 1 of 5



89829931

SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9 AND 14.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8, 10 AND 16.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A(2) F2 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO COUNT 15.)

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT). THESE COUNTS HAVE NOT BEEN RE-NUMBERED.

COUNTS 1 THROUGH 4 IN THE ORIGINAL INDICTMENT WERE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23 ON OR ABOUT JUNE 5, 2015.
ON JUNE 5, 2015, DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO KIDNAPPING 2905.01 A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 23 OF THE INDICTMENT.

COURT ACCEPTED DEFENDANT'S GUILTY PLEA.
THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW.
THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11.

A SENTENCING HEARING WAS HELD ON JUNE 17, 2015.
PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT.
DEFENSE COUNSEL FRANK GAVALLO ADDRESSED THE COURT.
DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE.

THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE CONSTRUCTED IN THE FOLLOWING MANNER:

FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL INDICTMENT.
MISC
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK.

Page 2 of 5



89829931

THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3.

DEFENDANT TO SERVE 10 YEARS ON COUNT 2.
DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3. COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2. COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS.

THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9.
THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7. THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9 AND 11.

1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 9 FOR A TOTAL OF 13 YEARS.

DEFENDANT TO SERVE 3 YEARS ON COUNT 11.

DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11. THE COUNTS ARE TO RUN CONSECUTIVE TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING.
THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14. THE COURT WILL SENTENCE ON COUNTS 12, 14 AND 16.

THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE ON COUNT 12. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT 14. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 14.

DEFENDANT TO SERVE 3 YEARS ON COUNT 16.

DEFENDANT TO SERVE A TOTAL SENTENCE OF 29 YEARS ON COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE MISC.
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK



89829931

TO RUN CONSECUTIVE. COUNTS TO RUN CONSECUTIVE TO COUNTS 5 THROUGH 11 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO HAVE COUNT 22 MERGE INTO COUNT 19 FOR PURPOSES OF SENTENCING. NO OTHER COUNTS WILL MERGE FOR PURPOSES OF SENTENCING. THE COURT WILL SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 17. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 17.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 18.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 19. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 19.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 20.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS ON BASE CHARGE ON COUNT 21.
DEFENDANT TO SERVE 15 YEARS CONSECUTIVE ON FIREARM SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21.

DEFENDANT TO SERVE 3 YEARS ON COUNT 23.

DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

COUNTS 5, 6, 7, 9, 11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN CONSECUTIVE TO EACH OTHER.
COUNTS 2 AND 3 ARE TO RUN CONSECUTIVE TO EACH OTHER BUT CONCURRENT TO COUNTS 5 THROUGH 23.

THE COURT FINDS THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC AND PUNISH THE DEFENDANT AND ARE NOT DISPROPORTIONATE TO OTHER SENTENCES FOR SIMILAR OFFENSES. ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED TO PROTECT THE PUBLIC.

DEFENDANT TO SERVE TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE.

POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE FELONY(S) UNDER R.C. 2967.28. DEFENDANT ADVISED THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER RC 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE OFFENDER.
PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1.
PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3.
MISC:
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK

Page 4 of 5



89829931

*** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD OFFENDER REGISTRANT *** COURT EXPLAINED ALL DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX OFFENDER. DEFENDANT, WHEN NOT INCARCERATED UNDER ANY OF THE SENTENCES MUST PERSONALLY REGISTER HIS RESIDENCE, EMPLOYMENT OR SCHOOL (OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES WITH THE COUNTY SHERIFF OF THE COUNTY CONTAINING THESE ADDRESSES AND VERIFY SAME FOR LIFETIME WITH IN PERSON VERIFICATION EVERY 90 DAYS BY PERSONALLY APPEARING AT THE SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR NOTICE OF ANY RESIDENCE OR SCHOOL ADDRESS CHANGE TO THE COUNTY SHERIFF WITH WHOM HE MOST RECENTLY REGISTERED AND TO THE COUNTY SHERIFF OF THE COUNTY IN WHICH THE NEW ADDRESS IS LOCATED. HE MUST REGISTER A NEW EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING SUCH NEW ADDRESS WITH SUCH SHERIFF. THESE PROVISIONS APPLY WITH EQUAL FORCE SHOULD DEFENDANT RESIDE, ATTEND SCHOOL OR WORK IN ANY OTHER STATE OF THE UNITED STATES.

DEFENDANT IS ORDERED TO SUBMIT TO A DNA SPECIMAN COLLECTION PROCEDURE UNDER R.C. 2901.07.

SHERIFF ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE: BLACK.

06/22/2015
CPDEJ 06/22/2015 14:33:00

_David T. Matia_

Judge Signature                    06/22/2015

THE STATE OF OHIO      } I, THE CLERK OF THE COURT
Cuyahoga County        } SS. OF COMMON PLEAS WITHIN
                            AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY
TAKEN AND COPIED FROM THE ORIGINAL _____
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS _____
DAY OF _JULY_ A.D. 20 15
CUYAHOGA COUNTY CLERK OF COURTS
By _____, Deputy

MISC
06/22/2015

RECEIVED FOR FILING
06/22/2015 14:55:37
NAILAH K. BYRD, CLERK

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and accurate copy of the foregoing Notice of Appeal was served electronically upon Hon. Timothy J. McGinty, Cuyahoga County Prosecutor or an authorized member of his staff at 1200 Ontario Street, Cleveland, Ohio 44113, on this 13th day of July, 2015.

/s/ Steve W. Canfil
STEVE W. CANFIL (0001297)
Attorney for Defendant

APPENDIX B

EIGHTH DISTRICT COURT OF APPEALS — LOCAL APPELLATE RULE NO. 9

DOCKETING STATEMENT

Trial Court Case No. CR-14-589487(A)

State of Ohio
_____
                    Plaintiff,

        vs.

James W. Daniel
_____
                    Defendant.

A.    CHOOSE THE APPROPRIATE DESIGNATION FOR THIS CASE (check one):

☐    Accelerated calendar (*see* Loc.App.R. 11.1).
☑    Regular calendar
☐    Denial of bail appeal
☐    Appeal (check one of the following):
        ☐A. From an order granting or denying:
            1. Adoption of a minor child; or
            2. Termination of parental rights. *See* App.R. 11.2.
        ☐B. Concerning a dependent, neglected, unruly, or delinquent child. *See* App.R. 7(C).

(Item A of this docketing statement was adopted at the Judges meeting on February 15, 2001 to comply with Appellate Rule 11.2.)

Assigned to the accelerated calendar for the reason(s) checked (*see* Local Rule 11.1).

☐    1.    No transcript required.

☐    2.    Transcript and all other evidentiary materials consist of one hundred (100) or fewer pages.

Assigned to the regular calendar with full briefing for the reason(s) checked.

☑    1.    Transcript and all other evidentiary materials are more than one hundred (100) pages.

☐    2.    Brief in excess of fifteen (15) pages is necessary to argue the issues adequately.

36.

☐ 3. Appeal concerns unique issue of law that will be of substantial precedential value in determining similar cases.

☐ 4. Appeal concerns multiple or complex issues.

☐ 5. A statement is submitted under App.R. 9(C).

B. THE FOLLOWING QUESTIONS APPLY TO ALL CIVIL AND ADMINISTRATIVE APPEALS:

1. Final appealable order:

   (a) Has the trial court disposed of all claims by and against all parties?

      ☐ Yes. Attach copies of all judgments and orders indicating that all claims against all parties have been dismissed.

      ☐ No.

   (b) If the answer to (a) is "No," has the trial court made an express determination that there is "no just reason for delay," per Civ.R. 54(B), with respect to the judgment or order from which the appeal is taken?

      ☐ Yes, in the same judgment or order.

      ☐ Yes, in a subsequent order dated _____. Attach a copy of the subsequent order.

      ☐ No.

   (c) Is the judgment or order subject to interlocutory appeal under R.C. 2505.02 (check all that apply)?

      ☐ Yes, because the order affects a substantial right in an action and prevents a judgment. *See* R.C. 2505.02(B)(1).

      ☐ Yes, because the order was made in a special proceeding. *See* R.C. 2505.02(B)(2).

      ☐ Yes, because the order vacates or sets aside a judgment or grants a new trial. *See* R.C. 2505.02(B)(3).

      ☐ Yes, because the order grants or denies a provisional remedy and meets the other criteria of R.C. 2505.02(B)(4).

      ☐ Yes, because the order determines that an action may or may not be maintained as a class action. *See* R.C. 2505.02(B)(5).

      ☐ No.

37.

(d)    Does the right to an immediate appeal arise from a provision of a statute other than R.C. 2505.02?

☐    Yes. Identify statute: _____

☐    No.

NOTE: IF THE ANSWER TO ALL OF THE ABOVE IS "NO," THE ORDER IS NOT A FINAL APPEALABLE ORDER, AND THE APPEAL WILL BE SUMMARILY DISMISSED FOR LACK OF APPELLATE JURISDICTION.

2.    Nature of case:

☐    Administrative Appeal
☐    Contract
☐    Declaratory Judgment
☐    Domestic Relations
☐    Juvenile
☐    Medical Malpractice
☐    Personal Injury
☐    Probate
☐    Other (describe): _____

3.    Do you know of another case pending before this court that raises the same issue or issues?

☐ Yes ☐ No

If yes, please cite the case(s): _____

4.    Does the appeal turn on an interpretation or application of a particular case or statute?

☐ Yes ☐ No

If yes, please cite the case(s) or statute(s): _____
_____

5.    How would you characterize the extent of your settlement discussions before judgment?

☐    None
☐    Minimal
☐    Moderate
☐    Extensive

6.    Have settlement discussions taken place since the judgment or order appealed from was entered?

☐ Yes ☐ No

38.

7.  Would a prehearing conference assist the resolution of this matter?

☐ Yes ☐ No ☐ Maybe

Please explain (optional): _____

8.  Briefly summarize the assignments of error presently anticipated to be raised on appeal. (Attach a separate sheet if necessary.)

_____
_____
_____

Steve W. Canfil (0001297)
Appellant or Attorney for Appellant

The primary purpose of a prehearing conference is to encourage the parties to explore any possibilities there may be for settlement of the case before incurring additional expenses or, if that is not possible, to limit the issues.

Loc.App.R. 20(E) provides that this court may assess reasonable expenses, including attorney fees, assess all or a portion of the appellate costs, or dismiss the appeal for failure to comply with provisions of this Rule.

[Amended effective July 1, 1999.]



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Appeals

**FILING OTHER THAN MOTION Electronically Filed:**
October 27, 2015 11:12

By: STEVE W. CANFIL 0001297

Confirmation Nbr. 579414

TATE OF OHIO

    vrs.

AMES W. DANIEL

CA 15 103258

**Judge:**

Pages Filed:  29



# IN THE COURT OF APPEALS

## EIGHTH JUDICIAL DISTRICT, CUYAHOGA COUNTY, OHIO

## NO. 103258

**STATE OF OHIO**

Plaintiff-Appellee

vs.

**JAMES W. DANIEL**

Defendant-Appellant

Criminal Appeal

Cuyahoga County Court of Common Pleas

No.  CR-14-589487-A

---

### APPELLANT'S MERIT BRIEF

---

COUNSEL FOR APPELLANT
Steve W. Canfil  (0001297)
55 Public Square, Suite 2100
Cleveland, Ohio 44113-1926
216-363-6033

COUNSEL FOR APPELLEE
Timothy J. McGinty
Cuyahoga County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

-ii-

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................................................iii.

Statement of the Assignments of Error................................................................ iv.

Statement of the Issues Presented.........................................................................iv.

Statement of the Case..............................................................................................1.

Statement of the Facts.............................................................................................1.

Assignment of Error No. I.....................................................................................14.

              II.........................................................................................................17.

              III.......................................................................................................20.

              IV.......................................................................................................21.

Conclusion...............................................................................................................24.

Certificate of Service..............................................................................................25.

iii

## TABLE OF AUTHORITIES CITED

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)...................................................................................................................22, 23.

*Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)............................14.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed2d 238 (1999)............22.

*State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240....................................19.

*State v. Boston* , 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989)....................................................20.

*State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325................................................................14.

*State v. Brady*, 11th Dist. Lake No. 12-166, 548 N.E.2d 279 (1988)..........................................19.

*State v. Braxton*, 102 Ohio App.3d 28, 43, 659 N.E.2d 970 (8th Dist. 1995)............................18.

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31.............................................21.

*State v. Deandra*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986..................................18.

*State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988)........................................................18.

*State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988)............................................20.

*State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889......................................18.

*State v. Huff*, 145 Ohio App.3d 555 561, 763 N.E.2d 695, 700 (1st Dist.)........................20, 21.

*State v. Jirousek*, 8th Dist. Cuyahoga No. 99641, 2013-Ohio-4796...........................................16.

*State v. Kidder*, 32 Ohio St.3d279, 281, 513 N.E.2d 311 (1987)...............................................18.

*State v. Kovac*, 150 Ohio App.3d 676, 685, 2002-Ohio-6784 at ¶ 35, 782 N.E.2d 1185.............20.

*State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978)..........................................................18.

*State v. Miller*, 2d Dist. Montgomery No. 18102, 2001 WL 62793.............................................21.

*State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048..............................................23.

*State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215...................................14.

*State v. Smith*, 8th Dist. Cuyahoga No. 92649, 2010-Ohio-154...........................................15, 16.

*State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988)..............................................18.

*State v. White*, 2d Dist. Montgomery No. 26093, 2015-Ohio-3512.............................................22.

*United States v. Evans*, 892 F. Supp. 2d 949 (N.D. Ill. 2012).............................................22, 23.


Due Process Clauses, United States Constitution and Ohio Constitution.....................................14.


R.C. 2923.02...............................................................................................................................19.

R.C. 2945.11...............................................................................................................................18.

R.C. 2945.37....................................................................................................................14, 15, 17.


Crim.R. 30...................................................................................................................................18.


Evid.R. 104..................................................................................................................................21.

Evid.R. 401..................................................................................................................................21.

Evid.R. 402..................................................................................................................................21.

Evid.R. 403..................................................................................................................................21.

Evid.R. 702............................................................................................................................22, 23.

-iv-

## ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN IT DECLARED THAT THE DEFENDANT WAS COMPETENT TO STAND TRIAL IN THE ABSENCE OF ANY MEDICAL OPINION TO A REASONABLE DEGREE OF MEDICAL CERTAINTY TO SUPPORT THAT DECISION.

II. THE TRIAL COURT'S FAILURE TO PROVIDE THE JURY WITH AN INSTRUCTION ON ATTEMPT AS TO THE CHARGE OF RAPE CONSTITUTED A VIOLATION OF DEFENDANT'S RIGHT TO A FAIR TRIAL AND PLAIN ERROR.

III. THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING A STATE'S WITNESS TO VOUCH FOR THE CREDIBILITY OF ONE OF THE ALLEGED VICTIMS.

IV. THE TRIAL COURT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN FAILING TO CONDUCT A *DAUBERT* HEARING CONCERNING WHETHER THE ANALYSIS OF HISTORICAL CELL PHONE RECORDS TO DETERMINE LOCATION OF AN INDIVIDUAL'S PHONE IS SCIENTIFICALLY RELIABLE, AS REQUESTED BY THE DEFENDANT, AND SIMPLY ADMITTING SUCH TESTIMONY AT TRIAL.

## ISSUES PRESENTED

I. WHETHER THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN IT DECLARED THAT THE DEFENDANT WAS COMPETENT TO STAND TRIAL IN THE ABSENCE OF ANY MEDICAL OPINION TO A REASONABLE DEGREE OF MEDICAL CERTAINTY TO SUPPORT THAT DECISION.

II. WHETHER THE TRIAL COURT'S FAILURE TO PROVIDE THE JURY WITH AN INSTRUCTION ON ATTEMPT AS TO THE CHARGE OF RAPE CONSTITUTED A VIOLATION OF DEFENDANT'S RIGHT TO A FAIR TRIAL AND PLAIN ERROR.

III. WHETHER THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING A STATE'S WITNESS TO VOUCH FOR THE CREDIBILITY OF ONE OF THE ALLEGED VICTIMS.

IV. WHETHER THE TRIAL COURT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN FAILING TO CONDUCT A *DAUBERT* HEARING CONCERNING WHETHER THE ANALYSIS OF HISTORICAL CELL PHONE RECORDS TO DETERMINE LOCATION OF AN INDIVIDUAL'S PHONE IS SCIENTIFICALLY RELIABLE, AS REQUESTED BY THE DEFENDANT, AND SIMPLY ADMITTING SUCH TESTIMONY AT TRIAL.

-1-

## STATEMENT OF THE CASE

On September 26, 2014, the grand jury issued an indictment against Defendant-Appellant James W. Daniel. He was charged with two counts of aggravated burglary, six counts of rape, seven counts of kidnapping, four counts of aggravated robbery, three counts of having a weapon while under disability ("HWWUD"), and one count of felonious assault. Many of the counts carried sexually violent predator specifications ("SVPs"), sexual motivation ("SM") specifications, repeat violent offender specifications ("RVOs"), notices of prior convictions ("NPCs"), and/or one- and three-year firearm specifications. At his arraignment, Daniel entered not guilty pleas to the charges. His case was assigned to the court of the Honorable David T. Matia.

On February 3, 2015, the trial court referred Daniel for a psychiatric evaluation. On March 6, 2015, the trial court declared Daniel to be competent.

On April 22, 2015, after the first four counts were severed for separate disposition, the remaining counts were renumbered. Daniel executed a waiver of his right to a jury trial on certain counts, the remainder of the charges proceeded to a jury trial.

On May 5, 2015, the jury returned verdicts of guilty on five counts of rape with SM and firearm specifications, six counts of kidnapping with SM and/or firearm specifications, four counts of aggravated robbery with firearm specifications, and one count of felonious assault with firearm specifications. The trial court also found Daniel guilty of the NPCs, RVOs and SVPs attached to the charges, along with three counts of HWWUD. Daniel eventually changed his pleas to the first four counts to guilty pleas on the understanding that the sentences on those counts would be imposed concurrently with the sentences imposed on all of the other counts.

On June 17, 2015, as amended nunc pro tunc on July 17, 2015, following the state's merger

-2-

of some of the convictions, the trial court imposed prison terms on Daniel that totaled 144 years to life. The trial court did not impose any fines or costs.

Undersigned counsel was appointed for purposes of this appeal. Daniel's notice of appeal was timely filed in this Honorable Court on July 13, 2015. His appellate brief on the merits follows.

## STATEMENT OF THE FACTS

Daniel was charged with two counts of aggravated burglary, six counts of rape, seven counts of kidnapping, four counts of aggravated robbery, three counts of having a weapon while under disability ("HWWUD"), and one count of felonious assault. Many of the counts carried sexually violent predator specifications ("SVPs"), sexual motivation ("SM") specifications, repeat violent offender specifications ("RVOs"), notices of prior convictions ("NPCs"), and/or one- and three-year firearm specifications.

Daniel's case proceeded to the voir dire portion of a jury trial on February 3, 2015. During the voir dire, the trial court asked defense counsel if his client were "okay." (Tr. 258.) After speaking with Daniel, defense counsel notified the court that Daniel had disclosed he had made a suicide attempt the prior evening, was not taking his anti-psychotic medications, and was "hearing voices." (Tr. 260.) The trial court indicated the voir dire would proceed and the bailiff and the medical providers in the jail would "continue to monitor the situation." (Tr. 262.)

During the lunch break, the record reflects that the trial court questioned the jail's "charge nurse" about Daniel's medications. (Tr. 284). The nurse stated that Daniel had been prescribed 500 milligrams of Depakote twice a day and Lithium and Risperdal at night, as "mood stabilizers." (Tr. 285-86.) She further stated that it appeared that Daniel was no longer taking his morning

-3-

medication.  (Tr. 268.)

The trial court decided to summon the jail's medical director for additional information. While the proceeding was thus suspended, Daniel "spread feces on the [holding] cell and himself." (Tr. 295.) For the record, the trial court stated that it had spoken with the jail's medical director, who indicated Daniel's prescription for "Depakote was discontinued on January 27th when he started complaining of auditory hallucinations.  He had been diagnosed with anitsocial personality disorder and also as being bipolar."

Defense counsel moved for a continuance of trial to obtain a "full psych evaluation" of his client. (Tr. 296.) The trial court granted the motion in order to "let the medical professionals make a judgment on [Daniel's] competency."  (Tr. 299).

The trial court next called Daniel's case on March 9, 2015.  The court noted that the psychiatric report of the Court Psychiatric Clinic indicated that, "while it is clear that Mr. Daniel is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the medical disorder or exaggerating the extent of a true mental disorder." The psychiatrist was unable to form an opinion whether Daniel understood the nature and objective of the proceedings and able to assist in his own defense.  (Tr. 318.)  Therefore, the clinic recommended that Daniel be ordered to undergo a "20-day inpatient evaluation * * * at a maximum security facility known as Twin Valley Behavioral Health Care." (Tr. 302.)  The trial court issued the order. (Tr. 314.)

However, on April 8, 2015, the trial court called Daniel's case for trial, noting that "for reasons unclear to the Court, Mr. Daniel was not transferred" to Twin Valley. (Tr. 319.) The court nevertheless decided that "there's really no evidence that Mr. Daniel is not competent and [is] unable to assist his defense–his attorney in his defense and whether he understands the nature and objectives

-4-

of the proceedings before him." (Tr. 319.) The prosecutor argued that Daniel's use of the county jail's phone system proved that Daniel was competent. (Tr. 324-25.) Defense counsel indicated that he had not heard all of the taped jail conversations and urged the court to follow the Court Psychiatric Clinic's original recommendation.

Apparently, the trial court proceeded to listen to the tapes to which the prosecutor had referred (Tr. 327), eventually designated as "Exhibit 1" (Tr. 331) and "Exhibit 2." (Tr. 338). The court then called an investigator from the prosecutor's office to testify. (Tr. 328.) The investigator stated, among other things, that he was able to listen to a prisoner's call and "determine based on voices who it is" speaking. (Tr. 341.) Ultimately, over defense counsel's objection, the trial court determined, based upon the state's exhibits, that the defense had not supported its "burden of proof to overcome the presumption" of competency (Tr. 344), therefore, the court found Daniel "to be competent to stand trial." (Tr. 352.) Trial proceeded.

The state presented the testimony of numerous witnesses in this case. The following are summaries of the salient facts to which each witness testified.

VICTIM NO. 1, S.N.:

Shortly after 5:00 a.m. on September 2, 2014, as she did her normal morning walk/jog, S.N. was approached from behind near the intersection of W. 104th Street and Clifton Avenue. Her assailant, whom she described as a "fair-skinned black male" who was "shorter" than she and "didn't weigh a lot," (Tr. 647-48) knocked her to the ground, put a gun to her face and struck her with it, then began going through her clothing, looking for money (Tr. 632-635). When his search proved fruitless, he told her to get behind a nearby dumpster. There, he hit her once again with the gun, pulled a condom from his pocket and put it on before he pushed her head down and ordered her to

-5-

take his penis into her mouth (Tr. 639). After she complied, he then pushed her up against a building

wall, took her shorts down and either attempted to (Tr. 675, 717, 789, 861) or did (Tr. 640, 800)

penetrate her with his penis anally. The assailant repeatedly called S.N. a "bitch" during the incident

(Tr. 663). He took her i-Pod before leaving the scene (Tr. 641). S.N. could not identify Daniel as

her assailant (Tr. 670).

S.N. ran for help and saw Ricky Teamor, who was waiting for his bus at W. 110th Street and

Clifton Avenue. He called 9-1-1 for her (Tr. 642, 686).

RICKY TEAMOR

He observed S.N. coming toward him as he waited for his bus at approximately 5:30 a.m.

She was "upset," so he called 9-1-1 (Tr. 686).

JERRY ROSEBERRY

He arrived at W. 110th Street and Clifton Avenue at approximately 5:35 a.m. to wait for his

construction crew, which was in the course of improving Clifton Avenue. He saw S.N. running

toward the bus stop and screaming that she had been attacked (Tr. 694-95).

LUCAS HASTINGS

His E.M.S. unit responded to S.N.'s location at 5:48 a.m. S.N. stated to him that she had told

Teamor and Roseberry only that she had been "attacked," but she actually had been raped (Tr. 708).

She had no life-threatening injuries, so he permitted her to get into the responding officers' police

car so they could return her to the scene of the incident to see if the assailant dropped anything (Tr.

712). He then transported her to MetroHealth Medical Center. In his report, he noted that S.N. told

him the perpetrator "tried to have sex with her" (Tr. 717).

OFFICER JOHN KAZIMER, C.P.D.

-6-

He stated he responded to a call of "a female raped" and E.M.S. was already on scene when he arrived (Tr. 731).  He drove S.N. to the purported scene of the crime, but did not locate any physical evidence including a Starbucks coffee card, condom or its wrapper in the area (Tr. 744). In spite of this, he testified that he believed that S.N. was "making true statements" to him (Tr. 735).

ELIZABETH BOOTH, R.N.

She performed the sexual assault exam on S.N., who consistently indicated that she had "put up a really big fight" against her assailant (Tr. 774).  Although the emergency room physician's notes indicated that the victim may not have been "penetrated," (Tr. 789), S.N. told her there had been during the attack both "oral and anal penetration" (Tr. 800).

OFFICER DYLAN DEMAS, C.P.D.

He picked up S.N.'s rape kit and entered it into evidence, then transported it to the medical examiner's office.

DET. MICHAEL MOCTEZUMA, C.P.D.

He received the assignment to investigate S.N.'s case and met with her as Booth began the sexual assault exam (Tr. 812-815).  He then proceeded to the area of the reported attack and observed that video cameras were in place near the scene (Tr. 816-817).  He conducted a formal interview of S.N. on September 4, 2014 (Tr. 820).  S.N. stated that the perpetrator "attempted" to rape her (Tr. 861).  He assembled a task force to investigate the case (Tr. 823).

After he observed taped footage from the video cameras, he obtained a search warrant and subsequently received records concerning the usage of the cellular telephone towers in the area of the incident (Tr. 831).  One of the task force's analysts found "a couple names" associated with cell phones that had used the towers around the time of the incident (Tr. 832).  These names were Tyson

-7-

Williams and Melissa Yahnert (Tr. 833-36). He learned that Williams was Daniel's half-brother, and that the brothers lived on W. 93rd Street and W. 87th Street, respectively (Tr. 837-39).

S.N.'s clothing was tested for DNA (Tr. 847). A "hit" came back on one of the items of clothing to Daniel (Tr. 837). Daniel was arrested on September 18, 2014.

TODD WILES, C.P.D. CIVILIAN CRIME ANALYST

Over defense objections, Mr. Wiles testified concerning his analysis of locations gleaned from cellular telephone tower records (Tr. 902). Both the C.P.D. and the Lakewood P.D. asked him to create "bulletins" about separate incidents of sexual assault, and he believed the perpetrator might be the same for each incident (Tr. 907-910). Once he obtained the records from the cell towers near the locations of the incidents, he discovered one of the telephone numbers had been placed in a "booking report" as belonging to Tyson Williams, Daniel's half-brother (Tr. 917-18).

BRIAN VIGNEAUX

As an investigator for the county prosecutor, he was a part of the task force assembled to investigate the S.N. sexual assault (Tr. 936). He obtained the video footage from cameras located on West Boulevard near the time of the incident. He noted that a white Camaro crossed Lake Avenue at 5:17 a.m. (Tr. 945), and shortly thereafter, the footage showed a person looking at and then following a woman who was walking in the street (Tr. 947-48). He discovered that Tyson Williams's uncle owned a white Camaro (Tr. 952-53).

VICTIM NO. 2, J.S.

Her boyfriend, with whom she occasionally stayed, lived on Warren Road in Lakewood, Ohio. On August 29, 2014, she finished working at 3:30 a.m. and, after a brief stop at her home, she traveled to her boyfriend's apartment. She parked her car on the street and was grabbed from behind

-8-

as she was proceeding up the walkway by a person who pushed her to the ground, put a gun to her head, and said, "Bitch, give me your money." (Tr. 983). The assailant took the luggage bag she had been carrying and dumped its contents on the ground. He also went through her pockets before he unbuttoned the jeans she wore, touched her vagina, and penetrated her anally with his fingers. The assailant then pulled her onto her knees, turned her around, grabbed one of her hands, placed it on his penis, and ordered her to suck his "dick" (Tr. 986-989). J.S. obeyed (Tr. 990). Thereafter, he told her to find her keys and walked with her to her car; she handed him money from her purse before he left (Tr. 993).

S.N. called 9-1-1. When the police arrived, she provided a description of the assailant before the officers transported her to the hospital. Later, she provided a statement to Lakewood police Det. Lulic and worked with a sketch artist to come up with a drawing of the suspect (Tr. 1000-02). However, she also could not identify Daniel when he appeared in a lineup (Tr. 1008), and she told the sketch artist that her attacker could have been six feet tall (Tr. 1020). S.N. saved the clothing she had been wearing during the attack and the police picked the items up from her approximately ten days later (Tr. 1004).

BARBARA GIFFORD, R.N.

She performed the sexual assault exam on J.S. she did not examine either the anal or the vaginal areas of the victim because the victim told her there had been no "contact" (Tr. 1031, 1046), in spite of the fact that the attending physician's notes indicated that there had been "penetration" (Tr. 1058). She took only oral swabs from J.S. (Tr. 1036). J.S. refused to provide the clothing she wore during the attack (Tr. 1049).

-9-

## LAKEWOOD POLICE DET. SCOTT D. TROMMER

He investigated the attack on J.S. and could not obtain any prints of the suspect from her car (Tr. 1067). He put her together with a sketch artist and did a "sexual offender" search within a mile of her boyfriend's house (Tr. 1072). On September 11, 2014, he obtained from J.S. the clothing she wore during the attack and took it to the medical examiner's office (Tr. 1077). Although J.S. eventually saw six separate photo arrays, she could not identify Daniel as her attacker (Tr. 1079, 1103).

## MICHAEL STEVENS

As Tyson Williams's uncle, he considered himself to be like a father to Tyson, and permitted him to live with him; Daniel was Tyson's half-brother (Tr. 1111). On September 18, 2014, he provided Tyson's cell phone number to the police (Tr. 1113). He owned a white Camaro that he permitted Tyson to drive "often" (Tr. 1115). His house alarm system, although the alarm itself was not activated at the time, indicated someone had entered the house at 5:26 a.m. on September 2, 2014.

## JEFFREY OBLOCK

He was an examiner for the Cuyahoga County Medical Examiner's Forensic Science Laboratory. From the straps and upper back areas of the tank top S.N. was wearing at the time of the attack, he obtained DNA that matched Daniel's (Tr. 1166). Daniel's DNA was a "major component" of the sample, and Daniel could "not be excluded as a contributor" to the DNA mixture obtained from S.N.'s sports bra (Tr. 1172). Tyson Willaims was excluded as a contributor (Tr. 1173). A DNA component also was obtained from the pockets of the jeans J.S. was wearing during the attack on her, and Daniel could "not be excluded" from that DNA mixture (Tr. 1241).

-10-

LAURA EVANS

She was a forensic DNA analyst for the Cuyahoga County Medical Examiner's office. She explained that she performed Y-STR DNA analysis; Y-STR profiles are patrilineal (Tr. 1232-33). She indicated Tyson Williams was excluded from the DNA profile obtained from S.N.'s tank top, but Daniel could "not be excluded" from the DNA mixture obtained from J.S.'s jeans pockets (Tr. 1236-1241).

TYSON WILLIAMS

Daniel lived with him and his "uncle," Michael Stevens. On September 1, 2014, he drove the white Camaro and picked up Daniel so they could "hit licks" (Tr. 1259). At about 3:30 a.m. on September 2, 2014, he was tired and decided to go home, but Daniel was not ready to call it a night, so he dropped Daniel off near Edgewater Drive and Lake Road (Tr. 1264). Within a few minutes, however, he called Daniel, who was using his girlfriend Melissa Yahnert's cell phone (Tr. 1265).

Daniel had a chrome handgun, and Daniel also told Tyson about the crimes Daniel committed in Lakewood (Tr. 1269). Tyson admitted he steals "a lot," and that he had been off his medications for bipolar disorder and schizophrenia for approximately three to four years (Tr. 1278).

VICTIM #3, K.K.

On August 31, 2014, she lived on Merl Avenue in Lakewood, Ohio. She went out with her girlfriend J.B. that night. They took a cab to the area of W. 25th Street, and a few hours later they took another cab back to J.B.'s residence on Marlow Avenue in Lakewood. The two of them sat on the front steps while K.K. waited for her boyfriend to pick her up. While they were talking, she saw a startled look on K.K.'s face, so she turned slightly to see that a man was standing in the bushes "right next to" her (Tr. 1299). The man tried to take her purse, and, when she resisted, he put

-11-

"metal" to her temple (Tr. 1300). She believed it was a gun; she relinquished her purse. After he

took their cell phones and valuables, the man ran away toward Detroit Avenue (Tr. 1302). She

provided a general description of the man to the police when they arrived, but she could not identify

Daniel as the perpetrator (Tr. 1304).

VICTIM #4, J.B.

On the night of August 31, 2014, she went out with K.K. They returned to her residence on

Marlow Avenue in Lakewood "probably" at about "10:30" p.m. (Tr. 1324). While they waited on

her front steps for K.K.'s boyfriend, she noticed a man wearing a black and white striped shirt

walking on the opposite side of the street (Tr. 1325). Shortly thereafter, a man wearing a black and

white striped shirt "grabbed [K.K.] from behind" and put a gun to her head, so J.B. "started

screaming" (Tr. 1328). The man took their purses, cell phones, cash, credit cards, and drivers

licenses before he fled (Tr. 1330). J.B. described the man to the police as black, of medium build,

and approximately 5 feet 10 inches tall (Tr. 1329). In her written statement, however, J.B. estimated

the man's height at six feet (Tr. 1349).

Although the police took them out that morning for a "cold stand" of a possible suspect, that

person was "not the guy" who had robbed them (Tr. 1333). Subsequently, she viewed some photo

arrays, but was unsure if she saw the perpetrator in them (Tr. 1341).

ISMIR LULIC, LAKEWOOD P.D.

On August 30, 2014, he responded to the scene of the incident involving J.S., who provided

a description of her assailant but was not forthcoming about a "possible rape" (Tr. 1372). He also

responded to the scene at 12:30 a.m. on September 1, 2014, when two women reported a robbery on

Marlow Avenue (Tr. 1375). He obtained a description of the assailant from them (Tr. 1378).

-12-

SANDRA FOGEL

In late August and early September, 2014, she was the manager of the Breakers Apartment Building in Cleveland, Ohio. Motion detector cameras were mounted on the outside of the building, and, at around that time, she was contacted by law enforcement, and she turned over some CDs on which surveillance video was recorded (Tr. 1399-1401).

DET. THOMAS McLAUGHLIN, LAKEWOOD P.D.

On September 2, 2014, he was assigned to investigate the robbery that took place on Marlow Avenue. He contacted Det. Trommer because he saw some similarities between it and the crimes that had taken place that same weekend on the near westside of Cleveland (Tr. 1411-16). When shown the "composite sketch" of the Cleveland suspect, J.B. thought she saw a resemblance (Tr. 1417). She commented, however, that the sketch was "too generic" (Tr. 1432). On September 18, 2014, after Daniel and Tyson Williams had been arrested, J.B. eventually, tentatively chose Daniel's photo out of a "lineup" as her attacker (Tr. 1420).

MELISSA YAHNERT

Daniel was her boyfriend in late August and early September 2014, and she shared her cell phone with him (Tr. 1441-42). She admitted she told one of the investigators of the crimes that Daniel had a gun; she indicated that Tyson had borrowed the gun in July, 2014. Daniel was with her on the 2014 Labor Day weekend (Tr. 1453).

GARY STEIN

An investigator with the prosecutor's office, he specialized in "digital forensic evidence recovery" (Tr. 1470). He indicated that computer programs he utilized recover "metadata" from cell phones (Tr. 1472). He used those programs to "pull" several photos from two cell phones that had

-13-

a "419" area code (Tr. 1475-80). He did not look at all of the metadata gathered by the programs (Tr. 1484).

DET. DAVID JACOBS, COUNTY SHERIFF'S OFFICE

On September 18, 2014, he conducted an interview of Daniel and also interviewed Tyson Williams and Melissa Yahnert (Tr. 1491-95).  When shown a photo of a silver semiautomatic handgun, Yahnert identified it as the kind she saw in Daniel's possession (Tr. 1500). He showed her "representative images" of certain handguns (Tr. 1517). Tyson Williams was driven around by the detectives so he could point out "pertinent locations" with respect to the investigations (Tr. 1502).

At the conclusion of the state's case-in-chief, Daniel made a motion for acquittal of the charges, which the trial court denied (Tr. 1536-37). Thereafter, Daniel presented the testimony of only one defense witness. Daniel's sister Keianna Pope testified that on August 30, 2014 at 5:30 a.m., he was with her and several other friends and family members (Tr. 1552).

When Daniel renewed his motion for acquittal, the trial court once again denied it. The jury received its instructions, and, after deliberating, found Daniel guilty of the charges. Similarly, the trial court found Daniel guilty of the SVOs and RVOs attached to the charges. Daniel eventually entered guilty pleas to the remaining counts of the indictment on the understanding that the sentences imposed on those counts would run concurrently to the sentences imposed on all of the other counts.

After the state made its choices as to the merger of several counts, the trial court ultimately sentenced Daniel for his convictions in this case to a prison term that totaled 144 years to life. Daniel now appeals from his convictions with the following assignments of error.

-14-

## LAW AND ARGUMENT

**ASSIGNMENT OF ERROR NO. I:**

**I.    THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN IT DECLARED THAT THE DEFENDANT WAS COMPETENT TO STAND TRIAL IN THE ABSENCE OF ANY MEDICAL OPINION TO A REASONABLE DEGREE OF MEDICAL CERTAINTY TO SUPPORT THAT DECISION.**

Under the Due Process Clauses of the United States and Ohio Constitutions, fundamental principles of due process prohibit a trial of a criminal defendant who is legally incompetent. *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶114.  A defendant must be capable of understanding the charges against him and of assisting his counsel. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶155, citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

R.C. 2945.37 provides in pertinent part:

(B)  In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. * * *

(C)  The court shall conduct the hearing required or authorized under division (B) of this section within thirty days after the issue is raised, *unless the defendant has been referred for evaluation in which case the court shall conduct the hearing within ten days after the filing of the report of the evaluation * * *.*  A hearing may be continued for good cause.

(D)  The defendant shall be represented by counsel at the hearing conducted under division (C) of this section. * * *

(E)  The prosecutor and defense counsel may submit evidence on the issue of the defendant's competence to stand trial. *A written report of the evaluation of the defendant may be admitted into evidence at the hearing* by stipulation, but, if either the prosecution or defense objects to its admission, the report may be admitted under sections 2317.36 to 2317.38 of the Revised Code or any other applicable statute or

-15-

rule.

(F) The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. * * * or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication.

(G) A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

(Emphasis added.)

In this case, the issue of Daniel's competency was raised before trial; indeed, Daniel demonstrated extremely outrageous behavior. (Tr. 295) The trial court referred Daniel to the court clinic for an evaluation. Afterward, the psychiatrist's report to the court stated he was unable to form a medical opinion to a reasonable degree of medical certainty concerning Daniel's competency, i.e., and whether Daniel understood the nature and objective of the proceedings and was able to assist in his own defense. (Tr. 318.) The psychiatrist recommended that Daniel receive inpatient treatment and an evaluation from Twin Valley Behavioral Health Care.

Although the trial court issued an order based upon this recommendation, that order was never followed. Therefore, the trial court never received a report as set forth in R.C. 2945.37(C). *See State v. Smith*, 8th Dist. Cuyahoga No. 92649, 2010-Ohio-154, at ¶ 12 (" a trial court commits reversible error by failing to * * * make the results of the psychiatric report part of the record."). In spite of this failure of evidence, the trial court proceeded with a competency hearing.

The trial court heard testimony at this hearing from only one witness, viz., an investigator

-16-

from the prosecutor's office. This witness's testimony was hardly unbiased. Moreover, the trial court lacked any medical evidence to support its decision that Daniel was competent. "Without making use of the psychiatric reports provided to them, trial courts are ill-equipped to determine a defendant's competency to stand trial." *Smith*, at ¶ 13.

In *State v. Jirousek*, 8th Dist. Cuyahoga No. 99641, 2013-Ohio-4796, at ¶ 10-12, this Honorable Court made the following observations:

> This court has consistently held that, pursuant to R.C. 2945.37(B), a trial court must hold a hearing on the issue of a defendant's competency if the issue is raised prior to trial. In *State v. Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382, the record reflected that the trial court ordered appellant (to Northcoast Behavioral Healthcare) for a competency evaluation. We reversed appellant's conviction and remanded for the trial court to vacate his guilty plea because, despite the trial court's *explicit order for a psychiatric evaluation,* no competency hearing was held, neither did the record reflect any finding of competency, a *filing of the psychiatric report, or stipulation by the parties regarding defendant's competency. Dowdy* at ¶ 15.
>
> We distinguished *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), where the court held the lack of a hearing was harmless error, *because defendant participated in trial and offered his own testimony* and the record failed to reveal sufficient indicia of incompetency. We explained that because the results of the evaluation ordered by the court were not made part of the record, nor stipulated to by the parties, we were unable to glean sufficient information from the record to conclude the trial court's failure to conduct the hearing was harmless. *Id.* at ¶ 16, citing *State v. Cruz*, 8th Dist. Cuyahoga No. 93403, 2010-Ohio-3717, ¶ 11-16. *See also State v. Morris*, 8th Dist. Cuyahoga No. 98591, 2013-Ohio-1033, ¶ 10. As the court in *State v. Were*, 94 Ohio St.3d 173, 177 2002-Ohio-481, 761 N.E.2d 591, remarked, "common sense dictates that no defendant can make a record of lack of competency absent the findings and hearings contemplated by R.C. 2945.37 and 2945.371," citing *Bock* at 113 (Wright, J., dissenting).
>
> Similarly here, the issue of the defendant's competency was raised, as reflected by the trial court's February 7, 2012 judgment entry. However, the trial court did not hold a hearing on this issue, or otherwise make a formal finding of competency on the record; neither does the record reflect that a psychiatric evaluation report was filed or that the parties stipulated to the defendant's competency. The docket is simply *devoid of any further reference to the competency issue subsequent*

-17-

*to the court's referral for psychiatric evaluation.* As in *Dowdy*, we are unable to glean sufficient information from this record to conclude the court's failure to conduct the statutorily required hearing is harmless.

(Emphasis added; footnote omitted.)

Although the situation in the instant case is somewhat different, the evaluation from the clinic indicated the issue of Daniel's competency could not be determined to a reasonable degree of medical certainty. Neither did the parties stipulate to Daniel's competency. Despite the trial court's further order for a medical determination of that issue, the definitive psychiatric evaluation was never made.

Although the trial court conducted a hearing pursuant to R.C. 2945.37, the trial court's decision that Daniel was competent was based solely on the testimony of an investigator from the prosecutor's office and the trial court's own interpretation of taped phone calls that the witness believed to have been made by Daniel. This evidence cannot be classified as medically sound. Thus, the trial court's finding lacks adequate support.

For the foregoing reason, the trial court's finding that Daniel was competent to stand trial should be reversed. Daniel's convictions should also be reversed, and this matter should be remanded for further proceedings.

## ASSIGNMENT OF ERROR NO. II:

**THE TRIAL COURT'S FAILURE TO PROVIDE THE JURY WITH AN INSTRUCTION ON ATTEMPT AS TO THE CHARGE OF RAPE CONSTITUTED A VIOLATION OF DEFENDANT'S RIGHT TO A FAIR TRIAL AND PLAIN ERROR.**

Jury instructions should provide proper guidance, aid, and assistance to the jury so that

-18-

clarity of both the issues and the law that is applicable to the facts is clearly established. R.C. 2945.11. Pursuant to Crim.R. 30, if a jury instruction is pertinent to the evidence and legally correct, the trial judge must include the substance of it in the charge. *State v. Braxton*, 102 Ohio App.3d 28, 43, 659 N.E.2d 970 (8th Dist. 1995).

The question of whether a particular offense should be submitted to the jury as a lesser included offense involves a two-tiered analysis. *State v. Deandra*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6, citing *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. The first tier, the "statutory-elements step," is a purely legal question, wherein the court determines whether one offense is generally a lesser included offense of the charged offense. *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). An offense is a lesser-included offense of another if it carries a lesser penalty than the other, if some element of the greater offense is not required to prove commission of the lesser offense, and if the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed. *Evans*, at paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

Once the court determines that the offense is a lesser included offense, the second tier of deciding whether the lesser included offense should be submitted to the jury mandates that courts look to the evidence in a particular case to determine whether a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense. *Deandra* at ¶6. *See also State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988).

With respect to S.N., Daniel was charged with two counts of rape. It cannot generally be disputed that attempted rape is a lesser included offense of the offense of rape. Thus, the first tier

-19-

of the foregoing analysis is met in this case.

It can be gleaned from S.N.'s testimony and the testimony of the other witnesses presented by the state that S.N. provided different people with different accounts of the incident perpetrated upon her.  For example, Teamor, who was the first person she saw after the incident, testified S.N. seemed only "upset." (Tr. 686.)  S.N. told EMT Hastings that, while she claimed to the persons at the bus stop that she had been only "attacked," she actually had been raped. (Tr. 708).  On the other hand, Hastings's report indicated S.N. stated that the perpetrator only "tried to have sex with her." (Tr. 717).  S.N. also told medical personnel that the perpetrator failed to fully penetrate when he tried to rape her (Tr. 675, 789.)  While she told nurse Booth that there had been both "oral and anal penetration" during the incident (Tr. 800.), Det. Moctezuma testified that S.N. said to him that rape had been only "attempted." (Tr. 861.)

Based upon her conflicting accounts, with relation to the rape charges against Daniel that pertained to S.N. it was incumbent upon the trial court to provide the jury with an instruction on the attempt statute, R.C. 2923.02.  Although the record reflects Daniel failed to raise this issue, the fact that the trial court did not do so constituted plain error.

Plain error exists if: (1) the trial court deviated from a legal rule, (2) the error constituted an obvious defect in the proceedings, (3) and the error affected a substantial right of the accused. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.  The doctrine of plain error is invoked to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.

In *State v. Brady*, 11th Dist. Lake No. 12-166, 548 N.E.2d 279 (1988), the court stated:

It is prejudicial error in a criminal case to refuse to give a * * * charge which

-20-

is pertinent to the case, states the law correctly, and is not covered by the general charge, or by another special charge which is given. *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785; *State v. Nelson* (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865, *overruled in part on other grounds in State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

Based upon the evidence presented by the state with respect to the counts of rape pertaining to S.N., the trial court committed plain error when it neglected to provide the jury with an instruction on attempt.  Daniel's convictions on those counts, therefore, should be reversed, and the matter remanded for further proceedings.


## ASSIGNMENT OF ERROR NO. III

### THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING A STATE'S WITNESS TO VOUCH FOR THE CREDIBILITY OF ONE OF THE ALLEGED VICTIMS.

The opinion of a witness as to whether another witness is being truthful is inadmissible. *State v. Kovac*, 150 Ohio App.3d 676, 685, 2002-Ohio-6784 at ¶ 35, 782 N.E.2d 1185, 1192, citing *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989); *State v. Huff*, 145 Ohio App.3d 555 561, 2001-Ohio-2204, 763 N.E.2d 695, 700 (1st Dist.).  In this case, Officer Kazimer, who was the state's fourth witness at Daniel's trial, was permitted to testify on direct examination that he believed that S.N. was "making true statements" to him about what had happened to her.  (Tr. 735.)

Kazimer's "opinion acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility. * * * In our system of justice, it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of the witnesses." *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (Herbert R. Brown, J., concurring).  The fact that the vouching

-21-

witness was a police officer "caused even more of a problem." *Huff.*

"[J]urors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their previous experiences with other cases." *Id.*, citing *State v. Miller*, 2d Dist. Montgomery No. 18102, 2001 WL 62793.  Although Daniel failed to object to this testimony, its admission by the trial court constituted plain error, because it infringed upon the jury's role to determine if S.N.'s testimony was worthy of belief. *Id.*

Consequently, Daniel's convictions should be reversed, and this matter remanded for further proceedings.


## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN FAILING TO CONDUCT A *DAUBERT* HEARING CONCERNING WHETHER THE ANALYSIS OF HISTORICAL CELL PHONE RECORDS TO DETERMINE LOCATION OF AN INDIVIDUAL'S PHONE IS SCIENTIFICALLY RELIABLE, AS REQUESTED BY THE DEFENDANT, AND SIMPLY ADMITTING SUCH TESTIMONY AT TRIAL.**

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.  While all relevant evidence is admissible pursuant to Evid.R. 402, even though evidence might be relevant, it must be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  Evid.R. 403(A).  It is up to the court to decide initial questions of admissibility.  Evid.R. 104(A).  An appellate court will not disturb those rulings unless the court abused its discretion by admitting the evidence. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2,

-22-

880 N.E.2d 31, ¶172. In this case, the trial court abused its discretion and denied Daniel his constitutional rights to due process and a fair trial in admitting testimony concerning the location of certain cell phones without conducting a hearing about the scientific reliability of such testimony.

Evid.R. 702 provides that a witness may testify as an expert only if three criteria are met: (1) the testimony "relates to matters beyond the knowledge or experience possessed by lay persons," (2) the witness is "qualified as an expert * * * regarding the subject matter of the testimony," and, (3) the testimony is "based on reliable scientific, technical, or other specialized information." In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Unites States Supreme Court held that the trial judge has a gatekeeping obligation to ensure that scientific testimony is reliable. The court extended this holding to all testimony based on "technical" and other "specialized knowledge" in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed2d 238 (1999).

Clearly, the interpretation of cell phone sector data is a matter that is not within the "knowledge or experience possessed by laypersons." Indeed, some courts have admitted *FBI agents'* expert testimony concerning the agents' estimates of a person's location within cell phone sectors based on cell phone records. *State v. White*, 2d Dist. Montgomery No. 26093, 2015-Ohio-3512. Other courts, on the other hand, have found FBI agents' cell-site analysis testimony to be scientifically unreliable. *See, for example, United States v. Evans*, 892 F. Supp. 2d 949 (N.D. Ill. 2012). In *Evans*, the court noted,

> [T]here are several factors that could have caused the defendant's phone to connect to these towers even though another tower is closer. The agent acknowledged these factors, but failed to account for them in his analysis, relying instead on his training and experience.

-23-

Thus, the *Evans* court observed that estimating the coverage area requires scientific calculations that account for the factors that can affect coverage, which the FBI agent in that case did not present. The court went on to say that the agent's theory was untested by either science or formal peer review and had not been generally accepted by scientists. "These factors," concluded the court, "weigh against a finding of reliability."

In the case at bar, the state called a *civilian*, Todd Wiles, who presented no scientific credentials, to testify about his analysis of historical phone records. In fact, the prosecutor specifically represented to the court, "We don't expect that [Wiles's evidence] ought to be subject to a *Daubert* examination; we're not putting forth any expert testimony" (Tr. 904).

Apparently, in denying Daniel's request for a hearing and in overruling his objections to Wiles' testimony, the trial court did not fully appreciate Daniel's argument in support of the motion, i.e., that the testimony would be a mere "guesstimate" for the purposes of *Daubert*. The trial court believed that, because cell phones have "been around" for 30 years, "[c]ell phones work, we know that." (Tr. 900-903). However, in fact, Wiles testified that his conclusions were more than mere "guesstimation"; nevertheless, he acknowledged that he was not aware of the underlying science involved in his analysis. (Tr. 929-930). *See State v. Powell,* 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 88-91.

The state presented Wiles, despite a claim to the contrary, as an expert witness in this case, but his testimony concerning locations of cell phone calls lacked any scientific basis. Consequently, the evidence was inadmissable pursuant to Evid.R. 702. It was also highly prejudicial to the defense. Therefore, the trial court erred and abused its discretion when it permitted the state to introduce Wiles's testimony.

-24-

Based upon the error, Daniel's convictions should be reversed, and this matter remanded for further proceedings.

## CONCLUSION

Based upon the foregoing errors, Daniel respectfully requests reversal of his convictions, and that this matter be remanded to the trial court for further proceedings.

Respectfully submitted,

*/s/ Steve W. Canfil*
Steve W. Canfil #0001297
Attorney for Appellant

-25-

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and accurate copy of Appellant's Merit Brief was served electronically upon Timothy J. McGinty, Cuyahoga County Prosecutor on this 27th day of October, 2015.

/s/ Steve W. Canfil
Steve W. Canfil (0001297)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Appeals

**FILING OTHER THAN MOTION Electronically Filed:**
**December 17, 2015 23:39**

By: BRETT HAMMOND 0091757

Confirmation Nbr. 622739

STATE OF OHIO                                                    CA 15 103258

vs.

JAMES W. DANIEL                                      **Judge:**

Pages Filed:  33



IN THE COURT OF APPEALS
EIGHTH JUDICIAL DISTRICT OF OHIO
CUYAHOGA COUNTY

## NO. 103258

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Appellee | ) | |
| -vs- | ) | CASE NO. CR-14-589487 |
| JAMES DANIEL, | ) | |
| Defendant-Appellant | ) | |

---

### BRIEF OF APPELLEE

---

Counsel for Plaintiff-Appellee

**TIMOTHY J. McGINTY
CUYAHOGA COUNTY PROSECUTOR**


**BRETT S. HAMMOND (#0091757)**
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113
(216) 443-7800

Counsel for Defendant-Appellant

**STEVE W. CANFIL, ESQ.**
55 Public Square, Suite 2100
Cleveland, OH 44113

# TABLE OF CONTENTS

STATEMENT OF THE CASE .................................................................................. 1

STATEMENT OF THE FACTS ............................................................................. 3

LAW AND ARGUMENT ..................................................................................... 11

    ASSIGNMENT OF ERROR I ......................................................................... 11

    ASSIGNMENT OF ERROR II ...................................................................... 16

    ASSIGNMENT OF ERROR III ..................................................................... 22

    ASSIGNMENT OF ERROR IV ..................................................................... 25

CONCLUSION ...................................................................................................... 28

CERTIFICATE OF SERVICE .............................................................................. 29

# TABLE OF AUTHORITIES

Cases

*Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ....................................11

*State v. Bajaj*, 7th Dist. Columbiana Co. No. 03 CO 16, 2005-Ohio-2931, ¶ 72 ......................23,24

*State v. Barnes*, 149 Ohio Misc.2d 1, 25, 2008-Ohio-5609, ¶ 50 – 51..............................................25

*State v. Bidinost*, 71 Ohio St.3d 449, 453, 1994-Ohio-465, 644 N.E.2d 318 ..................................24

*State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.........................................................12

*State v. Boston* (1989), 46 Ohio St.3d 108, 128, 545 N.E.2d 1220.............................................23-25

*State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339 (1994) ............................16

*State v. Griffie*, 74 Ohio St.3d 332, 658 N.E.2d 764 .........................................................................20

*State v. Hamilton*, 8th Dist. Cuyahoga App. No. 49994, 1986 Ohio App. LEXIS 5317 ...............16

*State v. Hartman*, 93 Ohio St.3d 274, 289, 2001-Ohio-1580, 754 N.E.2d 1150 (2001) ...............16

*State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765, 2001-Ohio-112 (2001) ..............................16

*State v. Pennington*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-5426, ¶ 26............................15

*State v. Smith*, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985)..........................12

*State v. Smith*, 8th Dist. 90478, 2009-Ohio-2244..............................................................................20

*State v. Smith*, 8th Dist. Cuyahoga Nos. 96582, 96622, 96623, 2012-Ohio-261............................4

*State v. Smith*, 8th Dist. Nos. 96582, 96622, 96623, 2012-Ohio-261 ............................................12

*State v. Stowers*, 81 Ohio St.3d 260, 262-263, 1998-Ohio-632, 690 N.E.2d 881 ....................23-24

*State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286....................................................................17, 20

*State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 33 ................................15

*State v. White*, 2d. Dist. Montgomery App. No. 26093, 2015-Ohio-3512, ¶ 28 ...........................27

*State v. Williams*, 74 Ohio St.3d 569, 578, 660 N.E.2d 724 (1996)................................................17

*United States v. Evans*, 892 F.Supp.2d 949, 2012 U.S. Dist. LEXIS 123652 (N.D. Ill. 2012) 26, 27

Statutes

R.C. 2907.01 (A) ....................................................................................................................................17

R.C. 2907.02 (A)(2) ...............................................................................................................................17

R.C. 2945.37................................................................................................................................11,12,15

R.C. 2945.37 (G).................................................................................................................................11-12

R.C. 2945.37(G)..................................................................................................................................11-12

Rules

Crim.R. 30 .............................................................................................................................................16

Crim.R. 52 (B)......................................................................................................................................16

Crim.R. 52(B)........................................................................................................................................16

Evid.R. 401 ............................................................................................................................................19

Evid.R. 402............................................................................................................................................28

## STATEMENT OF THE ASSIGNMENTS OF ERROR

<u>Assignment of Error I:</u>  The trial court erred and denied defendant his constitutional right to due process when it declared that the defendant was competent to stand trial in the absence of any medical opinion to a reasonable degree of medical certainty to support that decision...............................................................................................................Tr. 353.

<u>Assignment of Error II:</u>  The trial court's failure to provide the jury with an instruction on attempt as to the charge of rape constituted a violation of defendant's right to a fair trial and plain error....................................................................................................Tr. 1662.

<u>Assignment of Error III:</u>  The trial court committed plain error in permitting a state's witness to vouch for the credibility of one of the alleged victims...............................Tr. 727.

<u>Assignment of Error IV:</u>  The trial court deprived appellant of his constitutional rights to due process and a fair trial in failing to conduct a *Daubert* Hearing concerning whether the analysis of historical cell phone records to determine location of an individual's phone is scientifically reliable, as requested by the defendant, and simply admitting such testimony at trial.................................................................................................Tr. 885 – 930.

## STATEMENT OF THE ISSUES PRESENTED

<u>Issue Presented I:</u>  Whether the trial court abused its discretion when it found James Daniel competent to stand trial.

<u>Issue Presented II:</u>  Whether the trial court committed plain error when it did not provide an instruction on the charge of attempted rape.

<u>Issue Presented III:</u>  Whether the trial court committed plain error in admitting testimony of Officer John Kazimer concerning why he was gathering information from S.N. at Metro Hospital.

<u>Issue Presented IV:</u>  Whether the trial court was required to conduct a Daubert Hearing and whether the testimony of Todd Wiles.

## STATEMENT OF THE CASE

On September 18, 2014, appellant James Daniel was arrested in connection with counts of rape and kidnapping committed in the Lakewood and Cleveland areas. (09/18/2014 Journal Entry). On September 26, 2014, the grand jury returned an indictment that included the following charges: two counts of aggravated burglary, six counts of rape, seven counts of kidnapping, four counts of aggravated robbery, three counts of having weapons while under disability, and one count of felonious assault. Many of the counts include specifications charging appellant as a repeat violent offender, sexual motivation specifications, notice of prior conviction specifications, notice of prior conviction specifications, and three year firearm specifications. (02/05/2015 Journal Entry).

Of particular relevance, the court referred Daniel to the court psychiatric clinic for a competency evaluation. (02/03/2015 Journal Entry). On March 9, 2015 the court noted that it received the in court psychiatric evaluation from Dr. Noffsinger. The court further noted that Daniel refused or was unable to cooperate with the valuation. (03/10/2015 Journal Entry). Further, the report noted that the evaluator was unable to render an opinion as to Daniel's competency to stand trial. (Id.). As such, the trial court referred Daniel to a 20 day evaluation at Twin Valley Behavioral Healthcare in Columbus, Ohio. On April 8, 2015, a competency hearing was held. (04/08/2015 Journal Entry). At the hearing, the court noted that Daniel had never been transported for the independent psychiatric evaluation. Nonetheless, the State sought to proceed with the hearing to introduce evidence of jail phone calls made by Daniel for the purpose of demonstrating that he is competent to stand trial. (Tr. 304 – 351). At the

hearing, the court did find Daniel competent to stand trial. (04/09/2015 Journal Entry).

On February 5, 2015, the trial court severed counts 1 through 5 for separate disposition. (02/05/2015 Journal Entry). On June 8, 2015, the court ordered bifurcation of the notices of prior conviction, repeat violent offender specifications, sexual motivation specifications and sexually violent predator specifications on counts 5 – 8 so that they could be tried to the bench. (06/08/2015 Journal Entry). Furthermore, the court bifurcated the following specifications: the repeat violent offender specifications and notice of prior conviction specifications on counts 9 and 10; the notice of prior conviction and repeat violent offender specifications on counts 12, 13, 14 and 15; the sexual motivation specification , sexually violent predator specification, and repeat violent offender specification and notice or prior conviction on counts 17, 18 and 19; bifurcation of the notice of prior conviction and repeat violent offender specification on counts 20, 21, and 22. (06/08/2015 Journal Entry).

On April 29, 2015, the jury returned a verdict on all the remaining counts with the exception of counts 1 through 4. (05/05/2015 Journal Entry). On June 5, 2015, Daniel changed his pleas on the first four counts from not guilty to pleas of guilty. (06/08/2015 Journal Entry). The trial court accepted his pleas of guilt on the first four counts. (06/08/2015 Journal Entry).

Daniel proceeded to sentencing on June 22, 2015. (06/22/2015 Journal Entry). The Court considered all the appropriate factors required by law and imposed a total prison term of 144 years to life. (07/17/2015 nunc pro tunc Journal Entry).

## STATEMENT OF THE FACTS

The State does not oppose the statement of facts provided by appellant. However, the State supplements appellant's statement of facts with the following parts of the record:

The State does not oppose the statement of facts provided by appellant. However, the State supplements appellant's statement with a set of facts that pertain to each assignment of error. For the sake of brevity, the statement has been sub-divided into sections that contain relevant facts for each assignment of error.

## Basic Factual Background of the Underlying Offenses

The trials in this case stem from three separate rape and kidnapping events committed in the area of Cleveland, Ohio and Lakewood, Ohio in late August of 2014 and early September of 2014.

This appeal primarily concerns issues related to the criminal charges filed in connection with the first victim, S.N. At the time of trial, S.N. lived near Battery Park in the Detroit Shoreway. (Tr. 624). Before work each morning, S.N. would walk and run for about an hour to a Starbucks as part of her morning workout. (Tr. 625, 627). On September 2, 2014, S.N. was performing her morning routine between the early morning hours between 5 a.m. and 5:30 a.m. (Tr. 625). She was on Lake Road and made a turn onto West 104th when she was attacked from behind, hit on her head, and knocked to the ground. (Tr. 632). Daniel placed a gun underneath her eye, told her to shut up, and threatened to kill her if she said another word. (Tr. 633). Daniel later raped S.N. orally and anally (Tr. 639-641).

The second crime occurred on August 30, 2014 against a female victim, J.S. (Tr. 970). In the early morning hours of that day, she travelled to her boyfriend's house on Warren Road. (Tr. 977). She exited her car and began walking up the steps of her boyfriend's house when she was assaulted by Daniel. (Tr. 983). Daniel approached her and demanded that she give him her money. (Tr. 983). As with the first victim, Daniel placed a gun beside J.S.'s head on her right temple. (Tr. 983-84). He proceeded to vaginally, anally, and orally rape J.S. (Tr. 986 – 987, 988, 990). Daniel proceeded to threaten J.S. and told her that he would kill her if she made a sound. He then proceeded to rob J.S. of the money that she made that night working in her part time job at a bar. (Tr. 993).

The third crime was committed against two victims, K.K. and J.B. (Tr. 1290, 1315). K.K. lived in Lakewood, Ohio at the time of the offense. (Tr. 1292). On the evening of October 31, 2014 through September 1, 2014, K.K. and J.B. went downtown together to West 25th Street to have dinner and drinks. (Tr. 1292-93). After going out, the two took a cab to J.B.'s house on Marlow Avenue between Clifton Rd. and Detroit Avenue. (Tr. 1293-94). They proceed to sit on the steps of the residence and they are approached by Daniel.

This appeal involves legal arguments related to the trial in which Daniel was convicted for the crimes of kidnapping, rape, and aggravated robbery committed against these victims.

## Facts Relevant to Assignment Error Number 1 – Competency

On or near the scheduled trial date for this case, the trial court determined that Daniel should be referred for an in court psychiatric competency evaluation. (Tr. 295).

This decision was based on any number of factors.  For example, near or on the scheduled trial date, Daniel spread feces on the cell and himself.  (Tr. 295).  Furthermore, there are indications that he had been complaining of auditory hallucinations and diagnosed with antisocial personality disorder and bipolar.  (Tr. 295).

On March 9, 2015, the trial court revisited the issue of Daniel's competency.  (Tr. 301).  At the hearing, the court noted that an in court evaluation of Daniel had been received.  (Tr. 301).  The trial court indicated that the report diagnosed Daniel with cannabis use disorder and malingerer.  Furthermore, the evaluator was "unable to form an opinion within a reasonable medical certainty." (Tr. 302).  As a final point, the letter indicates "it is clear that Mr. Daniel is malingering the symptoms of a mental disorder" and he is waiting for me.  Therefore, the trial court referred the cases for independent evaluation of Daniel at the Twin Valley Behavioral Health Care campus.

By April 8, 2015, a jury was picked but not impaneled in this case.  Upon returning to court, the parties learned that Daniel had not been transferred for an independent evaluation.  (Tr. 318-319).

The State responded by arguing that it discovered jail phone calls of James Daniel.  The State requested that the trial court proceed with the competency hearing.  The State argued that information contained within the jail phone calls demonstrates that Daniel is competent to stand trial.

In particular, the State pointed to the following observations from the jail phone calls to make its point:

- That James Daniel was using another inmate's pin number to make phone calls;

- That in a phone call that James Daniel placed to Melissa Yanhert, he asked her to look up symptoms of schizophrenia;

- That on April 6, 2015, James Daniel placed a call to his girlfriend, Melissa Yahnert, using antoher inmate's pin unmber.  Again, he asks his girlfriend to look up symptoms;

- That he is making phone calls to witnesses; (Tr. 347 – 348).

- That Daniel understood that there 2 police officers in the first jury pool.

- That he was making phone calls to his brother so that his brother would not testify.

- That he described to the State's satisfaction an understanding of circumstantial evidence;

Following the hearing, the trial court found Daniel to be competent and proceeded

to trial.


## Facts Relevant to Assignment Error Number 2 – Attempted Rape Jury Instruction

The State called a number of witnesses who testified that S.N. told them she had been anally raped by James Daniel.

Specifically, the State called Ricky Teamor.  (Tr. 682).  Mr. Teamor is a subcontractor for Standard Parking, University Circle, Case Western Reserve. (Id.). Mr. Teamor testified to his memories from September 2, 2014.   On that day, Teamor saw S.N. and described her demeanor as frantic.  (Tr. 686).  He further indicated that she

was hollering for help.  He also noticed that she was crying and was upset.  (Tr. 686).
After sitting her, he contacted 911. (Tr. 686).

The State also called Lucas Hastings.  (Tr. 704).  Hastings worked as an EMT
with the city of Cleveland on the morning of September 2, 2014.  Hastings responded to
the report of the attack of S.N.  (Tr. 708).  When Hastings spoke with S.N., she indicated
that although she only told some people she had been attacked, she was "Actually raped
and robbed as well as attacked." (Tr. 708).  This witness also described S.N.'s demeanor
as nervous, like she was in shock.  (Tr. 711, 722).  Hastings also testified that he had
generated a patient care report in connection with treating S.N.  As part of the patient
care report he noted that S.N. indicated that the perpetrator tried to have sex with her.
(Tr. 717).  However, the same patient care report also indicated that the attacker raped
her and used a condom.  (Id.).


S.N. testified about these crimes.  (Tr. 623).  She indicated that would walk and
run in the morning to a coffee shop before going to work.  (Tr. 625 – 627).  On
September 2, 2014, she indicated that while taking her morning she was confronted by
an unknown male, who hit her on her head, knocking her to the ground.  (Tr. 632-33).
She started screaming and he placed a gun to her head and told her to stop screaming or
he would kill her.  (Tr. 633).  He then proceeded to grab by the back of her sports bra
and pulled her backwards in between two cars.  (Tr. 634).  He opened up a condom and
told her that she had three options, which included oral sex, anal sex, or vaginal sex.
(Tr. 639).  She further testified that he pulled her shorts down and entered her anally
with his penis.  (Tr. 640).  Although she indicated he entered her anally, she clarified

that he did not get all the way and it ended pretty quickly. (Tr. 640 – 41, 663). She also provided an in court identification Daniel. (Tr. 665).

The testimony of Elizabeth Booth, a registered nurse, was consistent with the earlier witnesses. (Tr. 753). She slight difference that Booth indicated in her report was that S.N. told her that he put on a condom but in her words, "probably or only briefly penetrated, if anything." (Tr. 789). However, in the same report as a report filed by Booth, she indicated that S.N. indicated that she had been anally penetrated, even the penetration was partial. (Tr. 766, 799 – 800). As a result of the attack, S.N. sustained numerous injuries. (Tr. 770-776).

Detective Moctezuma also testified about his interactions with S.N. (Tr. 861). Moctezuma indicated in a report that S.N. indicated the perpetrator attempted to penetrate her anally. However, Detective Moctezuma also testified that the perpetrator had used a condom during anal sex. (Tr. 875 - 878).

### Facts Relevant to Assignment Error Number 3 – Testimony of Officer Kazimer

Officer John Kazimer is an officer employed with the City of Cleveland. (Tr. 727-28). He testified that he generally works the late night shift starting at 9:00 p.m. and ending at 7:00 a.m. (Tr. 728). On September 2, 2014, he was in a marked zone car near W. 117th to the east of Edgewater Park when he was called to respond to an incident near W. 108th and Clifton. (Tr. 730). The call was in response to a female who had been raped, with the initials of S.N. (Tr. 731).

Upon responding to the scene, he observed that S.N. had an upset demeanor. (Tr. 731).

Later on that day, he spoke with S.N. once she had been conveyed to Metro Hospital.  (Tr. 734).  While at Metro Hospital, he observed that S.N. was more comfortable speaking with the female nurse than the male officers.  (Tr. 734).

At this point in the direct examination of Officer Kazimer, the following exchange took place between the assistant prosecuting attorney and Officer Kazimer:

Q.    Officer, was there something that made you feel like Susan felt uncomfortable speaking to you?

A.    She was angry at what had happened to her, was my general understanding.

Q.    What led you to that impression?

A.    She kept saying she was sorry, sorry to waste our time, which it was not a waste of our time by any means.  She just, her demeanor, kind of sitting forward, just like "I can't believe this happened," frustration.

Q.    Officer, why was it you were trying to gather information from Susan at this point in time?

A.    I had every reason to believe she was making true statements about a crime that had been committed against her in the city where I am sworn to protect and uphold the law.

(Tr. 734-735).

Appellant challenges the last response of Officer Kazimer on appeal.

## Facts Relevant to Assignment Error Number 4 – Testimony of Todd Wiles and Scientific Reliability

Todd Wiles testified that he is employed in the Cleveland Police Department as a civilian crime analyst.  (Tr. 885).  He has been employed as a crime analyst for ten years and spent the last three years of his career with the Cleveland Police Department (Tr. 885-86).  His primary responsibility for his unit in the Cleveland Police is to perform all the geographic mapping for the police department.  (Tr. 886-87).  To perform his work,

he completed the Federal Law Enforcement Training Academy analysis program and he is a member of the International Association of Crime Analysts.  (Tr. 888).

Wiles further explained that some of the work he does allow him to locate a cell phone caller's location based on cell tower information associated with that user's cell phone. (Tr. 891).

Analyst Wiles also explained that predicting which tower will receive a call will sometimes depend upon a concept term re-routing.  (Tr. 897).  Through re-routing, a call may sometime switch cell towers.  (Tr. 897 – 898).  He further elaborated that through this technology, he is generally able to identify one of three sector regions from which a call is made.  (Tr. 897-898).

Wiles later explained that he was involved in this investigation related to phone calls that may have been placed near the scene of the rape crimes in this case during August of 2014 and September of 2014.  (Tr. 898 – 910).   At some point during the investigation of the Lakewood and Cleveland crimes, investigating officers learned that the suspect in the crimes might be the same individual.  (Tr. 908 – 909).  By searching cell phone tower records associated with the crimes in this case, investigating officers identified Tyson Williams as a suspect.   (Tr. 914 – 918).   Specifically, a cellular telephone used by Tyson Williams made an outgoing phone call at 5:18 a.m. near the location and time of the September 2, 2014 rape. (Tr. 921 – 925).

During direct examination, defense counsel argued that data from the cell phone towers should be subject to *Daubert* because it's not based upon scientifically reliable methods.  (Tr. 900). The State responded that this should not be considered a *Daubert* issue because the information obtained from the cell phone towers using this technology

has already been stipulated as authentic. (Tr. 904). The State further pointed out that the maps, spreadsheets and documents arose from stipulated data. (Tr. 904).

On cross-examination, the defense further explored the limits of identifying locations of cell phone users. (Tr. 924). Analyst Wiles admitted that there was no guarantee that a cell phone would connect with the closest cell tower. (Tr. 924-925). He also admitted that other issues could affect which cell tower a caller uses. (Tr. 925). Additionally, he stated that the determination of a cell phone user's location is directly based on information provided by cell phone companies and stores in those companies' databases. (Tr. 930).

## LAW AND ARGUMENT

**ASSIGNMENT OF ERROR I:** THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS WHEN IT DECLARED THAT THE DEFENDANT WAS COMPETENT TO STAND TRIAL IN THE ABSENCE OF ANY MEDICAL OPINION TO A REASONABLE DEGREE OF MEDICAL CERTAINTY TO SUPPORT THAT DECISION.

The trial court in this case acted within its discretion in finding that James Daniel was competent to stand trial.

R.C. 2945.37 (G) governs a trial court's finding of competency. Pursuant to this statute:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order as authorized by section 2945.38 of the Revised Code.

> R.C. 2945.37 (G); *see also Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

Pursuant to R.C. 2945.37(G), Daniel was presumed competent and bore the burden to rebut that presumption. *State v. Smith*, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). Here, appellant failed to introduce evidence that would overcome that presumption by a preponderance of the evidence. As such, the trial court properly found him competent to stand trial.

Appellant's argument in his brief on this assignment of error heavily relies of a discussion of appellant's behavior and mental health illness. Contrary to appellant's arguments however, a defendant's mental or emotion health issues cannot be equated with incompetency. In *State v. Smith*, 8th Dist. Cuyahoga Nos. 96582, 96622, 96623, 2012-Ohio-261, this Court reviewed case precedent in the Ohio Supreme Court and concluded as follows:

> In *Bock[1]*, the court defined incompetency as the "defendant's inability to understand' ***the nature and objective of the proceedings against him or of presently assisting in his defense.' "*Id.* at 110, quoting R.C. 2945.37(A). The court further explained that "[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.*

> {¶ 26} Moreover, this court, relying on *Bock*, has found that when a request for a competency evaluation is made prior to trial, the failure to hold the mandatory competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence. *State v. Almashni*, Cuyahoga App. No. 92237, 2010-Ohio-898, ¶ 14, appeal not allowed by *State v. Almashni*, 126 Ohio St.3d 1582, 2010-Ohio-4542, 934 N.E.2d 355.

> *State v. Smith*, 8th Dist. Nos. 96582, 96622, 96623, 2012-Ohio-261.

Beyond the issue of appellant's mental health, appellant was granted a hearing on the issue of his competency. Both defense counsel and the assistant prosecuting

---

[1] *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.

attorney had an opportunity to address the court at the hearing following the report of an in court evaluation.  Despite the above, appellant argues that the court committed error because he never received an independent psychiatric evaluation of his competency. (Appellant's Br. 15).  Furthermore, he contends that such a report should be required given that the in court evaluation was unable to determine to a reasonable degree of medical certainty concerning his competency.

In response to whether a further evaluation was needed in this case, the State points out that at the competency hearing, the primary issue to determine was the extent to which defendant was malingering any mental health issues.  The trial court read the report of the in court psychiatrist, which indicated the following:  (1) that Mr. Daniel is malingering the symptoms a mental disorder; (2) it was unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder; (3) the evaluator therefore recommended sending Mr. Daniels to a 20 day inpatient observation to observe his behavior. (Tr. 302).

Nevertheless, the State submits that it presented competent and credible evidence at the competency hearing that supported a finding that appellant is (1) malingering and purposely being obstructive to trial proceedings and (2) that his capable understanding the proceedings against him and assisting his attorney.  (Tr. 353).  These findings by the trial court were supported by the following evidence:

- In a phone call placed to Melissa Yahnert, Daniel asked to her to look up the symptoms of schizophrenia. (Tr. 325).

- Mr. Daniel placed a jail phone call so he could do an interview with a reporter at Channel 5. (Tr. 325).

- Mr. Daniel was savvy enough to use another inmate's pin number so that he could attempt to preclude law enforcement officers or other individuals from monitoring his phone calls. (Tr. 332 – 345).

- In an April 6, 2015 phone call to Melissa Yanhert, she indicates that she has previously told him the symptoms of schizophrenia and she cannot find anything else.  She then proceeds to tell him the symptoms include mental episodes, false distorted visuals and auditory issues.  (Tr. 337 – 339).  Again, the State submits these demonstrate obstructive behavior, malingering, and an understanding of trial procedure.

- He places phone calls to his brother so that his brother will not testify against him. (Tr. 347).

- He demonstrated understanding of the proceedings against him by stating there were 2 police officers in the first jury pool along with 8 women, 1 of whom was previously raped. (Tr. 347 – 348).

- He demonstrated understanding of the proceedings against him by discussing jurors who had a media bias from previously learning about the case. (Tr. 348).

- He demonstrated an understanding of the proceedings by describing in phone calls what circumstantial evidence is.  (Tr. 348).

- He demonstrated an understanding of the proceedings and ability to assist his attorney by describing the lack of semen evidence, the lack of blood evidence, and the fact that only touch DNA is critical in his case. (Tr. 348).

- Furthermore, the jail phone calls further provide evidence of malingering given that the psychiatric evaluation reports describe a person who by contrast is soft spoken, does not communicate, claims he is only charged with one case and does not remember his lawyer's name.  However, in jail phone calls, he does indicate that Scott Ramsey is going to visit him. (Tr. 347 – 349).

The phone calls provide competent and credible evidence that appellant was competent to stand trial.  "[A] trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting that finding."  *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 33.  Based upon the above-listed evidence that supported the trial court findings, this Court should follow *Were* and conclude that the trial court's decision was supported by competent and credible evidence.

As a final point, appellant had no right to a second competency evaluation from an independent doctor.  The trial court complied with the order of R.C. 2945.37 when it held a hearing on the first evaluation.  The court did order a second competency evaluation, however for whatever reason that order was never successfully carried.  Because the order for a second evaluation was never carried out, the trial court had to decide following the hearing whether an independent competency evaluation was warranted in light of the new evidence introduced by the State.

Contrary to appellant's arguments, "[t]here is no absolute right to an independent competency evaluation.  *State v. Pennington*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-5426, ¶ 26, citations omitted.  The decision of whether to order the second evaluation was a matter of discretion with the trial court.  *Id.*  Based on upon the above-listed evidence, the trial court acted within its discretion in determining that appellant was competent and therefore a second report was unnecessary.

**ASSIGNMENT OF ERROR II:** THE TRIAL COURT'S FAILURE TO PROVIDE THE JURY WITH AN INSTRUCTION ON ATTEMPT AS TO THE CHARGE OF RAPE CONSTITUTED A VIOLATION OF DEFENDANT'S RIGHT TO A FAIR TRIAL AND PLAIN ERROR.

In his second assignment of error, appellant argues that the trial court committed reversible error when it failed to provide the jury with an instruction on attempted rape. For the reasons that follow, this Court should reject appellant's argument.

The defense never objected to the trial court's alleged failure to include a jury instruction on attempted rape. Appellant's failure to raise any objection to the jury instructions constitutes a waiver of this issue. Crim.R. 30 ("On appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection"); *State v. Hamilton*, 8th Dist. Cuyahoga App. No. 49994, 1986 Ohio App. LEXIS 5317.

Given the defense's failure to raise this issue, this Court should review the assignment of error under a plain error standard. *State v. Hartman*, 93 Ohio St.3d 274, 289, 2001-Ohio-1580, 754 N.E.2d 1150 (2001). To prove plain error, it must be shown that but for the error, the outcome of the trial clearly would have been otherwise. Crim.R. 52 (B); *State v. Campbell*, 69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339 (1994). The Ohio Supreme Court has cautioned that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765, 2001-Ohio-112 (2001).

Here, appellant has failed to demonstrate that the alleged failure to provide an instruction on attempted rape resulted in the manifest injustice of a different outcome at

trial. The State does acknowledge that attempted rape is a lesser included of the offense of rape, for which Daniel was charged and convicted. *See State v. Williams*, 74 Ohio St.3d 569, 578, 660 N.E.2d 724 (1996).

While attempted rape is a lesser included offense of rape, the fact alone is insufficient to demonstrate that the trial court was required to include attempted rape as a jury instruction. "[A] charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (citation omitted).

Appellant's claim fails because the evidence introduced at trial does not reasonably support the conclusion that Daniel would be acquitted on rape and convicted of attempted rape in count 12 of the indictment. Appellant is specifically challenging his conviction for committing anal rape. This rape count is defined in R.C. 2907.02 (A)(2) as the following: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is more particularly defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and , without the privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object * * *. **Penetration, however slight, is sufficient to complete vaginal or anal intercourse.**" R.C. 2907.01 (A) (Emphasis added).

Appellant attempts to argue that the evidence reasonably supported an acquittal on count 12 because provided conflicting accounts of whether she had been anally penetrated. To support this argument, appellant cites to five statements in the record

that he claims required the trial court to provide a jury instruction on the attempted rape charge. (Appellant's Br. 19).

The State's position on these statements is that they are taken out of context and do not completely reflect the testimony of each witness. S.N. consistently testified that she had been anally penetrated by Daniel. (Tr. 663). Her testimony was that after orally raping her, he proceed force her back on a wall, pull down her shorts, and enter her from behind. (Tr. 640).

To point out the extent to which the five pieces of testimony are taken out of context and do not support the requirement of a charge of attempted rape, the State has provided a chart below. This chart compares and contrasts the quotation cited in appellant's brief with the more complete context of statements made by each respective witness at trial:

| Citation from Appellant's Brief | Greater Context of Statements Made by Specific Witness |
|---|---|
| **Statement #1** – "Teamor, who was the first person she saw after the incident, testified S.N. seemed only "upset." **(App. Br. 19)** | **Context of Statement #1:**  Teamor's testimony was much more significant than simply stating she seemed upset. He testified: "Well, she was frantic and she was hollering for help. She needed some help." (Tr. 686). He proceeds to testify, "she was crying, she was upset. She was really upset." (Tr. 686). He then tried to relax her and called 911 after listening to her report an attack. (Tr. 686-687). |
| **Statement #2:**  "On the other hand, Hasting's report indicated S.N. stated that the perpetrator only "tried to have sex with her." **(App. Br. 19** | **Context of Statement #2:**  Hasting's testifies in fact that initially S.N. told by-standers that she was attacked. However, when Hastings had an opportunity to speak with S.N. away from the ambulance and the crowd, S.N. told her: "I told these people I was attacked, but I was actually raped and robbed as well as attacked." (Tr. 708). |
| **Statement #3:**  "On the other hand, Hastings's report indicated S.N. stated that the perpetrator only "tried to have sex with her." (App. Br. | **Context of Statement #3:** The recorded report of Hastings does say that the defendant tried to have sex with her.  (Tr. 717).  However, in the same report of Hastings that was recorded during the same initial conversation, it also says, "The patient states when the |

| 19) | attacker raped her he used a condom." (Tr. 717). |
|---|---|
| **Statement #4:** "S.N. also told medical personnel that the perpetrator failed to fully penetrate when he tried to rape her." (App. Br. 19) (Tr. 675, 789). | **Context of Statement #4:** This quote refers the reader to two separate pieces of testimony from different witnesses.<br><br>*The first witness* it refers to is registered nurse Elizabeth Booth and her testimony on page 789 of the record. The statement made by RN Booth is that they made a record of an interview with S.N. in which S.N. indicated that "he put the condom, tried to penetrate, and * * * probably or only brief penetrated, if anything." However, this statement must also be read in conjunction with the fact that during the same interview and report S.N. told the nurse that she had been anally penetrated and clarified that the penetration was partial. (Tr. 766, 773, 799-800).<br><br>*The second witness* it refers to is the victim S.N. and her testimony on page 675 of the record. When S.N. is asked about how she made a report that she was barely penetrated, if anything?"- she responds as follows: "No, not 'if anything.' He penetrated. He didn't get all the way inside." |
| **Statement #5:** "Det. Moctezuma testified that S.N. said to him that rape had only "attempted." | Det. Moctezuma did make write a note down during a 35 – 40 minute interview of "attempted to penetrate anally." His note did not record the extent of penetration. However, later in testimony, he indicated that he learned from S.N. that the perpetrator had a condom on during anal sex. (Tr. 878) |

The State submits that the testimony cited by appellant is insufficient for jurors to reasonably to support an acquittal of anal rape. Of the six witnesses cited in the table above, all six of them testified that S.N. told them that she had been anally raped.

Of the statements listed above, the only pieces of evidence that could reasonably be inferred to support a charge of attempted rape instead would be (1) the statement Registered Nurse Booth who made a note in her report that the victim stated "he put the condom, tried to penetrate, and * * * probably or only brief penetrated, if anything" and (2) possibly one could consider Det. Moctezuma's note of "attempted to penetrate anally."

In both instances however, the witness also indicated that S.N. told them that she was anally penetrated.  Moreover, S.N. clarified at trial she was confident that she had in fact been anally raped by the defendant.  The State submits in light of the overwhelming evidence submitted consistently by the witnesses in this trial, it was not reasonably to instruct on attempted rape.  More importantly, appellant cannot demonstrate prejudice under the facts of this case.

Simply because a small amount of evidence was provided in support of the lesser included offense, does not warrant a jury instruction.  As this Court and the Ohio Supreme Court have clarified, an instruction is not warranted every time "some evidence" is presented on a lesser included offense. *See State v. Smith*, 8th Dist. 90478, 2009-Ohio-2244, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286.  "To require an instruction * * *every time some evidence, would mean that no trial judge could ever refuse to give an instruction on a lesser included offense." *Id.*  The State submits that this is one such case where the small amount of evidence for the lesser included offense is significantly outweighed by the wealth of evidence support appellant's conviction.

As a final point on this assignment of error, the State points out that appellant cannot demonstrate prejudice based on his defense strategy at trial.  The decision to fail to request a jury instruction can be considered a matter of trial strategy. *See, e.g., State v. Griffie*, 74 Ohio St.3d 332, 658 N.E.2d 764 (noting that failure to request a jury instruction on a lesser include offense is a matter of trial strategy and did not establish an ineffective assistance of counsel claim).

Here, appellant is advocating that the trial court afforded him a strategy that is inconsistent with appellant's theory of the case.  By advocating for a lesser included

offense of rape jury instruction, appellant is effectively arguing that he was deprived of an opportunity to present a theory to the jury that Daniel attempted but never completed the rape.  This a different theory of the case than the theory advanced at closing argument that other perpetrators may have been involved.  At closing argument, one of the main defenses was that other individuals may have been the perpetrators: "when you start looking at all of these cases and you see the absence of the evidence in so many of these instances, that this maybe was not what the State is telling you, the work of a single man, that their theory is wrong?  I hope you consider that * * *."  (Tr. 1640).  When a defendant seeks a lesser included instruction that is not consistent with his theory of defense at trial, then appellant's choice of trial strategy should weigh against his later request on appeal for the new jury instruction.

**ASSIGNMENT OF ERROR III:** THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING A STATE'S WITNESS TO VOUCH FOR THE CREDIBILITY OF ONE OF THE ALLEGED VICTIMS.

The State respectfully asks this Court to deny appellant's third assignment of error.

### *Officer Kazimer was Describing Behavior of the Victim Rather than the Reliability of Statements Made by the Victim*

Appellant argues that the trial court committed plain error when Officer Kazimer allegedly commented on the credibility of S.N.  Specifically, appellant points to Officer Kazimer's statement that the victim was "making true statements." (Appellant's Br. 20). However,

As a starting point, the State notes that the context in which this statement was made is critical in order to properly analyze it.  Prior to the statement in question, Officer Kazimer testified that when initially interviewed S.N. after she was orally and anally raped, that she appeared angry.  After Officer Kazimer that the victim seemed angry after she was sexually assaulted, the following exchange took placed between the assistant prosecuting attorney and the victim:

Q. What led you to that impression?

**A.  She kept saying she was sorry, sorry to waste our time, which it was not a waste of our time by any means.  She just, her demeanor, kind of sitting forward, just like "I can't believe this happened," frustration.**

**Q.  Officer, why was it you were trying to gather information from [S.N.] at this point in time?**

**A.  I had every reason to believe that she was making true statements about a crime that had been committed against her in the city where I am sworn to protect and uphold the law.**

(Tr. 734-35) (Emphasis added).

This exchange between the assistant prosecutor and Officer Kazimer *describes the behavior of the victim rather than the believability of victim's statements.*  This portion of Officer Kazimer's testimony starts with a description of the S.N.'s behavior.  Officer Kazimer testifies that the victim was angry and frustrated.  After describing S.N.'s behavior, the assistant prosecuting effectively asks the witness how the behavior of the witness was important in his investigation:  specifically, the assistant prosecuting attorney asks, "why was it you were trying to gather information from S.N. at this time?"  The officer responds that he had "every reason to believe that she was making true statements" — this response signals that her demeanor is consistent with a person who has just been raped.

The State submits that this exchange is effectively the same as if Officer Kazimer had stated "S.N.'s behavior is consistent with that of rape victims – I have no reason based on her demeanor and frustration – that she had not been raped."

In raising this assignment of error, appellant relies upon *State v. Boston* (1989), 46 Ohio St.3d 108, 128, 545 N.E.2d 1220, which holds that "[i]t is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements."  *State v. Bajaj*, 7th Dist. Columbiana Co. No. 03 CO 16, 2005-Ohio-2931, ¶ 72 (explaining the import of the Boston opinion).  This is because the authority and responsibility to assess the credibility of witnesses rests with the fact finder. *Id.*, citations omitted.

Nevertheless, a witness, such as Officer Kazimer in this case, may provide an opinion that the behavior of a victim was consistent with the behavior of a sexually abused victim. *Bajaj, supra*, citing *State v. Stowers*, 81 Ohio St.3d 260, 262-263, 1998-

Ohio-632, 690 N.E.2d 881.  Similarly, in *State v. Bidinost*, 71 Ohio St.3d 449, 453, 1994-Ohio-465, 644 N.E.2d 318, the Ohio Supreme Court allowed for an expert witness to discuss post-traumatic stress disorder to help corroborate a claim that a victim has been raped or sexually assaulted.  *Bajaj* at ¶ 72.

### Even if a Finding is Made that Officer Kazimer Commented on the Reliability of the Victim's Statements, There was No Plain Error

Even if this Court does conclude that Officer Kazimer was specifically commenting on the truth of statements made by the victim, appellant has not demonstrated plain error.  In particular, even if this was a comment about the truth of the victim's statements, appellant cannot meet his burden under plain error of demonstrating that is plain that the outcome of the trial would have been different without this statement.  The victim, S.N., had testified prior to Officer Kazimer's testimony.  As such, the jury had an opportunity to assess the credibility of S.N. and form an opinion for themselves prior to Officer Kazimer's statement.

In making this argument, the State points to the reasoning articulated in an opinion from Clermont County Court of Common Pleas as persuasive authority:

> However, *Boston* did not "proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *State v. Smith*, Butler App. No. CA2004-02-039, 2005 Ohio 63, P15, quoting *State v. Stowers* (1998), 81 Ohio St.3d 260, 262-263, 1998 Ohio 632, 690 N.E.2d 881. Additionally, when the alleged victims testify before the jury about the allegations, the jury is able to perceive the child and decide for themselves their credibility. Id. at P21-22. See also *State v. Proffitt* (1991), 72 Ohio App.3d 807, 809, 596 N.E.2d 527. This situation is distinguishable from *Boston*, as the child victim in that case was not available to testify. Further, a psychologist can testify as to her opinion about whether the child she is treating has been subjected to sexual abuse. Id. at P16, citing *Boston*, 46 Ohio St.3d at 129.

The court finds that, based upon the *Boston* court's analysis, Ms. Freihofer cannot testify as to the child victims' veracity. However, if the alleged victims testify before the jury about the allegations, the jury will be able to perceive the children and decide for themselves their credibility. Therefore, if the child victims testify, Ms. Freihofer may lend additional support for the truth of the facts testified to by the children or assist the fact-finder in assessing their veracity. Ms. Freihofer, in that situation, could lend support for the fact that the children were being truthful and would be precluded only from stating that the children were truthful in their statements. Further, Ms. Freihofer, as the interviewing social worker in this case, can testify as to her opinion about whether the children she interviewed have been subjected to sexual abuse.

*State v. Barnes*, 149 Ohio Misc.2d 1, 25, 2008-Ohio-5609, ¶ 50 – 51.

Based on the above, the State asks this Court to deny appellant's third assignment of error.

**ASSIGNMENT OF ERROR IV**: THE TRIAL COURT DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN FAILING TO CONDUCT A *DAUBERT* HEARING CONCERNING WHETHER THE ANALYSIS OF HISTORICAL CELL PHONE RECORDS TO DETERMINE LOCATION OF AN INDIVIDUAL'S PHONE IS SCIENTIFICALLY RELIABLE, AS REQUESTED BY THE DEFENDANT, AND SIMPLY ADMITTING SUCH TESTIMONY AT TRIAL.

In his fourth assignment of error, appellant challenges the admission of testimony of crime analyst Todd Wiles. Specifically, he argues that the "interpretation of cell phone sector data is matter is not within the 'knowledge or experience possessed by laypersons.'" (Appellant's Br. 22). He further contends that the underlying data introduced through analyst Todd Wiles is unreliable. Based upon these arguments, appellant asks this Court to conclude that a *Daubert* hearing should have been held and that the evidence was inadmissible under the Ohio rules of evidence. Contrary to appellant's arguments, the trial court properly admitted the testimony of Todd Wiles, who testified that he has worked as a crime analyst for ten years. (Tr. 886).

Appellant primarily relies upon a federal case from the Northern District of Illinois to support his argument that the testimony of analyst Wiles is unreliable. (Appellant's Br. 22 – 23).  The State submits that appellant's reliance upon *United States v. Evans*, 892 F.Supp.2d 949, 2012 U.S. Dist. LEXIS 123652 (N.D. Ill. 2012) is misplaced.  Evans is a case in which the district court concluded that a special agent's analysis of cell tower information was unreliable after he had been certified as an expert. In reaching this conclusion, the district court noted that (1) the agent did not account for factors that could impact the coverage area of a cell phone; and (2) the agent's theory had not been subjected to formal scientific peer review. *Id.*

Nevertheless, in an Ohio opinion recently released, the Second District Court of Appeals declined to follow Evans by noting the numerous federal courts that have reached a different conclusion on this same issue:

> But "other courts have reached the opposite conclusion of the Evans Court regarding the reliability of an agent's methodology in estimating cell sectors where the agent used cell-phone records and his general knowledge and understanding of cellular phone networks and where the agent testified that he and others had used that methodology numerous times without error." (Citations omitted.) *United States v. Davis*, S.D. Fla. No. 11-60285-CR, 2013 U.S. Dist. LEXIS 70371, 2013 WL 2156659, & 6 (May 17, 2013).  *United States v. Jones*, 918 F.SUpp.2d 1, 5 (D.D.C. 2013). *See, e.g., Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015) (rejecting the contention that evidence regarding the use of historical cell phone data to identify the geographic area in which a phone was located at a given time is inherently unreliable, saying that federal courts have regularly admitted expert testimony regarding this type of evidence); *United States v. Schaffer*, 439 Fed.Appx. 344, 346-47 (5th Cir. 2011) (upholding the admissibility of an FBI agent's testimony pinpointing the locations where cellular telephones were allegedly used, based on "his extensive knowledge and experience in the filed" and noting that the agent testified that he had used the technique without error on at least 100 occasions and that the FBI had used it successfully at least 1,000 times); *United States v. Rosario*, S.D.N.Y. No. 09-CR-415-2, 2014 U.S. Dist.

LEXIS 160626, 2014 WL 6076364, *2-3 (Nov. 14, 20140 (concluding that an FBI Special Agent's cell-site analysis testimony was based on techniques sufficiently reliable to be admitted under Fed.R. Evid. 702). These courts agree that the "vagaries of cell phone technology affect the persuasiveness of the circumstantial evidence, but they do not render [an expert's] testimony inadmissible." *Rosario*, 2014 U.S. Dist. LEXIS 160626 [WL] at * 2. *Accord United States v. Farma*, E.D.N.Y. No. 12-CR186, 2012 U.S. Dist. LEXIS 174887, 2012 WL 6102700, *4 (Dec. 10, 2012) (noting that the defendant "lists a variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower * * * [but] these concerns go to the weight of [the expert's] testimony, not the reliability").

*State v. White*, 2d. Dist. Montgomery App. No. 26093, 2015-Ohio-3512, ¶ 28.

The authority cited above provides ample legal authority to support the trial court's in this conclusions that these methods described by analyst Wiles are reliable. Furthermore, the defense did have an opportunity cross-examine the witnesses about potential problems with these methods. (Tr. 924-925). The analyst admitted that re-routing of cell phone calls is a possibility and that cell phones sometimes use a tower up to two miles away from a location. (Tr. 924 – 930). Nonetheless, the State submits that these issues go the weight of the testimony and not the admissibility of the testimony introduced by analyst Todd Wiles.

Furthermore, even if this Court were to conclude that the triangulation testimony was unreliable under *Evans*, he cannot demonstrate prejudicial error from this testimony. As noted in the record, the key information that the State sought to introduce from the testimony was already stipulated as authentic. The State noted to the Court that the information from the cell phone carrier had already been stipulated to as authentic. (Tr. 933). The stipulated information was used to create documents, spreadsheets, and maps in connection with this case. (Id.). The stipulations are significant because the State introduced the testimony of analyst Todd Wiles for two

purposes: (1) it tended to show that James Daniel was in the area where the Cleveland rape was committed; and more importantly, (2) it demonstrated to the jury how investigators ultimately discovered the identity of the defendant in this case, *i.e.*, through a cell phone of his brother Tyson Williams. Pursuant to Evid.R. 401 and Evid.R. 402, the State could have introduced these pieces of evidence to the jury largely based on the stipulation by both parties. It follows that even if the testimony was not reliable, its admission did not prejudice Daniel.

Accordingly, this Court should deny appellant's fourth assignment of error.

## CONCLUSION

For the aforementioned reasons, this Court should affirm appellant's convictions and require James Daniel to complete the remainder of his lawfully imposed sentence.

Respectfully submitted,

TIMOTHY MCGINTY
Cuyahoga County Prosecutor

_/ s/ Brett Hammond_
**BRETT HAMMOND (0091757)**
Assistant Prosecuting Attorney
Cuyahoga County Prosecutor's Office
The Justice Center, Courts Tower
1200 Ontario St.
Cleveland, Ohio 44113
(216) 443-7800

## CERTIFICATE OF SERVICE

A copy of the foregoing Brief of Appellee was sent by regular U.S. mail or electronic service this 17th day of December, 2015 to:

Steve W. Canfil, Esq.
55 Public Square, Suite 2100
Cleveland, OH 44113


_/ s/ Brett Hammond_____
**BRETT HAMMOND (0091757)**
Assistant Prosecuting Attorney

# Court of Appeals of Ohio, Eighth District

## County of Cuyahoga
### Nailah K. Byrd, Clerk of Courts

STATE OF OHIO

|                |              |                              |
|----------------|--------------|------------------------------|
|                | Appellee     | COA NO.     LOWER COURT NO.  |
|                |              | 103258      CR-14-589487-A   |
|                |              | COMMON PLEAS COURT           |
| -vs-           |              |                              |
| JAMES W. DANIEL |             |                              |
|                | Appellant    | MOTION NO.  493079           |

Date 02/03/16

---
### Journal Entry
---

Sua sponte, the court remands this case for a nunc pro tunc order to provide a sentencing journal entry that complies with State v. Lester, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus. The original sentencing entry and the nunc pro tunc sentencing entry dated July 17, 2015, impose multiple sentences for counts 11, 16, and 23. For example, the entry provides "defendant to serve 3 years on count 11" but also provides "Defendant to serve 49 years to life on counts *** 11." The sentencing entry also imposes sentences on counts 17, 18, 19 but does not reflect convictions for those counts. The nunc pro tunc sentencing journal entry should clearly set forth every count of conviction, whether as originally indicted or as renumbered for trial, with the corresponding sentence for each count (or reflect that it was merged with another count).

The clerk is instructed to supplement the original papers with any filings made in the trial court after the filing of the notice of appeal, including any clarifying nunc pro tunc entry made upon remand. This case and the original papers are to be returned to the clerk of this court on or before February 26, 2016.

RECEIVED FOR FILING

FEB 03 2016

CUYAHOGA COUNTY CLERK
OF THE COURT OF APPEALS
By _____ Deputy

LARRY A. JONES, SR.
Administrative Judge

CA15103258          92778741

EXHIBIT
26



93081677

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

THE STATE OF OHIO
Plaintiff

JAMES W DANIEL
Defendant

Case No: CR-14-589487-A

Judge: DAVID T MATIA

INDICT: 2911.11 AGGRAVATED BURGLARY
2911.11 AGGRAVATED BURGLARY
2907.02 RAPE /SVPS
ADDITIONAL COUNTS...

## JOURNAL ENTRY

NUNC PRO TUNC ENTRY AS OF AND FOR 06/17/2015.
NUNC PRO TUNC SENTENCING ENTRY OF 06/17/2015 AND CORRECTED ENTRY OF 07/17/2015. COURT OF APPEALS
OF OHIO, EIGHTH DISTRICT, MOTION NO. 493079.

** CORRECTION TO COUNTS 11, 16 AND 23. DEFENDANT TO SERVE 3 YEARS FIREARM SPECIFICATION ON EACH
COUNT PRIOR TO AND CONSECUTIVE.
IN ADDITION, SENTENCING JOURNAL ENTRY WILL REFLECT CONVICTIONS FOR COUNTS 17, 18 AND 19 FROM THE
ORIGINAL INDICTMENT. **

NUNC PRO TUNC ENTRY AS OF AND FOR 06/22/2015.
SENTENCING ENTRY DATED 6/22/2015 IS CORRECTED TO REFLECT CORRECT ENTRY DATE OF 6/17/2015:

** CHANGE SEXUALLY VIOLENT PREDATOR SPECIFICATION IN COUNTS 6, 7, 17, 18 AND 19 TO REFLECT A TOTAL
OF 10 YEARS IN PRISON ON EACH COUNT.  ON COUNT 9, CHANGE THE WORDING AND DELETE "TO LIFE." **

DEFENDANT IN COURT.  COUNSEL FRANK CAVALLO PRESENT.
PROSECUTING ATTORNEY(S) AQUEELAH A. JORDAN AND RICK BELL PRESENT.
COURT REPORTER RICHARD HAMSKI PRESENT.

DEFENDANT INDIGENT.  STEVE CANFIL WILL BE ASSIGNED FOR APPEAL.
TRANSCRIPT ORDERED AT STATE'S EXPENSE.

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147 UNDER COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED
IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION

MISC
02/26/2016



EXHIBIT
27

Page 1 of 6



93081677

SPECIFICATION(S)  2941.147 UNDER COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.)


ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH
FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER
COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION
SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9 AND 14.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10,
16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNTS 10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8, 10 AND 16.)

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A(2) F2 WITH
FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER
COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 15 OF THE INDICTMENT.
(IN THE ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO COUNT 15.)

ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER
DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3
YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT).
THESE COUNTS HAVE NOT BEEN RE-NUMBERED.

** FOR COUNTS 17, 18 AND 19, USE ORIGINAL INDICTMENT TO REFLECT CONVICTIONS.
COUNTS 17, 18 AND 19 WERE LISTED IN THE ORIGINAL SENTENCING JOURNAL ENTRY DATED 06/17/2015 AND
CORRECTED SENTENCING JOURNAL ENTRY DATED 07/17/2015.  THEY WERE RE-NUMBERED TO COUNTS 11, 12
AND 13.

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02(A)(2) F1 WITH FIREARM
SPECIFICATION(S) ¿ 1 YEAR (2941.141), FIREARM SPECIFICATION(S) ¿ 3 YEARS (2941.145), SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147 UNDER COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT.
MISC
02/26/2016



93081677

THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT.
(COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT WERE RE-NUMBERED TO COUNTS 11 AND 12. DURING SENTENCING, COUNTS 17 AND 18 WERE USED).

ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01(A)(4) F1 WITH FIREARM SPECIFICATION(S) ¿ 1 YEAR (2941.141), FIREARM SPECIFICATION(S) ¿ 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT 19 OF THE ORIGINAL INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT 19 OF THE ORIGINAL INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT 19 OF THE ORIGINAL INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT 19 OF THE ORIGINAL INDICTMENT.
(COUNT 19 OF THE ORIGINAL INDICTMENT WAS RE-NUMBERED TO COUNT 13. DURING SENTENCING, COUNT 19 WAS USED). **

COUNTS 1 THROUGH 4 IN THE ORIGINAL INDICTMENT WERE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23 ON OR ABOUT JUNE 5, 2015.
ON JUNE 5, 2015, DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO KIDNAPPING 2905.01 A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 23 OF THE INDICTMENT.

COURT ACCEPTED DEFENDANT'S GUILTY PLEA.
THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW.
THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11.

A SENTENCING HEARING WAS HELD ON JUNE 17, 2015.
PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT.
DEFENSE COUNSEL FRANK CAVALLO ADDRESSED THE COURT.
DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE.

THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE CONSTRUCTED IN THE FOLLOWING MANNER:

FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL INDICTMENT.

THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3.

MISC
02/26/2016



93081677

DEFENDANT TO SERVE 10 YEARS ON COUNT 2.
DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3.  COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2.
COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS.

THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9.
THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7.  THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9
AND 11.

1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5.  THE BASE CHARGE IS ENHANCED BY THE
SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE
CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6.  THE BASE CHARGE IS ENHANCED BY THE
SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6.  THE COURT DID NOT IMPOSE FIREARM SPECIFICATION
ON THIS COUNT.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7.  THE BASE CHARGE IS ENHANCED BY THE
SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7.  THE COURT DID NOT IMPOSE FIREARM SPECIFICATION
ON THIS COUNT.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE
ON COUNT 9 FOR A TOTAL OF 13 YEARS.

DEFENDANT TO SERVE 3 YEARS ON COUNT 11.
** DEFENDANT SENTENCED ON COUNT 11 TO 3 YEARS FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND
CONSECUTIVELY TO COUNTS 5, 6, 7 AND 9. **

DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11.  THE COUNTS ARE TO RUN CONSECUTIVE
TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23.

THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING.
THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14.  THE COURT WILL SENTENCE ON COUNTS 12, 14
AND 16.

THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE
ON COUNT 12.  DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT
14.  DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 14.

DEFENDANT TO SERVE 3 YEARS ON COUNT 16.
** DEFENDANT SENTENCED ON COUNT 16 TO 3 YEARS FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND
CONSECUTIVELY TO COUNTS 12 AND 14. **

DEFENDANT TO SERVE A TOTAL SENTENCE OF 29 YEARS ON COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE
TO RUN CONSECUTIVE.  COUNTS TO RUN CONSECUTIVE TO COUNTS 5 THROUGH 11 AND COUNTS 17 THROUGH
MISC
02/26/2016

RECEIVED FOR FILING
02/26/2016 15:28:39
NAILAH K. BYRD, CLERK



93081677

23.

THE STATE ELECTS TO HAVE COUNT 22 MERGE INTO COUNT 19 FOR PURPOSES OF SENTENCING. NO OTHER COUNTS WILL MERGE FOR PURPOSES OF SENTENCING.  THE COURT WILL SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 17.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 17.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 18.

DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 19.  THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 19.

3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 20.
3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS ON BASE CHARGE ON COUNT 21.
DEFENDANT TO SERVE 15 YEARS CONSECUTIVE ON FIREARM SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21.

DEFENDANT TO SERVE 3 YEARS ON COUNT 23.
** DEFENDANT SENTENCED ON COUNT 23 TO 3 YEARS FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVELY TO COUNTS 17, 18, 19, 20 AND 21. **

DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.

COUNTS 5, 6, 7, 9, 11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN CONSECUTIVE TO EACH OTHER.
COUNTS 2 AND 3 ARE TO RUN CONSECUTIVE TO EACH OTHER BUT CONCURRENT TO COUNTS 5 THROUGH 23.

THE COURT FINDS THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC AND PUNISH THE DEFENDANT AND ARE NOT DISPROPORTIONATE TO OTHER SENTENCES FOR SIMILAR OFFENSES. ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED TO PROTECT THE PUBLIC.

DEFENDANT TO SERVE TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE.

POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE FELONY(S) UNDER R.C.2967.28.  DEFENDANT ADVISED THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER R.C 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE OFFENDER.
PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1.
MISC
02/26/2016

RECEIVED FOR FILING
02/26/2016 15:28:39
NAILAH K. BYRD, CLERK



93081677

PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3.

*** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD OFFENDER REGISTRANT. *** COURT
EXPLAINED ALL DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX OFFENDER. DEFENDANT, WHEN NOT
INCARCERATED UNDER ANY OF THE SENTENCES MUST PERSONALLY REGISTER HIS RESIDENCE, EMPLOYMENT
OR SCHOOL (OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES WITH THE COUNTY SHERIFF OF THE COUNTY
CONTAINING THESE ADDRESSES AND VERIFY SAME FOR LIFETIME WITH IN PERSON VERIFICATION EVERY 90
DAYS BY PERSONALLY APPEARING AT THE SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR NOTICE OF ANY
RESIDENCE OR SCHOOL ADDRESS CHANGE TO THE COUNTY SHERIFF WITH WHOM HE MOST RECENTLY
REGISTERED AND TO THE COUNTY SHERIFF OF THE COUNTY IN WHICH THE NEW ADDRESS IS LOCATED. HE
MUST REGISTER A NEW EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING SUCH NEW ADDRESS WITH
SUCH SHERIFF. THESE PROVISIONS APPLY WITH EQUAL FORCE SHOULD DEFENDANT RESIDE, ATTEND SCHOOL
OR WORK IN ANY OTHER STATE OF THE UNITED STATES.

DEFENDANT IS ORDERED TO SUBMIT TO A DNA SPECIMAN COLLECTION PROCEDURE UNDER R.C. 2901.07.

SHERIFF ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE:
BLACK.

02/26/2016
CPDEJ 02/26/2016 14:57:29

_David T. Matia_

Judge Signature                    02/26/2016

MISC
02/26/2016

RECEIVED FOR FILING
02/26/2016 15:28:39
NAILAH K. BYRD, CLERK

Page 6 of 6

AUG 04 2016

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103258

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES W. DANIEL

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589487-A

**BEFORE:**  Celebrezze, J., Jones, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 4, 2016



EXHIBIT
28

CR14589487-A                95136387



-i-

## ATTORNEY FOR APPELLANT

Steve W. Canfil
55 Public Square, Suite 2100
Cleveland, Ohio 44113


## ATTORNEYS FOR APPELLEE

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Brett Hammond
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, James Daniel ("appellant"), brings this appeal challenging his convictions for rape, aggravated robbery, and kidnapping. Specifically, appellant argues that (1) the trial court erred by determining that he was competent to stand trial, (2) the trial court erred by failing to provide the jury with an attempted rape instruction, (3) the trial court erred by permitting Officer John Kazimer to testify about the credibility of one of the victims, and (4) the trial court erred by failing to hold a *Daubert* hearing on the issue of historical cell phone records. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant criminal proceedings arose from three separate rape and kidnapping incidents. The incidents occurred in Lakewood, Ohio and Cleveland, Ohio in August and September 2014. S.N. was the victim of the first incident. J.S. was the victim of the second incident. K.K. and J.B. were the victims of the third incident.

{¶3} The Cuyahoga County Grand Jury returned a 23-count indictment charging appellant with: (1) aggravated burglary, in violation of R.C. 2911.11(A)(1); (2) aggravated burglary, in violation of R.C. 2911.11(A)(2); (3) rape, in violation of R.C. 2907.02(A)(2); (4) kidnapping, in violation of R.C. 2905.01(A)(4); (5)-(7) rape, in violation of R.C. 2907.02(A)(2); (8) kidnapping, in

violation of R.C. 2905.01(A)(4); (9) aggravated robbery, in violation of R.C. 2911.01(A)(1); (10) kidnapping, in violation of R.C. 2905.01(A)(2); (11) having weapons while under disability, in violation of R.C. 2923.13(A)(2); (12) aggravated robbery, in violation of R.C. 2911.01(A)(1); (13) kidnapping, in violation of R.C. 2905.01(A)(2); (14) aggravated robbery, in violation of R.C. 2911.01(A)(1); (15) kidnapping, in violation of R.C. 2905.01(A)(2); (16) having weapons while under disability, in violation of R.C. 2923.13(A)(2); (17)-(18) rape, in violation of R.C. 2907.02(A)(2); (19) kidnapping, in violation of R.C. 2905.01(A)(4); (20) aggravated robbery, in violation of R.C. 2911.01(A)(1); (21) felonious assault, in violation of R.C. 2903.01(A)(2); (22) kidnapping, in violation of R.C. 2905.01(A)(2); and (23) having weapons while under disability, in violation of R.C. 2923.13(A)(2). Many of the counts carried sexually violent predator specifications, sexual motivation specifications, repeat violent offender specifications, and notice of prior conviction specifications. Counts 5 through 23 contained one- and three-year firearm specifications. At his arraignment, appellant pled not guilty to the charges in the indictment and the matter proceeded to trial on February 2, 2015.

{¶4} The trial court severed Counts 1 through 5 for separate disposition. The trial court subsequently ordered bifurcation of the notice of prior conviction, repeat violent offender, sexual motivation, and sexually violent predator specifications on Counts 5 through 8. The specifications would be tried to the

trial court. Furthermore, the trial court bifurcated the following specifications: the repeat violent offender and notice of prior conviction specifications on Counts 9 and 10; the notice of prior conviction and repeat violent offender specifications on Counts 12, 13, 14, and 15; the sexual motivation, sexually violent predator, repeat violent offender, and notice of prior conviction specifications on Counts 17, 18, and 19; and the notice of prior conviction and repeat violent offender specifications on Counts 20, 21, and 22.

{¶5} Counts 1 through 4 in the original indictment were amended and renumbered as Counts 20 through 23. Counts 5, 6, 7, 17, and 18 in the original indictment were renumbered as Counts 1, 2, 3, 11, and 12. Counts 8 and 19 in the original indictment were renumbered as Counts 4 and 13. Counts 9, 12, 14, and 20 in the original indictment were renumbered as Counts 5, 7, 9, and 14. Counts 10, 13, 15, and 22 in the original indictment were renumbered as Counts 6, 8, 10, and 16. Count 21 in the original indictment was renumbered as Count 15. Counts 11, 16, and 23 of the original indictment were not renumbered.

{¶6} On the first night of trial, appellant feigned a suicide attempt. He was found on the floor of his holding cell, in the fetal position, with a sheet wrapped around his neck. On the second day of trial, appellant spread feces on himself and his holding cell. Appellant had been diagnosed with antisocial personality disorder and bipolar disorder. After one of appellant's medications was discontinued on January 27, 2015, appellant began complaining of auditory

hallucinations. For all of these reasons, the trial court discharged the jurors — who had not yet been sworn in — continued appellant's trial, and referred appellant to the court psychiatric clinic for a competency evaluation.

{¶7} On February 7, 2015, appellant filed a pro se motion to disqualify counsel.

{¶8} Dr. Stephen Noffsinger evaluated appellant and diagnosed him with cannabis use disorder and malingering. Dr. Noffsinger determined that appellant suffers from antisocial personality disorder. Dr. Noffsinger indicated in his report that he was unable to form an opinion within a reasonable medical certainty whether appellant has the ability to understand the nature and objectives of the proceedings and is able to assist in his defense. Dr. Noffsinger explained, "while it is clear that [appellant] is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder." He recommended that the trial court order appellant to a 20-day inpatient competency to stand trial evaluation at Twin Valley Behavioral Healthcare ("Twin Valley") — a maximum security facility where appellant's behavior could be observed "round the clock."

{¶9} On March 9, 2015, the trial court held a hearing to review Dr. Noffsinger's report. The trial court noted that in appellant's pro se motion to disqualify counsel, he demonstrated intelligence and clarity of thought. The trial court attempted to discuss Dr. Noffsinger's report and recommendation with

appellant, but was unable to do so.  The trial court noted on the record that appellant "had his head down the whole time and refused to make any eye contact. And his responses have been inaudible and not understandable to the court. They are barely audible."  The trial court remanded appellant and ordered him to be transferred to Twin Valley for a 20-day observation period. Despite the trial court's order, appellant was not transferred to Twin Valley.

{¶10} On April 8, 2015, the trial court held another hearing to determine whether appellant was competent to proceed to trial.  The trial court noted that appellant had at least two prior felonies, and thus, is not a stranger to the criminal justice system.   The trial court acknowledged that in a prior presentence investigation report, appellant indicated that he did not suffer from any mental illness. The trial court further noted that because appellant neither cooperated with his counsel nor with the medical professionals who attempted to examine him, it is unclear whether any of the information that he is reporting is credible.

{¶11} The state argued that appellant was competent to stand trial.  In support of its position, the state presented the following information obtained from appellant's jail phone calls: (1) appellant was using another inmate's corrections office number; (2) appellant was discussing information about his trial, including jury selection, the facts against him, his attorney, witnesses, an alibi, and circumstantial evidence; (3) he asked his girlfriend to look up

symptoms of schizophrenia; (4) he called his brother so that he would not testify against him at trial; and (5) he reached out to Channel 5 and did an interview with a reporter.

{¶12} After hearing appellant's jail phone calls and reviewing Dr. Noffsinger's report, the trial court determined that appellant was competent to stand trial. Furthermore, the trial court stated that it was clear that appellant "is using the due process protections of the legal system to delay his inevitable trial." The matter proceeded to trial.

{¶13} At the close of trial, the jury found appellant guilty of rape with one- and three-year firearm specifications and sexual motivation specifications, as charged in the renumbered Counts 1, 2, 3, 11, and 12; kidnapping with one- and three-year firearm specifications and sexual motivation specifications, as charged in the renumbered Counts 4 and 13; aggravated robbery with one- and three-year firearm specifications, as charged in the renumbered Counts 5, 7, 9, and 14; kidnapping with one- and three-year firearm specifications, as charged in the renumbered Counts 6, 8, 10, and 16; and felonious assault with one- and three-year firearm specifications, as charged in the renumbered Count 15. Furthermore, the trial court found appellant guilty of the notice of prior conviction, repeat violent offender, and sexual violent predator specifications as charged in the renumbered Counts 1, 2, 3, 11, and 12; the notice of prior conviction, repeat violent offender, and sexual violent predator specifications as

charged in the renumbered Counts 4 and 13; the repeat violent offender and notice of prior conviction specifications as charged in the renumbered Counts 5, 7, 9, and 14; the notice of prior conviction and repeat violent offender specifications as charged in the renumbered Counts 6, 8, 10, and 16; the notice of prior conviction and repeat violent offender specifications as charged in the renumbered Count 15; and having weapons while under disability with the one- and three-year firearm specifications as charged in the original indictment as Counts 11, 16, and 23.  The trial court ordered appellant to be tried on the renumbered Counts 20 through 23, originally charged in the indictment as Counts 1 through 4, at a later date.

{¶14} Appellant changed his not guilty plea and entered a plea of guilty to the renumbered Counts 20 through 23.  The trial court accepted appellant's guilty plea.

{¶15} The trial court sentenced appellant to a prison term of 144 years to life.

{¶16} Appellant filed the instant appeal assigning four errors for review:

I. The trial court erred and denied appellant his constitutional right to due process when it declared that he was competent to stand trial in the absence of any medical opinion to a reasonable degree of medical certainty to support that decision.

II. The trial court's failure to provide the jury with an instruction on attempt as to the charge of rape constituted a violation of appellant's right to a fair trial and plain error.

III. The trial court committed plain error in permitting a state's witness to vouch for the credibility of one of the alleged victims.

IV. The trial court deprived appellant of his constitutional rights to due process and a fair trial in failing to conduct a *Daubert* hearing concerning whether the analysis of historical cell phone records to determine location of an individual's phone is scientifically reliable, as requested by appellant, and simply admitting such testimony at trial.

## II. Law and Analysis

### A. Competency

{¶ 17} In his first assignment of error, appellant argues that the trial court erred by finding him competent to stand trial because he was not evaluated at Twin Valley — as ordered by the trial court and recommended by Dr. Noffsinger — and the trial court's finding was not supported by any medical evidence.

{¶ 18} A defendant who is legally incompetent may not stand trial. *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995), citing *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct 896, 43 L.Ed.2d 103 (1975). The conviction of an accused while he is not legally competent to stand trial violates due process of law. *See State v. Rubenstein*, 40 Ohio App.3d 57, 60, 531 N.E.2d 732 (8th Dist.1987).

{¶ 19} The test for determining whether a defendant is competent to stand trial is "'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'"

*Berry* at 359, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). R.C. 2945.37(G) provides that a defendant is presumed to be competent to stand trial. The burden is on the defendant to prove by a preponderance of the evidence that he is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28.

{¶20} A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33; *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986). Deference on these issues should be given "to those who see and hear what goes on in the courtroom." *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999).

{¶21} In the instant matter, it is undisputed that the issue of appellant's competency to stand trial was raised in the trial court. After appellant feigned a suicide attempt and smeared feces on himself and his holding cell, the trial court referred appellant to the court psychiatric clinic for a competency evaluation. Dr. Noffsinger evaluated appellant and submitted his report to the trial court.

{¶22} The trial court held two hearings to address the issue of appellant's competency to stand trial. First, the trial court held a hearing to review Dr. Noffsinger's report and recommendation. The trial court reviewed appellant's

pro se motion to disqualify counsel with defense counsel in open court and acknowledged that appellant demonstrated intelligence and clarity of thought in the motion. Furthermore, the trial court attempted to discuss Dr. Noffsinger's report and recommendation and the motion to disqualify counsel with appellant. When appellant refused to answer the trial court's questions, the trial court noted that appellant's "command of the English language was substantially clearer in the motion [to disqualify.]" The trial court ordered appellant to be transferred to Twin Valley for an evaluation. For reasons unclear to this court, appellant was neither transferred to nor evaluated by Twin Valley. Second, after learning that appellant was not transferred to Twin Valley for an evaluation, the trial court held another hearing to evaluate appellant's competency to proceed to trial. The state presented evidence of appellant's jail phone calls at the competency hearing. After hearing the state's evidence, the trial court concluded that appellant was competent to stand trial.

{¶23} Appellant emphasizes that Dr. Noffsinger was unable to form an opinion within a reasonable medical certainty about his ability to understand the nature and objectives of the proceedings and assist in his defense. Furthermore, appellant argues that because he was not evaluated at Twin Valley, there was neither a "definitive" psychiatric evaluation nor a determination about his competency. Appellant contends that the trial court's competency finding was not supported by any medical evidence and was based

solely on the testimony of a prosecutor's office investigator regarding appellant's jail phone calls. We disagree.

{¶24} After reviewing the record, we find that the trial court complied with R.C. 2945.37 in determining whether appellant was competent to stand trial. Furthermore, we find that the trial court's competency determination is supported by reliable and credible evidence. The trial court's finding was based on (1) Dr. Noffsinger's report, (2) the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him, and the trial court during the first competency hearing, (4) the state's evidence of appellant's jail phone calls and the testimony of the prosecutor's office investigator, and (5) the trial court's own observations of appellant. Thus, reliable and credible evidence supports the trial court's decision, and the trial court did not abuse its discretion in finding that appellant was competent to stand trial.

{¶25} Appellant's outrageous behavior, as displayed by the feigned suicide attempt and the feces incident, does not undermine the trial court's finding of his competence to stand trial. *Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, at ¶ 25-29. In *State v. Block*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), the Ohio Supreme Court noted that "[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable

of understanding the charges against him and of assisting his counsel." *Id.* at 110.  In light of the aptitude and intuition that appellant demonstrated in his motion to disqualify counsel and the jail phone calls during which he discussed his case in detail, the trial court reasonably determined that despite his outlandish conduct, appellant had the present ability to consult with his lawyer and a sufficient understanding of the proceedings against him.

{¶26} Accordingly, appellant's first assignment of error is overruled.

## B. Attempted Rape Instruction

{¶27} In his second assignment of error, appellant argues that the trial court's failure to provide an attempted rape instruction to the jury violated his constitutional right to a fair trial.  Specifically, appellant argues that he was entitled to an instruction on the attempt statute, R.C. 2923.02, for the offense of anally raping S.N. because she provided conflicting accounts of the incident.

{¶28} We initially note that defense counsel neither requested an attempted rape jury instruction nor objected to the jury instructions in the trial court. Accordingly, appellant has waived all but plain error. *State v. Edgerson,* 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15.

{¶29} Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court.  However, an error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different.  *State*

*v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.*

{¶30} This court reviews a trial court's decision on jury instructions for an abuse of discretion. *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 33. Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

{¶31} In the instant matter, appellant was charged with anally raping S.N. in violation of R.C. 2907.02. R.C. 2907.02(A)(2) states, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined in R.C. 2907.01(A) as

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶32} The crime of attempted rape is a lesser included offense of rape. *See State v. Williams*, 74 Ohio St.3d 569, 578, 660 N.E.2d 724 (1996). Ohio's general attempt statute states, "[n]o person, purposely or knowingly, * * * shall engage

in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). The fact that an offense is a lesser included one of a greater offense does not automatically entitle a defendant to a lesser included offense instruction. *State v. Smith*, 8th Dist. Cuyahoga No. 91715, 2010-Ohio-1655, ¶ 25.

{¶33} A jury instruction on a lesser included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *Id.*, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. An instruction is not warranted when "some evidence" on the lesser included offense is presented. *State v. Shane*, 63 Ohio St.3d 630, 633, 590 N.E.2d 272 (1992). "To require an instruction * * * every time some evidence, however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Id.* at 633.

{¶34} Appellant argues that he was entitled to a lesser included instruction on attempted rape because S.N. provided conflicting accounts of whether she had been anally penetrated.

{¶35} S.N. testified that her normal morning routine consisted of walking, running, and stopping at a coffee shop before going to work. S.N. testified that she was attacked during her morning routine by an unknown male on

September 2, 2014. She testified that the attacker struck her head, knocked her to the ground, and held a gun to her head. She testified that her attacker pulled out a condom and told her that her options were to engage in oral, anal, or vaginal sex. She testified that her attacker pulled her hair, pushed her head down on his penis, and forced his penis into her mouth. She testified that her attacker continued to strike her with his fist and his gun. She testified that her attacker proceeded to push her against a wall, pull down her shorts, and penetrate her anally with his penis. She testified that she does not believe that her attacker "got all the way in[,]" and that it "ended pretty quickly." She testified that her attacker took her iPod and left the scene. She testified that she ran down Clifton Boulevard and informed a man at a bus stop that she had just been attacked.

{¶36} Appellant contends that S.N. reported that her attacker "tried penetrating [her] from behind, barely penetrated, if anything?" However, S.N. explained, "No, not 'if anything.' He penetrated. He didn't get all the way inside." S.N. further clarified, "He stopped before he was able to fully penetrate me anally[.]"

{¶37} In addition to S.N.'s testimony, the state presented the testimony of the following witnesses who interacted with S.N. following her attack: (1) the man at the bus stop, (2) Lucas Hastings, (3) Elizabeth Booth, and (4) Detective Michael Moctezuma.

{¶38} First, the man at the bus stop who S.N. informed about the attack testified that S.N. was "frantic" and was "hollering for help." He testified that S.N. told him that somebody "hit her in the eye" and "had beat her up." He testified that he told S.N. to sit down and he called 911. He testified that S.N. "was crying, she was upset. She was really upset." Appellant emphasizes that the man at the bus stop testified that S.N. "seemed only 'upset.'"

{¶39} Second, Lucas Hastings, an emergency medical technician ("EMT") with the city of Cleveland, testified that he responded to the call regarding S.N.'s attack. Hastings testified that he spoke with S.N. after responding to the scene. Hastings testified that S.N. pulled him to the side of the ambulance, away from the crowd, and indicated that although she told people in the crowd that she had been attacked, she had actually been raped and robbed as well. Hastings testified that S.N. said that her eye was hurt and that she had been struck in the face with a gun. Hastings testified that S.N. seemed "kind of nervous," appeared to be in shock, and "was kind of at a loss of words." Appellant emphasizes that Hastings's report noted that S.N.'s attacker only "tried to have sex with her." However, Hastings's report also noted that S.N.'s attacker raped her and used a condom.

{¶40} Third, Elizabeth Booth, a registered nurse at MetroHealth Medical Center ("MetroHealth") in Cleveland, Ohio, testified that she treated S.N. on September 2, 2014. Booth testified that she provided S.N. with medications to

treat sexually transmitted diseases and HIV that she possibly could have obtained and pregnancy. Booth testified that she performed a rape kit examination on S.N. Booth testified that S.N. told her that she was forced to perform oral sex on her attacker and that her attacker "tr[ied] to penetrate her anally, which he was able to partially." Booth testified that S.N. informed her that her attacker wore a condom. Booth testified that S.N.'s demeanor throughout the examination was "mixed," explaining:

> [S.N. was] [v]ery angry that [the attack] happened to her. She was upset. Said she took precautions, she wasn't listening to music, she was paying attention to her surroundings, this came out of nowhere. She thought she was in a nice area, that she was safe, so she was very upset that happened to her. Then she was worried about possible injuries to her face that she had.

Booth read a physician's narrative of the incident, based on S.N.'s description, from S.N.'s medical records. Appellant emphasizes that the narrative provided, in relevant part, "assailant attempted to rape [S.N.] [S.N.] states that [her attacker] put on a condom and tried penetrating her from behind, but probably only briefly penetrated her anus, if anything." However, the narrative also noted that S.N. told the nurse that she had been anally penetrated, and that S.N. clarified that the penetration was partial.

{¶41} Fourth, Detective Michael Moctezuma of the Cleveland Police Department testified that he was working in the sex crimes unit on September 2, 2014. Detective Moctezuma testified that S.N. provided him with a brief

statement of the attack on the morning of September 2, 2014, at MetroHealth. He testified that he subsequently conducted a lengthy interview of S.N. on September 4, 2014, at the sex crimes unit. He testified that he took notes during this interview. Appellant emphasizes that Detective Moctezuma testified that the attacker put on a condom and attempted to anally penetrate S.N. However, Detective Moctezuma testified that S.N. told him that her attacker wore a condom during the anal sex.

{¶42} After reviewing the record and the testimony regarding S.N.'s attack, we find that the trial court's failure to provide an attempted rape instruction did not rise to the level of plain error. S.N. consistently testified that appellant anally penetrated her. Furthermore, the witnesses who interacted with S.N. after the attack consistently testified that S.N. reported that she had been anally raped during the attack. This testimony could not have supported both an acquittal of rape and a conviction on the lesser-included offense of attempted rape. The jury could not have inferred anything less than penetration from S.N.'s testimony that appellant anally penetrated her with his penis. Under the R.C. 2907.01(A) definition of sexual conduct, "[p]enetration, *however slight*, is sufficient to complete vaginal or anal intercourse." (Emphasis added.) Thus, even though S.N. testified that the penetration was only "partial," and that appellant was not able to fully penetrate her, the attempted rape instruction was not warranted by the evidence.

{¶43} Finally, we note that an attempted rape instruction is not consistent with appellant's theory of the case at trial.  Appellant's theory of the case at trial was that other perpetrators may have been involved in the attacks.  During closing arguments, appellant's counsel suggested that the state's theory of the case — that a single man attacked S.N. — was wrong.

{¶44} "In a case in which there is a conflict in the testimony and the defendant has a reasonable hope that the jury will believe his evidence and return a verdict of not guilty, it is a matter of trial strategy whether to seek to have the jury instructed concerning a lesser offense, or not to seek such an instruction and to hope for an acquittal." *State v. Catlin*, 56 Ohio App.3d 75, 78-79, 564 N.E.2d 750 (2d Dist.1990), citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).  In *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, this court held that defense counsel's failure to request jury instructions on the lesser-included offenses of voluntary manslaughter and aggravated assault did not constitute ineffective assistance because (1) the trial testimony did not support a request for the instructions, and (2) counsel chose to pursue a self-defense theory. *Id.* at ¶ 17.

{¶45} In the instant matter, an attempted rape jury instruction would have been inconsistent with both the trial testimony and appellant's theory of defense.  Appellant's decision to challenge the state's theory that a single man attacked S.N., rather than presenting the theory that appellant only committed

the lesser-included offense of attempted rape, was a reasonable trial strategy. Thus, appellant cannot demonstrate that he was prejudiced by the trial court's failure to provide the jury with an attempted rape instruction.

{¶46} Based on the foregoing analysis, the trial court neither abused its discretion nor committed plain error by failing to provide an attempted rape jury instruction. Appellant's second assignment of error is overruled.

## C. Officer Kazimer's Testimony

{¶47} In his third assignment of error, appellant argues that the trial court committed plain error by permitting Cleveland police officer John Kazimer to "vouch for the credibility of one of the alleged victims." Appellant did not object to Officer Kazimer's trial testimony. Thus, we review this claim for plain error.

{¶48} It is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Pizzillo*, 7th Dist. Carroll No. 746, 2002 Ohio App. LEXIS 162, 15 (Jan. 17, 2002), citing *Boston* at 129.

{¶49} In the instant matter, the testimony in question occurred when Officer Kazimer was discussing his post-attack interview of S.N. When asked

why he was trying to gather information from S.N. during the interview, Officer Kazimer stated, "I had every reason to believe that [S.N.] was making true statements about a crime that had been committed against her in the city where I am sworn to protect and uphold the law." Appellant argues that Officer Kazimer's statement infringed upon the jury's role of making veracity and credibility determinations.

{¶50} The state argues that Officer Kazimer's statement was not impermissible because he was testifying about S.N.'s post-attack demeanor and behavior — not about S.N.'s credibility or the reliability or believability of S.N.'s statements. We agree.

{¶51} When read in the context of Officer Kazimer's entire testimony, we do not find that he was offering an opinion as to the truthfulness of S.N.'s accusations. Instead, Officer Kazimer was essentially explaining that, based on his experience, S.N.'s demeanor during the interview was consistent with the demeanor of a person who had just been sexually assaulted. Prior to the disputed statement, Officer Kazimer testified that S.N. appeared to be angry and frustrated during the interview. Officer Kazimer testified, "[s]he was angry at what had happened to her," and, "she kept saying she was sorry, sorry to waste our time * * *. She just, her demeanor, kind of sitting forward, just like 'I can't believe this happened,' frustration."

{¶52} Appellant further argues that Officer Kazimer's statement about S.N. was even more prejudicial because he is a police officer.  In support of his argument, appellant directs this court to *State v. Huff*, 145 Ohio App.3d 555, 763 N.E.2d 695 (1st Dist.2001).

{¶53} In *Huff*, a detective testified at trial about the victims' credibility. *Id.* at 561.  The detective testified that he "absolutely" found that the victims were credible and that they were telling the truth.  *Id.*  On appeal, the First District described the case as a "credibility contest between the victims and their identification of Huff as the shooter and Huff and his alibi witness." *Id.*  The court held that the detective's opinion testimony "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." *Id.*, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).  Furthermore, the court found that the fact that the "vouching [witness]" was a police officer further exacerbated the problem.  *Id.*  The court explained, "[j]urors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their previous experiences with other cases." *Id.*, quoting *State v. Miller*, 2d Dist. Montgomery No. 18102, 2001 Ohio App. LEXIS 230, 14 (Jan. 26, 2001).

{¶54} In *Miller*, two police officers offered opinions regarding the truth of the victim's accusations. The Second District held that the officers' testimony violated *Boston*:

> their testimonies declared that [the victim's] statements were truthful and that [the defendant] had committed the alleged acts against her. As such, [the officers] infringed upon the role of the jury which, as the fact finder, was charged with assessing the veracity and credibility of [the victim and the defendant].

*Id.* at 15. Although, the court found that it was improper to admit the officers' testimony regarding the truthfulness of the victim, the court held that the admission was harmless error in light of the independent evidence of the crimes. *Id.* at 18-19.

{¶55} In *Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220, the three-year-old sexual assault victim was unavailable to testify at trial. The issue before the Ohio Supreme Court was whether the victim-child's doctor and psychologist could testify about the child's out-of-court statements regarding the abuse. The court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus. The court emphasized that the admission of such testimony was not only improper, but was egregious, prejudicial, and constituted reversible error. *Id.* at 128.

{¶56} In the instant matter, unlike *Boston*, S.N. testified before the jury at trial. Furthermore, unlike *Huff* and *Miller*, we find that Officer Kazimer was testifying about S.N.'s post-attack demeanor and behavior — not about her

credibility or the truthfulness of her testimony or accusations. Thus, even though the statement in question was made by a police officer, we cannot say that it was inadmissible.

{¶57} Assuming, arguendo, that the trial court erred by admitting Officer Kazimer's statement, appellant cannot demonstrate that but for the error, the outcome of the proceedings would have been different. S.N. testified before Officer Kazimer. Accordingly, before the jury heard the statement in question, the jury had an opportunity to hear S.N.'s testimony, view her demeanor, and assess her credibility.

{¶58} Based on the foregoing analysis, we cannot say that the trial court committed plain error by admitting Officer Kazimer's statement. Appellant's third assignment of error is overruled.

### D. Wiles's Testimony

{¶59} In his fourth assignment of error, appellant argues that the trial court's failure to hold a *Daubert* hearing to determine the reliability of Todd Wiles's testimony regarding cell phone sector data deprived him of his constitutional rights to due process and a fair trial. Specifically, appellant contends that Wiles's testimony was inadmissible under Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), because interpreting cell phone sector data is not within a

layperson's knowledge or experience, and the data and methodology that Wiles's relied upon in rendering his opinion is unreliable.

{¶60} We initially note that appellant's reliance on Evid.R. 702 and *Daubert* is misplaced. The trial court did not recognize Wiles as an expert witness. Furthermore, we note that the parties stipulated that the information in the cell phone records provided by appellant's carrier was authentic.

{¶61} The admission or exclusion of evidence is a matter left to the trial court's sound discretion and will not be disturbed absent an abuse of discretion. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 40. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶62} Wiles is a civilian crime analyst for the Cleveland Police Department. Wiles has worked as a crime analyst for ten years: he worked in Jacksonville, Florida for four years and was hired by the Cleveland Police Department in 2009. Wiles is currently a "crime analyst 3." He explained that his unit is in charge of "analyzing data for the police department in computer databases" and "doing all the geographic information system mapping for the police department." Wiles has a bachelor's and master's degree in criminal justice and computer science. Wiles testified that he has worked on "at least a hundred cell phone cases" over the past five years. Wiles testified in detail about

the process by which he determines the location from which a person placed a phone call by reviewing the person's cell phone records.

{¶63} In the instant matter, the state introduced Wiles's testimony for two purposes: (1) to show that appellant was in the area where the Cleveland rape was committed, and (2) to demonstrate how investigators ultimately discovered appellant's identity in this case through his brother's cell phone. Wiles explained that he takes the information from a person's cell phone records and creates a map. Wiles testified that the map allows him to see "where a person was when they were completing cellular telephone calls." Wiles testified that he used this process to generate a map of the location of appellant's phone based on the phone records that he received. During trial, defense counsel objected to Wiles's testimony, arguing that his testimony was not based on proven scientific methods, his methods have not been scientifically verified, and that his testimony is speculative at best.

{¶64} The state opposed defense counsel's objection, arguing that Wiles's testimony should not be subjected to a *Daubert* analysis because the state was not putting forth any expert testimony and the cell phone technology that Wiles's testified about is well established. The state argued that although Wiles has a high level of expertise, a high degree of expertise is not required to generate a map based on a person's cell phone records.

{¶65} The trial court was not inclined to subject Wiles's testimony to a *Daubert* analysis:

> cell phone technology, while relatively new in the history of mankind, has been around for 30 years now and brings with it cell phone towers and triangulation, and the matters have become common scientifically. At first glance, the [c]ourt does not look at this as some new scientific area that needs to be tested using *Daubert* principles.

Accordingly, the trial court overruled defense counsel's objection to Wiles's testimony and noted that the defense would have "free reign" to cross-examine him.

{¶66} Appellant directs this court to *United States v. Evans*, 892 F.Supp.2d 949 (N.D.Ill.2012). In *Evans*, the prosecution sought to call an FBI special agent to testify about "the operation of cellular networks and how to use historical cell site data to determine the general location of a cell phone at the time of a particular call." *Id.* at 951. The agent used the "granulization" theory and proposed to testify that phone calls placed from the defendant's cell phone could have come from the building where the victim was held for ransom. *Id.* The trial court held an evidentiary hearing, pursuant to Evid.R. 702 and *Daubert*, to determine whether the proposed evidence and analysis were admissible. In determining the admissibility of the proposed testimony, the trial court distinguished lay witness testimony from expert testimony:

> Lay witness testimony is admissible under Rule 701 when it is "rationally based on [a] witness's perception" or based on "a process

of reasoning familiar in everyday life." * * * Understanding how the aforementioned factors affect a cell phone's ability to connect a particular tower, however, cannot be said to be within the perception of the untrained layman. Rather, this type of understanding demands "scientific, technical, or other specialized knowledge" of cellular networks and "results from a process of reasoning which can be mastered only by specialists in the field." * * * [The special agent] may therefore provide lay opinion testimony concerning (1) the call data records obtained for [defendant's] phone and (2) the location of cell towers used by [defendant's] phone in relation to other locations relevant to the crime; but if [the agent] wishes to testify concerning (1) how cellular networks operate, i.e., the process by which a cell phone connects to a given tower or (2) granulization theory he must first meet the demands of Rule 702 and *Daubert*.

*Id.* at 953-954.

{¶ 67} The trial court concluded that the special agent is qualified to testify as an expert regarding the operation of cellular networks and the "granulization" theory. *Id.* at 955. The court further concluded that the agent's testimony on the subject is reliable. *Id.* However, the court held that the agent's "granulization" theory was not reliable because (1) the agent did not account for the factors that can affect whether a cell phone connects to the closest tower or is rerouted to another tower, and (2) the theory has not been subject to scientific testing or formal peer review, and has not gained general acceptance in the scientific community. *Id.* at 956.

{¶ 68} In *Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, a criminal intelligence analyst testified about a map she created based on information from the defendant's cell phone records. *Id.* at ¶ 37. The analyst

identified the cellular towers on the map that were "hit" by the defendant's cell phone. *Id.* On appeal, this court held that the trial court did not abuse its discretion by allowing the analyst's testimony because "a layperson could compare the locations depicted on the [phone] records to the corresponding location on the [analyst's] site map." *Id.* at ¶ 44, citing *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 65.

{¶69} In the instant matter, Wiles's testimony concerned (1) appellant's cell phone records, and (2) the location of the cellular towers used by appellant's phone in relation to other locations relevant to the crime. As the *Evans* and *Dunn* courts explained, this testimony is lay opinion testimony that does not require "specialized knowledge, skill, experience, training, or education" regarding cellular networks. Evid.R. 702(B). Thus, Wiles's testimony is not subject to an Evid.R. 702 and *Daubert* analysis.

{¶70} On cross-examination, Wiles testified about the potential problems with estimating a cell phone's location based on phone records. Wiles testified that cell phones usually connect to the closest cellular tower and that there are "small anomalies that would cause [the phone] to [connect] to a different tower." Wiles explained that a phone call can be rerouted to a different cellular tower if there is bad weather, damage to a cellular tower, the cellular tower is at full capacity, or if a cell phone is "roaming" or has no signal. These potential problems go to the weight of Wiles's testimony — not to the reliability or

admissibility of the testimony. *See State v. White*, 2d Dist. Montgomery No. 26093, 2015-Ohio-3512, ¶ 28.

{¶71} The *Evans* court explained that testimony concerning "how cellular networks operate" or "the process by which a cell phone connects to a given tower" is not within the knowledge or experience of a lay witness. *Evans* at 954. Although Wiles testified about these matters, his testimony was in direct response to defense counsel's inquiries on cross-examination. The doctrine of invited error holds that a litigant may not "take advantage of an error which he himself invited or induced." *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000). Accordingly, even if Wiles's testimony on cross-examination went beyond a lay witness's knowledge and experience, appellant cannot now complain of the testimony that defense counsel elicited at trial.

{¶72} Based on the foregoing analysis, we cannot say that the trial court abused its discretion by admitting Wiles's testimony. Appellant's fourth assignment of error is overruled.

### III. Conclusion

{¶73} After a thorough review of the record and law, we affirm the trial court's judgment. First, the trial court complied with R.C. 2945.37 in determining whether appellant was competent to stand trial, and trial court's competency determination is supported by reliable and credible evidence. Second, the trial court neither abused its discretion nor committed plain error

by failing to provide an attempted rape jury instruction.  An attempted rape jury instruction would have been inconsistent with both the trial testimony and appellant's theory of defense.  Third, the trial court did not commit plain error by admitting Officer Kazimer's statement.  When read in the context of Officer Kazimer's entire testimony, the statement in question pertained to S.N.'s post-attack demeanor and behavior, not her credibility or the truthfulness of her testimony or accusations.  Furthermore, the jury had the opportunity to hear S.N.'s testimony and assess her credibility prior to Officer Kazimer's statement.  Thus, appellant cannot demonstrate that but for the admission of the statement, the outcome of the proceedings would have been different.  Fourth, the trial court did not abuse its discretion by admitting Wiles's testimony.  The trial court was not required to conduct an Evid.R. 702 and *Daubert* analysis before admitting Wiles's testimony regarding appellant's cell phone records and the location of the cellular towers used by appellant's phone.

{¶74} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FILED AND JOURNALIZED
PER APP.R. 22(C)

AUG 0 4 2016

CUYAHOGA COUNTY CLERK
OF THE COURT OF APPEALS
By _____ Deputy

FRANK D. CELEBREZZE, JR., JUDGE

LARRY A. JONES, SR., A.J., CONCURS;
MARY J. BOYLE, J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

MARY J. BOYLE, J., DISSENTING:

{¶ 75} I respectfully dissent.

{¶ 76} R.C. 2945.37 protects a defendant's right not to be tried or convicted while incompetent, which is a fundamental due process right. *State v. Were*, 94 Ohio St.3d 173, 174, 2002-Ohio-481, 761 N.E.2d 591.

{¶ 77} This case presents a unique set of facts. Here, after it became clear that Daniel's competency was at issue, the trial court properly referred Daniel for a competency evaluation and then held a hearing after receiving the expert report of Dr. Stephen Noffsinger, psychiatrist with the court psychiatric clinic. At the hearing on March 9, 2015, the parties stipulated to the findings contained in Dr. Noffsinger's report, which recommended that Daniel should "be hospitalized for a 20-day inpatient competence to stand trial evaluation at the maximum security facility at Twin Valley Behavioral Healthcare in Columbus, Ohio." The trial court accepted the parties' stipulations and accordingly ordered

Daniel to Twin Valley Behavioral Healthcare for an inpatient competency evaluation pursuant to R.C. 2945.371(C) and (D).

{¶78} As the majority notes, for reasons unknown to the court, this order was not followed. But rather than bring this error to the trial court's attention, the state appears to have seized the opportunity to collect further evidence as to Daniel's competency in lieu of the opinions of trained experts at Twin Valley Behavioral Healthcare. I find that Daniel's "fundamental due process rights" were violated when the trial court vacated its earlier order to transport Daniel for further observation and to obtain an inpatient competency evaluation. The record does not support the trial court's decision to vacate this order. Given the stakes at issue and the parties' stipulation to Dr. Noffsinger's report, I do not believe that the process should have been cut short simply to expedite the trial.

{¶79} I also do not find that the telephone calls recorded and offered into evidence by the state constitute competent, credible evidence to support the trial court's finding. While both the state and trial court found it significant that Daniel used another inmate's pin number to make these calls in an attempt to avoid detection, I do not. The substance of the telephone calls still raises concerns with Daniel's competency. As noted by defense counsel, Daniel expressed confusion during one of the telephone calls and also made incorrect statements about the legal proceedings — all of which supports the defense's

position that Daniel is "not fully competent, not fully capable of assisting" in his own defense.

{¶80} Moreover, the complexity of mental illness is not always apparent to untrained professionals. As this writer has previously recognized, "'One can be intelligent * * * yet still have underlying psychiatric and emotional problems which cause incompetence. Simply having the capacity for rational understanding in the abstract is not sufficient if psychiatric or emotional problems prevent applying rational faculties to the problem.'" *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 113 (dissenting opinion), quoting James A. Cohen, *The Attorney-Client Privilege, Ethical Rules, and the Impaired Criminal Defendant*, U.Miami L.Rev. 529, 543 (1998).

{¶81} While I appreciate the discretion afforded the trial court in deciding whether a defendant is competent to stand trial, I find that the trial court abused its discretion in failing to enforce its previously issued order. The hearing held on March 9, 2015, demonstrated that Daniel's competency was clearly at issue. As noted in Dr. Noffsinger's report and stipulated by all the parties, more testing by trained experts was needed to ascertain whether Daniel was competent to stand trial. The state's evidence of Daniel's telephone calls does not sufficiently fill in this gap to support the trial court's finding of competency; nor did it justify shortcutting the process, especially given the due process rights at issue.

{¶82} Accordingly, I would sustain the first assignment of error and remand for further proceedings.

Supreme Court of Ohio Clerk of Court - Filed September 19, 2016 - Case No. 2016-1377

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | On Appeal from the |
| -vs- | : | Cuyahoga County Court of Appeals, Eighth |
| JAMES W. DANIEL | : | Appellate District Court of Appeals |
| Appellant | : | |
| | | CA: 103258 |

## NOTICE OF APPEAL OF APPELLANT JESUS A. VEGA

ROBERT L. TOBIK, ESQ.
Cuyahoga County Public Defender
BY: ERIKA B. CUNLIFFE, 0074480
Assistant Public Defender
1200 West Third Street
100 Lakeside Place
Cleveland, OH 44113-1569
(216) 443-7583
ecunliffe@cuyahogacounty.us

COUNSEL FOR APPELLANT, JAMES W. DANIEL

TIMOTHY J. McGINTY, ESQ.
Cuyahoga County Prosecutor

BRETT HAMMOND, 0091757
The Justice Center – 9th Floor
1200 Ontario Street
Cleveland, OH  44113
(216) 443-7800

COUNSEL FOR APPELLEE, THE STATE OF OHIO



EXHIBIT
29

<u>Notice of Appeal of Appellant JAMES W. DANIEL</u>

Appellant JAMES DANIEL hereby gives notice of appeal to the Supreme Court of Ohio

from the judgment of the Cuyahoga County Court of Appeals, Eighth Appellate District, entered

in Court of Appeals Case No. 103258, and journalized on August 4, 2016.

This felony case raises substantial constitutional questions and is one of public and great

general interest.

Respectfully submitted,

*/s/ Erika B. Cunliffe*

ERIKA B. CUNLIFFE
Assistant Public Defender
Cuyahoga County
COUNSEL FOR APPELLANT

**SERVICE**

A copy of the foregoing was sent via electronic mail to Hon. Timothy J. McGinty,

County Prosecutor, Office of the Cuyahoga County Prosecutor and Assistant County Prosecutor

Brett Hammond, at the Justice Center, 9[h] Floor, 1200 Ontario Street. Cleveland, Ohio 44113,or

his duly authorized assistant, this 19th day of September,  2016.

Respectfully submitted,

*/s/ Erika B. Cunliffe*

ERIKA B. CUNLIFFE
Assistant Public Defender

Supreme Court of Ohio Clerk of Court - Filed September 19, 2016 - Case No. 2016-1377

## IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | On Appeal from the Cuyahoga County Court of |
| Plaintiff-Appellee | : | Appeals, Eighth Appellate District |
| -vs- | : | |
| JAMES W. DANIEL | : | Court of Appeals Case No. 103258 |
| Defendant-Appellant | : | |

---

## MEMORANDUM IN SUPPORT OF JURISDICTION
## OF APPELLANT JAMES W. DANIEL

---

ROBERT L. TOBIK, ESQ.
Cuyahoga County Public Defender

BY: ERIKA CUNLIFFE, 0074480
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH 44113-1021
(216) 443-7583—Office
ecunliffe@cuyahogacounty.us

COUNSEL FOR APPELLANT, JAMES W. DANIEL

TIMOTHY J. McGINTY, ESQ.
Cuyahoga County Prosecutor

BY: BRETT HAMMOND, 0091757
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, OH 44113
(216) 443-7730

COUNSEL FOR APPELLEE, STATE OF OHIO


EXHIBIT
30

## **TABLE OF CONTENTS**

PAGES

WHY THIS CASE INVOLVES A SUBSTANTIAL QUESTION OF CONSTITUTIONAL
DIMENSION OR A MATTER OF GREAT PUBLIC OR GENERAL INTEREST ....................2

STATEMENT OF THE CASE AND FACTS ............................................................................3

ARGUMENT.............................................................................................................................6

CONCLUSION........................................................................................................................13

CERTIFICATE OF SERVICE ...............................................................................................13

1

## WHY THIS IS A CASE OF GREAT GENERAL INTEREST
## INVOLVING SUBSTANTIAL CONSTITUTIONAL QUESTIONS

As the judge who dissented from the Eighth District's opinion affirming Mr. Daniel's conviction and 144 years-life prison sentence made clear, the right to be competent when you are on trial for your very life is fundamental.  There were genuine questions about Mr. Daniel's ability to understand the nature of the charges against him and cooperate with his attorney in mounting a defense to them.  A mental health professional advised the trial court that Mr. Daniel needed to be evaluated over a 20-day period in a maximum security hospital. But when that did not occur as quickly at the trial court had anticipated, the court simply skipped the evaluation and found on its own that, despite significant evidence to the contrary, Mr. Daniel was indeed competent to proceed to trial. The court's impatience with the length of time a case takes before commencement of trial should never trump fundamental constitutional protections, and, however serious the charges, this case is no exception.

With respect to Mr. Daniel's second proposition of law, on September 6, 2016, Attorney General Loretta Lynch issued a memorandum to the departments over which her Office has control, in response to recommendations made by the National Commission on Forensic Science (NCFS).  That memorandum acknowledged the concerns that drove NCFS to issue the recommendations – in particular the idea that law enforcement has overstated the scientific value and reliability of the "forensic" evidence used in prosecuting criminal cases.

In addition to establishing a code of professional responsibility for the practice of forensic science, the memorandum directs these various departments to put in place new quality control measures, while also enhancing the standards and criteria for what constitutes scientific evidence. The cell phone data locator testimony introduced and relied upon by the prosecution to place Mr. Daniel in the vicinity of the alleged incidents lacks any scientific or logarithmic

2

support. Yet the prosecution put it before the jury as if were scientifically based gospel truth. The trial court allowed that to happen, and denied the defense even the opportunity to challenge its scientific legitimacy by way of a *Daubert* hearing. That was not fair and it should give rise to concerns about the case's outcome.

These two issues have far-reaching implications for criminal prosecutions throughout this state. Moreover, at least with respect to the cell phone data testimony, the trial court's refusal to grant a *Daubert* hearing to the vet the science allegedly underpinning the conclusions the state's purported expert reached, have broad application in civil litigation as well.  Accordingly, neither of the issues before this Court is limited to this case, and both will matter to litigants across this state.  This court should grant jurisdiction to hear, and then adopt Mr. Daniel's propositions of law.

## STATEMENT OF THE CASE AND FACTS

On September 26, 2014, a Cuyahoga County grand jury issued an indictment charging Defendant-Appellant James W. Daniel with multiple counts of aggravated burglary, rape, kidnapping, aggravated robbery, having a weapon while under disability ("HWWUD"), and felonious assault. Many of the counts carried sexually violent predator specifications ("SVPs"), sexual motivation ("SM") specifications, repeat violent offender specifications ("RVOs"), notices of prior convictions ("NPCs"), and/or one- and three-year firearm specifications.  The charges stemmed from three separate events. Daniel pleaded not guilty.

The matter was set for trial.  On February 3, 2015, during jury voir dire the trial court indicated concern regarding Mr. Daniel's appearance, asking counsel if his was "okay." Counsel advised the court that Mr. Daniel had attempted suicide the night before, was not taking his anti-psychotic medications, and was "hearing voices." Rather than stop the proceedings, the court

3

ordered voir dire to continue. During the lunch break, the trial court learned that Daniel had been prescribed 500 milligrams of Depakote twice a day and Lithium and Risperdal at night, as "mood stabilizers" and that Daniel was no longer taking at least some of that medication. The trial then learned that Mr. Daniel had "spread feces on the [holding] cell and himself." At counsel's request, the court halted the proceedings so that "the medical professionals make a judgment on [Daniel's] competency."

The matter returned to court on March 9, 2015.  At that time there was a report from the Court Psychiatric Clinic, indicating that, "while it is clear that Mr. Daniel is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the medical disorder or exaggerating the extent of a true mental disorder." The psychiatrist was unable to form an opinion whether Daniel understood the nature and objective of the proceedings and able to assist in his own defense. Therefore, the clinic recommended that the court order Daniel to undergo a "20-day inpatient evaluation * * * at a maximum security facility known as Twin Valley Behavioral Health Care."  The trial court issued the order.

That order was not followed.

On April 8, 2015, the trial court called Daniel's case for trial, noting that "for reasons unclear to the Court, Mr. Daniel was not transferred" to Twin Valley. The court nevertheless decided that "there's really no evidence that Mr. Daniel is not competent and [is] unable to assist his defense–his attorney in his defense and whether he understands the nature and objectives of the proceedings before him." In fact, all of the evidence suggested otherwise.  The prosecutor, however, argued that Daniel's use of the county jail's phone system proved that he was competent. Defense counsel indicated that he had not heard all of the taped jail conversations and urged the court to follow the Court Psychiatric Clinic's original recommendation. The trial court

4

listened to the tapes and, ultimately determined that the defense had not supported its "burden of proof to overcome the presumption" of competency, and, therefore, the court found Daniel "to be competent to stand trial." The Court reached this conclusion without the further psychiatric evaluation it had previously ordered.

The matter then proceeded, again, to trial. The state presented the testimony of numerous witnesses including the four alleged victims and the various professional witnesses who investigated their claims. According to the prosecution, Mr. Daniel was linked to the rape/attempted rape and robbery of two women and the robberies of two others in three separate incidents – all of which had occurred in Lakewood and Cleveland's Westside.

Although none of the alleged victims could identify Mr. Daniel as the man who attacked them, DNA evidence did link him to the rape incidents.  The prosecution also introduced cell phone data that, it claimed, placed Mr. Daniel's phone in the vicinity of the alleged incidents. Mr. Daniel's sister testified that he was with her and several other family members when at least one of the alleged incidents occurred.

Following deliberations, the jury found Mr. Daniel guilty on five counts of rape and six counts of kidnapping with one of the victims along with the firearm specifications.  He was also found guilty of four counts of aggravated robbery and one count of felonious assault both with firearm specifications. The trial court also found Daniel guilty of the NPCs, RVOs and SVPs attached to the charges, along with three counts of HWWUD.

On June 17, 2015, as amended nunc pro tunc on July 17, 2015, following the state's merger of some of the convictions, the trial court sentence Mr. Daniel to an aggregate prison sentence of 144 years to life. Mr. Daniel appealed the matter to the Eighth District Court of Appeals and raised the following assignments of error:

5

*I. The trial court erred and denied defendant his constitutional right to due process when it declared that he was competent to stand trial in the absence of any medical opinion to a reasonable degree of medical certainty to support that decision.*

*II. The trial court's failure to provide the jury with an instruction on attempt as to the charge of rape constituted a violation of defendant's right to a fair trial and plain error.*

*III. The trial court committed plain error in permitting a state's witness to vouch fo rhte credibility of one of the alleged victims.*

*IV. The trial court deprived appellant of his constitutional rights to due process and a fair trial in failing to conduct a <u>Daubert</u> hearing concerning whether the analysis of historical cell phone records to determine location of an individual's phone is scientifically reliable as requested by the defendant, and simply admitting such testimony at trial.*

On August 4, 2016, with one judge dissenting as to Assignment of Error I, the Eighth District issued a decision affirming Mr. Daniel's convictions. Mr. Daniel now seeks leave of this Court to appeal from that decision.

## LAW AND ARGUMENT

*Proposition of Law I:*

*A TRIAL COURT VIOLATES THE ACCUSED'S STATE AND FEDERAL RIGHTS TO DUE PROCESS WHERE IT FINDS HIM COMPETENT TO STAND TRIAL, EVEN THOUGH MENTAL HEALTH PROFESSIONALS AND THE COURT ITSELF CALLED THAT COMPETENCE INTO QUESTION,WITHOUT A MEDICAL OR PSYCHIATRIC OPINION TO THE COMPETENCY DETERMINATION.*

The Due Process Clauses of the United States and Ohio Constitutions prohibit a trial of a criminal defendant who is legally incompetent. *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶114. It is fundamental that a defendant must be capable of understanding the charges against him and of assisting his counsel. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155, citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

That right is protected in part by R.C. 2945.37, which provides in pertinent part:

6

(B)  In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. * * *

(C)  The court shall conduct the hearing required or authorized under division (B) of this section within thirty days after the issue is raised, *unless the defendant has been referred for evaluation in which case the court shall conduct the hearing within ten days after the filing of the report of the evaluation * * *.* A hearing may be continued for good cause.

(D)  The defendant shall be represented by counsel at the hearing conducted under division (C) of this section. * * *

(E)  The prosecutor and defense counsel may submit evidence on the issue of the defendant's competence to stand trial. *A written report of the evaluation of the defendant may be admitted into evidence at the hearing* by stipulation, but, if either the prosecution or defense objects to its admission, the report may be admitted under sections 2317.36 to 2317.38 of the Revised Code or any other applicable statute or rule.

(F)  The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. * * * or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication.

(G)  A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

(Emphasis added.)

As the dissenting opinion in Mr. Daniel's case made clear – R.C. 2945.37 protects a defendant's right not to be tried or convicted while incompetent, and that right is a fundamental component of due process.  Citing *State v. Were*, 94 Ohio St.3d 173, 174, 2022 Ohio 481, 761 N.E. 2d 591.  That is, however, precisely what occurred in this case.  The record reflects that Mr. Daniel's competence became an issue before trial.

7

Indeed, the Court voiced concern about his appearance during voir dire.  After learning that Mr. Daniel had attempted suicide, was no longer taking his medications, and – then had spread his feces all over his holding cell, the trial court referred Daniel to the court clinic for evaluation. The psychiatrist's report indicated that he was unable to form a medical opinion to a reasonable degree of medical certainty concerning whether Daniel understood the nature and objective of the proceedings and was able to assist in his own defense. Accordingly, the psychiatrist recommended that Daniel receive inpatient treatment and an evaluation from Twin Valley Behavioral Health Care.

Although the trial court ordered that the recommended evaluation take place, that directive was never followed – the court did not receive a report as provided under R.C. 2945.37(C). *See State v. Smith*, 8th Dist. Cuyahoga No. 92649, 2010-Ohio-154, at ¶ 12 ("a trial court commits reversible error by failing to * * * make the results of the psychiatric report part of the record.").  In spite of this failure of evidence, the trial court went ahead with a competency hearing anyway.

There, trial court heard testimony from a single witness, a prosecution office investigator, who claimed to have overheard calls recorded by the county jail between Mr. Daniel and a friend, which, the prosecution argued, demonstrated his competence. Nevertheless, no one with any mental health expertise testified that Mr. Daniel was competent.  Moreover, as the dissenting opinion indicated, much of the evidence the prosecution presented at the competency hearing was equally suggestive of the fact that Mr. Daniel was not competent.  "Without making use of the psychiatric reports provided to them, trial courts are ill-equipped to determine a defendant's competency to stand trial." *Smith*, at ¶ 13.

8

In *State v. Jirousek*, 8th Dist. Cuyahoga No. 99641, 2013-Ohio-4796, at ¶ 10-12, the Eighth District observed as follows:

> This court has consistently held that, pursuant to R.C. 2945.37(B), a trial court must hold a hearing on the issue of a defendant's competency if the issue is raised prior to trial. In *State v. Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382, the record reflected that the trial court ordered appellant (to Northcoast Behavioral Healthcare) for a competency evaluation. We reversed appellant's conviction and remanded for the trial court to vacate his guilty plea because, despite the trial court's *explicit order for a psychiatric evaluation*, no competency hearing was held, neither did the record reflect any finding of competency, a *filing of the psychiatric report, or stipulation by the parties regarding defendant's competency. Dowdy* at ¶ 15.

Similarly here, the issue of the defendant's competency was raised, as reflected by the trial court's February 7, 2012 judgment entry. However, the trial court did not hold a hearing on this issue, or otherwise make a formal finding of competency on the record; neither does the record reflect that a psychiatric evaluation report was filed or that the parties stipulated to the defendant's competency. The docket is simply *devoid of any further reference to the competency issue subsequent to the court's referral for psychiatric evaluation*. As in *Dowdy*, the record lacks sufficient information to conclude the court's failure to conduct the statutorily required hearing is harmless.

Although the situation in the instant case is somewhat different, the evaluation from the clinic indicated the issue of Daniel's competency could not be determined to a reasonable degree of medical certainty. Neither did the parties stipulate to Daniel's competency. Despite the trial court's further order for a medical determination of that issue, the definitive psychiatric evaluation was never made.

The hearing the trial court held failed to comply with the requirements of R.C. 2945.37, and the trial court's decision that Daniel was competent, based as it was solely on the testimony of an investigator from the prosecutor's office, is utterly unsupported by this record. The trial

court's misapplication of R.C. 2945.37 in this case violated Mr. Daniel's fundamental right to be competent while put on trial for alleged misconduct.  The Eighth District's decision utterly overlooking the trial court's lapses, not only misapplies the applicable law, but it also sets a disturbing precedent that allows trial courts to make mental health diagnoses that they are legally and professionally unqualified to undertake.  This Court should take jurisdiction over this case to establish the proper boundaries for competency determinations at the trial court level.

*Proposition of Law II:*

> *ADMITTING EVIDENCE OF DUBIOUS SCIENTIFIC RELIABILITY WITHOUT A* DAUBERT *HEARING EVEN THOUGH ONE IS REQUESTED VIOLATED THE ACCUSED'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.*

"'Relevant evidence' is that having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401.  While all relevant evidence is admissible pursuant to Evid.R. 402, even though evidence might be relevant, it must be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  Evid.R. 403(A).  It is up to the court to decide initial questions of admissibility.  Evid.R. 104(A).

In this case, the trial court abused its discretion and denied Mr. Daniel his constitutional rights to due process and a fair trial when it permitted the prosecution to introduce so called expert testimony establishing cell phone location without conducting a hearing about the scientific reliability of such testimony.

Evid.R. 702 provides that a witness may testify as an expert only if three criteria are met: (1) the testimony "relates to matters beyond the knowledge or experience possessed by lay persons," (2) the witness is "qualified as an expert * * * regarding the subject matter of the

testimony," and, (3) the testimony is "based on reliable scientific, technical, or other specialized information."  In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Unites States Supreme Court held that the trial judge has a gatekeeping obligation to ensure that scientific testimony is reliable.  The court extended this holding to all testimony based on "technical" and other "specialized knowledge" in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed2d 238 (1999).

The interpretation of cell phone sector data is a matter that is not within the "knowledge or experience possessed by laypersons."  Indeed, some courts have admitted *FBI agents'* expert testimony concerning the agents' estimates of a person's location within cell phone sectors based on cell phone records.  *State v. White*, 2d Dist. Montgomery No. 26093, 2015-Ohio-3512.  By contrast, other courts have found FBI agents' cell-site analysis testimony to be scientifically unreliable.  *See, for example, United States v. Evans*, 892 F. Supp. 2d 949 (N.D. Ill. 2012).  In *Evans*, the court noted,

> [T]here are several factors that could have caused the defendant's phone to connect to these towers even though another tower is closer. The agent acknowledged these factors, but failed to account for them in his analysis, relying instead on his training and experience.

And, perhaps, biased and magical thinking.

Thus, the *Evans* court observed that estimating the coverage area requires scientific calculations that account for the factors that can affect coverage, which the FBI agent in that case did not present. The court went on to say that the agent's theory was untested by either science or formal peer review and had not been generally accepted by scientists. "These factors," concluded the court, "weigh against a finding of reliability."

In the case at bar, the state called a *civilian*, Todd Wiles, who presented no scientific credentials, to testify about his analysis of historical phone records. In fact, the prosecutor

11

specifically represented to the court, "We don't expect that [Wiles's evidence] ought to be subject to a *Daubert* examination; we're not putting forth any expert testimony."

In light of these representations, the trial court denied the request for a Daubert hearing. The trial court resolved that, because cell phones have "been around" for 30 years, "[c]ell phones work, we know that." (Tr. 900-903).  However, in fact, Wiles testified that his conclusions were more than mere "guesstimation"; nevertheless, he acknowledged that he was not aware of the underlying science involved in his analysis. *See State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 88-91.

The state presented Wiles' testimony as if it were from an expert, despite claiming that he was not one.  Nevertheless, his testimony concerning locations of cell phone calls were unsupported by science and not demonstrably reliable. Consequently, the evidence was inadmissable pursuant to Evid.R. 702.  It was also highly prejudicial to the defense.  Therefore, the trial court erred and abused its discretion when it permitted the state to introduce Wiles's testimony. At the very least, the trial court should have permitted the defense request for a Daubert hearing so that the reliability of such evidence could be established or challenged.

Based upon the error, Daniel's convictions should be reversed, and this matter remanded for further proceedings.

12

## CONCLUSION

For the foregoing reasons, Petitioner-Appellant James Daniel asks this Court to accept jurisdiction over this matter because it presents substantial questions of constitutional magnitude and general public interest for review.

Respectfully Submitted,

*Erika B. Cunliffe*
ERIKA B. CUNLIFFE

Counsel for Appellant

## CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum In Support of Jurisdiction along with the Notice of Appeal was served upon TIMOTHY J. McGINTY, Cuyahoga County Prosecutor, Matthew E. Meyer and Anthony Thomas Miranda, Assistant County Prosecutors at The Justice Center - 9th Floor, 1200 Ontario Street, Cleveland, Ohio 44113 (via email) on this 19th day of September, 2016.

*Erika B. Cunliffe*
ERIKA B. CUNLIFFE
Assistant Public Defender

Supreme Court of Ohio Clerk of Court - Filed October 19, 2016 - Case No. 2016-1377

NO. 2016-1377

IN THE SUPREME COURT OF OHIO

STATE OF OHIO

Plaintiff-Appellant

vs.

James Daniel

Defendant-Appellee

## MEMORANDUM IN RESPONSE TO JURISDICTION

Counsel for Plaintiff-Appellant

**TIMOTHY J. McGINTY**
**CUYAHOGA COUNTY PROSECUTOR**

**Brett Hammond (0091757)**
Assistant Prosecuting Attorney
The Justice Center, 8TH Floor
1200 Ontario Street
Cleveland, Ohio 44113
(216) 348-4463

Counsel for Defendant-Appellee

Erika Cunliffe
310 Lakeside Ave., Suite 200
Cleveland, Ohio 44113

**TABLE OF CONTENTS**

EXPLANATION OF WHY THIS APPEAL DOES NOT INVOLVE A SUBSTATIAL CONSTITUTIONAL QUESTION OR ISSUE OF GREAT PUBLIC INTEREST.........................1

STATEMENT OF THE CASE AND FACTS ..............................................................2

LAW AND ARGUMENT ....................................................................................7

      PROPOSITION OF LAW I: A TRIAL COURT VIOLATES THE ACCUSED'S STATE AND FEDERAL RIGHTS TO DUE PROCESS WHERE IT FINDS HIM COMPETENT TO STAND TRIAL, EVEN THOUGH MENTAL HEALTH PROFESSIONALS AND THE COURT ITSELF CALLED THAT COMPETENCE INTO QUESTION, WITHOUT A MEDICAL OR PSYCHIATRIC OPINION TO THE COMPETENCY DETERMINATION

      PROPOSITION OF LAW II: ADMITTING EVIDENCE OF DUBOIS SCIENTIFIC RELABILITY WITHOUT A DAUBERT HEARING EVEN THOUGH ONE IS REQUESTED VIOLATED THE ACCUSED'S RIGHT TO DUE PROCESS AND A FAIL TRIAL

CONCLUSION..................................................................................................14

CERTIFICATE OF SERVICE ...............................................................................15

i

**EXPLANATION OF WHY THIS APPEAL DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION OR ISSUE OF GREAT PUBLIC INTEREST**

"A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings." *State v. Daniel*, 8th Dist. Cuyahoga No. 103258, 2016-Ohio-52351, ¶ 20, citing *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 33, 790 N.E.2d 303; *State v. Williams*, 23 Ohio St.3d 16, 19, 23 Ohio B. 13, 490 N.E.2d 906 (1986).  This is the standard of review that this Court has applied in reviewing a trial court's finding of competency.  It is noteworthy that this applicable standard is not cited a single time in appellant's brief.  Here, the Eighth District Court of Appeals affirmed the trial court's determination of competency because after the trial court held two hearings on his competency, the trial court was able to reach a competency determination by relying on the following reliable and credible evidence:  (1) the initial psychological evaluator's report, (2) "the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him and the trial court during the first competency hearing," (4) jail phone calls that demonstrated the extent to which appellant was malingering, and (5) the trial court's own observations of appellant.  *Daniel* at ¶ 24.

Although appellant invites this Court to find that these five pieces of evidence were neither reliable nor credible, deference on these issues should be given "to those who see and hear what goes on in the courtroom." *State v. Cowans*, 87 Ohio St.3d 68, 84, 1999-Ohio-250, 717 N.E.2d 298 (1999).  The initial psychological evaluation of Defendant-Appellant James Daniel concluded that he was malingering the symptoms of a mental disorder, but it was unclear whether appellant was wholesale faking the symptoms of a mental disorder or exaggerating the true extent of a mental disorder.  Even if the evaluator had found that appellant was mentally or emotionally unstable,

1

such a determination would not automatically mean that appellant was incompetent to stand trial. *State v. Bock*, 28 Ohio St.3d 108, 28 Ohio B. 207, 502 N.E.2d 1016 (1986) ("[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity.").

Moreover, the jail phone calls made by appellant in this case revealed that he was faking an inability to understand the nature of the proceedings and also faking an inability to assist his lawyer.  These jail phone calls demonstrated that appellant was savvy enough do the following: (1) use another inmate's pin number prior to placing phone calls, (2) call his significant other to ask her to look up symptoms of schizophrenia on multiple occasions, (3) make phone calls to other witnesses, (4) discuss his jury proceedings while expressing concern about police officers in the first jury pool, and (5) describe an understanding of circumstantial evidence.  After observing appellant's behavior in court during the duration of this case and reviewing the content of the jail phone calls, the trial court concluded that appellant was "using the due process protections of the legal system to delay his inevitable trial."  As the trial court's conclusion were supported by credible evidence, this Court should decline to review appellant's proposition of law.

Additionally, this Court should decline to review appellant's second proposition of law for reasons that are more fully articulated in the law and argument section of this memorandum.

## STATEMENT OF THE CASE AND FACTS

### A.  General Summary of the Case and Facts

Defendant-Appellant James Daniel was charged in connection with an indictment that included the following charges:  two counts of aggravated burglary, six counts of rape, seven counts of kidnapping, four counts of aggravated robbery, three counts of having weapons while under disability, and one count of felonious assault.  Many of the counts included specifications charging him as a repeat violent offender, sexual motivation specifications, notice of prior

conviction specifications, notice of prior conviction specifications, and three-year firearm specifications. (02/05/2015 Journal Entry). Five of the counts were severed from the case for separate disposition. (Id.). At the close of trial, the jury found appellant guilty of the majority of the offenses for which he had been charged. The trial court sentenced him to a prison term of 144 years to life.

The convictions in this case stem from three separate violent events committed in the area of Cleveland, Ohio, and Lake, Ohio by appellant in late August of 2014 and early September of 2014.

The first victim, S.N., lived near Battery Park on the Detroit Shoreway. (Tr. 624). Before work each morning, she would walk and run for about an hour to a Starbucks. (Tr. 625, 67). On September 2, 2014, she was performing her morning routine between 5 a.m. and 5:30 a.m. when Daniel placed a gun underneath her eye, told her to shut up, and threatened to kill her if she said another word. (Tr. 633). Daniel later raped her orally and anally. (Tr. 639-41).

The second victim, J.S. was attacked on August 30, 2014. (Tr. 970). In the early morning hours, S.N. travelled to her boyfriend's house on Warren road. (Tr. 977). When she exited her car and began walking up the steps of her boyfriend's house, she was assaulted by Daniel. (Tr. 983). Daniel approached J.S., demanded that she give him her money, placed a gun beside her right temple, and then proceeded to vaginally, anally, and orally rape J.S. (Tr. 983-990). Daniel then threatened J.S. that he would kill her if she made a sound and robbed her of the money she made as a part-time worker at a bar. (Tr. 993).

The third crime was committed against two victims, K.K. and J.B. in Lakewood, Ohio and the evening of October 31, 2014 through September 1, 2014. On that evening, K.K. and J.B. went to W. 25th Street to have dinner and drinks. Upon returning from grabbing drinks, K.K. and J.B.

3

were sitting on the front steps of a building waiting for K.K.'s fiancée to pick her up.  (Tr. 1298).

While sitting there, Daniel emerged from nearby bushes and proceeded to rob K.K. of her purse.

(Tr. 1298-1301).  During the robbery, K.K. felt what she perceived to be a gun placed by the

perpetrator against her temple.  (Tr. 1301).

### B.  Facts Relevant to Appellant's First Proposition of Law

The Eighth District Court summarized the facts related to appellant's first proposition of

law in its opinion in *State v. Daniel*, 8th Dist. Cuyahoga No. 103258, 2016-Ohio-52351:

> On the first night of trial, appellant feigned a suicide attempt.  He was found on the floor of his holding cell, in the fetal position, with a sheet wrapped around his neck. On the second day of trial, appellant spread feces on himself and his holding cell. Appellant had been diagnosed with antisocial personality disorder and bipolar disorder.  After one of appellant's medications was discontinued on January 27, 2015, appellant began complaining of auditory hallucinations.  For all these reasons, the trial court discharged the jurors — who had not yet been sworn in — continued appellant's trial, and referred appellant to the court psychiatric clinic for a competency evaluation.
>
> On February 7, 2015, appellant filed a pro se motion to disqualify counsel.
>
> Dr. Stephen Noffsinger evaluated appellant and diagnosed him with cannabis use disorder and malingering.  Dr. Noffsinger determined that appellant suffers from antisocial personality disorder.  Dr. Noffsinger indicated in his report that he was unable to form an opinion within a reasonable medical certainty whether appellant has the ability to understand the nature and objectives of the proceedings and is able to assist in his defense.  Dr. Noffsinger explained, "while it is clear that [appellant] is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder."  He recommended that the trial court order appellant to a 20-day inpatient competency to stand trial evaluation at Twin Valley Behavioral Healthcare ("Twin Valley") — a maximum security facility where appellant's behavior could be observed "round the clock."
>
> On March 9, 2015, the trial court held a hearing to review Dr. Noffsinger's report. The trial court noted that in appellant's pro se motion to disqualify counsel, he demonstrated intelligence and clarity of thought.  The trial court attempted to discuss Dr. Noffsinger's report and recommendation with appellant, but was unable to do so.  The trial court noted on the record that appellant "had his head down the whole time and refused to make any eye contact.  And his responses have been inaudible and not understandable to the court.  They are barely audible."  The trial

court remanded appellant and ordered him to be transferred to Twin Valley for a 20-day observation period.  Despite the trial court's order, appellant was not transferred to Twin Valley.

On April 8, 2015, the trial court held another hearing to determine whether appellant was competent to proceed to trial.  The trial court noted that appellant had at least two prior felonies, and thus, is not a stranger to the criminal justice system.  The trial court acknowledged that in a prior presentence investigation report, appellant indicated that he did not suffer from any mental illness.  The trial court further noted that because appellant neither cooperated with his counsel nor with the medical professionals who attempted to examine him, it is unclear whether any of the information that he is reporting is credible.

The state argued that appellant was competent to stand trial.  In support of its position, the state presented the following information obtained from appellant's jail phone calls:  (1) appellant was using another inmate's corrections office number; (2) appellant was discussing information about his trial, including jury selection, the facts against him, his attorney, witnesses, an alibi, and circumstantial evidence; (3) he asked his girlfriend to look up symptoms of schizophrenia; (4) he called his brother so that he would not testify against him at trial; and (5) he reached out to Channel 5 and did an interview with a reporter.

After hearing appellant's jail phone calls and reviewing Dr. Noffsinger's report, the trial court determined that appellant was competent to stand trial.  Furthermore, the trial court stated that it was clear that appellant "is using the due process protections of the legal system to delay his inevitable trial."  The matter proceeded to trial."
*Daniel* at ¶¶ 6 – 12.

## C.  Facts Relevant to Appellant's Second Proposition of Law

Todd Wiles testified that he is employed in the Cleveland Police Department as a civilian crime analyst. (Tr. 885).  He has been employed as a crime analyst for ten years and spent the last three years of his career with the Cleveland Police Department (Tr. 885-86).  His primary responsibility for his unit in the Cleveland Police is to perform all the geographic mapping for the police department.  (Tr. 886-87).  To perform his work, he completed the Federal Law Enforcement Training Academy analysis program and he is a member of the International Association of Crime Analysts. (Tr. 888).

5

Wiles further explained that some of the work he does allow him to locate a cell phone caller's location based on cell tower information associated with that user's cell phone. (Tr. 891). He testified that predicting which tower will receive a call will sometimes depend upon a concept term re-routing. (Tr. 897). Through re-routing, a call may sometime switch cell towers. (Tr. 897 – 898). He further elaborated that through this technology, he is generally able to identify one of three sector regions from which a call is made. (Tr. 897-898).

Wiles explained that he was involved in this investigation related to phone calls that may have been placed near the scene of the rape crimes in this case during August of 2014 and September of 2014. (Tr. 898 – 910). At some point during the investigation of the Lakewood and Cleveland crimes, investigating officers learned that the suspect in the crimes might be the same individual. (Tr. 908 – 909). By searching cell phone tower records associated with the crimes in this case, investigating officers identified Tyson Williams as a suspect. (Tr. 914 – 918). Specifically, a cellular telephone used by Tyson Williams made an outgoing phone call at 5:18 a.m. near the location and time of the September 2, 2014 rape. (Tr. 921 – 925).

During direct examination, defense counsel argued that data from the cell phone towers should be subject to *Daubert* because it is not based upon scientifically reliable methods. (Tr. 900). The state responded that this should not be considered a *Daubert* issue because the information obtained from the cell phone towers using this technology has already been stipulated as authentic. (Tr. 904). The state further pointed out that the maps, spreadsheets and documents arose from stipulated data. (Tr. 904). The state also noted that it "was not putting forth any expert testimony and the cell phone technology Wiles testified about is well established." *Daniel* at ¶ 64.

6

## LAW AND ARGUMENT

### A.    THIS COURT SHOULD DECLINE JURISDICTION OVER APPELLANT'S FIRST PROPOSITION OF LAW

The trial court in this case acted within its discretion in finding James Daniel competent to stand trial.

R.C. 2945.37 (G) governs a trial court's finding of competency.  Pursuant to this statute:

A defendant is presumed to be competent to stand trial.  If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order as authorized by section 2945.38 of the Revised Code.

R.C. 2945.37 (G); *see also Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

Pursuant to R.C. 2945.37(G), Daniel was presumed competent and bore the burden to rebut that presumption.  *State v. Smith*, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985).  Here, appellant has failed to introduce evidence that would overcome that presumption by a preponderance of the evidence.  As such, the trial court properly found him competent to stand trial, and the Eighth District Court of Appeals properly affirmed the trial court's decision.

Appellant's argument in his memorandum heavily relies upon a discussion of appellant's behavior and mental health illness.  Specifically, appellant points to his history of medications, the fact that he spread feces over his holding cell, and his use of medications for mental health. (Appellant memorandum, 8).  Contrary to appellant's arguments however, a defendant's mental or emotion health issues cannot be equated with incompetency.  In *State v. Smith*, 8th Dist. Cuyahoga Nos. 96582, 96622, 96623, 2012-Ohio-261, the Eighth District Court of Appeals reviewed case precedent from this Court and concluded as follows:

7

In *Bock[1]*, the court defined incompetency as the "defendant's inability to understand' ***the nature and objective of the proceedings against him or of presently assisting in his defense.' "*Id.* at 110, quoting R.C. 2945.37(A). The court further explained that "[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity.  A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.*

{¶ 26}  Moreover, this court, relying on *Bock*, has found that when a request for a competency evaluation is made prior to trial, the failure to hold the mandatory competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence.  *State v. Almashni*, Cuyahoga App. No. 92237, 2010-Ohio-898, ¶ 14, appeal not allowed by *State v. Almashni*, 126 Ohio St.3d 1582, 2010-Ohio-4542, 934 N.E.2d 355.

*State v. Smith*, 8th Dist. Nos. 96582, 96622, 96623, 2012-Ohio-261.

Beyond the issue of appellant's mental health, appellant was granted a hearing on the issue of his competency.  Although appellant claims that "the trial court did not hold a hearing on this issue,"[2] both defense counsel and the assistant prosecuting attorney had an opportunity to address the court at the hearing following the report of an in court evaluation.  Despite the above, appellant argues that the court committed error because he never received an independent psychiatric evaluation of his competency.  Furthermore, he contends that such a report should be required given that the in court evaluator was unable to determine to a reasonable degree of medical certainty whether he was competent.

In addressing whether a further evaluation was needed in this case, the State points out that at the competency hearing, the primary issue before the trial court was the extent to which defendant was malingering any mental health issues.  The trial court read the report of the in court psychiatrist, which indicated the following:  (1) that Mr. Daniel is malingering the symptoms a

---

[1]  *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.

[2]  *See* Appellant's memorandum page 7.

mental disorder; (2) it was unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder; and (3) the evaluator therefore recommended sending Mr. Daniels to a 20 day inpatient observation to observe his behavior.  (Tr. 302).

The state then presented competent and credible evidence at the competency hearing that supported a finding that appellant is (1) malingering and purposely being obstructive to trial proceedings and (2) that he is capable of understanding the proceedings against him and assisting his attorney. (Tr. 353).  These findings by the trial court were supported by the following evidence:

- In a phone call placed to Melissa Yahnert, Daniel asked to her to look up the symptoms of schizophrenia.  (Tr. 325).

- Mr. Daniel placed a jail phone call so he could do an interview with a reporter at Channel 5.  (Tr. 325).

- Mr. Daniel was savvy enough to use another inmate's pin number so that he could attempt to preclude law enforcement officers or other individuals from monitoring his phone calls.  (Tr. 332 – 345).

- In an April 6, 2015 phone call to Melissa Yanhert, she indicates that she has previously told him the symptoms of schizophrenia and she cannot find anything else.  She then proceeds to tell him the symptoms include mental episodes, false distorted visuals and auditory issues.  (Tr. 337 – 339).  Again, the State submits these demonstrate obstructive behavior, malingering, and an understanding of trial procedure.

- He places phone calls to his brother so that his brother will not testify against him. (Tr. 347).

- He demonstrated understanding of the proceedings against him by stating there were 2 police officers in the first jury pool along with 8 women, 1 of whom was previously raped.  (Tr. 347 – 348).

- He demonstrated understanding of the proceedings against him by discussing jurors who had a media bias from previously learning about the case. (Tr. 348).

- He demonstrated an understanding of the proceedings by describing in phone calls what circumstantial evidence is.  (Tr. 348).

- He demonstrated an understanding of the proceedings and ability to assist his attorney by describing the lack of semen evidence, the lack of blood evidence, and the fact that only touch DNA is critical in his case. (Tr. 348).

- Furthermore, the jail phone calls further provide evidence of malingering given that the psychiatric evaluation reports describe a person who by contrast is soft spoken, does not communicate, claims he is only charged with one case and does not remember his lawyer's name. However, in jail phone calls, he does indicate that Scott Ramsey is going to visit him. (Tr. 347 – 349).

The phone calls provide competent and credible evidence that appellant was competent to stand trial. "[A] trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting that finding." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 33. Here, the Eighth District Court of Appeals correctly concluded that the trial court's decision was based upon the following competent and credible evidence: "(1) Dr. Noffisnger's report, (2) the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him, and the trial court during the first competency hearing, (4) the state's evidence of appellant's jail phone calls and the testimony of the prosecutor's office investigator, and (5) the trial court's own observations of appellant." *Daniel* at ¶ 24.

In his memorandum, appellant does not acknowledge the appropriate standard of law for reviewing the trial court's decision, which is an evaluation of whether the court's decision is supported by some reliable and credible evidence. Instead, appellant seeks to create a rule of law that effectively provides that he was entitled to an independent medical evaluation of his competency despite the fact that the trial court relied upon reliable and credible evidence supporting its finding of competency.

On the contrary, appellant had no right to a second competency evaluation from an independent doctor. The trial court complied with the order of R.C. 2945.37 when it held a hearing on the first evaluation. The court did order a second competency evaluation which was never carried out. Because the order for a second evaluation was never carried out, the trial court had to decide whether an independent competency evaluation was warranted in light of the new evidence introduced by the state.

Contrary to appellant's arguments, "[t]here is no absolute right to an independent competency evaluation." *State v. Pennington*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-5426, ¶ 26, citations omitted; *State v. Young*, 8th Dist. Cuyahoga No. 80059, 2003-Ohio-272, ¶ 23. The decision of whether to order the second evaluation was a matter of discretion with the trial court. *Id*. Based on upon the above, the trial court acted within its discretion in determining that appellant was competent and therefore a second report was unnecessary.

## B.  THIS COURT SHOULD DECLINE JURISDICTION OVER APPELLANT'S SECOND PROPOSITION OF LAW

In his second proposition of law, appellant challenges the admission of the testimony of crime analyst Todd Wiles. Specifically, he argues that analyst Wiles's testimony was unreliable and that a *Daubert* hearing should have been held to evaluate his testimony. Contrary to appellant's arguments, the trial court properly admitted the testimony of Todd Wiles, who had worked as a crime analyst for ten years. (Tr. 886).

Appellant's second proposition is flawed because much of the key testimony that the state introduced through Todd Wiles was already stipulated as authentic. More specifically, the state noted on the record that the information from the cell phone carrier had already been stipulated to as authentic. (Tr. 933). The stipulated information was used to create documents, spreadsheets, and maps in connection with this case. (Id.). The stipulations are significant because the state

11

introduced the testimony of Todd Wiles for two purposes: (1) it tended to show that James Daniel was in the area where the Cleveland rape was committed; and more importantly, (2) it demonstrated to the jury how investigators ultimately discovered the identity of the defendant in this case, *i.e.*, through a cell phone of his brother Tyson Williams. Pursuant to Evid.R. 401 and Evid.R. 402, the state could have introduced these stipulated pieces of evidence to the jury without the testimony of Todd Wiles. It follows that even if Wiles's testimony was unreliable, its admission did not prejudice Daniel.

Moreover, there is good reason to dispute appellant's broad assertion that the testimony of Todd Wiles was unreliable. Appellant primarily relies upon a federal case from the Northern District of Illinois to support his argument that the testimony of analyst Wiles is unreliable. (Appellant's Memorandum, 10). The State submits that appellant's reliance upon *United States v. Evans*, 892 F.Supp.2d 949, 2012 U.S. Dist. LEXIS 123652 (N.D. Ill. 2012) is misplaced. *Evans* is a case in which the district court concluded that a special agent's analysis of cell tower information was unreliable after he had been certified as an expert. In reaching this conclusion, the district court noted that (1) the agent did not account for factors that could impact the coverage area of a cell phone; and (2) the agent's theory had not been subjected to formal scientific peer review. *Id.*

Nevertheless, in an Ohio opinion recently released, the Second District Court of Appeals declined to follow *Evans* by noting the numerous federal courts that have reached a different conclusion on this same issue:

> But "other courts have reached the opposite conclusion of the *Evans* Court regarding the reliability of an agent's methodology in estimating cell sectors where the agent used cell-phone records and his general knowledge and understanding of cellular phone networks and where the agent testified that he and others had used that methodology numerous times without error." (Citations omitted.) *United*

*States v. Davis*, S.D. Fla. No. 11-60285-CR, 2013 U.S. Dist. LEXIS 70371, 2013 WL 2156659, & 6 (May 17, 2013). *United States v. Jones*, 918 F.SUpp.2d 1, 5 (D.D.C. 2013). *See, e.g., Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015) (rejecting the contention that evidence regarding the use of historical cell phone data to identify the geographic area in which a phone was located at a given time is inherently unreliable, saying that federal courts have regularly admitted expert testimony regarding this type of evidence); *United States v. Schaffer*, 439 Fed.Appx. 344, 346-47 (5th Cir. 2011) (upholding the admissibility of an FBI agent's testimony pinpointing the locations where cellular telephones were allegedly used, based on "his extensive knowledge and experience in the filed" and noting that the agent testified that he had used the technique without error on at least 100 occasions and that the FBI had used it successfully at least 1,000 times); *United States v. Rosario*, S.D.N.Y. No. 09-CR-415-2, 2014 U.S. Dist. LEXIS 160626, 2014 WL 6076364, *2-3 (Nov. 14, 20140 (concluding that an FBI Special Agent's cell-site analysis testimony was based on techniques sufficiently reliable to be admitted under Fed.R. Evid. 702). These courts agree that the "vagaries of cell phone technology affect the persuasiveness of the circumstantial evidence, but they do not render [an expert's] testimony inadmissible." *Rosario*, 2014 U.S. Dist. LEXIS 160626 [WL] at * 2. *Accord United States v. Farma*, E.D.N.Y. No. 12-CR186, 2012 U.S. Dist. LEXIS 174887, 2012 WL 6102700, *4 (Dec. 10, 2012) (noting that the defendant "lists a variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower * * * [but] these concerns go to the weight of [the expert's] testimony, not the reliability").

*State v. White*, 2d. Dist. Montgomery App. No. 26093, 2015-Ohio-3512, ¶ 28.

The authority cited above provides ample legal authority to support the trial court's in its conclusions that these methods described by analyst Wiles are reliable. Furthermore, the defense did have an opportunity cross-examine the witnesses about potential problems with these methods. (Tr. 924-925). The analyst admitted that re-routing of cell phone calls is a possibility and that cell phones sometimes use a tower up to two miles away from a location. (Tr. 924 – 930). Nonetheless, the State submits that these issues go the weight of the testimony and not the admissibility of the testimony introduced by analyst Todd Wiles.

As a final point, the state notes that the testimony of Todd Wiles should not have been subject to a *Daubert* hearing because it was not expert testimony. In *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, "a criminal analyst testified about a map she created based on information from the defendant's cell phone records." *State v. Daniel*, 8th Dist.

Cuyahoga No. 103258, 2016-Ohio-5231, ¶ 68.  The "analyst identified the cellular towers on the map that were 'hit' by the defendant's cell phone."  *Id.*  On review, the Eighth District Court of Appeals permitted the analyst's testimony because the comparison of the locations depicted on a phone record to a location of the analyst's site map is something a layperson could know.  *Id.* Similarly, here, the analyst testified to observations that a layperson could make.  As such, there was no need for a *Daubert* hearing.  Accordingly, this Court should deny appellant's second proposition of law.

## CONCLUSION

The trial court found appellant competent based on reliable evidence that included the initial report of a medical doctor, the trial court's observations of appellant, and conversations involving appellant when he did not know he was being observed.  Furthermore, there was no error when the trial court introduced the testimony of analyst Todd Wiles.  This Court should decline accepting jurisdiction of both of appellant's propositions of law.

Respectfully submitted,

Timothy McGinty
Cuyahoga County Prosecutor


/S/ Brett Hammond
Brett Hammond (0091757)
Assistant Prosecuting Attorney
Cuyahoga County Prosecutor's Office
The Justice Center, Courts Tower
1200 Ontario St.
Cleveland, Ohio 44113
(216) 443-7800

## CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum in Response was sent by regular U.S. mail or electronic service this 19th day of October, 2016 to:

Erika Cunliffe
310 Lakeside Ave., Suite 200
Cleveland, Ohio 44113

/S/ Brett Hammond
Brett Hammond (0091757)
Assistant Prosecuting Attorney

15

Supreme Court of Ohio Clerk of Court - Filed October 19, 2016 - Case No. 2016-1377

NO. 2016-1377

IN THE SUPREME COURT OF OHIO

STATE OF OHIO

Plaintiff-Appellant

vs.

James Daniel

Defendant-Appellee

## MEMORANDUM IN RESPONSE TO JURISDICTION

Counsel for Plaintiff-Appellant

**TIMOTHY J. McGINTY**
**CUYAHOGA COUNTY PROSECUTOR**

**Brett Hammond (0091757)**
Assistant Prosecuting Attorney
The Justice Center, 8TH Floor
1200 Ontario Street
Cleveland, Ohio 44113
(216) 348-4463

Counsel for Defendant-Appellee

Erika Cunliffe
310 Lakeside Ave., Suite 200
Cleveland, Ohio 44113

EXHIBIT
31

## TABLE OF CONTENTS

EXPLANATION OF WHY THIS APPEAL DOES NOT INVOLVE A SUBSTATIAL CONSTITUTIONAL QUESTION OR ISSUE OF GREAT PUBLIC INTEREST.......................1

STATEMENT OF THE CASE AND FACTS ...........................................................................2

LAW AND ARGUMENT ...........................................................................................................7

      PROPOSITION OF LAW I: A TRIAL COURT VIOLATES THE ACCUSED'S STATE AND FEDERAL RIGHTS TO DUE PROCESS WHERE IT FINDS HIM COMPETENT TO STAND TRIAL, EVEN THOUGH MENTAL HEALTH PROFESSIONALS AND THE COURT ITSELF CALLED THAT COMPETENCE INTO QUESTION, WITHOUT A MEDICAL OR PSYCHIATRIC OPINION TO THE COMPETENCY DETERMINATION

      PROPOSITION OF LAW II: ADMITTING EVIDENCE OF DUBOIS SCIENTIFIC RELABILITY WITHOUT A DAUBERT HEARING EVEN THOUGH ONE IS REQUESTED VIOLATED THE ACCUSED'S RIGHT TO DUE PROCESS AND A FAIL TRIAL

CONCLUSION.......................................................................................................................14

CERTIFICATE OF SERVICE .................................................................................................15

i

**EXPLANATION OF WHY THIS APPEAL DOES NOT INVOLVE A SUBSTANTIAL CONSTITUTIONAL QUESTION OR ISSUE OF GREAT PUBLIC INTEREST**

"A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings." *State v. Daniel*, 8th Dist. Cuyahoga No. 103258, 2016-Ohio-52351, ¶ 20, citing *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 33, 790 N.E.2d 303; *State v. Williams*, 23 Ohio St.3d 16, 19, 23 Ohio B. 13, 490 N.E.2d 906 (1986). This is the standard of review that this Court has applied in reviewing a trial court's finding of competency. It is noteworthy that this applicable standard is not cited a single time in appellant's brief. Here, the Eighth District Court of Appeals affirmed the trial court's determination of competency because after the trial court held two hearings on his competency, the trial court was able to reach a competency determination by relying on the following reliable and credible evidence: (1) the initial psychological evaluator's report, (2) "the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him and the trial court during the first competency hearing," (4) jail phone calls that demonstrated the extent to which appellant was malingering, and (5) the trial court's own observations of appellant. *Daniel* at ¶ 24.

Although appellant invites this Court to find that these five pieces of evidence were neither reliable nor credible, deference on these issues should be given "to those who see and hear what goes on in the courtroom." *State v. Cowans*, 87 Ohio St.3d 68, 84, 1999-Ohio-250, 717 N.E.2d 298 (1999). The initial psychological evaluation of Defendant-Appellant James Daniel concluded that he was malingering the symptoms of a mental disorder, but it was unclear whether appellant was wholesale faking the symptoms of a mental disorder or exaggerating the true extent of a mental disorder. Even if the evaluator had found that appellant was mentally or emotionally unstable,

1

such a determination would not automatically mean that appellant was incompetent to stand trial. *State v. Bock*, 28 Ohio St.3d 108, 28 Ohio B. 207, 502 N.E.2d 1016 (1986) ("[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity.").

Moreover, the jail phone calls made by appellant in this case revealed that he was faking an inability to understand the nature of the proceedings and also faking an inability to assist his lawyer. These jail phone calls demonstrated that appellant was savvy enough do the following: (1) use another inmate's pin number prior to placing phone calls, (2) call his significant other to ask her to look up symptoms of schizophrenia on multiple occasions, (3) make phone calls to other witnesses, (4) discuss his jury proceedings while expressing concern about police officers in the first jury pool, and (5) describe an understanding of circumstantial evidence. After observing appellant's behavior in court during the duration of this case and reviewing the content of the jail phone calls, the trial court concluded that appellant was "using the due process protections of the legal system to delay his inevitable trial." As the trial court's conclusion were supported by credible evidence, this Court should decline to review appellant's proposition of law.

Additionally, this Court should decline to review appellant's second proposition of law for reasons that are more fully articulated in the law and argument section of this memorandum.

## STATEMENT OF THE CASE AND FACTS

### A. General Summary of the Case and Facts

Defendant-Appellant James Daniel was charged in connection with an indictment that included the following charges: two counts of aggravated burglary, six counts of rape, seven counts of kidnapping, four counts of aggravated robbery, three counts of having weapons while under disability, and one count of felonious assault. Many of the counts included specifications charging him as a repeat violent offender, sexual motivation specifications, notice of prior

conviction specifications, notice of prior conviction specifications, and three-year firearm specifications. (02/05/2015 Journal Entry). Five of the counts were severed from the case for separate disposition. (Id.). At the close of trial, the jury found appellant guilty of the majority of the offenses for which he had been charged. The trial court sentenced him to a prison term of 144 years to life.

The convictions in this case stem from three separate violent events committed in the area of Cleveland, Ohio, and Lake, Ohio by appellant in late August of 2014 and early September of 2014.

The first victim, S.N., lived near Battery Park on the Detroit Shoreway. (Tr. 624). Before work each morning, she would walk and run for about an hour to a Starbucks. (Tr. 625, 67). On September 2, 2014, she was performing her morning routine between 5 a.m. and 5:30 a.m. when Daniel placed a gun underneath her eye, told her to shut up, and threatened to kill her if she said another word. (Tr. 633). Daniel later raped her orally and anally. (Tr. 639-41).

The second victim, J.S. was attacked on August 30, 2014. (Tr. 970). In the early morning hours, S.N. travelled to her boyfriend's house on Warren road. (Tr. 977). When she exited her car and began walking up the steps of her boyfriend's house, she was assaulted by Daniel. (Tr. 983). Daniel approached J.S., demanded that she give him her money, placed a gun beside her right temple, and then proceeded to vaginally, anally, and orally rape J.S. (Tr. 983-990). Daniel then threatened J.S. that he would kill her if she made a sound and robbed her of the money she made as a part-time worker at a bar. (Tr. 993).

The third crime was committed against two victims, K.K. and J.B. in Lakewood, Ohio and the evening of October 31, 2014 through September 1, 2014. On that evening, K.K. and J.B. went to W. 25th Street to have dinner and drinks. Upon returning from grabbing drinks, K.K. and J.B.

3

were sitting on the front steps of a building waiting for K.K.'s fiancée to pick her up.  (Tr. 1298).
While sitting there, Daniel emerged from nearby bushes and proceeded to rob K.K. of her purse.
(Tr. 1298-1301).  During the robbery, K.K. felt what she perceived to be a gun placed by the
perpetrator against her temple.  (Tr. 1301).

### B.  Facts Relevant to Appellant's First Proposition of Law

The Eighth District Court summarized the facts related to appellant's first proposition of

law in its opinion in *State v. Daniel*, 8th Dist. Cuyahoga No. 103258, 2016-Ohio-52351:

> On the first night of trial, appellant feigned a suicide attempt.  He was found on the
> floor of his holding cell, in the fetal position, with a sheet wrapped around his neck.
> On the second day of trial, appellant spread feces on himself and his holding cell.
> Appellant had been diagnosed with antisocial personality disorder and bipolar
> disorder.  After one of appellant's medications was discontinued on January 27,
> 2015, appellant began complaining of auditory hallucinations.  For all these
> reasons, the trial court discharged the jurors — who had not yet been sworn in —
> continued appellant's trial, and referred appellant to the court psychiatric clinic for
> a competency evaluation.
>
> On February 7, 2015, appellant filed a pro se motion to disqualify counsel.
>
> Dr. Stephen Noffsinger evaluated appellant and diagnosed him with cannabis use
> disorder and malingering.  Dr. Noffsinger determined that appellant suffers from
> antisocial personality disorder.  Dr. Noffsinger indicated in his report that he was
> unable to form an opinion within a reasonable medical certainty whether appellant
> has the ability to understand the nature and objectives of the proceedings and is able
> to assist in his defense.  Dr. Noffsinger explained, "while it is clear that [appellant]
> is malingering the symptoms of a mental disorder, it is unclear whether he is
> wholesale faking the mental disorder or exaggerating the extent of a true mental
> disorder."  He recommended that the trial court order appellant to a 20-day inpatient
> competency to stand trial evaluation at Twin Valley Behavioral Healthcare ("Twin
> Valley") — a maximum security facility where appellant's behavior could be
> observed "round the clock."
>
> On March 9, 2015, the trial court held a hearing to review Dr. Noffsinger's report.
> The trial court noted that in appellant's pro se motion to disqualify counsel, he
> demonstrated intelligence and clarity of thought.  The trial court attempted to
> discuss Dr. Noffsinger's report and recommendation with appellant, but was unable
> to do so.  The trial court noted on the record that appellant "had his head down the
> whole time and refused to make any eye contact.  And his responses have been
> inaudible and not understandable to the court.  They are barely audible."  The trial

4

court remanded appellant and ordered him to be transferred to Twin Valley for a 20-day observation period. Despite the trial court's order, appellant was not transferred to Twin Valley.

On April 8, 2015, the trial court held another hearing to determine whether appellant was competent to proceed to trial. The trial court noted that appellant had at least two prior felonies, and thus, is not a stranger to the criminal justice system. The trial court acknowledged that in a prior presentence investigation report, appellant indicated that he did not suffer from any mental illness. The trial court further noted that because appellant neither cooperated with his counsel nor with the medical professionals who attempted to examine him, it is unclear whether any of the information that he is reporting is credible.

The state argued that appellant was competent to stand trial. In support of its position, the state presented the following information obtained from appellant's jail phone calls: (1) appellant was using another inmate's corrections office number; (2) appellant was discussing information about his trial, including jury selection, the facts against him, his attorney, witnesses, an alibi, and circumstantial evidence; (3) he asked his girlfriend to look up symptoms of schizophrenia; (4) he called his brother so that he would not testify against him at trial; and (5) he reached out to Channel 5 and did an interview with a reporter.

After hearing appellant's jail phone calls and reviewing Dr. Noffsinger's report, the trial court determined that appellant was competent to stand trial. Furthermore, the trial court stated that it was clear that appellant "is using the due process protections of the legal system to delay his inevitable trial." The matter proceeded to trial."

*Daniel* at ¶¶ 6 – 12.

### C. Facts Relevant to Appellant's Second Proposition of Law

Todd Wiles testified that he is employed in the Cleveland Police Department as a civilian crime analyst. (Tr. 885). He has been employed as a crime analyst for ten years and spent the last three years of his career with the Cleveland Police Department (Tr. 885-86). His primary responsibility for his unit in the Cleveland Police is to perform all the geographic mapping for the police department. (Tr. 886-87). To perform his work, he completed the Federal Law Enforcement Training Academy analysis program and he is a member of the International Association of Crime Analysts. (Tr. 888).

Wiles further explained that some of the work he does allow him to locate a cell phone caller's location based on cell tower information associated with that user's cell phone. (Tr. 891). He testified that predicting which tower will receive a call will sometimes depend upon a concept term re-routing. (Tr. 897). Through re-routing, a call may sometime switch cell towers. (Tr. 897 – 898). He further elaborated that through this technology, he is generally able to identify one of three sector regions from which a call is made. (Tr. 897-898).

Wiles explained that he was involved in this investigation related to phone calls that may have been placed near the scene of the rape crimes in this case during August of 2014 and September of 2014. (Tr. 898 – 910). At some point during the investigation of the Lakewood and Cleveland crimes, investigating officers learned that the suspect in the crimes might be the same individual. (Tr. 908 – 909). By searching cell phone tower records associated with the crimes in this case, investigating officers identified Tyson Williams as a suspect. (Tr. 914 – 918). Specifically, a cellular telephone used by Tyson Williams made an outgoing phone call at 5:18 a.m. near the location and time of the September 2, 2014 rape. (Tr. 921 – 925).

During direct examination, defense counsel argued that data from the cell phone towers should be subject to *Daubert* because it is not based upon scientifically reliable methods. (Tr. 900). The state responded that this should not be considered a *Daubert* issue because the information obtained from the cell phone towers using this technology has already been stipulated as authentic. (Tr. 904). The state further pointed out that the maps, spreadsheets and documents arose from stipulated data. (Tr. 904). The state also noted that it "was not putting forth any expert testimony and the cell phone technology Wiles testified about is well established." *Daniel* at ¶ 64.

## LAW AND ARGUMENT

### A.    THIS COURT SHOULD DECLINE JURISDICTION OVER APPELLANT'S FIRST PROPOSITION OF LAW

The trial court in this case acted within its discretion in finding James Daniel competent to stand trial.

R.C. 2945.37 (G) governs a trial court's finding of competency.  Pursuant to this statute:

> A defendant is presumed to be competent to stand trial.  If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order as authorized by section 2945.38 of the Revised Code.

R.C. 2945.37 (G); *see also Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

Pursuant to R.C. 2945.37(G), Daniel was presumed competent and bore the burden to rebut that presumption.  *State v. Smith*, 17 Ohio St.3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128 (1985).  Here, appellant has failed to introduce evidence that would overcome that presumption by a preponderance of the evidence.  As such, the trial court properly found him competent to stand trial, and the Eighth District Court of Appeals properly affirmed the trial court's decision.

Appellant's argument in his memorandum heavily relies upon a discussion of appellant's behavior and mental health illness.  Specifically, appellant points to his history of medications, the fact that he spread feces over his holding cell, and his use of medications for mental health.  (Appellant memorandum, 8).  Contrary to appellant's arguments however, a defendant's mental or emotion health issues cannot be equated with incompetency.  In *State v. Smith*, 8th Dist. Cuyahoga Nos. 96582, 96622, 96623, 2012-Ohio-261, the Eighth District Court of Appeals reviewed case precedent from this Court and concluded as follows:

In *Bock*[1], the court defined incompetency as the "defendant's inability to understand' ***the nature and objective of the proceedings against him or of presently assisting in his defense.' "*Id.* at 110, quoting R.C. 2945.37(A). The court further explained that "[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity.  A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.*

{¶ 26}  Moreover, this court, relying on *Bock*, has found that when a request for a competency evaluation is made prior to trial, the failure to hold the mandatory competency hearing is harmless error when the record fails to reveal sufficient indicia of incompetence.  *State v. Almashni*, Cuyahoga App. No. 92237, 2010-Ohio-898, ¶ 14, appeal not allowed by *State v. Almashni*, 126 Ohio St.3d 1582, 2010-Ohio-4542, 934 N.E.2d 355.

*State v. Smith*, 8th Dist. Nos. 96582, 96622, 96623, 2012-Ohio-261.

Beyond the issue of appellant's mental health, appellant was granted a hearing on the issue of his competency.  Although appellant claims that "the trial court did not hold a hearing on this issue,"[2] both defense counsel and the assistant prosecuting attorney had an opportunity to address the court at the hearing following the report of an in court evaluation.  Despite the above, appellant argues that the court committed error because he never received an independent psychiatric evaluation of his competency.  Furthermore, he contends that such a report should be required given that the in court evaluator was unable to determine to a reasonable degree of medical certainty whether he was competent.

In addressing whether a further evaluation was needed in this case, the State points out that at the competency hearing, the primary issue before the trial court was the extent to which defendant was malingering any mental health issues.  The trial court read the report of the in court psychiatrist, which indicated the following:  (1) that Mr. Daniel is malingering the symptoms a

---

[1]  *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.

[2]  *See* Appellant's memorandum page 7.

mental disorder; (2) it was unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder; and (3) the evaluator therefore recommended sending Mr. Daniels to a 20 day inpatient observation to observe his behavior.  (Tr. 302).

The state then presented competent and credible evidence at the competency hearing that supported a finding that appellant is (1) malingering and purposely being obstructive to trial proceedings and (2) that he is capable of understanding the proceedings against him and assisting his attorney.  (Tr. 353).  These findings by the trial court were supported by the following evidence:

- In a phone call placed to Melissa Yahnert, Daniel asked to her to look up the symptoms of schizophrenia.  (Tr. 325).

- Mr. Daniel placed a jail phone call so he could do an interview with a reporter at Channel 5.  (Tr. 325).

- Mr. Daniel was savvy enough to use another inmate's pin number so that he could attempt to preclude law enforcement officers or other individuals from monitoring his phone calls.  (Tr. 332 – 345).

- In an April 6, 2015 phone call to Melissa Yanhert, she indicates that she has previously told him the symptoms of schizophrenia and she cannot find anything else.  She then proceeds to tell him the symptoms include mental episodes, false distorted visuals and auditory issues.  (Tr. 337 – 339).  Again, the State submits these demonstrate obstructive behavior, malingering, and an understanding of trial procedure.

- He places phone calls to his brother so that his brother will not testify against him.  (Tr. 347).

- He demonstrated understanding of the proceedings against him by stating there were 2 police officers in the first jury pool along with 8 women, 1 of whom was previously raped.  (Tr. 347 – 348).

- He demonstrated understanding of the proceedings against him by discussing jurors who had a media bias from previously learning about the case.  (Tr. 348).

- He demonstrated an understanding of the proceedings by describing in phone calls what circumstantial evidence is.  (Tr. 348).

- He demonstrated an understanding of the proceedings and ability to assist his attorney by describing the lack of semen evidence, the lack of blood evidence, and the fact that only touch DNA is critical in his case. (Tr. 348).

- Furthermore, the jail phone calls further provide evidence of malingering given that the psychiatric evaluation reports describe a person who by contrast is soft spoken, does not communicate, claims he is only charged with one case and does not remember his lawyer's name. However, in jail phone calls, he does indicate that Scott Ramsey is going to visit him. (Tr. 347 – 349).

The phone calls provide competent and credible evidence that appellant was competent to stand trial. "[A] trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting that finding." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 33. Here, the Eighth District Court of Appeals correctly concluded that the trial court's decision was based upon the following competent and credible evidence: "(1) Dr. Noffisnger's report, (2) the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him, and the trial court during the first competency hearing, (4) the state's evidence of appellant's jail phone calls and the testimony of the prosecutor's office investigator, and (5) the trial court's own observations of appellant." *Daniel* at ¶ 24.

In his memorandum, appellant does not acknowledge the appropriate standard of law for reviewing the trial court's decision, which is an evaluation of whether the court's decision is supported by some reliable and credible evidence. Instead, appellant seeks to create a rule of law that effectively provides that he was entitled to an independent medical evaluation of his competency despite the fact that the trial court relied upon reliable and credible evidence supporting its finding of competency.

On the contrary, appellant had no right to a second competency evaluation from an independent doctor. The trial court complied with the order of R.C. 2945.37 when it held a hearing on the first evaluation. The court did order a second competency evaluation which was never carried out. Because the order for a second evaluation was never carried out, the trial court had to decide whether an independent competency evaluation was warranted in light of the new evidence introduced by the state.

Contrary to appellant's arguments, "[t]here is no absolute right to an independent competency evaluation." *State v. Pennington*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-5426, ¶ 26, citations omitted; *State v. Young*, 8th Dist. Cuyahoga No. 80059, 2003-Ohio-272, ¶ 23. The decision of whether to order the second evaluation was a matter of discretion with the trial court. *Id.* Based on upon the above, the trial court acted within its discretion in determining that appellant was competent and therefore a second report was unnecessary.

### B.  THIS COURT SHOULD DECLINE JURISDICTION OVER APPELLANT'S SECOND PROPOSITION OF LAW

In his second proposition of law, appellant challenges the admission of the testimony of crime analyst Todd Wiles. Specifically, he argues that analyst Wiles's testimony was unreliable and that a *Daubert* hearing should have been held to evaluate his testimony. Contrary to appellant's arguments, the trial court properly admitted the testimony of Todd Wiles, who had worked as a crime analyst for ten years. (Tr. 886).

Appellant's second proposition is flawed because much of the key testimony that the state introduced through Todd Wiles was already stipulated as authentic. More specifically, the state noted on the record that the information from the cell phone carrier had already been stipulated to as authentic. (Tr. 933). The stipulated information was used to create documents, spreadsheets, and maps in connection with this case. (Id.). The stipulations are significant because the state

11

introduced the testimony of Todd Wiles for two purposes: (1) it tended to show that James Daniel was in the area where the Cleveland rape was committed; and more importantly, (2) it demonstrated to the jury how investigators ultimately discovered the identity of the defendant in this case, *i.e.*, through a cell phone of his brother Tyson Williams. Pursuant to Evid.R. 401 and Evid.R. 402, the state could have introduced these stipulated pieces of evidence to the jury without the testimony of Todd Wiles. It follows that even if Wiles's testimony was unreliable, its admission did not prejudice Daniel.

Moreover, there is good reason to dispute appellant's broad assertion that the testimony of Todd Wiles was unreliable. Appellant primarily relies upon a federal case from the Northern District of Illinois to support his argument that the testimony of analyst Wiles is unreliable. (Appellant's Memorandum, 10). The State submits that appellant's reliance upon *United States v. Evans*, 892 F.Supp.2d 949, 2012 U.S. Dist. LEXIS 123652 (N.D. Ill. 2012) is misplaced. *Evans* is a case in which the district court concluded that a special agent's analysis of cell tower information was unreliable after he had been certified as an expert. In reaching this conclusion, the district court noted that (1) the agent did not account for factors that could impact the coverage area of a cell phone; and (2) the agent's theory had not been subjected to formal scientific peer review. *Id.*

Nevertheless, in an Ohio opinion recently released, the Second District Court of Appeals declined to follow *Evans* by noting the numerous federal courts that have reached a different conclusion on this same issue:

> But "other courts have reached the opposite conclusion of the *Evans* Court regarding the reliability of an agent's methodology in estimating cell sectors where the agent used cell-phone records and his general knowledge and understanding of cellular phone networks and where the agent testified that he and others had used that methodology numerous times without error." (Citations omitted.) *United*

*States v. Davis*, S.D. Fla. No. 11-60285-CR, 2013 U.S. Dist. LEXIS 70371, 2013 WL 2156659, & 6 (May 17, 2013).  *United States v. Jones*, 918 F.SUpp.2d 1, 5 (D.D.C. 2013).  *See, e.g., Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1204 (8th Cir. 2015) (rejecting the contention that evidence regarding the use of historical cell phone data to identify the geographic area in which a phone was located at a given time is inherently unreliable, saying that federal courts have regularly admitted expert testimony regarding this type of evidence); *United States v. Schaffer*, 439 Fed.Appx. 344, 346-47 (5th Cir. 2011) (upholding the admissibility of an FBI agent's testimony pinpointing the locations where cellular telephones were allegedly used, based on "his extensive knowledge and experience in the filed" and noting that the agent testified that he had used the technique without error on at least 100 occasions and that the FBI had used it successfully at least 1,000 times); *United States v. Rosario*, S.D.N.Y. No. 09-CR-415-2, 2014 U.S. Dist. LEXIS 160626, 2014 WL 6076364, *2-3 (Nov. 14, 20140 (concluding that an FBI Special Agent's cell-site analysis testimony was based on techniques sufficiently reliable to be admitted under Fed.R. Evid. 702). These courts agree that the "vagaries of cell phone technology affect the persuasiveness of the circumstantial evidence, but they do not render [an expert's] testimony inadmissible." *Rosario*, 2014 U.S. Dist. LEXIS 160626 [WL] at * 2.  *Accord United States v. Farma*, E.D.N.Y. No. 12-CR186, 2012 U.S. Dist. LEXIS 174887, 2012 WL 6102700, *4 (Dec. 10, 2012) (noting that the defendant "lists a variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower * * * [but] these concerns go to the weight of [the expert's] testimony, not the reliability").

*State v. White*, 2d. Dist. Montgomery App. No. 26093, 2015-Ohio-3512, ¶ 28.

The authority cited above provides ample legal authority to support the trial court's in its conclusions that these methods described by analyst Wiles are reliable.  Furthermore, the defense did have an opportunity cross-examine the witnesses about potential problems with these methods. (Tr. 924-925).  The analyst admitted that re-routing of cell phone calls is a possibility and that cell phones sometimes use a tower up to two miles away from a location.  (Tr. 924 – 930).  Nonetheless, the State submits that these issues go the weight of the testimony and not the admissibility of the testimony introduced by analyst Todd Wiles.

As a final point, the state notes that the testimony of Todd Wiles should not have been subject to a *Daubert* hearing because it was not expert testimony.  In *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, "a criminal analyst testified about a map she created based on information from the defendant's cell phone records."  *State v. Daniel*, 8th Dist.

Cuyahoga No. 103258, 2016-Ohio-5231, ¶ 68.  The "analyst identified the cellular towers on the map that were 'hit' by the defendant's cell phone."  *Id.*  On review, the Eighth District Court of Appeals permitted the analyst's testimony because the comparison of the locations depicted on a phone record to a location of the analyst's site map is something a layperson could know.  *Id.* Similarly, here, the analyst testified to observations that a layperson could make.  As such, there was no need for a *Daubert* hearing.  Accordingly, this Court should deny appellant's second proposition of law.

## CONCLUSION

The trial court found appellant competent based on reliable evidence that included the initial report of a medical doctor, the trial court's observations of appellant, and conversations involving appellant when he did not know he was being observed.  Furthermore, there was no error when the trial court introduced the testimony of analyst Todd Wiles.   This Court should decline accepting jurisdiction of both of appellant's propositions of law.

Respectfully submitted,

Timothy McGinty
Cuyahoga County Prosecutor


/S/ Brett Hammond
Brett Hammond (0091757)
Assistant Prosecuting Attorney
Cuyahoga County Prosecutor's Office
The Justice Center, Courts Tower
1200 Ontario St.
Cleveland, Ohio 44113
(216) 443-7800

14

## **CERTIFICATE OF SERVICE**

A copy of the foregoing Memorandum in Response was sent by regular U.S. mail or electronic service this 19th day of October, 2016 to:

Erika Cunliffe
310 Lakeside Ave., Suite 200
Cleveland, Ohio 44113

/S/ Brett Hammond
Brett Hammond (0091757)
Assistant Prosecuting Attorney

15

# The Supreme Court of Ohio



APR 19 2017

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

James W. Daniel

Case No. 2016-1377

E N T R Y

Upon consideration of the jurisdictional memoranda filed in this case, the court declines to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

(Cuyahoga County Court of Appeals; No. 103258)

Maureen O'Connor
Chief Justice

The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/



EXHIBIT

32

skip to main content

Print

# CASE INFORMATION

## CR-14-589487-A  THE STATE OF OHIO vs. JAMES W DANIEL

### Docket Information

| Proceeding Date | Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|---|
| 12/15/2017 | 12/15/2017 | D1 | SR | ORDERED JE NOTICE(34056193) SENT BY REGULAR MAIL SERVICE. TO: JAMES W DANIEL III III SOUTHERN OHIO CORR FAC #A671658 P.O. BOX 45699 LUCASVILLE, OH 45699-0000 | |
| 12/08/2017 | 12/11/2017 | N/A | JE | DEFENDANT'S MOTION FOR TRANSCRIPTS OF PROCEEDINGS AT STATE'S EXPENSE IS DENIED. CLERK ORDERED TO SEND A COPY OF THIS ORDER TO: DEFENDANT, JAMES W DANIEL; SOUTHERN OHIO CORR FAC #A671658 P.O. BOX 45699 LUCASVILLE, OH 45699-0000 12/08/2017 CPMBX 12/08/2017 15:21:09 | |
| 12/01/2017 | 12/01/2017 | D1 | MO | DEFENDANT'S MOTION FOR TRANSCRIPTS OF PROCEEDINGS AT STATES EXPENSE | |
| 10/30/2017 | 10/30/2017 | D1 | SR | ORDERED JE NOTICE(33659523) SENT BY REGULAR MAIL SERVICE. TO: JAMES W DANIEL III III SOUTHERN OHIO CORR FAC #A671658 P.O. BOX 45699 LUCASVILLE, OH 45699-0000 | |
| 10/23/2017 | 10/26/2017 | N/A | JE | DEFENDANT'S MOTION FOR DISCOVER AND INSPECTION OF EVIDENCE OR IN THE ALTERNATIVE TO SUPPRESS THE SAME UNDER OHIO RULES OF CRIMINAL PROCEDURE RULE 16 IS DENIED. CLERK ORDERED TO SEND A COPY OF THIS ORDER TO: JAMES DANIELS #A671658; SOUTHERN OHIO CORRECTIONAL FACILITY, P.O. BOX 45699, LUCASVILLE, OHIO 45699 10/23/2017 CPCG1 10/23/2017 13:59:06 | |
| 10/19/2017 | 10/19/2017 | P1 | BR | BRIEF IN OPPOSITION, FILED STATES BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION OF EVIDENCE MOTION TO SUPPRESS | |
| 10/05/2017 | 10/05/2017 | D1 | MO | MOTION FOR DISCOVER AND INSPECTION OF EVIDENCE OR IN THE ALTERNATIVE TO SUPRESS THE SA,E UNDER OHIO RULES OF CRIMINAL PROCEDURE RULE 16, FILED | |
| 08/04/2016 | 08/04/2016 | N/A | JE | Affirmed.> Frank D. Celebrezze, Jr., J., and Larry A. Jones, Sr., A.J., concur; Mary J. Boyle, J., dissents (with separate opinion attached). Notice issued. | |
| 03/02/2016 | 03/02/2016 | D1 | CL | SUPPLEMANTAL RECORD ON APPEAL, PAGINATION SHEET AND CRIMINAL FILE SENT TO THE COURT OF APPEALS. | |
| 02/26/2016 | 02/26/2016 | N/A | JE | NUNC PRO TUNC ENTRY AS OF AND FOR 06/17/2015. NUNC PRO TUNC SENTENCING ENTRY OF 06/17/2015 AND CORRECTED ENTRY OF 07/17/2015. COURT OF APPEALS OF OHIO, EIGHTH DISTRICT, MOTION NO. | |

EXHIBIT
33

493079. ** CORRECTION TO COUNTS 11, 16 AND 23. DEFENDANT TO SERVE 3 YEARS FIREARM SPECIFICATION ON EACH COUNT PRIOR TO AND CONSECUTIVE. IN ADDITION, SENTENCING JOURNAL ENTRY WILL REFLECT CONVICTIONS FOR COUNTS 17, 18 AND 19 FROM THE ORIGINAL INDICTMENT. ** NUNC PRO TUNC ENTRY AS OF AND FOR 06/22/2015. SENTENCING ENTRY DATED 6/22/2015 IS CORRECTED TO REFLECT CORRECT ENTRY DATE OF 6/17/2015. ** CHANGE SEXUALLY VIOLENT PREDATOR SPECIFICATION IN COUNTS 6, 7, 17, 18 AND 19 TO REFLECT A TOTAL OF 10 YEARS IN PRISON ON EACH COUNT. ON COUNT 9, CHANGE THE WORDING AND DELETE "TO LIFE." ** DEFENDANT IN COURT. COUNSEL FRANK CAVALLO PRESENT. PROSECUTING ATTORNEY (S) AQUEELAH A. JORDAN AND RICK BELL PRESENT. COURT REPORTER RICHARD HAMSKI PRESENT. DEFENDANT INDIGENT. STEVE CANFIL WILL BE ASSIGNED FOR APPEAL. TRANSCRIPT ORDERED AT STATE'S EXPENSE. ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT (S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT (S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT

GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9 AND 14.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8, 10 AND 16.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A (2) F2 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 15 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO COUNT 15.) ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT). THESE COUNTS HAVE NOT BEEN RE-NUMBERED. ** FOR COUNTS 17, 18 AND 19, USE ORIGINAL INDICTMENT TO REFLECT CONVICTIONS. COUNTS 17, 18 AND 19 WERE LISTED IN THE ORIGINAL SENTENCING JOURNAL ENTRY DATED 06/17/2015 AND CORRECTED SENTENCING JOURNAL ENTRY DATED 07/17/2015. THEY WERE RE-NUMBERED TO COUNTS 11, 12 AND 13. ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02(A)(2) F1 WITH FIREARM SPECIFICATION(S) ¿ 1 YEAR (2941.141), FIREARM SPECIFICATION(S) ¿ 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT. THE

COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT. (COUNTS 17 AND 18 OF THE ORIGINAL INDICTMENT WERE RE-NUMBERED TO COUNTS 11 AND 12. DURING SENTENCING, COUNTS 17 AND 18 WERE USED). ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01(A)(4) F1 WITH FIREARM SPECIFICATION(S) ¿ 1 YEAR (2941.141), FIREARM SPECIFICATION(S) ¿ 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT 19 OF THE ORIGINAL INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT 19 OF THE ORIGINAL INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT 19 OF THE ORIGINAL INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT 19 OF THE ORIGINAL INDICTMENT. (COUNT 19 OF THE ORIGINAL INDICTMENT WAS RE-NUMBERED TO COUNT 13. DURING SENTENCING, COUNT 19 WAS USED). ** COUNTS 1 THROUGH 4 IN THE ORIGINAL INDICTMENT WERE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23 ON OR ABOUT JUNE 5, 2015. ON JUNE 5, 2015, DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT. DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT. DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT. DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO KIDNAPPING 2905.01 A (4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION (S) AS CHARGED IN COUNT(S) 23 OF THE INDICTMENT. COURT ACCEPTED DEFENDANT'S GUILTY PLEA. THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW. THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11. A SENTENCING HEARING WAS HELD ON JUNE 17, 2015. PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT. DEFENSE COUNSEL FRANK CAVALLO ADDRESSED THE COURT. DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE. THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE CONSTRUCTED IN THE FOLLOWING MANNER: FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL

INDICTMENT. THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3. DEFENDANT TO SERVE 10 YEARS ON COUNT 2. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3. COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2. COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS. THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9. THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7. THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9 AND 11. 1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 9 FOR A TOTAL OF 13 YEARS. DEFENDANT TO SERVE 3 YEARS ON COUNT 11. ** DEFENDANT SENTENCED ON COUNT 11 TO 3 YEARS FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVELY TO COUNTS 5, 6, 7 AND 9. ** DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11. THE COUNTS ARE TO RUN CONSECUTIVE TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23. THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING. THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14. THE COURT WILL SENTENCE ON COUNTS 12, 14 AND 16. THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE ON COUNT 12. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT 14. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 14. DEFENDANT TO SERVE 3 YEARS ON COUNT 16. ** DEFENDANT SENTENCED ON COUNT 16 TO 3 YEARS FIREARM

SPECIFICATION TO BE SERVED PRIOR TO AND
CONSECUTIVELY TO COUNTS 12 AND 14. ** DEFENDANT
TO SERVE A TOTAL SENTENCE OF 29 YEARS ON
COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE
TO RUN CONSECUTIVE. COUNTS TO RUN
CONSECUTIVE TO COUNTS 5 THROUGH 11 AND
COUNTS 17 THROUGH 23. THE STATE ELECTS TO HAVE
COUNT 22 MERGE INTO COUNT 19 FOR PURPOSES OF
SENTENCING. NO OTHER COUNTS WILL MERGE FOR
PURPOSES OF SENTENCING. THE COURT WILL
SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23.
DEFENDANT TO SERVE 10 YEARS ON THE BASE
CHARGE IN COUNT 17. THE BASE CHARGE IS
ENHANCED BY THE SEXUALLY VIOLENT PREDATOR
SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO
LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED
PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE
ON BASE CHARGE ON COUNT 17. DEFENDANT TO
SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18.
THE BASE CHARGE IS ENHANCED BY THE SEXUALLY
VIOLENT PREDATOR SPECIFICATION, MAKING THE
SENTENCE 10 YEARS TO LIFE. 3 YEAR FIREARM
SPECIFICATION TO BE SERVED PRIOR TO AND
CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE
CHARGE ON COUNT 18. DEFENDANT TO SERVE 10
YEARS ON THE BASE CHARGE IN COUNT 19. THE BASE
CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT
PREDATOR SPECIFICATION, MAKING THE SENTENCE 10
YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE
SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS
TO LIFE ON BASE CHARGE ON COUNT 19. 3 YEAR
FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND
CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON
COUNT 20. 3 YEAR FIREARM SPECIFICATION TO BE
SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS
ON BASE CHARGE ON COUNT 21. DEFENDANT TO
SERVE 15 YEARS CONSECUTIVE ON FIREARM
SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21.
DEFENDANT TO SERVE 3 YEARS ON COUNT 23. **
DEFENDANT SENTENCED ON COUNT 23 TO 3 YEARS
FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND
CONSECUTIVELY TO COUNTS 17, 18, 19, 20 AND 21. **
DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE
ON COUNTS 17, 18, 19, 20, 21 AND 23. COUNTS 5, 6, 7, 9,
11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN
CONSECUTIVE TO EACH OTHER. COUNTS 2 AND 3 ARE
TO RUN CONSECUTIVE TO EACH OTHER BUT
CONCURRENT TO COUNTS 5 THROUGH 23. THE COURT
FINDS THAT CONSECUTIVE SENTENCES ARE
NECESSARY TO PROTECT THE PUBLIC AND PUNISH
THE DEFENDANT AND ARE NOT DISPROPORTIONATE
TO OTHER SENTENCES FOR SIMILAR OFFENSES.
ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY
SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED
TO PROTECT THE PUBLIC. DEFENDANT TO SERVE
TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE.
POST RELEASE CONTROL IS PART OF THIS PRISON
SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE
FELONY(S) UNDER R.C.2967.28. DEFENDANT ADVISED

THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER RC 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE OFFENDER. PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1. PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3. *** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD OFFENDER REGISTRANT. *** COURT EXPLAINED ALL DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX OFFENDER. DEFENDANT, WHEN NOT INCARCERATED UNDER ANY OF THE SENTENCES MUST PERSONALLY REGISTER HIS RESIDENCE, EMPLOYMENT OR SCHOOL (OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES WITH THE COUNTY SHERIFF OF THE COUNTY CONTAINING THESE ADDRESSES AND VERIFY SAME FOR LIFETIME WITH IN PERSON VERIFICATION EVERY 90 DAYS BY PERSONALLY APPEARING AT THE SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR NOTICE OF ANY RESIDENCE OR SCHOOL ADDRESS CHANGE TO THE COUNTY SHERIFF WITH WHOM HE MOST RECENTLY REGISTERED AND TO THE COUNTY SHERIFF OF THE COUNTY IN WHICH THE NEW ADDRESS IS LOCATED. HE MUST REGISTER A NEW EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING SUCH NEW ADDRESS WITH SUCH SHERIFF. THESE PROVISIONS APPLY WITH EQUAL FORCE SHOULD DEFENDANT RESIDE, ATTEND SCHOOL OR WORK IN ANY OTHER STATE OF THE UNITED STATES. DEFENDANT IS ORDERED TO SUBMIT TO A DNA SPECIMAN COLLECTION PROCEDURE UNDER R.C. 2901.07. SHERIFF ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE: BLACK. 02/26/2016 CPDEJ 02/26/2016 14:57:29

| Date | Date | Party | Code | Description |
|---|---|---|---|---|
| 02/08/2016 | 02/08/2016 | N/A | JE | CAPTIONED CASE BEING REMANDED TO THE COURT OF COMMON PLEAS BY ORDER OF THE COURT OF APPEALS; THIS MATTER IS HEREBY RETURNED TO THE DOCKET OF JUDGE DAVID T MATIA (329). ADMINISTRATIVE JUDGE JOHN J. RUSSO THIS ENTRY TAKEN BY JUDGE JOHN J RUSSO. 02/08/2016 CPJR1 02/08/2016 15:08:49 |
| 08/24/2015 | 08/24/2015 | D1 | CL | DEFENDANT TRANSCRIPTS OF PRCEEDINGS FILE 9 VOLS AND 1 ENV OF EXHIBITS AND 1 BR FOLDER OF EXHIBITS OVS. |
| 08/24/2015 | 08/24/2015 | D | JE | COURT REPORTER ALLOWED $5,623.75. RECEIVED FOR FILING. |
| 08/13/2015 | 08/13/2015 | P1 | MO | MOTION FILED BY P1 THE STATE OF OHIO ATTORNEY ERIC L. FOSTER 0092722 STATE'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA |
| 08/06/2015 | 08/06/2015 | D1 | CL | RECORD ON APPEAL, PAGINATION SHEET AND CRIMINAL FILE SENT TO THE COURT OF APPEALS. |
| 07/20/2015 | 07/20/2015 | D1 | GP | JOURNAL ENTRY SENT TO ODRC ON 7/20/15. |
| 07/20/2015 | 07/20/2015 | D1 | MO | MOTION TO WITHDRAW PLEA, FILED. PRO SE LORAIN CI #671658 |

| 07/17/2015 | 07/17/2015 | D1 | MO | MOTION TO WITHDRAW PLEA, FILED. PRO SE LORAIN CI #671658 |
| 07/17/2015 | 07/17/2015 | N/A | JE | NUNC PRO TUNC ENTRY AS OF AND FOR 06/22/2015. SENTENCING ENTRY DATED 6/22/2015 IS CORRECTED TO REFLECT CORRECT ENTRY DATE OF 6/17/2015. ** CHANGE SEXUALLY VIOLENT PREDATOR SPECIFICATION IN COUNTS 6, 7, 17, 18 AND 19 TO REFLECT A TOTAL OF 10 YEARS IN PRISON ON EACH COUNT. ON COUNT 9, CHANGE THE WORDING AND DELETE "TO LIFE." ** DEFENDANT IN COURT. COUNSEL FRANK CAVALLO PRESENT. PROSECUTING ATTORNEY (S) AQUEELAH A. JORDAN AND RICK BELL PRESENT. COURT REPORTER RICHARD HAMSKI PRESENT. DEFENDANT INDIGENT. STEVE CANFIL WILL BE ASSIGNED FOR APPEAL. TRANSCRIPT ORDERED AT STATE'S EXPENSE. ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT (S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT (S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF |

NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS
CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE
INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS
9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9
AND 14.) ON A PRIOR DATE, THE JURY RETURNED A
VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1
WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141),
FIREARM SPECIFICATION(S) - 3 YEARS (2941.145)
UNDER COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT. THE
COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF
PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN
COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT. THE
COURT FOUND THE DEFENDANT GUILTY OF REPEAT
VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE
INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS
10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8,
10 AND 16.) ON A PRIOR DATE, THE JURY RETURNED A
VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A
(2) F2 WITH FIREARM SPECIFICATION(S) - 1 YEAR
(2941.141), FIREARM SPECIFICATION(S) - 3 YEARS
(2941.145) UNDER COUNT(S) 15 OF THE INDICTMENT.
THE COURT FOUND THE DEFENDANT GUILTY OF
NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS
CHARGED IN COUNT(S) 15 OF THE INDICTMENT. THE
COURT FOUND THE DEFENDANT GUILTY OF REPEAT
VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS
CHARGED IN COUNT(S) 15 OF THE INDICTMENT. (IN THE
ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO
COUNT 15.) ON A PRIOR DATE, THE COURT FOUND THE
DEFENDANT GUILTY OF HAVING WEAPONS WHILE
UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM
SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN
THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN
ORIGINAL INDICTMENT). THESE COUNTS HAVE NOT
BEEN RE-NUMBERED. COUNTS 1 THROUGH 4 IN THE
ORIGINAL INDICTMENT WERE AMENDED AND RENAMED
AS COUNTS 20 THROUGH 23 ON OR ABOUT JUNE 5,
2015. ON JUNE 5, 2015, DEFENDANT RETRACTED
FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA
OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1
AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT
GUILTY AND ENTERED A PLEA OF GUILTY TO
AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED
IN COUNT(S) 21 OF THE INDICTMENT. DEFENDANT
RETRACTED FORMER PLEA OF NOT GUILTY AND
ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1
WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S)
AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT.
DEFENDANT RETRACTED FORMER PLEA OF NOT
GUILTY AND ENTERED A PLEA OF GUILTY TO
KIDNAPPING 2905.01 A(4) F1 WITH SEXUAL MOTIVATION
SPECIFICATION(S) 2941.147, SEXUAL VIOLENT
PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT
(S) 23 OF THE INDICTMENT. COURT ACCEPTED
DEFENDANT'S GUILTY PLEA. THE COURT CONSIDERED
ALL REQUIRED FACTORS OF THE LAW. THE COURT

FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11. A SENTENCING HEARING WAS HELD ON JUNE 17, 2015. PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT. DEFENSE COUNSEL FRANK CAVALLO ADDRESSED THE COURT. DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE. THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE CONSTRUCTED IN THE FOLLOWING MANNER: FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL INDICTMENT. THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3. DEFENDANT TO SERVE 10 YEARS ON COUNT 2. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3. COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2. COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS. THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9. THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7. THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9 AND 11. 1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 9 FOR A TOTAL OF 13 YEARS. DEFENDANT TO SERVE 3 YEARS ON COUNT 11. DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11. THE COUNTS ARE TO RUN CONSECUTIVE TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23. THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING. THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14. THE COURT WILL SENTENCE

ON COUNTS 12, 14 AND 16. THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE ON COUNT 12. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT 14. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 14. DEFENDANT TO SERVE 3 YEARS ON COUNT 16. DEFENDANT TO SERVE A TOTAL SENTENCE OF 29 YEARS ON COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE TO RUN CONSECUTIVE. COUNTS TO RUN CONSECUTIVE TO COUNTS 5 THROUGH 11 AND COUNTS 17 THROUGH 23. THE STATE ELECTS TO HAVE COUNT 22 MERGE INTO COUNT 19 FOR PURPOSES OF SENTENCING. NO OTHER COUNTS WILL MERGE FOR PURPOSES OF SENTENCING. THE COURT WILL SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 17. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 17. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 18. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 19. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 10 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 19. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 20. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS ON BASE CHARGE ON COUNT 21. DEFENDANT TO SERVE 15 YEARS CONSECUTIVE ON FIREARM SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21. DEFENDANT TO SERVE 3 YEARS ON COUNT 23. DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23. COUNTS 5, 6, 7, 9, 11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN CONSECUTIVE TO EACH OTHER. COUNTS 2 AND 3 ARE TO RUN CONSECUTIVE TO EACH OTHER BUT CONCURRENT TO COUNTS 5 THROUGH 23. THE COURT FINDS THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC AND PUNISH THE DEFENDANT AND ARE NOT DISPROPORTIONATE TO OTHER SENTENCES FOR SIMILAR OFFENSES. ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED TO PROTECT THE PUBLIC. DEFENDANT TO SERVE TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE.

POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE FELONY(S) UNDER R.C.2967.28. DEFENDANT ADVISED THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER RC 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE OFFENDER. PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1. PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3. *** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD OFFENDER REGISTRANT. *** COURT EXPLAINED ALL DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX OFFENDER. DEFENDANT, WHEN NOT INCARCERATED UNDER ANY OF THE SENTENCES MUST PERSONALLY REGISTER HIS RESIDENCE, EMPLOYMENT OR SCHOOL (OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES WITH THE COUNTY SHERIFF OF THE COUNTY CONTAINING THESE ADDRESSES AND VERIFY SAME FOR LIFETIME WITH IN PERSON VERIFICATION EVERY 90 DAYS BY PERSONALLY APPEARING AT THE SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR NOTICE OF ANY RESIDENCE OR SCHOOL ADDRESS CHANGE TO THE COUNTY SHERIFF WITH WHOM HE MOST RECENTLY REGISTERED AND TO THE COUNTY SHERIFF OF THE COUNTY IN WHICH THE NEW ADDRESS IS LOCATED. HE MUST REGISTER A NEW EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING SUCH NEW ADDRESS WITH SUCH SHERIFF. THESE PROVISIONS APPLY WITH EQUAL FORCE SHOULD DEFENDANT RESIDE, ATTEND SCHOOL OR WORK IN ANY OTHER STATE OF THE UNITED STATES. DEFENDANT IS ORDERED TO SUBMIT TO A DNA SPECIMAN COLLECTION PROCEDURE UNDER R.C. 2901.07. SHERIFF ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE: BLACK. 07/17/2015 CPDEJ 07/17/2015 13:51:14

| | | | | |
|---|---|---|---|---|
| 07/16/2015 | 07/16/2015 | D1 | NT | NOTICE OF APPEAL-PRAECIPE FILED |
| 07/13/2015 | 07/13/2015 | D1 | NT | NOTICE OF APPEAL FILED |
| 07/13/2015 | 07/13/2015 | D1 | NT | NOTICE OF APPEAL, JOURNAL ENTRY, DOCKETING STATEMENT (REGULAR), FILED AND SENT TO THE COUIRT OF APPEALS WITH A COPY OF THE DOCKET SHEET. THE COURT OF APPEALS NUMBER ASSIGNED IS 103258. |
| 06/24/2015 | 06/24/2015 | N/A | CS | COURT REPORTER FEE |
| 06/24/2015 | 06/24/2015 | N/A | CS | COURT COST ASSESSED JAMES W DANIEL III BILL AMOUNT 4346.66 PAID AMOUNT 0 AMOUNT DUE 4346.66 |
| 06/24/2015 | 06/24/2015 | D1 | DR | COURT REPORTER FEE |
| 06/24/2015 | 06/24/2015 | D1 | DR | SHERIFF FEES |
| 06/24/2015 | 06/24/2015 | D1 | CS | JURY FEES |
| 06/22/2015 | 06/22/2015 | N/A | JE | DEFENDANT IN COURT. COUNSEL FRANK CAVALLO PRESENT. PROSECUTING ATTORNEY(S) AQUEELAH A. JORDAN AND RICK BELL PRESENT. COURT REPORTER RICHARD HAMSKI PRESENT. DEFENDANT INDIGENT. |

STEVE CANFIL WILL BE ASSIGNED FOR APPEAL. TRANSCRIPT ORDERED AT STATE'S EXPENSE. ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT (S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT (S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 1, 2, 3, 11 AND 12 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 5, 6, 7, 17 AND 18 ARE RENUMBERED TO COUNTS 1, 2, 3, 11 AND 12.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(4) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT (S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 4, 13 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 8 AND 19 ARE RENUMBERED TO COUNTS 4 AND 13.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF AGGRAVATED ROBBERY 2911.01 A(1) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9 AND 14 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 9, 12, 14 AND 20 ARE RENUMBERED TO COUNTS 5, 7, 9 AND 14.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS

CHARGED IN COUNT(S) 6, 8, 10 AND 16 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNTS 10, 13, 15 AND 22 ARE RENUMBERED TO COUNTS 6, 8, 10 AND 16.) ON A PRIOR DATE, THE JURY RETURNED A VERDICT OF GUILTY OF FELONIOUS ASSAULT 2903.11 A (2) F2 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) UNDER COUNT(S) 15 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT. THE COURT FOUND THE DEFENDANT GUILTY OF REPEAT VIOLENT OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S) 15 OF THE INDICTMENT. (IN THE ORIGINAL INDICTMENT, COUNT 21 IS RENUMBERED TO COUNT 15.) ON A PRIOR DATE, THE COURT FOUND THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT). THESE COUNTS HAVE NOT BEEN RE-NUMBERED. COUNTS 1 THROUGH 4 IN THE ORIGINAL INDICTMENT WERE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23 ON OR ABOUT JUNE 5, 2015. ON JUNE 5, 2015, DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT. DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT. DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT. DEFENDANT RETRACTED FORMER PLEA OF NOT GUILTY AND ENTERED A PLEA OF GUILTY TO KIDNAPPING 2905.01 A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT (S) 23 OF THE INDICTMENT. COURT ACCEPTED DEFENDANT'S GUILTY PLEA. THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW. THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11. A SENTENCING HEARING WAS HELD ON JUNE 17, 2015. PROSECUTOR RICK BELL AND AQUEELAH JORDAN ADDRESSED THE COURT. DEFENSE COUNSEL FRANK CAVALLO ADDRESSED THE COURT. DEFENDANT WAS OFFERED AND REFUSED AN OPPORTUNITY TO ALLOCUTE. THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 144 YEARS TO LIFE CONSTRUCTED IN THE FOLLOWING MANNER: FOR SENTENCING PURPOSES, THE COURT USED ORIGINAL INDICTMENT WITH ORIGINAL COUNT NUMBERS. ALL NUMBERED COUNTS FROM THIS POINT FORWARD REFER TO THOSE AS NUMBERED IN THE ORIGINAL INDICTMENT.

THE STATE CONCEDES THAT COUNTS 4 AND 1 MERGE FOR PURPOSES OF SENTENCING INTO COUNT 3. STATE ELECTS TO PROCEED WITH SENTENCE ON COUNT 3. COUNTS 4 AND 1 WILL MERGE INTO COUNT 3. COUNT 2 WILL NOT MERGE. THE COURT WILL SENTENCE ON COUNTS 2 AND 3. DEFENDANT TO SERVE 10 YEARS ON COUNT 2. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 3. COUNT 3 IS TO RUN CONSECUTIVELY TO COUNT 2. COUNT 2 AND 3 ARE TO RUN CONCURRENTLY TO ALL OTHER COUNTS. THE STATE ELECTS TO HAVE COUNT 10 MERGE INTO COUNT 9. THE STATE ELECTS TO HAVE COUNT 8 MERGE INTO COUNT 7. THE COURT WILL SENTENCE ON COUNTS 5, 6, 7, 9 AND 11. 1 YEAR FIREARM SPECIFICATIONS MERGE INTO 3 YEAR FIREARM SPECIFICATIONS. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 5. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 5 FOR A TOTAL OF 13 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 6. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 6. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 7. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. DEFENDANT TO SERVE 10 YEARS TO LIFE ON COUNT 7. THE COURT DID NOT IMPOSE FIREARM SPECIFICATION ON THIS COUNT. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE BASE CHARGE ON COUNT 9 FOR A TOTAL OF 13 YEARS. DEFENDANT TO SERVE 3 YEARS ON COUNT 11. DEFENDANT TO SERVE 49 YEARS TO LIFE ON COUNTS 5, 6, 7, 9 AND 11. THE COUNTS ARE TO RUN CONSECUTIVE TO COUNTS 12 THROUGH 16 AND COUNTS 17 THROUGH 23. THE STATE ELECTS TO MERGE COUNT 13 INTO COUNT 12 FOR PURPOSES OF SENTENCING. THE STATE ELECTS TO HAVE COUNT 15 MERGE INTO COUNT 14. THE COURT WILL SENTENCE ON COUNTS 12, 14 AND 16. THE 3 YEAR FIREARM SPECIFICATION IS TO BE SERVED PRIOR TO AND CONSECUTIVE WITH THE BASE CHARGE ON COUNT 12. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 12. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE ON THE BASE CHARGE ON COUNT 14. DEFENDANT IS TO SERVE 10 YEARS ON BASE CHARGE IN COUNT 14. DEFENDANT TO SERVE 3 YEARS ON COUNT 16. DEFENDANT TO SERVE A TOTAL SENTENCE OF 29 YEARS ON COUNTS 12, 14 AND 16 AS COUNTS 12, 14 AND 16 ARE TO RUN CONSECUTIVE. COUNTS TO RUN CONSECUTIVE TO COUNTS 5 THROUGH 11 AND COUNTS 17 THROUGH 23. THE STATE ELECTS TO HAVE COUNT 22 MERGE INTO

COUNT 19 FOR PURPOSES OF SENTENCING. NO OTHER COUNTS WILL MERGE FOR PURPOSES OF SENTENCING. THE COURT WILL SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 17. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 17. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 18. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 18. DEFENDANT TO SERVE 10 YEARS ON THE BASE CHARGE IN COUNT 19. THE BASE CHARGE IS ENHANCED BY THE SEXUALLY VIOLENT PREDATOR SPECIFICATION, MAKING THE SENTENCE 13 YEARS TO LIFE. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS TO LIFE ON BASE CHARGE ON COUNT 19. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 10 YEARS ON BASE CHARGE ON COUNT 20. 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE WITH 8 YEARS ON BASE CHARGE ON COUNT 21. DEFENDANT TO SERVE 15 YEARS CONSECUTIVE ON FIREARM SPECIFICATIONS ON COUNT 17, 18, 19, 20 AND 21. DEFENDANT TO SERVE 3 YEARS ON COUNT 23. DEFENDANT TO SERVE 66 YEARS TO LIFE SENTENCE ON COUNTS 17, 18, 19, 20, 21 AND 23. COUNTS 5, 6, 7, 9, 11, 12, 14, 16, 17, 18, 19, 20, 21 AND 23 ARE TO RUN CONSECUTIVE TO EACH OTHER. COUNTS 2 AND 3 ARE TO RUN CONSECUTIVE TO EACH OTHER BUT CONCURRENT TO COUNTS 5 THROUGH 23. THE COURT FINDS THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC AND PUNISH THE DEFENDANT AND ARE NOT DISPROPORTIONATE TO OTHER SENTENCES FOR SIMILAR OFFENSES. ADDITIONALLY, THE DEFENDANT'S CRIMINAL HISTORY SHOWS THAT CONSECUTIVE SENTENCES ARE NEEDED TO PROTECT THE PUBLIC. DEFENDANT TO SERVE TOTAL PRISON SENTENCE OF 144 YEARS TO LIFE. POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR 5 YEARS MANDATORY FOR THE ABOVE FELONY(S) UNDER R.C.2967.28. DEFENDANT ADVISED THAT IF/WHEN POST RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER RC 2967.131(B), PAROLE BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON TERM ORIGINALLY IMPOSED UPON THE OFFENDER. PRC MANDATORY 5 YEARS ON ALL COUNTS WITH F1. PRC MANDATORY 3 YEARS ON COUNTS WITH F2 AND F3. *** DEFENDANT IS DETERMINED TO BE A TIER III SEX OFFENDER/CHILD

OFFENDER REGISTRANT. *** COURT EXPLAINED ALL
DEFENDANT'S REGISTRATION DUTIES AS A TIER III SEX
OFFENDER. DEFENDANT, WHEN NOT INCARCERATED
UNDER ANY OF THE SENTENCES MUST PERSONALLY
REGISTER HIS RESIDENCE, EMPLOYMENT OR SCHOOL
(OR INSTITUTION OF HIGHER EDUCATION) ADDRESSES
WITH THE COUNTY SHERIFF OF THE COUNTY
CONTAINING THESE ADDRESSES AND VERIFY SAME
FOR LIFETIME WITH IN PERSON VERIFICATION EVERY
90 DAYS BY PERSONALLY APPEARING AT THE
SHERIFF'S OFFICE. HE MUST GIVE 20 DAYS PRIOR
NOTICE OF ANY RESIDENCE OR SCHOOL ADDRESS
CHANGE TO THE COUNTY SHERIFF WITH WHOM HE
MOST RECENTLY REGISTERED AND TO THE COUNTY
SHERIFF OF THE COUNTY IN WHICH THE NEW
ADDRESS IS LOCATED. HE MUST REGISTER A NEW
EMPLOYMENT ADDRESS WITHIN 3 DAYS OF OBTAINING
SUCH NEW ADDRESS WITH SUCH SHERIFF. THESE
PROVISIONS APPLY WITH EQUAL FORCE SHOULD
DEFENDANT RESIDE, ATTEND SCHOOL OR WORK IN
ANY OTHER STATE OF THE UNITED STATES.
DEFENDANT IS ORDERED TO SUBMIT TO A DNA
SPECIMAN COLLECTION PROCEDURE UNDER R.C.
2901.07. SHERIFF ORDERED TO TRANSPORT
DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981,
GENDER: MALE, RACE: BLACK. 06/22/2015 CPDEJ
06/22/2015 14:33:00

| | | | | |
|---|---|---|---|---|
| 06/18/2015 | 06/18/2015 | N/A | CS | COURT REPORTER FEE |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026229, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026212, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026211, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026210, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026209, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026208, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026207, IN THE AMOUNT OF $8.50. |
| 06/10/2015 | 06/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026203, IN THE AMOUNT OF $8.50. |
| 06/08/2015 | 06/08/2015 | N/A | JE | DEFENDANT'S MOTION TO DISQUALIFY COUNSEL IS WITHDRAWN. 06/08/2015 CPCG1 06/08/2015 11:46:20 |
| 06/08/2015 | 06/08/2015 | N/A | CS | COURT REPORTER FEE |
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024892, IN THE AMOUNT OF $8.50. |
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024888, IN THE AMOUNT OF $8.50. |
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024886, IN THE AMOUNT OF $8.50. |
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024885, IN THE AMOUNT OF $8.50. |
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024884, IN THE AMOUNT OF $8.50. |

| | | | | |
|---|---|---|---|---|
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024883, IN THE AMOUNT OF $8.50. |
| 06/08/2015 | 06/08/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024882, IN THE AMOUNT OF $8.50. |
| 06/06/2015 | 06/06/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1025192, IN THE AMOUNT OF $8.50. |
| 06/05/2015 | 06/08/2015 | N/A | JE | PARTIES AGREE TO TH STATE OF OHIO AMENDING INDICTMENT AS FOLLOWS: COUNTS 1 THROUGH 4 ARE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23. 06/05/2015 CPCG1 06/05/2015 14:56:02 |
| 06/05/2015 | 06/08/2015 | N/A | JE | DEFENDANT IN COURT WITH COUNSEL FRANK CAVALLO. PROSECUTING ATTORNEY(S) MAX MARTIN PRESENT. COURT REPORTER NANCY GEIGER PRESENT. DEFENDANT FULLY ADVISED IN OPEN COURT OF HIS/HER CONSTITUTIONAL RIGHTS AND PENALTIES. COUNTS 1 THROUGH 4 ARE AMENDED AND RENAMED AS COUNTS 20 THROUGH 23. DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(1) F1 AS CHARGED IN COUNT(S) 20 OF THE INDICTMENT. DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO AGGRAVATED BURGLARY 2911.11 A(2) F1 AS CHARGED IN COUNT(S) 21 OF THE INDICTMENT. DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO RAPE 2907.02 A(2) F1 WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 22 OF THE INDICTMENT. DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO KIDNAPPING 2905.01 A(4) F1 WITH SEXUAL MOTIVATION SPECIFICATION(S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT (S) 23 OF THE INDICTMENT. COURT ACCEPTS DEFENDANT'S GUILTY PLEA. STATE OF OHIO ORDERED TO NOTIFY VICTIM OF DATE & TIME OF SENTENCING. SENTENCING SET FOR 06/17/2015 AT 01:30 PM. DEFENDANT REMANDED. 06/05/2015 CPEDB 06/08/2015 11:35:28 |
| 06/04/2015 | 06/04/2015 | N/A | JE | PRETRIAL SET FOR 06/05/2015 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. 06/04/2015 CPCG1 06/04/2015 15:17:27 |
| 05/19/2015 | 05/19/2015 | D1 | MO | MOTION TO DISQUALIFY COUNSEL, FILED PRO SE. CCJ 218901 |
| 05/07/2015 | 05/08/2015 | N/A | JE | TRIAL SET FOR 06/08/2015 AT 09:00 AM. AT THE REQUEST OF COURT. REASON FOR CONTINUANCE: TRIAL SET ON COUNTS 1,2,3 AND 4. 05/07/2015 CPCG1 05/07/2015 15:26:15 |
| 05/07/2015 | 05/08/2015 | N/A | JE | SENTENCING SET FOR MAY 8, 2015 AT 9:00 IS CANCELLED. 05/07/2015 CPCG1 05/07/2015 14:57:39 |
| 05/01/2015 | 05/01/2015 | D | JE | COURT REPORTER ALLOWED $42.25. RECEIVED FOR FILING. |
| 04/29/2015 | 04/29/2015 | D1 | OT | JURY VERDICT FORMS FILED |
| 04/29/2015 | 05/05/2015 | N/A | JE | DEFENDANT IN COURT WITH COUNSEL FRANK CAVALLO. PROSECUTING ATTORNEY(S) BRIAN RADIGAN, MAXWELL M. MARTIN AND AQUEELAH A. JORDAN PRESENT. COURT REPORTER KRISTIN BEUTLER PRESENT. THE JURY RETURNS A VERDICT OF |

GUILTY OF RAPE 2907.02 A(2) F1 WITH FIREARM
SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM
SPECIFICATION(S) - 3 YEARS (2941.145), SEXUAL
MOTIVATION SPECIFICATION(S) 2941.147 UNDER COUNT
(S) 1, 2, 3, 11, 12 OF THE INDICTMENT. THE COURT
FINDS THE DEFENDANT GUILTY OF NOTICE OF PRIOR
CONVICTION SPECIFICATION(S) AS CHARGED IN COUNT
(S) 1, 2, 3, 11, 12 OF THE INDICTMENT. THE COURT
FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT
OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN
COUNT(S) 1, 2, 3, 11, 12 OF THE INDICTMENT. THE
COURT FINDS THE DEFENDANT GUILTY OF SEXUAL
VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN
COUNT(S) 1, 2, 3, 11, 12 OF THE INDICTMENT. THE JURY
RETURNS A VERDICT OF GUILTY OF KIDNAPPING
2905.01 A(4) F1 WITH FIREARM SPECIFICATION(S) - 1
YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS
(2941.145), SEXUAL MOTIVATION SPECIFICATION(S)
2941.147 UNDER COUNT(S) 4, 13 OF THE INDICTMENT.
THE COURT FINDS THE DEFENDANT GUILTY OF NOTICE
OF PRIOR CONVICTION SPECIFICATION(S) AS CHARGED
IN COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT
FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT
OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN
COUNT(S) 4, 13 OF THE INDICTMENT. THE COURT FINDS
THE DEFENDANT GUILTY OF SEXUAL VIOLENT
PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT
(S) 4, 13 OF THE INDICTMENT. THE JURY RETURNS A
VERDICT OF GUILTY OF AGGRAVATED ROBBERY
2911.01 A(1) F1 WITH FIREARM SPECIFICATION(S) - 1
YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS
(2941.145) UNDER COUNT(S) 5, 7, 9, 14 OF THE
INDICTMENT. THE COURT FINDS THE DEFENDANT
GUILTY OF REPEAT VIOLENT OFFENDER
SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S)
5, 7, 9, 14 OF THE INDICTMENT. THE COURT FINDS THE
DEFENDANT GUILTY OF NOTICE OF PRIOR CONVICTION
SPECIFICATION(S) AS CHARGED IN COUNT(S) 5, 7, 9, 14
OF THE INDICTMENT. THE JURY RETURNS A VERDICT
OF GUILTY OF KIDNAPPING 2905.01 A(2) F1 WITH
FIREARM SPECIFICATION(S) - 1 YEAR (2941.141),
FIREARM SPECIFICATION(S) - 3 YEARS (2941.145)
UNDER COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT. THE
COURT FINDS THE DEFENDANT GUILTY OF NOTICE OF
PRIOR CONVICTION SPECIFICATION(S) AS CHARGED IN
COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT. THE COURT
FINDS THE DEFENDANT GUILTY OF REPEAT VIOLENT
OFFENDER SPECIFICATION(S) 2941.149 AS CHARGED IN
COUNT(S) 6, 8, 10, 16 OF THE INDICTMENT. THE JURY
RETURNS A VERDICT OF GUILTY OF FELONIOUS
ASSAULT 2903.11 A(2) F2 WITH FIREARM SPECIFICATION
(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3
YEARS (2941.145) UNDER COUNT(S) 15 OF THE
INDICTMENT. THE COURT FINDS THE DEFENDANT
GUILTY OF NOTICE OF PRIOR CONVICTION
SPECIFICATION(S) AS CHARGED IN COUNT(S) 15 OF
THE INDICTMENT. THE COURT FINDS THE DEFENDANT
GUILTY OF REPEAT VIOLENT OFFENDER
SPECIFICATION(S) 2941.149 AS CHARGED IN COUNT(S)

15 OF THE INDICTMENT. THE COURT FINDS THE DEFENDANT GUILTY OF HAVING WEAPONS WHILE UNDER DISABILITY 2923.13 A(2) F3 WITH FIREARM SPECIFICATION(S) - 1 YEAR (2941.141), FIREARM SPECIFICATION(S) - 3 YEARS (2941.145) AS CHARGED IN THE ORIGINAL INDICTMENT (COUNTS 11, 16, 23 IN ORIGINAL INDICTMENT). THESE COUNTS HAVE NOT BEEN RE-NUMBERED. THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 1 OF AGGRAVATED BURGLARY 2911.11 A(1) AS CHARGED IN COUNT(S) 1 OF THE ORIGINAL INDICTMENT. THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 2 OF AGGRAVATED BURGLARY 2911.11 A(2) AS CHARGED IN COUNT(S) 2 OF THE ORIGINAL INDICTMENT. THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 3 OF RAPE 2907.02 A(2) WITH SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 3 OF THE ORIGINAL INDICTMENT. THE COURT FINDS THE DEFENDANT WILL BE TRIED AT A LATER DATE FOR THE ORIGINAL COUNT 4 OF KIDNAPPING 2905.01 A(4) WITH SEXUAL MOTIVATION SPECIFICATION (S) 2941.147, SEXUAL VIOLENT PREDATOR SPECIFICATION(S) AS CHARGED IN COUNT(S) 4 OF THE ORIGINAL INDICTMENT. SENTENCING SET FOR 05/08/2015 AT 09:00 AM. 04/29/2015 CPDEJ 05/04/2015 15:40:14

| | | | | |
|---|---|---|---|---|
| 04/28/2015 | 04/30/2015 | N/A | JE | JURY DELIBERATES. 04/28/2015 CPCG1 04/28/2015 15:14:54 |
| 04/28/2015 | 04/28/2015 | N/A | CS | CALLING WITNESS |
| 04/28/2015 | 04/28/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1026207 |
| 04/27/2015 | 04/30/2015 | N/A | JE | JURY TRIAL CONTINUES. 04/27/2015 CPCG1 04/27/2015 16:15:28 |
| 04/27/2015 | 04/27/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/27/2015 | 04/27/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/27/2015 | 04/27/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1028494, IN THE AMOUNT OF $6.00. |
| 04/27/2015 | 04/27/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1028492, IN THE AMOUNT OF $6.00. |
| 04/27/2015 | 04/27/2015 | N/A | CS | CALLING WITNESS |
| 04/27/2015 | 04/27/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1028492 |
| 04/27/2015 | 04/27/2015 | N/A | CS | CALLING WITNESS |
| 04/27/2015 | 04/27/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1028494 |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026222, IN THE AMOUNT OF $11.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026221, IN THE AMOUNT OF $11.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026220, IN THE AMOUNT OF $11.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027880, IN THE AMOUNT OF $9.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027863, IN THE AMOUNT OF $10.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027862, IN THE AMOUNT OF $10.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | |

| | | | | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027861, IN THE AMOUNT OF $10.50. |
|---|---|---|---|---|
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027860, IN THE AMOUNT OF $10.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027857, IN THE AMOUNT OF $10.50. |
| 04/24/2015 | 04/24/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027856, IN THE AMOUNT OF $11.50. |
| 04/23/2015 | 04/24/2015 | N/A | JE | JURY TRIAL CONTINUES. 04/23/2015 CPCG1 04/23/2015 17:09:26 |
| 04/23/2015 | 04/23/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/23/2015 | 04/23/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/23/2015 | 04/23/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/23/2015 | 04/23/2015 | D1 | SH | RICHLAND COUNTY SHERIFF DEPT SERVICE FEE $19.48 SS 1026204 |
| 04/23/2015 | 04/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027980, IN THE AMOUNT OF $6.00. |
| 04/23/2015 | 04/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1027979, IN THE AMOUNT OF $6.00. |
| 04/22/2015 | 04/23/2015 | N/A | JE | COURT ORDERS TWO DEPUTIES IN THE COURTROOM FOR THE TRIAL OF STATE OF OHIO VS. JAMES W. DANIEL. 04/22/2015 CPCG1 04/22/2015 13:32:37 |
| 04/22/2015 | 04/23/2015 | N/A | JE | JURY TRIAL CONTINUES. 04/22/2015 CPCG1 04/22/2015 13:30:02 |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | DEFENSE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010398, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010384, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010361, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010360, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010341, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010340, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010339, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010338, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010333, IN THE AMOUNT OF $8.50. |
| 04/22/2015 | 04/22/2015 | N/A | CS | CALLING WITNESS |
| 04/22/2015 | 04/22/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1027858 |
| 04/21/2015 | 04/23/2015 | N/A | JE | JURY IMPANELLED AND SWORN, 12 JURORS AND 4 ALTERNATE(S). CASE PROCEEDS TO TRIAL. 04/21/2015 CPCG1 04/21/2015 10:23:01 |

| | | | | |
|---|---|---|---|---|
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026232, IN THE AMOUNT OF $11.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026226, IN THE AMOUNT OF $12.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026225, IN THE AMOUNT OF $12.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026223, IN THE AMOUNT OF $12.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026219, IN THE AMOUNT OF $12.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026217, IN THE AMOUNT OF $12.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026214, IN THE AMOUNT OF $11.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026213, IN THE AMOUNT OF $11.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026206, IN THE AMOUNT OF $10.50. |
| 04/21/2015 | 04/21/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026205, IN THE AMOUNT OF $10.50. |
| 04/21/2015 | 04/21/2015 | N/A | CS | CALLING WITNESS |
| 04/21/2015 | 04/21/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1026208 |
| 04/21/2015 | 04/21/2015 | N/A | CS | CALLING WITNESS |
| 04/21/2015 | 04/21/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1026215 |
| 04/21/2015 | 04/21/2015 | N/A | CS | CALLING WITNESS |
| 04/21/2015 | 04/21/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1026204 |
| 04/21/2015 | 04/21/2015 | N/A | CS | CALLING WITNESS |
| 04/21/2015 | 04/21/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1024861 |
| 04/21/2015 | 04/21/2015 | N/A | CS | CALLING WITNESS |
| 04/21/2015 | 04/21/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1026210 |
| 04/21/2015 | 04/21/2015 | N/A | CS | CALLING WITNESS |
| 04/21/2015 | 04/21/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1026209 |
| 04/20/2015 | 04/24/2015 | N/A | JE | DEFENDANT'S MOTION TO DISQUALIFY COUNSEL IS DENIED. 04/20/2015 CPCG1 04/23/2015 17:08:41 |
| 04/20/2015 | 04/24/2015 | N/A | JE | DEFENDANT'S MOTION FILED BY MULTI(S) JAMES W. DANIEL III (DI) ATTORNEY FRANK CAVALLO 0073428 MOTION TO SEVER COUNTS FOR TRIAL IS GRANTED. 04/20/2015 CPCG1 04/23/2015 16:59:01 |
| 04/20/2015 | 06/08/2015 | N/A | JE | PER REQUEST OF DEFENDANT JAMES W. DANIEL, THE COURT ORDERS BIFURCATION THE NOTICES OF PRIOR CONVICTION, REPEAT VIOLENT OFFENDER SPECIFICATIONS, SEXUAL MOTIVATION SPECIFICATIONS AND SEXUALLY VIOLENT PREDATOR SPECIFICATIONS ON COUNTS 5,6,7, AND 8. ALL BIFURCATED SPECIFICATIONS ARE TO BE TRIED TO THE BENCH. BIFURCATE REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 9 AND 10. BIFURCATE NOTICE OF PRIOR CONVICTION, AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 12, 13, 14 AND 15. BIFURCATE SEXUAL MOTIVATION SPECIFICATION, SEXUALLY VIOLENT PREDATOR SPECIFICATION, REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 17, 18, AND 19. BIFURCATE NOTICE OF PRIOR CONVICTION AND REPEAT VIOLENT OFFENDER SPECIFICATION ON |

| | | | | |
|---|---|---|---|---|
| | | | | COUNTS 20, 21 AND 22. 04/20/2015 CPDTM 06/08/2015 15:14:45 |
| 04/20/2015 | 06/08/2015 | N/A | JE | STATE'S MOTION TO AMEND COMPLAINT TO SUBSTITUTE THE VICTIMS REAL NAMES IS GRANTED. COUNTS 1 THROUGH 6 IS AMENDED TO SUBSTITUTE THE NAME OF JANINE SPRINGER FOR JANE DOE. COUNT 7 IS AMENDED TO SUBSTITUTE THE NAME OF KELSY KENNY FOR JANE DOE. COUNT 8 IS AMENDED TO SUBSTITUTE THE NAME OF JULIE BURKETT FOR JANE DOE. COUNT 11 IS AMENDED TO SUBSTITUTE THE NAME OF SUSAN NOBILO FOR JANE DOE. 04/20/2015 CPDTM 06/08/2015 15:12:49 |
| 04/20/2015 | 06/08/2015 | N/A | JE | STATE'S MOTION TO AMEND COMPLAINT TO SUBSTITUTE THE VICTIMS REAL NAMES IS GRANTED. COUNT 2 IS AMENDED TO SUBSTITUTE THE REAL NAME OF JANINE SPRINGER. COUNT 5 IS AMENDED TO SUBSTITUTE THE NAME OF SUSAN NOBILIO. 04/20/2015 CPDTM 06/08/2015 15:11:11 |
| 04/20/2015 | 04/23/2015 | N/A | JE | COURT IS ENGAGED IN VOIR DIRE. 04/20/2015 CPCG1 04/21/2015 10:21:58 |
| 04/20/2015 | 04/20/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026231, IN THE AMOUNT OF $7.50. |
| 04/20/2015 | 04/20/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026228, IN THE AMOUNT OF $9.50. |
| 04/20/2015 | 04/20/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026227, IN THE AMOUNT OF $9.50. |
| 04/20/2015 | 04/20/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026216, IN THE AMOUNT OF $7.00. |
| 04/20/2015 | 04/20/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026215, IN THE AMOUNT OF $7.00. |
| 04/17/2015 | 04/17/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026224, IN THE AMOUNT OF $13.50. |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |

| | | | | |
|---|---|---|---|---|
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | CS | COURT REPORTER FEE |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/14/2015 | 04/14/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1026204, IN THE AMOUNT OF $6.00. |
| 04/14/2015 | 04/14/2015 | N/A | CS | CALLING WITNESS |
| 04/14/2015 | 04/14/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1024885 |
| 04/14/2015 | 04/14/2015 | N/A | CS | CALLING WITNESS |
| 04/14/2015 | 04/14/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1024884 |
| 04/13/2015 | 04/14/2015 | N/A | JE | TRIAL CONTINUED TO 04/20/2015 AT 09:00 AM AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: ATTORNEY FRANK CAVALLO HAD AN INFECTED ABSCESS TOOTH AND WAS UNDER MEDICAL CARE. 04/13/2015 CPCG1 04/13/2015 15:08:55 |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024870, IN THE AMOUNT OF $12.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024869, IN THE AMOUNT OF $13.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024868, IN THE AMOUNT OF $12.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024867, IN THE AMOUNT OF $12.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024866, IN THE AMOUNT OF $9.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024865, IN THE AMOUNT OF $9.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024861, IN THE AMOUNT OF $11.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024889, IN THE AMOUNT OF $10.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024881, IN THE AMOUNT OF $11.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024880, IN THE AMOUNT OF $11.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024876, IN THE AMOUNT OF $12.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024874, IN THE AMOUNT OF $12.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024873, IN THE AMOUNT OF $11.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024872, IN THE AMOUNT OF $11.50. |
| 04/13/2015 | 04/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024871, IN THE AMOUNT OF $11.50. |
| 04/10/2015 | 04/10/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024862, IN THE AMOUNT OF $7.50. |
| 04/09/2015 | 04/09/2015 | N/A | CS | COURT REPORTER FEE |
| 04/08/2015 | 04/09/2015 | N/A | JE | HEARING HELD 04/08/2015. DEFENDANT FOUND COMPETENT TO STAND TRIAL. TRIAL REMAINS SET |

| | | | | |
|---|---|---|---|---|
| | | | | APRIL 13, 2015 AT 9:00 A.M. 04/08/2015 CPCG1 04/08/2015 15:47:59 |
| 04/07/2015 | 04/07/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/07/2015 | 04/07/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024891, IN THE AMOUNT OF $6.00. |
| 04/07/2015 | 04/07/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024864, IN THE AMOUNT OF $6.00. |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 04/06/2015 | 04/06/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024879, IN THE AMOUNT OF $10.00. |
| 04/06/2015 | 04/06/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1024878, IN THE AMOUNT OF $10.00. |
| 04/02/2015 | 04/07/2015 | N/A | JE | HEARING SET APRIL 8, 2015 AT 9:00 A.M. ALL PARTIES NOTIFIED. 04/02/2015 CPCG1 04/02/2015 11:16:27 |
| 04/02/2015 | 04/07/2015 | N/A | JE | COURT VACATES DECISION TO REFER THE DEFENDANT JAMES DANIEL TO TWIN VALLEY HEALTHCARE FACILITY IN COLUMBUS AFTER COURT HAS RECEIVED NEW INFORMATION. 04/02/2015 CPCG1 04/02/2015 11:12:23 |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010376, IN THE AMOUNT OF $12.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010375, IN THE AMOUNT OF $12.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010374, IN THE AMOUNT OF $12.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | |

| | | | | |
|---|---|---|---|---|
| | | | | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010373, IN THE AMOUNT OF $13.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010372, IN THE AMOUNT OF $12.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010363, IN THE AMOUNT OF $11.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010362, IN THE AMOUNT OF $11.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010337, IN THE AMOUNT OF $10.50. |
| 03/25/2015 | 03/25/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010336, IN THE AMOUNT OF $10.50. |
| 03/10/2015 | 03/10/2015 | N/A | CS | COURT REPORTER FEE |
| 03/09/2015 | 03/09/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 03/09/2015 | 03/09/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1019951, IN THE AMOUNT OF $6.00. |
| 03/09/2015 | 03/10/2015 | N/A | JE | DEFENDANT INDIGENT; ATTORNEY FRANK CAVALLO ASSIGNED. HEARING HELD. HEARING HELD IN OPEN COURT AND ON THE RECORD. ON A FORMER DAY, THE DEFENDANT WAS REFERRED TO THE COURT PSYCHIATRIC CLINIC FOR A COMPETENCY EVALUATION. IN HIS/HER REPORT DATED 03/06/2015, DR. NOFFSINGER OPINED THAT THE DEFENDANT REFUSED OR WAS UNABLE TO COOPERATE WITH THE EVALUATION. ACCORDINGLY, DR. NOFFSINGER, M.D., PSYCHIATRIST, WAS UNABLE TO RENDER AN OPINION AS TO THE DEFENDANT'S COMPETENCY TO STAND TRIAL. THEREFORE, AND PURSUANT TO R.C. 2945.371 (C) AND (D), THE COURT ORDERS THE DEFENDANT TO TWIN VALLEY BEHAVIORAL HEALTHCARE IN COLUMBUS, OHIO FOR AN INPATIENT COMPETENCY EVALUATION FOR A REASONABLE PERIOD OF TIME NOT TO EXCEED TWENTY (20) DAYS. THE DEFENDANT IS ORDERED REMANDED TO THE CUYAHOGA COUNTY JAIL UNTIL A BED BECOMES AVAILABLE. UPON NOTIFICATION BY THE FORENSIC LIAISON OF RECOVERY RESOURCES (A CONTRACT AGENCY OF THE ADAMHS BOARD) THAT A BED IS AVAILABLE, THE CUYAHOGA COUNTY SHERIFF'S DEPARTMENT IS HEREBY ORDERED TO TRANSPORT THE DEFENDANT TO TWIN VALLEY BEHAVIORAL HEALTH IN COLUMBUS, OHIO. UPON COMPLETION OF THE EVALUATION, OR AT THE END OF THE TWENTY (20) DAY PERIOD OF HOSPITALIZATION, WHICHEVER COMES FIRST, AND UPON NOTIFICATION BY THE FORENSIC LIAISON OF RECOVERY RESOURCES THAT THE DEFENDANT IS READY FOR RETURN, THE CUYAHOGA COUNTY SHERIFF IS HEREBY ORDERED TO TRANSPORT THE DEFENDANT BACK TO THE CUYAHOGA COUNTY JAIL. TWIN VALLEY BEHAVIORAL HEALTH'S EXAMINER SHALL FILE A WRITTEN REPORT WITH THE COURT WITHIN THIRTY (30) DAYS AFTER ENTRY OF A COURT ORDER FOR EVALUATION. SAID EVALUATION SHALL STATE EITHER, THAT THE DEFENDANT IS COMPETENT TO STAND TRIAL AND THEREFORE THE EXAMINER IS REQUESTING THAT THE DEFENDANT'S LEGAL STATUS BE UPDATED TO INCOMPETENT TO STAND TRIAL; OR THAT THE DEFENDANT IS COMPETENT TO STAND TRIAL |

|  |  |  |  | AND CAN BE TRANSPORTED BACK TO THE CUYAHOGA COUNTY JAIL TO AWAIT TRAIL. SAID NOTIFICATION SHALL BE MADE BY VIA CERTIFIED U.S. MAIL TO JUDGE DAVID T. MATIA IN COURTROOM 17-D, JUSTICE CENTER, 1200 ONTARIO STREET, CLEVELAND, OHIO 44113. IT IS SO ORDERED. SHERIFF IS ORDERED TO TRANSPORT DEFENDANT JAMES W. DANIEL, DOB: 07/08/1981, GENDER: MALE, RACE: BLACK. 03/09/2015 CPDEJ 03/09/2015 15:17:24 |
| 03/05/2015 | 03/05/2015 | N/A | SB | STATE SUBPOENA ISSUED |
| 03/05/2015 | 03/05/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1019378, IN THE AMOUNT OF $6.00. |
| 03/03/2015 | 03/06/2015 | N/A | JE | PRETRIAL CONTINUED TO 03/09/2015 AT 09:00 AM AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: COURT PSYCHIATRIC CLINIC HAS NOT COMPLETED THE REPORT. 03/03/2015 CPCG1 03/03/2015 16:31:53 |
| 03/03/2015 | 03/11/2015 | N/A | JE | PRETRIAL HELD 03/03/2015. TRIAL CONTINUED TO 04/13/2015 AT 09:00 AM AT THE REQUEST OF DEFENDANT. 03/03/2015 CPCG1 03/09/2015 16:19:55 |
| 02/26/2015 | 02/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010397, IN THE AMOUNT OF $9.50. |
| 02/26/2015 | 02/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010396, IN THE AMOUNT OF $9.50. |
| 02/26/2015 | 02/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010377, IN THE AMOUNT OF $9.50. |
| 02/26/2015 | 02/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010365, IN THE AMOUNT OF $7.00. |
| 02/26/2015 | 02/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010364, IN THE AMOUNT OF $7.00. |
| 02/25/2015 | 02/25/2015 | D | JE | HIV RETEST ORDER. OSJ. |
| 02/23/2015 | 02/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010391, IN THE AMOUNT OF $11.50. |
| 02/23/2015 | 02/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010390, IN THE AMOUNT OF $11.50. |
| 02/23/2015 | 02/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010389, IN THE AMOUNT OF $11.50. |
| 02/23/2015 | 02/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010371, IN THE AMOUNT OF $11.50. |
| 02/23/2015 | 02/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010370, IN THE AMOUNT OF $11.50. |
| 02/23/2015 | 02/23/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010369, IN THE AMOUNT OF $11.50. |
| 02/17/2015 | 02/17/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010378, IN THE AMOUNT OF $9.50. |
| 02/13/2015 | 02/13/2015 | D1 | MO | MOTION TO DISQUALIFY COUNSEL, FILED. PRO SE CCJ SO#0218901 |
| 02/13/2015 | 02/13/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010408, IN THE AMOUNT OF $7.50. |
| 02/09/2015 | 02/09/2015 | D1 | SH | SUMMIT COUNTY SHERIFF DEPT SERVICE FEE $19.48 SS 1010335 |
| 02/04/2015 | 02/04/2015 | N/A | CS | COURT REPORTER FEE |
| 02/03/2015 | 02/05/2015 | N/A | JE | PRETRIAL SET FOR 03/03/2015 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. DEFENDANT IS REFERRED TO COURT PSYCHIATRIC CLINIC. DIRECTOR, PSYCHIATRIC CLINIC: IN ACCORDANCE WITH |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | PROVISIONS OF THE OHIO REVISED CODE, 2945.371 COMPETENCE TO STAND TRIAL; ETC. 2945.371 SANITY AT THE TIME OF THE ACT YOU ARE DIRECTED TO EXAMINE JAMES W DANIEL, WHO IS AWAITING TRIAL ON CHARGE(S) OF 2911.11 AGGRAVATED BURGLARY, 2907.02 RAPE, 2905.01 KIDNAPPING, 2907.02 RAPE, 2907.02 RAPE, 2907.02 RAPE, 2905.01 KIDNAPPING, 2911.01 AGGRAVATED ROBBERY, 2905.01 KIDNAPPING, 2923.13 HAVING WEAPONS WHILE UNDER DISABILITY, 2911.01 AGGRAVATED ROBBERY, 2905.01 KIDNAPPING, 2911.01 AGGRAVATED ROBBERY, 2905.01 KIDNAPPING, 2923.13 HAVING WEAPONS WHILE UNDER DISABILITY, 2907.02 RAPE, 2907.02 RAPE, 2905.01 KIDNAPPING, 2911.01 AGGRAVATED ROBBERY, 2903.11 FELONIOUS ASSAULT, 2905.01 KIDNAPPING, 2923.13 HAVING WEAPONS WHILE UNDER DISABILITY, 2911.11 AGGRAVATED BURGLARY. 02/03/2015 CPCG1 02/03/2015 14:18:54 |
| 02/03/2015 | 02/05/2015 | N/A | JE | COUNSEL WAIVES DEFENDANT'S PRESENCE. DEFENSE ATTORNEY'S VERBAL MOTION THAT THE COURT REFER THE DEFENDANT FOR A PSYCHIATRIC CLINIC EVALUATION IS GRANTED. 02/03/2015 CPCG1 02/03/2015 14:09:54 |
| 02/03/2015 | 02/05/2015 | N/A | JE | COURT DISMISSES JURY PANEL. 02/03/2015 CPCG1 02/03/2015 14:03:45 |
| 02/03/2015 | 02/05/2015 | N/A | JE | COURT ORDERS AN IMMEDIATE PSYCHIATRIC EXAM FOR THE DEFENDANT WITH DR. TINA ONEY M.D. OF SHERIFF'S PSYCHIATRIC CLINIC. 02/03/2015 CPCG1 02/03/2015 12:38:09 |
| 02/03/2015 | 02/05/2015 | N/A | JE | STATE'S MOTION TO AMEND COMPLAINT TO SUBSTITUTE THE VICTIMS REAL NAMES IS GRANTED. COUNT 2 IS AMENDED TO SUBSITUTE THE REAL NAME OF JANINE SPRINGER. COUNT 5 IS AMENDED TO SUBSITUTE THE NAME OF SUSAN NOBILL. 02/03/2015 CPCG1 02/03/2015 11:45:02 |
| 02/03/2015 | 02/05/2015 | N/A | JE | DEFENDANT'S MOTION FOR JURY VIEW IS DENIED. 02/03/2015 CPCG1 02/03/2015 10:11:48 |
| 02/03/2015 | 02/05/2015 | N/A | JE | DEFENDANT'S MOTION TO SEVER COUNTS FOR TRIAL IS GRANTED. COURT SEVERS COUNTS 1 THROUGH 5. 02/03/2015 CPCG1 02/03/2015 09:38:50 |
| 02/03/2015 | 02/03/2015 | N/A | CS | CALLING WITNESS |
| 02/03/2015 | 02/03/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1011428 |
| 02/03/2015 | 02/03/2015 | N/A | CS | CALLING WITNESS |
| 02/03/2015 | 02/03/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1010364 |
| 02/03/2015 | 02/03/2015 | N/A | CS | CALLING WITNESS |
| 02/03/2015 | 02/03/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1010338 |
| 02/03/2015 | 02/03/2015 | N/A | CS | CALLING WITNESS |
| 02/03/2015 | 02/03/2015 | N/A | SB | WITNESS VOUCHER PRINTED FOR SUBPOENA 1010340 |
| 02/02/2015 | 02/05/2015 | N/A | JE | FIRST DAY OF JURY VOIR DIRE. 02/02/2015 CPCG1 02/02/2015 16:01:28 |
| 02/02/2015 | 02/02/2015 | D | JE | DEFENDANT'S VOLUNTARY WAIVER OF JURY TRIAL AND ORDER, RECEIVED FOR FILING 02/02/2015. |
| 02/02/2015 | 02/05/2015 | N/A | JE | PER JUDGE MATIA REGARDING DEFENDANT JAMES W. DANIEL, BIFURCATE THE NOTICE OF PRIOR CONVICTION, REPEAT VIOLENT OFFENDER SPECIFICATION, SEXUAL MOTIVATION SPECIFICATION AND SEXUALLY VIOLENT PREDATOR SPECIFICATION |

|  |  |  |  | ON COUNTS 5, 6, 7, AND 8. BIFURCATE REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 9 AND 10. BIFURCATE NOTICE OF PRIOR CONVICTION, AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 12, 13, 14 AND 15. BIFURCATE SEXUAL MOTIVATION SPECIFICATION, SEXUALLY VIOLENT PREDATOR SPECIFICATION, REPEAT VIOLENT OFFENDER SPECIFICATION AND NOTICE OF PRIOR CONVICTION ON COUNTS 17, 18, AND 19. BIFURCATE NOTICE OF PRIOR CONVICTION AND REPEAT VIOLENT OFFENDER SPECIFICATION ON COUNTS 20, 21 AND 22. 02/02/2015 CPDEJ 02/03/2015 10:41:37 |
|---|---|---|---|---|
| 02/02/2015 | 02/05/2015 | N/A | JE | DEFENDANT'S MOTION FOR CONTINUANCE IS DENIED. 02/02/2015 CPCG1 02/03/2015 09:20:35 |
| 01/30/2015 | 01/30/2015 | P | NT | NOTICE FILED BY MULTI(S) JAMES W DANIEL III(D1) ATTORNEY FRANK CAVALLO 0073428 NOTICE OF ALIBI |
| 01/30/2015 | 01/30/2015 | P1 | MO | STATE'S SUPPLEMENTAL RESPONSE TO REQUEST FOR DISCOVERY UNDER RULE 16, FILED. |
| 01/30/2015 | 01/30/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/29/2015 | 01/29/2015 | P1 | MO | MOTION FILED BY P1 THE STATE OF OHIO ATTORNEY MAXWELL M. MARTIN 0082690 MOTION FOR JURY VIEW |
| 01/28/2015 | 01/28/2015 | P | MO | MOTION FILED BY MULTI(S) JAMES W DANIEL III(D1) ATTORNEY FRANK CAVALLO 0073428 MOTION TO SEVER COUNTS FOR TRIAL |
| 01/28/2015 | 01/28/2015 | P | MO | MOTION FOR CONTINUANCE, FILED. MOTION TO CONTINUE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/27/2015 | 01/27/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010400, IN THE AMOUNT OF $6.00. |
| 01/27/2015 | 01/27/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010335, IN THE AMOUNT OF $6.00. |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |

Case: 1:18-cv-01661-JRA  Doc #: 7-1  Filed: 08/02/19  283 of 288.  PageID #: 365

| | | | | |
|---|---|---|---|---|
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | N/A | SB | SUBPOENA CLERK'S FEE |
| 01/26/2015 | 01/26/2015 | P1 | MO | STATE'S DEMAND FOR DISCOVERY, FILED. |
| 01/26/2015 | 01/26/2015 | P1 | MO | STATE'S RESPONSE TO DEFENDANT'S REQUEST FOR DISCOVERY AND BILL OF PARTICULARS UNDER RULE 16, FILED . |
| 01/26/2015 | 01/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010298, IN THE AMOUNT OF $6.00. |
| 01/26/2015 | 01/26/2015 | N/A | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 1010400, IN THE AMOUNT OF $6.00. |
| 01/22/2015 | 01/28/2015 | N/A | JE | PRETRIAL HELD 01/22/2015. TRIAL REMAINS SET FOR 02/02/2015 AT 09:00 AM. 01/22/2015 CPCG1 01/22/2015 14:39:41 |
| 01/15/2015 | 01/15/2015 | N/A | JE | PRETRIAL HELD 01/15/2015. PRETRIAL SET FOR 01/21/2015 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. TRIAL REMAINS SET FOR 02/02/2015 AT 09:00 AM. 01/15/2015 CPCG1 01/15/2015 12:18:12 |
| 01/14/2015 | 01/15/2015 | N/A | JE | PRETRIAL HELD 01/14/2015. PRETRIAL SET FOR 01/15/2015 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. TRIAL REMAINS SET FOR 02/02/2015 AT 09:00 AM. 01/14/2015 CPCG1 01/14/2015 16:00:53 |
| 01/07/2015 | 01/08/2015 | N/A | JE | PRETRIAL HELD 01/07/2015. PRETRIAL SET FOR 01/14/2015 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. TRIAL REMAINS SET FOR 02/02/2015 AT 09:00 AM. 01/07/2015 CPCG1 01/07/2015 15:35:47 |
| 12/17/2014 | 12/18/2014 | N/A | JE | PRETRIAL HELD 12/17/2014. PRETRIAL SET FOR 01/07/2015 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. TRIAL REMAINS SET FOR 02/02/2015 AT 09:00 AM. 12/17/2014 CPCG1 12/17/2014 16:05:46 |
| 11/25/2014 | 11/25/2014 | D1 | MO | DEFENDANT'S WAIVER OF SPEEDY TRIAL, FILED. |
| 11/25/2014 | 11/25/2014 | N/A | CS | COURT REPORTER FEE |
| 11/24/2014 | 11/24/2014 | N/A | JE | PRETRIAL HELD 11/24/2014. PRETRIAL SET FOR 12/17/2014 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. TRIAL REMAINS SET FOR 02/02/2015 AT 09:00 AM. DEFENDANT WAIVES SPEEDY TRIAL FROM 11/24/2014 TO 03/11/2015 IN WRITING AND IN OPEN COURT. 11/24/2014 CPCG1 11/24/2014 13:33:42 |
| 11/06/2014 | 11/10/2014 | N/A | JE | PRETRIAL HELD 11/06/2014. PRETRIAL SET FOR 11/24/2014 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: DISCOVERY |

Case: 1:18-cv-01661-JRA  Doc #: 7-1  Filed: 08/02/19  284 of 288.  PageID #: 366

|            |            |      |    |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                       |
|------------|------------|------|----|---|
|            |            |      |    | ONGOING. TRIAL SET FOR 02/02/2015 AT 09:00 AM. 11/06/2014 CPCG1 11/07/2014 14:14:23 |
| 10/23/2014 | 10/31/2014 | N/A  | JE | PRETRIAL HELD 10/23/2014. PRETRIAL SET FOR 11/06/2014 AT 10:00 AM. AT THE REQUEST OF DEFENDANT. REASON FOR CONTINUANCE: DISCOVERY ONGOING. 10/23/2014 CPCG1 10/23/2014 14:15:05 |
| 10/20/2014 | 10/20/2014 | N/A  | SB | SUBPOENA CLERK'S FEE |
| 10/20/2014 | 10/20/2014 | N/A  | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 993368, IN THE AMOUNT OF $6.00. |
| 10/10/2014 | 10/10/2014 | N/A  | SB | SUBPOENA CLERK'S FEE |
| 10/10/2014 | 10/10/2014 | N/A  | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 991517, IN THE AMOUNT OF $6.00. |
| 10/09/2014 | 10/09/2014 | N/A  | SB | SUBPOENA CLERK'S FEE |
| 10/09/2014 | 10/10/2014 | N/A  | JE | PRETRIAL HELD 10/09/2014. PRETRIAL SET FOR 10/23/2014 AT 09:00 AM. AT THE REQUEST OF DEFENDANT. 10/09/2014 CPJL2 10/09/2014 09:48:36 |
| 10/09/2014 | 10/09/2014 | N/A  | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 991110, IN THE AMOUNT OF $6.00. |
| 10/03/2014 | 10/03/2014 | P    | NT | STATE'S NOTICE OF RECEIPT OF DEMAND FOR DISCOVERY FILED |
| 10/02/2014 | 10/02/2014 | D1   | MO | MOTION FOR BILL OF PARTICULARS, FILED. |
| 10/02/2014 | 10/02/2014 | D1   | MO | REQUEST FOR EVIDENCE NOTICE, FILED. |
| 10/01/2014 | 10/01/2014 | D    | JE | HIV TEST ORDER. OSJ. |
| 10/01/2014 | 10/01/2014 | N/A  | CS | PRISONER IN COURT |
| 10/01/2014 | 10/01/2014 | N/A  | JE | CAPIAS RECALLED ON 10/01/2014. DEFENDANT DECLARED INDIGENT. COURT ASSIGNED PUBLIC DEFENDER AS COUNSEL. READING OF INDICTMENT WAIVED. TWENTY-FOUR HOUR SERVICE WAIVED. DEFENDANT PLEAD NOT GUILTY TO INDICTMENT. BOND SET AT 1,000,000.00 DOLLARS. BOND TYPE: CASH/SURETY/PROP.. BOND CONDITIONS: NO CONTACT WITH VICTIM. JUDGE MATIA, DAVID T (329) ASSIGNED (RANDOM ). FIRST PRETRIAL SET FOR 10/09/2014 AT 09:00 AM IN COURT ROOM JC17D JUDGE MATIA, DAVID T. HIV ORDER THE DEFENDANT JAMES WALTER DANIEL III , HAVING BEEN CHARGED WITH AND ARRAIGNED UPON VIOLATION(S) OF 2907.02 OR 2907.03 OR 2907.04 OF THE OHIO REVISED CODE, IS ORDERED TO SUBMIT TO MEDICAL TESTS AS REQUIRED BY 2907.27 (B). THE SHERIFF OF CUYAHOGA COUNT SHALL TAKE THE NECESSARY STEPS TO CAUSE THE DEFENDANT TO BE EXAMINED BY A PHYSICIAN WHO SHALL PERFORM OR ORDER THE PERFORMANCE OF ONE OR MORE TESTS TO DETERMINE IF THE DEFENDANT IS A CARRIER OF THE VIRUS THAT CAUSES ACQUIRED IMMUNODEFICIENCY SYNDROME (AIDS). SUCH STEPS SHALL INCLUDE THE DETENTION OF THE DEFENDANT IN CUSTODY FOR A REASONABLE PERIOD TO HAVE THE AIDS TESTS PERFORMED. THE RESULTS OF ANY TESTS ARE TO BE COMMUNICATED IN THE STRICTEST CONFIDENCE TO THE COURT ADMINISTRATOR'S OFFICE WHO SHALL IMMEDIATELY NOTIFY THE ASSIGNED JUDGE BY FORWARDING A COPY OF THE SAID RESULTS ASSIGNED JUDGE: MATIA, DAVID T |
| 10/01/2014 | 10/01/2014 | N/A  | SB | SHERIFF SERVICE FEES FOR SUBPOENA NUMBER 989537, IN THE AMOUNT OF $6.00. |

| 09/30/2014 | 09/30/2014 | N/A | SB | SUBPOENA CLERK'S FEE |
| 09/26/2014 | 09/26/2014 | D | JE | ORP - WARRANT ON INDICTMENT ISSUED. OSJ |
| 09/26/2014 | 09/29/2014 | N/A | SH | SHERIFF SERVICE OF INDICTMENT |
| 09/26/2014 | 09/26/2014 | N/A | GP | ARRAIGNMENT SCHEDULED FOR 10/01/2014. |
| 09/26/2014 | 09/26/2014 | N/A | CR | INDICTED ORIGINAL ON 09/26/2014 |
| 09/26/2014 | 09/29/2014 | N/A | SF | LEGAL RESEARCH |
| 09/26/2014 | 09/29/2014 | N/A | SF | COURT SPECIAL PROJECTS FUND |
| 09/26/2014 | 09/29/2014 | N/A | SF | CRIME STOPPERS |
| 09/26/2014 | 09/29/2014 | N/A | SF | COMPUTER FEE |
| 09/26/2014 | 09/29/2014 | N/A | SF | CLERK FEE |
| 09/20/2014 | 09/20/2014 | N/A | CR | CIF ENTERED |
| 09/18/2014 | 09/20/2014 | N/A | CR | ARRESTED 09/18/2014 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

Website Questions or Comments.

Copyright © 2019 PROWARE. All Rights Reserved. 1.1.229

skip to main content

| Print |

## CASE INFORMATION

### CA-15-103258 STATE OF OHIO vs. JAMES W. DANIEL

## Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 05/08/2017 | N/A | JE | UPON CONSIDERATION OF THE JURISDICTIONAL MEMORANDA FILED IN THIS CASE, THE COURT DECLINES TO ACCPT JURISDICTION OF THE APPEAL PURSUANT TO S.CT.PRACT.R 7.08 (B)(4). | 🗎 |
| 09/26/2016 | N/A | EV | NOTICE OF APPEAL TO THE OHIO SUPREME COURT FILED BY APPELLANT ON SEPTEMBER 19, 2016. OHIO SUPREME COURT CASE NUMBER 2016-1377. | 🗎 |
| 09/09/2016 | N/A | JE | Application by Appellant's counsel for assigned counsel fees filed by Steve W. Canfil is granted in the amount of $1,125.00. Notice issued. | 🗎 |
| 09/02/2016 | N/A | CS | COURT COST ASSESSED JAMES DANIEL BILL AMOUNT 179 PAID AMOUNT 0 AMOUNT DUE 179 | |
| 08/09/2016 | N/A | MO | MOTION BY APPELLANT'S COUNSEL FOR ASSIGNED COUNSEL FEES FILED BY STEVE W CANFIL (0001297). | 🗎 |
| 08/04/2016 | N/A | SF | CERTIFIED COPY OF JOURNAL ENTRY ISSUED TO OHIO DEPARTMENT OF REHABILITATION AND CORRECTION. | |
| 08/04/2016 | E1 | SR | JUDGMENT ENTRY (29842392) SENT BY EMAIL. TO: BRETT HAMMOND CCPOAPPEALS.CCPOAPPEALS@PROSECUTOR.CUYAHOGACOUNTY.US | |
| 08/04/2016 | A1 | SR | JUDGMENT ENTRY (29842391) SENT BY EMAIL. TO: STEVE W CANFIL STCANF@GMAIL.COM | |
| 08/04/2016 | N/A | BL | Affirmed.> Frank D. Celebrezze, Jr., J., and Larry A. Jones, Sr., A.J., concur; Mary J. Boyle, J., dissents (with separate opinion attached). Notice issued. | |
| 08/04/2016 | N/A | JE | Affirmed.> Frank D. Celebrezze, Jr., J., and Larry A. Jones, Sr., A.J., concur; Mary J. Boyle, J., dissents (with separate opinion attached). Notice issued. | 🗎 |
| 03/25/2016 | N/A | EV | This case is set for oral argument on Tuesday, May 10, 2016, 9:00 am, in the Main Courtroom before: MARY J. BOYLE, LARRY A. JONES, SR., and FRANK D. CELEBREZZE, JR.. Parties wishing to waive oral argument must comply with Loc.App.R.21. | |
| 03/02/2016 | A1 | EV | LOWER COURT CASE FILE RETURNED FROM REMAND ON 3/2/2016. | 🗎 |
| 02/08/2016 | A1 | EV | ORIGINAL PAPERS RETURNED TO TRIAL COURT. ON REMAND. | |
| 02/03/2016 | N/A | JE | Sua sponte, the court remands this case for a nunc pro tunc order to provide a sentencing journal entry that complies with State v. Lester, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus. The original sentencing entry and the nunc pro tunc sentencing entry dated July 17, 2015, impose multiple sentences for counts 11, 16, and 23. For example, the entry provides ¿defendant to serve 3 years on count 11" but also provides ¿Defendant to serve 49 years to life on counts *** 11.¿ The sentencing entry also imposes sentences on counts 17, 18, 19 but does not reflect convictions for those counts. The nunc pro tunc sentencing journal entry should clearly set forth every count of conviction, | 🗎 |

EXHIBIT

34

whether as originally indicted or as renumbered for trial, with the corresponding sentence for each count (or reflect that it was merged with another count). The clerk is instructed to supplement the original papers with any filings made in the trial court after the filing of the notice of appeal, including any clarifying nunc pro tunc entry made upon remand. This case and the original papers are to be returned to the clerk of this court on or before February 26, 2016. Notice issued.

| Date | | | Description | |
|------|------|------|-------------|---|
| 12/17/2015 | E1 | EV | APPELLEE'S BRIEF FILED. APPELLEE BRIEF | 📄 |
| 11/17/2015 | N/A | JE | Motion by appellee to extend time to file answer brief is granted to December 17, 2015. No further extension absent exigent circumstances. Notice issued. | 📄 |
| 11/16/2015 | E1 | MO | MOTION FOR... EXTENSION OF TIME TO FILE BRIEF OF APPELLEE 08/16/2016 - UNKNOWN | 📄 |
| 10/27/2015 | A1 | EV | APPELLANT'S BRIEF FILED. | 📄 |
| 10/20/2015 | N/A | JE | Motion by Appellant to extend time to file assignments of error and brief is granted to November 20, 2015. No further extension will be considered. Notice issued. | 📄 |
| 10/15/2015 | A1 | MO | MOTION FOR... MOTION FOR EXTENSION OF TIME 08/16/2016 - UNKNOWN | 📄 |
| 09/16/2015 | N/A | JE | Motion by Appellant to extend time to file assignments of error and brief is granted to October 16, 2015. No further extension absent exigent circumstances. Notice issued. | 📄 |
| 09/15/2015 | A1 | MO | MOTION FOR... THIRTY DAY EXTENSION OF TIME TO FILE BRIEF 08/16/2016 - UNKNOWN | 📄 |
| 08/24/2015 | A1 | EV | TRANSCRIPT OF PROCEEDINGS FILED BY APPELLANT. 9 VOLS AND 1 ENV OF EXHIBITS AND 1 BR FOLDER EXS.OVS. | |
| 08/24/2015 | N/A | NT | Record on appeal filed and notice issued to all parties. | |
| 08/06/2015 | A1 | EV | ORIGINAL PAPERS FILED BY TRIAL COURT. | |
| 07/16/2015 | A1 | EV | PRAECIPE FILED. | |
| 07/13/2015 | A1 | EV | NOTICE OF APPEAL FILED FROM CUYAHOGA COUNTY COMMON PLEAS COURT CRIMINAL DIVISION COURT, CASE # CR-14-589487-A WITH JOURNAL ENTRY, DOCKETING STATEMENT AND DOCKET SHEET. | |
| 07/13/2015 | A1 | AF | POVERTY AFFIDAVIT, FILED | |
| 07/13/2015 | N/A | SF | CASE INITIATED | 📄 |
| 07/13/2015 | A1 | SF | LEGAL RESEARCH | |
| 07/13/2015 | A1 | SF | COMPUTER FEE | |
| 07/13/2015 | A1 | SF | CLERK'S FEE | |
| 07/13/2015 | A1 | SF | COURT OF APPEALS SPECIAL PROJECTS | |
| 07/13/2015 | A1 | SF | LEGAL NEWS | |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

Website Questions or Comments.

Copyright © 2019 PROWARE. All Rights Reserved. 1.1.229

# THE SUPREME COURT OF OHIO
## CASE DOCKET

### State of Ohio v. James W. Daniel

**Case Information**

| | | |
|---|---|---|
| | **Number** | 2016-1377 |
| | **Type** | Jurisdictional Appeal |
| | **Date Filed** | 09/19/2016 |
| | **Status** | Disposed |
| | **Prior Jurisdiction** | Cuyahoga County, 8th District Court of Appeals |
| | **Prior Decision Date** | 08/04/2016 |
| | **Prior Case Numbers** | 103258 |

**Parties**

James W. Daniel; Appellant
  *Represented by:*
    Cunliffe, Erika Bloomfield (74480), Counsel of Record
    Tobik, Robert Lynn (29286)

State of Ohio; Appellee
  *Represented by:*
    Hammond, Brett Stokes (91757), Counsel of Record
    O'Malley, Michael Charles (59592)

**Docket**

| Date Filed | Description | Filed By |
|---|---|---|
| 09/19/2016 | Notice of appeal of James W. Daniel | Appellar |
| 09/19/2016 | Memorandum in support of jurisdiction | Appellar |
| 09/19/2016 | Lower court decision | Appellar |
| 09/20/2016 | Copy of notice of appeal sent to clerk of court | |
| 10/19/2016 | Memorandum in response to jurisdiction | Appellee |
| 02/14/2017 | Notice of substitution of Michael C. O'Malley for Timothy J. McGinty | Appellee |
| 04/19/2017 | **DECISION: Jurisdiction declined. See announcement at 2017-Ohio-1427 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2017/2017-ohio-1427.pdf).** | DISPOSI |
| 05/02/2017 | Copy of entry sent to clerk | |

End of Docket



EXHIBIT
35