

CAI5103258

CR14589487-A

90639786

1

FILED
CRIMINAL DIVISION

1  THE STATE OF OHIO, )
                      ) SS:  DAVID T. MATIA, J.
2  COUNTY OF CUYAHOGA.)                2015 AUG 24 P 12: 19

3              IN THE COURT OF COMMON PLEAS OF COURTS
                                       CUYAHOGA COUNTY

4                  CRIMINAL DIVISION

5  STATE OF OHIO,              )
                               )
6           Plaintiff,         )
                               )
                   FILED
7       -v-        COURT OF APPEALS )   Case No. 589487
                               )        C/A: 103258
8                  AUG 24 2015  )
   JAMES W. DANIEL,            )
9                  Clerk of Courts )
                   Cuyahoga County, Ohio
                   Defendant.

10

11        DEFENDANT'S TRANSCRIPT OF PROCEEDINGS
                       VOLUME I

12

13  TIMOTHY J. McGINTY, Prosecuting Attorney, by:

14  BRIAN RADIGAN, ESQ.
    MAXWELL M. MARTIN, ESQ.
15  AQUEELAH A. JORDAN, ESQ.

16          on behalf of the State of Ohio;

17  FRANK CAVALLO, ESQ.
    JOY KENNEDY, ESQ.
18  JOSHUA BARNHIZER, ESQ.
    JAMES EVANS, ESQ.,
19
            on behalf of the Defendant.        SHELF DVS
20

21  Mary Jean Cooley, RMR           VOL. I    -    1-187
    Gregory L. Koterba, RPR         VOL. II   -  188-355
22  Cindy LaRosa, RPR               VOL. III  -  356-566
    Angela Cudo, RPR, CRR           VOL. IV   -  567-751
23  Nancy Geiger, RPR               VOL. V    -  752-969
    Kristin Beutler, RPR            VOL. VI   -  970-1081
24  Richard Hamski, RPR             VOL. VII -1082-1287
    Official Court Reporters        VOL. VIII-1289-1505
25  Cuyahoga County, Ohio           VOL. IX  -1506-1739

103258

```
 1   THE STATE OF OHIO,   )
                          )  SS:  DAVID T. MATIA, J.
 2   COUNTY OF CUYAHOGA.  )

 3              IN THE COURT OF COMMON PLEAS

 4                   CRIMINAL DIVISION

 5   STATE OF OHIO,              )
                                 )
 6              Plaintiff,       )
                                 )
 7        -v-                    )  Case No. 589487
                                 )  C/A: 103258
 8                               )
     JAMES W. DANIEL,            )
 9                               )
                Defendant.       )
10                          - - - -

11              TRANSCRIPT OF PROCEEDINGS

12                          - - - -
13

14              BE IT REMEMBERED, that at the January

15   A.D., 2015 term of said Court, to-wit,

16   commencing on November 24, 2014, this cause

17   came on to be heard before the Honorable David

18   T. Matia, in Courtroom No. 17-D, Courts Tower,

19   Justice Center, Cleveland, Ohio, upon the

20   indictment filed heretofore.

21

22                          - - - -

23

24

25
```

I N D E X

|                                              | PAGE |
|----------------------------------------------|------|
| Voir Dire February 2, 2015 trial............ | 037  |
| Voir Dire April 20, 2015 trial.............. | 366  |
| Opening Statement State..................... | 607  |
| Opening Statement Defense................... | 751  |
| Rule 29 Motion.............................. | 1528 |
| Rule 29 Motion Renewed...................... | 1564 |
| Court's Charge to Jury...................... | 1567 |
| Closing Argument State...................... | 1607 |
| Closing Argument Defense.................... | 1627 |
| Final Closing State......................... | 1645 |
| Verdict..................................... | 1662 |
| Sentence.................................... | 1672 |

| STATE'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|-------------------|--------|-------|----------|---------|
| Brian Vigneaux | 328 | 339 | | |
| Susan Nobilio | 624 | 667 | 680 | --- |
| Ricky Teamor | 682 | 688 | --- | --- |
| Jerry Roseberry | 692 | 699 | --- | --- |
| Lucas Hastings, EMT | 704 | 719 | 726 | --- |
| Ofcr. John Kazimer | 727 | 736 | 744 | 747 |
| Elizabeth Booth, RN | 753 | 785 | 798 | 801 |
| Ofcr. Dylan Demas | 802 | 808 | --- | --- |
| Det. Moctezuma | 810 | 848 | 874 | 883 |
| Todd Wiles | 885 | 923 | 933 | --- |
| Brian Vigneaux | 933 | 956 | 967 | 968 |
| Janine Springer | 971 | 1011 | 1020 | --- |
| Barbara Gifford, RN | 1022 | 1039 | 1051 | 1053 |
| Det. Trommer | 1061 | 1097 | --- | --- |
| Michael Stevens | 1108 | 1122 | 1133 | 1136 |
| Jeffrey Oblock | 1138 | 1198 | 1225 | --- |
| Laura Evans | 1228 | 1245 | --- | --- |
| Tyson Williams | 1250 | 1271 | 1279 | 1283 |
| Kelsey Kenny | 1290 | 1306 | 1316 | --- |
| Julie Burkett | 1319 | 1343 | 1361 | 1365 |
| Ofcr. Lulic | 1367 | 1380 | --- | --- |
| Sandra Fogel | 1395 | 1403 | --- | --- |
| Det. McLaughlin | 1408 | 1424 | 1434 | 1437 |
| Melissa Yahnert | 1440 | 1449 | 1466 | --- |
| Gary Stein | 1470 | 1480 | --- | --- |
| Det. Jacobs | 1486 | 1511 | 1517 | --- |

| DEFENSE WITNESSES: | | | | |
|-------------------|--------|-------|----------|---------|
| Keianna Pope | 1541 | 1555 | 1562 | 1562 |

- - - -

4

```
 1              APRIL 8, 2015 HEARING EXHIBITS

 2   State's:                      Offered    Admitted

 3   1 & 2 - CD of jail calls        1522       1526

 4
                    TRIAL EXHIBITS
 5

 6   State's:                      Offered    Admitted

 7    1 - Map of all crime locations  1522      1526
      2 - Map of Cleveland locations    "         "
 8    3 - Map of Lakewood locations     "         "
      4 - Cell phone map                "         "
 9    5 - Original W. 104 video         "         "
      6 - Steven's entry/exit record    "         "
10    7 - Tyson Booking entry           "         "
      8 - CD, Cleveland 911 call        "         "
11    9 - Nobilio 9/8 DNA report        "         "
     10 - Nobilio 9/24 DNA report       "         "
12   11 - Nobilio 9/26 DNA STR report   "         "
     12 - Springer 9/26 DNA report      "         "
13   13 - Springer 10/10 STR DNA report "         "
     14 - Robbery 10/15 DNA report      "         "
14   15 - Nobilio EMS run report        "         "
     16 - Nobilio Meds                  "         "
15   17 - Springer Meds                 "         "
     18 - Sprint Tower dump disc      ---       ---
16   19 - Cleveland cell tower map    1522      1526
     20 - Lakewood cell tower map       "         "
17   21 - Calls of Williams to Daniel   "         "
     22 - Williams booking info       ---       ---
18   23 - Springer photo lineup       ---       ---
     24 - Burkett photo lineup-Daniel   "         "
19   25 - Burkett photo lineup-Williams "         "
     26 - Suspect sketch                "         "
20   27 - Daniel Miranda waiver         "         "
     28 - Daniel interview video        "         "
21   29 - Certified JE (for court only) 1523      "
     30 - Certified JE (for court only) "         "
22   31-34 Photos from William's phone  "         "
     35-37 Photos of Camaro             "         "
23   38 - Nobilio rape kit              "         "
     39 - Nobilio clothing              "         "
24   40 - Nobilio chain of custody      "         "
     41-44 Breakers Videos              "         "
25   45 - Springer rape kit             "         "
     46 - Yahnert letter                "         "
```

1 | (Exhibits Cont's)

2 | State's:                                    Offered    Admitted

3 | 47-51 Springer clothing               1523        1526
   | 52 - Stevens' door security             "            "
4 | 53 - Breakers video                     "            "
   | 54A-D Black & White photos              "            "

5 |

6 |
   | State Exhibits (Cont'd):

7 |
   | 100-123 - W. 104 scene photos    1524        1525
8 | 200-227 - Nobilio injury photos         "            "
   | 300-315 - Nobilio clothing photos       "            "
9 | 400-413 - Lakewood rape photos          "            "
   | 500-506 - " rape clothing photos        "            "
10 | 600-611 - Lakewood robbery photos       "            "

11 | Defendant's Exhibits:

12 | None offered

13 |

14 | NOTE:  State's Exhibits 1-, Large map boards, were
   | returned to Mr. Radigan.  A small copy of No. 4 was
   | provided.  All physical/forensic evidence was
15 | retained by Det. Moctezuma.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1    **MONDAY MORNING SESSION, NOVEMBER 24, 2014**

2            - - - - -

3            THE COURT:    We are here on State

4    versus James W. Daniel, Case 589487.

5            Mr. Daniel is here with Attorney Frank

6    Cavallo.  Assistant County Prosecutors Brian

7    Radigan, Colleen Reali are present as well.

8            We are here for a waiver of speedy trial

9    issue.  The counsel and the Court had met at a

10   pre-trial in this matter.  The trial date had been

11   set for February 2nd, 2015.  Mr. Daniel has signed

12   a waiver of speedy trial form waiving his right to

13   have his case tried from today's date until March

14   1st, 2015.  His signature is on the form.  It's

15   undated.  I'm going to fill in today's date,

16   November 24th.

17           Mr. Daniel, is this your signature open

18   this document?

19           THE DEFENDANT:    Yes, sir.

20           THE COURT:    Okay.  You understand that

21   you have a right to have your case tried to a

22   jury?

23           THE DEFENDANT:    Yes, sir.

24           THE COURT:    Okay.  And the State has

25   the burden of proving your guilt to the legal

1   standard of beyond a reasonable doubt.

2          You also have speedy trial rights, which

3   means that you should be tried generally within 90

4   days, and there are some exceptions to that, but

5   by signing this form you are waiving that 90-day

6   requirement and extending it until March 1st,

7   2015.

8          Was that your intention when you signed

9   this document?

10         THE DEFENDANT:    Yes, sir.

11         THE COURT:    Okay.  Did you speak to

12  Mr. Cavallo about this before you signed this?

13         THE DEFENDANT:    Yes, sir.

14         THE COURT:    Is there any questions you

15  have about your speedy trial issue?

16         THE DEFENDANT:    No, sir.

17         THE COURT:    Okay.  Counsel, unless

18  there's unless something else, I find Mr. Daniel's

19  waiver has been made knowingly, voluntarily, and

20  intelligently.  I will have the scheduler file

21  this with the Clerk of Courts.

22         MS. REALI:    Thank you, your Honor.

23         MR. CAVALLO:    Thank you, your Honor.

24              - - - - -

25         (Proceedings adjourned.)

                OFFICIAL COURT REPORTERS
                 Cuyahoga County, Ohio

1    <u>MONDAY MORNING SESSION, FEBRUARY 2, 2015</u>

2                    - - - - -

3    (The following proceedings were had in open

4    court and out of the presence of the jury.)

5                    - - - - -

6              THE COURT:          We're going to

7    put some matters on the record.  We're here on

8    State V James Daniel, case 589487.  Mr. Daniel

9    is here today with his attorney, Frank

10   Cavallo.  We're here for trial.  There are a

11   couple of matters we want to put on the

12   record.

13             First of all, Mr. Cavallo on behalf

14   of Mr. Daniel filed a motion to sever.  I

15   believe it was filed on January 28th.  We did

16   talk about that on a day prior to that.  There

17   are counts 1 to 4 deal with an incident that

18   took place on February 7th of the year 2000.

19   Counts 5 through 23 relate to three separate

20   incidents that occurred between the dates of

21   August 30th and September 2nd, 2014.

22             The court is going to grant the

23   motion to sever counts 1 to 4 from counts 5 to

24   23.  We're going forward today and try the

25   allegations contained in counts 5 through 23.

1          Counsel, is there anything else you

2    want to put on the record regarding that

3    issue?

4          MR. CAVALLO:          No.   I

5    understand the court's ruling, Your Honor.

6          Just for record, our contention is

7    that Mr. Daniel's defense is prejudiced by

8    trying even the remaining three counts at the

9    same time.  We have asked for that reason that

10   all four incidents be separated.

11         I respect and understand the court's

12   ruling.

13         THE COURT:          Okay.  And then

14   there's the issue of bifurcation, Mr. Cavallo,

15   you brought up in chambers.  Which counts

16   again?  There is having weapon under

17   disability counts that you wanted to be tried

18   not to the jury but to the bench?

19         MR. CAVALLO:          Yes, Your Honor.

20   Count 11, Count 16, and Count 23 are all

21   allegations of having weapon under disability.

22   We would request a waiver of the jury trial on

23   those counts, try those directly to the bench.

24         There also are a number of

25   specifications, as well, that -- elements to

```
1    which would be prior conviction.  We would

2    like to bifurcate those to the court, as well.

3              THE COURT:          Okay.  I left

4    the indictment with my staff attorney.  Let me

5    get that.  But before we deal --

6              MR. MARTIN:          I have a copy,

7    Your Honor.

8              THE COURT:          The

9    specification, does the state have anything

10   they want to put on the record regarding the

11   counts 11, 16 or 23?

12             MR. RADIGAN:          No, Your Honor.

13             THE COURT:          Okay.  We'll

14   bifurcate those counts.  They will be tried to

15   the bench.  We'll just keep the names of the

16   counts the same numbers that they were given

17   by the grand jury.  I'm not going to change

18   Count 12 to 11 because we're bifurcating 11.

19   Just keep them numbered as is.

20             Okay.  I do have a copy of the

21   indictment.

22             So which specifications are you

23   referring to?  The RVO?

24             MR. CAVALLO:          Yes.  We have

25   counts 5, 6, 7, 8, 9, 10, 12, 12 through 22, I
```

1    believe.  12, 13, 14, 15, skipping 16, which

2    is what we just addressed, 17 through 22.

3    Really most of the remaining counts, if not

4    all the remaining counts.

5                    THE COURT:         Just the repeat

6    violent specification or is there another

7    specification?

8                    MR. CAVALLO:         Notice of prior

9    conviction and I think a sexually violent

10   predator specification.

11                   THE COURT:         The repeat

12   violent specification by operation of law must

13   be tried to the bench.  So there's no issue on

14   that.  That will be tried by the bench.

15                   And then NPC counts or specification

16   is present in counts -- in the same counts?

17                   MR. CAVALLO:         I believe so,

18   Your Honor.  My notes are --

19                   THE COURT:         I see it in 5.

20   I see it in 6.  Does the state have anything

21   they want to put on the record regarding the

22   notice of prior conviction specification?

23                   MR. RADIGAN:         No, Your Honor.

24                   THE COURT:         You're not

25   opposing this motion?

OFFICIAL COURT REPORTERS

```
1              MR. RADIGAN:         No, judge.
2              THE COURT:           Okay.  The court
3    will -- the court's secretary would be very
4    happy about this.  The notice of prior
5    conviction specification, along with the
6    repeat violent offender specification, and
7    counts 16, 11 and 23 will be tried to the
8    bench and not to the jury.
9              Counsel, is there anything else?
10             MR. CAVALLO:         I noted also,
11   Your Honor -- I don't know.  But there's a
12   lot, I know.  There are also sexually violent
13   predator specifications on, I believe, all the
14   same counts that we just discussed.  I would
15   prefer to have that heard by the court rather
16   than the jury.  I would make the same motion.
17             MR. RADIGAN:         No objection,
18   Your Honor.
19             THE COURT:           Mr. Radigan,
20   you're so agreeable.
21             MR. RADIGAN:         I fight the
22   battles that need to be fought, judge.
23             THE COURT:           Okay.  Well, are
24   there any specifications -- there's firearm
25   specifications left for the jury, but other
```

1    than the firearm specifications, I think all

2    of the specifications have been bifurcated,

3    correct?

4              MR. CAVALLO:          Yes, other than

5    the firearm specifications, you're correct,

6    Your Honor.  We're requesting bifurcation of

7    the remaining specifications.

8              THE COURT:          Okay.  Media

9    friends.

10             This should be on the record, too,

11   Greg.

12             The victims do not want their voices

13   and, of course, their faces to be recorded,

14   made public.  Obviously their testimony itself

15   is a different matter.  And the same with the

16   jurors.  We're not going to be filming any of

17   the jurors or any of their audio.

18             What else do we need to talk about?

19             Has there been any kind of plea

20   discussions in this matter, gentlemen?

21             MR. RADIGAN:          Your Honor,

22   thank you.  I've had a number of conversations

23   with Mr. Cavallo.  We talked about potential

24   resolutions to this case.  But beyond just

25   conversations between the lawyers, it's my

1   understanding that Mr. Daniel does not seek or

2   wish any plea negotiation or plea deals.

3   We've given him the opportunity to negotiate

4   such deals, but it's my understanding at this

5   time he does not wish to do that.

6           MR. CAVALLO:          That is correct,

7   Your Honor.  Just double checked that with

8   Mr. Daniel.  That remains the case.

9           THE COURT:          Okay.  And just

10  let the record reflect you had an in-court

11  conversation with Mr. Daniel.  Okay.

12          And lastly, Mr. Cavallo, as we

13  discussed in chambers, you filed the motion, a

14  notice of alibi, that was not filed within the

15  seven day requirements of the Criminal Rule of

16  Procedure 12.1.  Could you -- do you want to

17  put background information regarding that on

18  the record?

19          MR. CAVALLO:          There's actually

20  two motions pending that are connected.  One

21  is a motion to continue the entire trial based

22  in part on the alibi motion that the court

23  just referenced.

24          With regard to the alibi motion, we

25  recognize that it wasn't timely filed.  I

1    apologize to the court.  I notified the

2    prosecutor as soon as the information was

3    presented to me.

4         Mr. Daniel tells me, and he wants me

5    to represent to the court, that his status in

6    the county jail has been one of more or less

7    continual lockdown in a secure pod when he's

8    not being further, even more segregated

9    housing, which he asserts has impeded his

10   ability to communicate with outside parties.

11   And that, therefore, has made it difficult for

12   him to get ahold of contact information for

13   various witnesses that he would like me to

14   call in his defense.

15        I was --

16        THE COURT:          You have visited

17   him, I assume?

18        MR. CAVALLO:          I have visited

19   him on quite a number of occasions.

20        THE COURT:          How many times

21   would you estimate you've seen Mr. Daniel in

22   county jail?

23        MR. CAVALLO:          In the double

24   digits.  I would say over a dozen times.  I

25   don't have the notes in front of me.  Quite a

1   few times.

2           THE COURT:           Does that

3   include the times that you came up here on the

4   17th floor?

5           MR. CAVALLO:           I'm not

6   including those.  Those would be additional.

7           THE COURT:           How many times

8   have you seen him up here, your estimate?

9           MR. CAVALLO:           Two or three

10  times maybe.  We came up here for the waiver,

11  so probably two.

12          THE COURT:           Okay.

13          MR. CAVALLO:           He presented me

14  with the information a week ago, a week not

15  this last Friday, but the week before.  Didn't

16  have complete information.  I asked him to

17  follow up.  I got the information at the end

18  of last week.  I immediately called the

19  prospective witnesses, got some leads that may

20  in fact lead me to further information.

21          I filed the alibi motion the moment

22  that I was aware of this and in possession of

23  that information.

24          So we would respectfully request the

25  court to grant me leave to further investigate

```
1    these witnesses, recognizing that it's very
2    late in the game.  But with the stakes this
3    high, we would suggest to the court that in
4    the interest of justice, interest of justice
5    would be preferred in granting a brief
6    extension in order to allow us to investigate
7    these witnesses that came to light, again,
8    late in the game.
9              THE COURT:         Thank you.
10             And this case was indicted or
11   arraigned September, late September?
12             MR. RADIGAN:        Correct, Your
13   Honor.
14             THE COURT:         And Mr. Cavallo,
15   you had that indictment from the start,
16   correct?
17             MR. CAVALLO:        I believe I was
18   assigned to the case in early October, but the
19   time is more or less correct, yes.  October
20   the 2nd was my first visit.
21             THE COURT:         And you met with
22   your client close to a dozen times in the
23   county jail since you were assigned to this
24   matter.  And the alibi issue came to your
25   attention when?
```

1              MR. CAVALLO:          Not the Friday

2    that just past, but the Friday before that.

3              THE COURT:          So Friday the

4    23rd of January?

5              MR. CAVALLO:          I believe that's

6    correct.

7              THE COURT:          Okay.

8              The state wish to argue the motion?

9              MR. RADIGAN:          Judge, I would

10   just like to point out a few things.

11             I think it's important to note that

12   the information that he's provided, as far as

13   an alibi goes and the witnesses that we know

14   of so far, these people are known to the

15   defendant.  One of them is his sister, who is

16   an alibi witness.  And the other is --

17             THE COURT:          Who's that?

18             MR. RADIGAN:          Keianna Daniels.

19             MR. CAVALLO:          He's right.

20   That's one of the people I told you.

21             MR. RADIGAN:          So one of the

22   people that the defendant is relying upon for

23   his albi is his sister.  Another individual,

24   her first name is Barbara.  I'm not sure what

25   the last name is.

1            THE COURT:            DeLizuio, D-e

2    capital L-i-z-u-i-o. And the other name

3    listed is Anastaia Atkinson,

4    A-n-a-s-t-a-s-i-a, Atkinson.

5            I don't see his sister listed.

6            MR. RADIGAN:        When I spoke

7    with Mr. Cavallo on Friday he listed

8    Ms. Daniel as a possible witness.

9            But I also point out that Barbara is

10   someone that Mr. Daniel knows. Him and his

11   brother Tyson Williams both know Barbara very

12   well. These are not individuals that would be

13   hard for him to come up with in the months

14   that have went by. These are not individuals

15   that he doesn't know or had to find out what

16   their names are. He was aware of them.

17          And judge, frankly, from the state's

18   position, we don't have a problem with the

19   fact that these witnesses are going to be

20   presented at trial, even though this alibi was

21   not presented to the state within seven days.

22   The state would not object to these witnesses

23   being able to come in here, at least the ones

24   that have been listed so far, to come in and

25   testify about the alleged alibi of

1       Mr. Daniels.

2           THE COURT:      Which incident

3    does the alibi pertain to?

4           MR. RADIGAN:    The Lakewood

5    rape, Your Honor.

6           MR. CAVALLO:    Counts 5 through

7    11, Your Honor.  Mr. Radigan is correct.

8           THE COURT:      August 30

9    incident?

10          MR. CAVALLO:    Yes.

11          MR. RADIGAN:    Correct.

12          MR. CAVALLO:    One of the

13    witnesses that he -- perspective witnesses, I

14    would have to call them.  She's not listed in

15    the motion because I was not able to actually

16    personally speak to that woman.

17          THE COURT:      That's the

18    sister?

19          MR. CAVALLO:     Yeah.  Should

20    that information come to light as time goes

21    on, I would have to supplement that list.  But

22    in the interest of candor with the court, I

23    can only put in the motion the people who I

24    have spoken to and told me that they would go

25    on the record.

1           THE COURT:          And the alibi

2 motion you filed lists him being allegedly

3 present at a, quote, after hours, end quote,

4 club on the east side.  We talked in chambers

5 and you indicated that you do not have any

6 more specific information as to the location

7 of the club, the name of the club, or anything

8 else that would help the state to do some

9 investigation on their behalf?

10           MR. CAVALLO:       That is correct,

11 Your Honor.  I have a little more information

12 on that.  I was only given one day to follow

13 up.  That's the reason why I was asking for

14 more time to further investigate.

15           THE COURT:         Okay.  We are

16 not going to continue the matter because of

17 the late disclosure of this potential alibi by

18 Mr. Daniel.

19           The court finds that Mr. Daniel's

20 counsel has met with him on numerous

21 occasions, certainly more than enough for this

22 information, which frankly would have been

23 obvious to any defendant's ability to put

24 forward a defense as being important.

25           So denied the motion to continue the

1     trial.  We're going to go forward with the

2     trial today, hopefully, given the weather

3     outside and the jury's availability.

4          And the alibi issue, the state is not

5     objecting to at this time?

6          MR. RADIGAN:          No, Your Honor.

7          THE COURT:          We'll see where

8     we are at the close of the state's case, how

9     the evidence comes in.  But it sounds like the

10    state isn't objecting to your not being in

11    compliance with Rule 12.1.  So the court is

12    still going to defer ruling on that issue

13    until more is known by the defense.

14          Is there anything else we need to

15    discuss before we bring in a jury?

16          MR. CAVALLO:          There is one

17    more matter, Your Honor, which came to light

18    once I sat down at the table.  And that is

19    that -- not filed, but Mr. Daniel has filled

20    out a motion that he has in front of him that

21    is captioned, the motion to disqualify

22    counsel, with my name on it as counsel.  So I

23    believe he wants to argue that to you.  I

24    can't argue that motion.  So I think that's

25    what he wants to do.  He wants to fire me as

```
 1        counsel.
 2                THE COURT:            Mr. Daniel, is
 3        that correct?
 4                THE DEFENDANT:            Yes, sir.
 5                Part of the reason being, is like he
 6        said about my witnesses or whatever.  I've
 7        been stating to counsel since I met him that
 8        I've been having several concerns with the
 9        county getting mail out, getting mail out,
10        being able to communicate with people, this
11        and that and so forth.  And it's been ongoing
12        issue.  It's an issue as we speak.  I'm not be
13        able to contact nobody.  I'm not able to get
14        mail out.
15                THE COURT:            What does this
16        have to do with your lawyer?
17                THE DEFENDANT:            I was unable to
18        contact people.  I let him know the situation
19        so he can contact other people.  And then from
20        the beginning, from when I first met, one of
21        the times I met with him I let him know that I
22        did have several witnesses that I would like
23        to call that I had, that would speak on my
24        behalf.
25                THE COURT:            When did you
```

1    tell Mr. Cavallo that you had several

2    witnesses that you wanted to call?

3         THE DEFENDANT:         I believe it was

4    like the second or third time that I met him.

5         THE COURT:         Did you give him

6    names?

7         THE DEFENDANT:         I didn't have

8    contact with the names.

9         THE COURT:         You have

10   witnesses so -- Hold on.

11        I presume that you knew the names of

12   these potential witnesses?

13        THE DEFENDANT:         Right.

14        THE COURT:         Is that correct?

15        THE DEFENDANT:         Yes, sir.

16        THE COURT:         Did you give the

17   names of those individuals to Mr. Cavallo the

18   second or third time you met with him?

19        THE DEFENDANT:         No, sir.

20        THE COURT:         Why did you not

21   do so?

22        THE DEFENDANT:         Because at the

23   time I had the listed names we were still in

24   the beginning of the case.  I didn't have the

25   rest of the information he needed to proceed

```
 1    and get --
 2                THE COURT:           Why didn't you
 3    give him the names?
 4                THE DEFENDANT:          He never asked
 5    for them.   I showed the paperwork saying,
 6    look, I have all these people I can call for
 7    witnesses.   Because I don't have the rest of
 8    the information -- he wanted to -- rest of the
 9    information so he can contact those people.
10    He needed the rest of the information.
11                THE COURT:           So I'm not sure
12    what you're dissatisfied with about
13    Mr. Cavallo.  You're dissatisfied that the
14    sheriff's department wouldn't let you
15    communicate freely with the outside world, it
16    sounds like.  What does that have to do with
17    your lawyer?
18                THE DEFENDANT:          It's not that
19    situation.  Do you know what I'm saying?
20    There's more to it.
21                Like for instance, like the last time
22    I came in here and I waived my speedy trial, I
23    was under the impression by my attorney,
24    because we wasn't ready for trial and we
25    didn't get in contact with all my witnesses
```

1    and things like that, that's the reason why we

2    was coming in here, to waive my speedy trial,

3    to extend my trial date.  And I was under the

4    impression that I was going in March or

5    something like that.

6              Because my exact words when we left

7    the courtroom, I was asking my attorney, which

8    he can verify, why did we only extend it for a

9    month.  I thought we would extend it to June

10   or July.  That way we can get everything

11   ready.  At the time we didn't have all the

12   evidence yet from the prosecution about my

13   case.  We was still waiting on that paperwork.

14             And then there's disagreements that

15   we have with my case about certain things in

16   my case.  He feels one way and I feel the

17   other.  I don't know what our defense is.  Or

18   I don't know when I get on trial what I'm

19   going to say.  Or am I supposed to get on

20   trial or whatever.  I don't know nothing about

21   the defense.

22             I did not know today I was going to

23   be coming to court.  And I explained that to

24   him a week ago when he told me that.  I said,

25   I didn't understand this.  I didn't understand

1    none of that, you know.  And I explained that

2    to him and also explained to him I take

3    psychiatric medications, that sometimes I

4    don't understand why, I don't comprehend

5    what's going on.  Do you know what I'm saying?

6    And I explained that to him.  I was under a

7    different impression.

8              THE COURT:           What medication

9    do you take?

10             THE DEFENDANT:        I take several

11   medications right now.  I'm on -- I really

12   can't -- I'm on lithium.  I'm on Depakote.

13   And they just put me on a new medication, I

14   forget the name of it, for my schizophrenia.

15   They switched my medication because the last

16   medication I was on was causing stomach

17   irritability.

18             THE COURT:           You're

19   schizophrenic?

20             THE DEFENDANT:        Yes, sir.

21             THE COURT:           How long have

22   you been diagnosed as schizophrenic or with

23   schizophrenia?

24             THE DEFENDANT:        Since I was a

25   kid.  I've been in and out of the mental

```
 1        hospitals.  I've been on medication since I
 2        was 10 years old.
 3                 THE COURT:           Were you ever
 4        seen by the court psychiatric clinic at any of
 5        our prior five or six Cuyahoga County felony
 6        cases?
 7                 THE DEFENDANT:        No, sir.  Other
 8        than -- no.
 9                 THE COURT:           Never?
10                 THE DEFENDANT:        They came and
11        spoke to me.  I've been on medication.  But
12        I've never been no further than that.
13                 THE COURT:           Okay.  Anything
14        from the state?
15                 MR. RADIGAN:          Judge, may we
16        approach?
17                 THE COURT:           Sure.
18                     - - - - -
19        (The following proceedings were at sidebar.)
20                     - - - - -
21                 MR. RADIGAN:          I'm not sure
22        whether or not he's ever been referred before
23        for any of his other cases.  I guess if the
24        issue does come up -- I know Mr. Bell told me
25        they've done it before.  They can send him
```

OFFICIAL COURT REPORTERS

1    down for a day and do a quick evaluation to

2    see if he's being truthful about the things

3    he's saying here, to find out if this is an

4    issue or not.

5            THE COURT:        Has he raised it

6    as an issue, Mr. Cavallo?  You've met with

7    him, with your client on one case.  Does he

8    seem lucid to you?

9            MR. CAVALLO:        I have to be

10   honest.  He's never --

11           THE COURT:        We would presume

12   you would be honest.

13           MR. CAVALLO:        I haven't

14   noticed anything to lead me to believe that

15   he's incompetent to stand trial at this time.

16   However, the issue of the schizophrenia

17   diagnosis was brought to my attention rather

18   late in the game.  So he's asserting that.  I

19   don't have any documentation about that.

20           THE COURT:        Okay.

21           MR. BELL:        There's nothing

22   in the state's file, judge, about this.  So we

23   have no indication from any of the earlier

24   statements that were made by witnesses or by

25   him to police or any correspondence that he

OFFICIAL COURT REPORTERS

1    has any issues, judge.

2              THE COURT:          Have you looked

3    at his docket in the other cases?

4              MR. RADIGAN:          I know we did a

5    long time ago.  We can start looking through

6    that right now to see if there was ever a

7    referral before.

8              THE COURT:          Okay.  Anything

9    else?

10              MR. RADIGAN:          No.

11              MR. CAVALLO:          It's a matter of

12    a one-day evaluation.  I don't object to that.

13              THE COURT:          I do.

14              MR. CAVALLO:          This is on the

15    record.

16              MR. BELL:          If there's a --

17              THE COURT:          I've never heard

18    of such a thing, gentlemen.

19              MR. BELL:          We have a PSI

20    that would show that there's no psychological

21    issues with him.  That could be available to

22    the court.  Right now we have no --

23              THE COURT:          He brought this

24    up in a motion to disqualify counsel.

25              It came to your attention this

1    morning for the first time, correct?

2             MR. CAVALLO:          Well, the

3    schizophrenia, last week was the first time he

4    talked about that.

5             THE COURT:           First talked

6    about -- talked about disqualifying you?

7             MR. CAVALLO:          Schizophrenia

8    came up.  They came up at the same time.

9             THE COURT:           So on the 23rd?

10            MR. CAVALLO:          Sometime within

11   the last week.  I met with him every day last

12   week.  Sometime last week.

13            THE COURT:           Okay.  Let's go.

14            MR. BELL:             Just looked at

15   the docket, judge, and there's nothing on the

16   docket, as far as past referrals to the

17   psychiatric clinic.

18            THE COURT:           He had five or

19   six cases.  You're able to do that that

20   quickly?

21            MR. BELL:             We have the

22   computer at the trial table.

23            THE COURT:           Okay.

24                  - - - - -

25            (Recess taken.)

```
 1                    - - - - -
 2   (The following proceedings were held in open court.)
 3                    - - - - -
 4            THE COURT:        Back on the
 5   record.
 6            Is there anything else, counsel, on
 7   this issue?
 8            MR. CAVALLO:       I have nothing
 9   else.
10            THE COURT:        The issue is
11   disqualification of counsel.
12            MR. CAVALLO:       Correct.
13            THE COURT:        Okay.
14            MR. CAVALLO:       He filed -- he's
15   written a motion, if the court wants to see
16   that, and I have it in front of me.  I can
17   present that to the court.
18            THE COURT:        Handwritten?
19            MR. CAVALLO:       Yes.
20            THE COURT:        Mr. Daniels, is
21   there anything else in that motion that you
22   want to tell me that you haven't done so
23   already?
24            THE DEFENDANT:     No, sir.
25            THE COURT:        Okay.  We're
```

1    going to go forward with trial and Mr. Cavallo

2    is going to be your counsel.  I don't find a

3    reason justifying the removal of Mr. Cavallo

4    at this point to have been made.

5         Mr. Daniel, you had three months to

6    prepare your defense.  And part of preparing

7    your defense is telling your attorney the

8    names of those people who might be witnesses

9    so he can go out and meet with them.  He has

10   investigators.  He has other options available

11   to him.  Waiting to the last minute is not for

12   a continuance.

13        So I've made my ruling.  The record

14   has been made.  You've put your reasons

15   forward.  And that's all we're going to say

16   about it at this point.

17        Stipulations?  The state has a lot of

18   witnesses they intend to call.  Many of those

19   witnesses are custodians of records and

20   authentication, people who would provide

21   authentication.  The court would be

22   appreciative if we could save the jurors'

23   time, if possible, by coming to agreements on

24   authenticity of records and any other

25   stipulations you may make.  You guys can talk

1    about that off the record.

2              MR. RADIGAN:          Thank you,

3    judge.

4              THE COURT:          And then we'll

5    come back and discuss that.

6              Is there anything else before we

7    break?

8              MR. RADIGAN:          No, judge.

9              MR. CAVALLO:          No, Your Honor.

10             THE COURT:          Okay.  Thank

11   you.

12                  - - - - -

13             (Recess taken.)

14                  - - - - -

15             MR. RADIGAN:          Judge,

16   Mr. Cavallo and I are going to have a few

17   stipulations.  We're still working those out.

18             THE COURT:          That's fine.

19             MR. RADIGAN:          And then the

20   other thing, judge, is the amendment of the

21   victims from Jane Doe to their actual names.

22             THE COURT:          Okay.  Go ahead.

23             MR. RADIGAN:          Okay.  Jane Doe

24   2 is Janine Springer.

25             THE COURT:          Spell that.

1      MR. RADIGAN:      J-a-n-i-n-e.

2   Springer, S-p-r-i-n-g-e-r.

3      Jane Doe 3 is Kelsey Kenny,

4   K-e-l-s-e-y K-e-n-n-y.

5      Jane Doe 4 is Julie Burkett.  Common

6   spelling, J-u-l-i-e, Burkett, B-u-r-k-e-t-t.

7      And then Jane Doe 5 is Susan,

8   S-u-s-a-n, Nobilio, N-o-b-i-l-i-o.

9      THE COURT:      Okay.  And then

10   the Jane Doe 1 is the counts we severed?

11      MR. RADIGAN:      Correct.

12      THE COURT:      Do you know

13   what?  I am going to renumber the counts.

14   Make it easier for all of us.  I forgot about

15   counts 1 and 4.  So we'll begin with Count 5

16   to have your -- an indictment with you.  Count

17   5 will become Count 1.  Count 6 will become

18   Count 2.  Count 7 will be 3.  Count 8 will be

19   Count 4.  Count 9 will be Count 5.  Count 10

20   will be Count 6.  Count 12 will be Count 7.

21   Count 13 will be Count 8.  Count 14 will be

22   Count 9.  15 will be -- 15 will be Count 10.

23   Count 17 will be Count 11.  Count 18 will be

24   Count 12.  19 will be Count 13.  20 will be

25   Count 14.  21 will be Count 15.  And 22 will

1    be Count 16.

2              Okay.   I have a little cheat cheat.

3    I renumbered the counts for your benefit.   I

4    identified Jane Doe 2, 3, 4, and 5.   I'm going

5    to mark this as Court Exhibit Number 1, and

6    then we'll make copies of it and distribute it

7    to you so that any reviewing court is clear

8    that Count 5 is now Count 1.   And like I said,

9    the chances of confusion a little less.

10             MR. CAVALLO:          Judge, do you

11   want us to sit up here.

12             THE COURT:          Sit wherever you

13   want.   We're going to put the jury on that

14   side.   Wherever you want.   You feel free to

15   come and go as you need.

16             Okay.   Are we ready to bring in the

17   jury?

18             THE BAILIFF:          I am, judge.

19                  - - - - -

20       (Court's Exhibit No. 1 was marked.)

21                  - - - - -

22   (The following proceedings were held in open

23     court and in the presence of the Jury.)

24                  - - - - -

25             THE COURT:          Ladies and

1      gentlemen, if I could ask you to raise your

2      right hand and take the following oath or

3      affirmation.

4                      - - - - -

5      (The panel of prospective jurors were sworn.)

6                      - - - - -

7              THE COURT:           Please be

8      seated.

9              Still morning.  Good morning.

10             THE JURY:            Good morning.

11             THE COURT:           Not bad.  I hope

12     you had a chance to enjoy a cookie.  You can

13     thank my wife for that move.

14             But my name is Judge David Matia.  I

15     would like to give you an extra special

16     welcome for jury duty today.  As a matter of

17     course I always thank jurors on the first day

18     for showing up.  We take you away from your

19     jobs and your daily lives.  And we have not

20     forgotten how disruptive this process can be

21     for you.

22             More importantly, we have one of the

23     worst weather days that we'll experience this

24     year.  So thank you very much for coming down

25     here and reporting for jury service.

1          Now you've spent the whole morning

2     being processed.  This part of your jury

3     experience is the slowest and most tedious

4     part.  What we've called the 32 of you here

5     today to do is take part in a jury deselection

6     process.  It's not jury selection.  Call it

7     deselection, because the first 12 of you in

8     the jury box are presumed to be our jurors.

9     We'll go through a process where I'll ask you

10    questions, attorneys for the State of Ohio ask

11    you questions, and the attorneys for the

12    defense will ask you questions.  And then we

13    go through our survivor phase, where we vote

14    some of you off the island.  So that's why we

15    call 32 of you.

16          Each side of a criminal case has four

17    peremptory challenges they can use on you for

18    any reason whatsoever.  And if they don't like

19    the color of your shirt or the fact that you

20    might be a Patriots fan or you're from

21    Pittsburgh, they can strike you for any reason

22    whatsoever.  So don't take it personally.

23    We'll send you back downstairs.

24          And as we work through our jury

25    selection process there'll be only 14 to 16 of

1    you remaining.

2            This is a criminal case, as you can

3    tell because I referenced the State of Ohio.

4    So on a criminal case we pick 12 jurors.  And

5    this being cold and flu season, we'll pick a

6    couple of alternates.  We'll pick between one

7    and four alternates.  If someone becomes sick

8    or unavailable, we won't have to start the

9    trial over.

10           This trial has -- should take

11   probably more than this week to try.  So the

12   state has a fair number of witnesses.  Usually

13   progress pretty quickly once we get going.

14   But the getting going part is the hard part.

15   This is kind of like a train ride, only we're

16   still in the freight yard and the cars haven't

17   even been assembled on the train.  And then it

18   takes awhile to shift the cars around.  The

19   elevators are slow.  We move 32 of you up and

20   down and it takes a long while.  The train

21   finally gets assembled.  It doesn't start off

22   at 60 miles per hour, it starts off slowly,

23   gets going.  And then once we get going, the

24   trip will be over before you know it.

25           But I tell you that just so you give

1    us a little of your patience.  It's difficult.

2    This room is not big enough for 32 people.

3    Sometimes we have to take unscheduled breaks.

4    So if you'd be patient with me, and we'll get

5    through this.

6         This is my favorite part of the trial

7    because I get to find out about the lives of

8    32 strangers.  I will ask you a series of

9    questions.  We'll play 20 questions, so to

10   speak.  I will ask you whether you are a

11   lawyer, whether you ever worked for a lawyer,

12   whether you have any close friends or family

13   members who are lawyers.  I'll ask the same

14   question with regard to law enforcement.  I'll

15   ask you whether you've ever been on a jury

16   before.  If you have been on a jury before,

17   did you deliberate calmly and peacefully with

18   your fellow jurors.  Were you able to reach a

19   verdict.  Were any of you the foreperson on

20   that jury in the past.

21        So I ask a series of general

22   questions.  I ask you to raise your hand to

23   these questions if you have a yes answer.  And

24   then I will go around and ask you one by one,

25   starting with Juror Number 1, who is

1    Mr. Muller, to tell us a little bit about

2    yourself.

3              And folks, I don't need to know

4    anybody's ages.  But I'd like to know what you

5    do at work and what you like to do outside of

6    work, more importantly.  So just give us a

7    little flavor for yourself.

8              And then counsel will be able to

9    follow up with any cleanup questions.  And I

10   don't expect us to really get any further than

11   picking a jury this afternoon.  Hopefully

12   we'll get a chance to get that done.  That's a

13   day.

14             You met Colleen Gallagher, my

15   bailiff.  Maybe you know Colleen from before

16   today.  Anyone live in Brooklyn?  She used to

17   be a city council person of Brooklyn.

18             And nobody knows me from before

19   today, correct?

20             Our court reporter is Greg Koterba.

21   He would wave and say hello, but he's busy

22   typing everything that I say.  It's important

23   that when we do ask you a question, that Greg

24   is able to type the answers.  So you have to

25   answer verbally and without shaking your head

```
 1        yes or no.  It's also very important that you

 2        wait until the question is done being asked

 3        before you begin your answer.

 4              Okay.  So the state has the burden of

 5        proof.  They've made the allegations in this

 6        case.  We'll go over that in a moment.

 7              But I just ask that the state,

 8        Mr. Radigan, can you stand and introduce your

 9        table for the jury.

10              MR. RADIGAN:        Certainly, Your

11        Honor.

12              Good morning, ladies and gentlemen.

13        My name is Brian Radigan.  I'm an assistant

14        county prosecutor.  Sitting at table with me,

15        Maxwell Martin.

16              MR. MARTIN:        Good morning.

17              MR. RADIGAN:        Mr. Bell, Rick

18        Bell.

19              MR. BELL:        Good morning.

20              MR. RADIGAN:        And as well,

21        Aqueelah Jordan.

22              MS. JORDAN:        Good morning,

23        everyone.

24              MR. RADIGAN:        Thank you, your

25        honor.
```

1          THE COURT:              Thank you,
2     Mr. Radigan.
3          Mr. Cavallo, could you stand and
4     introduce your table.
5          MR. CAVALLO:              Certainly.
6     Thank you, Your Honor.
7          Good morning, everyone.  My name is
8     Frank Cavallo.  I'm one of the defense
9     attorneys here for Mr. James Daniel, seated
10    next to me at the table.  And also with me is
11    an associate, Joy Kennedy, who will be trying
12    the case with me.
13          THE JURY:              Good morning.
14          THE COURT:              Okay.  Thank
15    you, counsel.
16          Ladies and gentlemen, do you know any
17    of the seven people that you were just
18    introduced to at the counsel table?  Any name
19    sound familiar?
20          Okay.  We have a list of witnesses.
21    I'm going to read the names.  I'll read them
22    slowly.  And could you raise your hand if you
23    know any of these witnesses?
24          We'll also have -- does anybody live
25    in Lakewood?  No Lakewood jurors.  We have

```
1          some -- presume we have -- do have some

2          Cleveland jurors?  Do we have any people with

3          connection to the Cleveland Police Department?

4                    JUROR NUMBER 31:      Cleveland

5          Heights.

6                    THE COURT:      You're Mr. Elam?

7                    JUROR NUMBER 31:      Yes.

8                    THE COURT:      Sir, tell me

9          your name.

10                   JUROR NUMBER 21:      Reynaldo Ortiz.

11                   THE COURT:      Mr. Ortiz, you

12         are a Cleveland police officer.  Okay.  What

13         are you assigned to, district?

14                   JUROR NUMBER 21:      Logistics,

15         specialized unit.

16                   THE COURT:      Logistics?

17                   JUROR NUMBER 21:      Yes.

18                   THE COURT:      What does

19         logistics do?

20                   JUROR NUMBER 21:      In charge of the

21         fleet, equipment.

22                   THE COURT:      Where do you

23         physically work out of?

24                   JUROR NUMBER 21:      East 55th

25         Street, the police garage.
```

```
 1                THE COURT:          Okay.  Pass it
 2      every day.
 3                Well, let's go through this one by
 4      one.
 5                Raise your hand if any juror knows
 6      Susan Nobilio, Rick Teamor, Gary Rosberry,
 7      Lucas Hastings, Officers John Kazimer, Dylan
 8      Dumas or Roberto Ortiz, Elizabeth Booth,
 9      Detective Michael Moctezuma, Todd Wiles,
10      W-i-l-e-s, Investigator Brian Vigneaux.
11                How do I say it?
12                MR. RADIGAN:        Vigneaux.
13                THE COURT:          Vigneaux.
14      Michael Stevens, Tyson Williams, Janine
15      Springer, Joshua Miles, Lakewood Police
16      Officer Luhlic, Barbara Gifford, Detective
17      Trommer, Jeffrey Oblock, Laura Evans, Kelsey
18      Kenny, Julie Burkett, Detective Foye,
19      Detective McLaughlin, Melissa Yahnert, Dave
20      Jacobs, Gary Stein.  He's an investigator with
21      the prosecutor's office.  Greg Curtis, Tim
22      Szakacs, Sandra Fogel, Keith Hunter, Matt
23      Bilak, and Nicole DiSanto, and Sahir Hasam.
24                You folks really need to get out
25      more.  Okay.  Well, no conflicts there.
```

```
 1              Okay.  Well, whether we hear from all
 2      of those people is still up in the air.  Some
 3      of those people we certainly will hear from.
 4      But those are the witnesses that the state has
 5      identified that they intend to call at this
 6      point.
 7              Okay.  So this is a criminal case.
 8      How about we do the jury question.  This is an
 9      easy question to start out with.  What I need
10      you to do is raise your hand if you have been
11      on a jury before.  And keep it up long enough
12      for me to call your name.  Once I call your
13      name, I've noted that you've been on the jury.
14              Raise your hand if you've served on
15      jury duty in the past.  And raise it high
16      enough that I can see.
17              Ms. Brandon.  And then Ms. Gerald.
18      Okay.  You are Ms. Veeck.  Mr. Shanofski.  Are
19      you Mr. Bathgate -- Mr. Alcox.  Mr. Alcox,
20      he's Juror 15.  So Mr. Bathgate, you're next
21      to him, you're 16.
22              JUROR NUMBER 16:      Yes.
23              THE COURT:            Ms. Lui, you're
24      17.
25              You're Mr. Lucak.
```

```
1              JUROR NUMBER 22:      Lucak.

2              THE COURT:            Lucak.   Was

3    there an SC at some point?

4              JUROR NUMBER 22:      Probably.

5              THE COURT:            You can put your

6    hand down.

7              And then two down, Ms. Lynch --

8    Mrs. Lynch.

9              JUROR NUMBER 24:      Yes.

10             THE COURT:            And then

11   Ms. Kyles way back there.  I can see your

12   hand.

13             Okay.  No one else has been on a jury

14   before.

15             Okay.  Ladies and gentlemen, we have

16   one of the worst HVAC systems ever designed.

17   This is quiet.  It gets much louder.  Point

18   this out now to be overcritical of the people

19   that designed this building.  That's another

20   conversation for another day.  When you talk,

21   you need to talk loudly because it's very

22   difficult to hear over the HVAC system when it

23   is working.  Okay.

24             We won't keep you much longer because

25   I know you're hungry.  Does anybody suffer
```

1    from diabetes?

2              How are you doing today?

3              JUROR NUMBER 6:       I'm fine.

4              THE COURT:            You'll let me

5    know.  I don't want anybody going down on me.

6    You need to eat.  I'm sure somebody grabbed a

7    cookie.

8              Give you an overview of what will

9    happen.  We'll come back this afternoon and we

10   will start with the 20 questions and the

11   follow-ups.  And then counsel again will

12   follow up on that.  And hopefully we'll have a

13   jury picked before we leave today.

14             If you have any special needs or

15   concerns, let my bailiff know, or possibly let

16   Greg Koterba, our court reporter, know.

17             This is a criminal case.  They call

18   it a search for the truth.  I'm not sure if

19   that's always accurate.  I look at it

20   differently.  Trial is really an intellectual

21   exercise in which this table, the state, has

22   the burden of proof.  And they have to prove

23   to you to the legal standard of beyond a

24   reasonable doubt the things that are indicted

25   against Mr. Daniel.  There are several counts.

1    We'll deal with them when we get back this

2    afternoon.  But each count has to be proven

3    beyond a reasonable doubt before you can find

4    Mr. Daniel guilty.

5         It's not necessary that you find the

6    truths, it's only necessary for to you find

7    Mr. Daniel guilty, that you find the evidence

8    is such as to prove to you beyond a reasonable

9    doubt the truth of the charge put forward.

10         So I'll define for you what beyond a

11    reasonable doubt means this afternoon, the

12    burden of proof the state lives with.  And the

13    definition considers your most important

14    affairs.  How much information would you want

15    before deciding to buy a house, before

16    deciding to buy a car, before deciding to name

17    a guardian in your will for your minor

18    children.  So it's proof of such character

19    that an ordinary person would be willing to

20    rely and act upon it in the most important of

21    their own affairs.  They have to prove the

22    charges against Mr. Daniel beyond a reasonable

23    doubt.  So more on that later.

24         So for those of you who have not been

25    on a trial before, the state has the burden.

```
 1      They go first on everything, starting with
 2      opening statement.  Mr. Cavallo will then have
 3      an opportunity to address you in opening
 4      statement.  And then Mr. Radigan and company
 5      here will put on their witnesses.  They'll put
 6      on their case in chief.  After each witness is
 7      put out Mr. Cavallo gets a chance to
 8      cross-examine those witnesses.  And then often
 9      there are further questions from the state.
10      It's like a tennis match, go back and forth a
11      couple times until we've exhausted all the
12      questions that need to be asked of a certain
13      witness.  We call the next witness.
14              When the state is done with all their
15      witnesses they will rest their case.  We will
16      handle evidentiary and procedural matters at
17      this time outside of your presence.  Then the
18      defense will be given an opportunity to
19      present their case.
20              But what you need to know and
21      remember, this table has the burden of proof.
22      This table doesn't have to do anything.
23      Mr. Daniel sits here today cloaked with the
24      constitution's presumption of innocence.  He
25      is presumed innocent as he enters upon the
```

1     trial.  And we'll examine every aspect of the

2     evidence the state chooses to bring against

3     him.  It is only until a jury of 12 returns a

4     guilty verdict that that presumption is

5     overcome.  So Mr. Daniels -- Mr. Daniel --

6     forgive me for that mistake.  There's no S --

7     sits here cloaked with the presumption of

8     innocence.  The state has to prove all of the

9     16 counts against him.  They don't have to

10    prove all of them to you.  They can prove one,

11    seven or 16.  Their findings are -- or your

12    findings of guilt are made solely by you based

13    upon the evidence.

14          So the defense does not have to call

15    any witnesses.  They don't have to do anything

16    through this trial because the state has the

17    burden of proof.

18          Also this, like in all cases,

19    criminal or civil, you're going to be

20    instructed not to talk about the case with

21    each other or with anybody else as the trial

22    progresses.

23          Also let me have a raise of hands

24    here how many people use social media.  Who

25    doesn't use social media?  Pretty good.  How

1    do you survive?  Okay.  You have a lot more

2    free time than the rest of us.

3              Okay.  So social media's great, fun.

4    You are not to put anything on social media

5    about your jury service while we're trying

6    this case.  You can't put on, I'm on jury

7    duty.  You can't put on anything specifically

8    about this case.

9              Also there's no homework, ladies and

10   gentlemen.  I say that jokingly.  I'm deadly

11   serious about this.  Everything you need to

12   decide this case will be presented to you in

13   this courtroom.  You are not to go home and do

14   any research.  If you do, you will cause a

15   mistrial and I will be very unhappy about

16   that.  And nobody wants an unhappy judge.  You

17   can face contempt charges for causing a

18   mistrial.

19             So that's about it.  We're going to

20   give you until, let's see, 1:30 for lunch.

21   We'll need the extra time just to move the

22   bodies around the building.  The cafeteria,

23   I'm sure, will be crowded today.  It's a snowy

24   day.  Nobody wants to go outside.

25             So enjoy your break.  Don't talk

```
1       about the case.  Please turn your phones off
2       when you enter the courtroom.  No social
3       media.  No talking about the case.
4               When you go home tonight, you can
5       tell your spouse or significant other that you
6       are on a criminal case, but that is the extent
7       of any conversation you may have.  You can
8       write a book when this case -- when you're
9       done.  But until the case is over, you cannot
10      communicate in any way about this case.  I
11      cannot emphasize that enough.  So those
12      reasons will be made further clear to you this
13      afternoon.
14              I look forward to getting to know you
15      a little bit more.  Enjoy your lunch.  Stay
16      warm.
17              And just remember, when one is late,
18      we all wait.  So try to be on time.  1:30 on
19      the fourth floor.  Listen for Judge Matia's
20      jury.  Come forward and we'll put you on, I
21      don't know, three elevators.  How many do you
22      need?
23              A JUROR:            Two.
24              THE COURT:          Okay.
25              All rise.
```

```
1              Take everything with you.
2                      - - - - -
3         (The following proceedings were had in open
4      court and out of the presence of the jury.)
5                      - - - - -
6            THE COURT:          See you at 1:30.
7                      - - - - -
8            (Lunch recess taken.)
9                      - - - - -
```

1      <u>MONDAY AFTERNOON SESSION, FEBRUARY 2, 2015</u>

2                      - - - - -

3      (The following proceedings were had in open

4      court and out of the presence of the jury.)

5                      - - - - -

6                  THE COURT:          Anything before

7      we bring in our fellow citizens?

8                  MR. RADIGAN:          No, Your Honor.

9                  MR. CAVALLO:          No, Your Honor.

10                 THE COURT:          Bring them in.

11                     - - - - -

12     (The following proceedings were held in open

13        court and in the presence of the Jury.)

14                     - - - - -

15                 THE COURT:          Everybody,

16     please be seated.

17                 Okay.  Ladies and gentlemen, welcome

18     back from lunch.  Try to keep you out of your

19     cookie comas.  Those went pretty fast, I saw.

20                 Okay.  Back to State versus James

21     Daniel.

22                 Let's go over the counts.  And there

23     are 16 counts that have been filed against

24     Mr. Daniel that deal with three separate

25     incidents.

OFFICIAL COURT REPORTERS

1          And how did we get here?  How do we

2    get to the indictment phase?

3          Have any of you served on what we

4    call the grand jury?  Anybody?  Anybody know

5    what the grand jury is?  Okay.  After this

6    fall's news events I'm sure many of us have

7    heard the term, grand jury.

8          So grand jury is a group of citizens

9    just like yourself pulled from the same list

10   of registered voters that were you pulled

11   from.  And the grand juries are impaneled in

12   this county on a quarterly basis.  We have

13   four grand juries going all the time.  And the

14   grand jury meets twice a week.  Each grand

15   jury meets twice a week.  And they hear

16   evidence presented by the state.  There's no

17   defense side of the story.  And they operate

18   under a different burden of proof.

19          I've talked to you about the burden

20   of proof the state has in this trial called

21   beyond a reasonable doubt.  Well, the jury in

22   the grand jury is only operating on a probable

23   cause burden of proof.  So they hear evidence.

24   And from that evidence they determine whether

25   there's probable cause to charge someone with

1      a crime.

2              Now it's like this:  I don't like my

3      neighbor.  I say, he came on my driveway to

4      the grand jury.  They indict him for

5      trespassing, if that was a crime.  So it

6      doesn't take a lot to get indicted by a grand

7      jury.  And each grand jury indicts about 30 to

8      50 cases a day.  So do the math.  How much

9      time do they spend on each case before handing

10     down an indictment?

11             The fact that Mr. Daniel, or any

12     other defendant in this county, has been

13     charged with a crime raises no presumption

14     against Mr. Daniel.  The indictment itself is

15     simply the means that we have by law for

16     presenting a person with a formal charge,

17     informing him that he has been charged with a

18     crime.

19             He came forward at his arrangement,

20     pled not guilty.  He remains cloaked with the

21     presumption of innocence.

22             So the grand jury indicted Mr. Daniel

23     with 16 counts.  And we'll go through them.

24     This is a -- there are two incidents that

25     we'll call the sexual assault incidents.  And

1    then there's a robbery incident.  So the dates

2    are different.  They're very close in time.

3    The first incident occurred, allegedly, on

4    October 30th.  The next was on September 1st.

5    And the last was on September 2nd.

6              Count 1 is a count -- counts 1, 2, 3

7    are all counts of rape.  Counts 4 is a count

8    of kidnapping.  Count 5 is a count of

9    aggravated robbery.  And Count 6 is a count of

10   kidnapping.  The first six counts pertain to a

11   rape incident that occurred on or near Warren

12   Road in Lakewood, Ohio, on August 30th,

13   according to the indictment.  Actually I don't

14   know if that's Lakewood or Cleveland.  But

15   we'll see what the evidence shows.

16             It's necessary for the state to prove

17   that these crimes occurred within Cuyahoga

18   County.  The specifics involved is not

19   particularly relevant for the burden of proof.

20             The second incident occurred on

21   September 1st.  Call this the Marlowe robbery.

22   Counts 7, 8, 9 and 10 pertain to -- Count 7,

23   aggravated robbery, Count 8, count of

24   kidnapping, Count 9 is again aggravated

25   robbery, and Count 10 is a count of

1  kidnapping.  I believe there were two alleged

2  victims on the robbery, so that's why you have

3  two counts of aggravated robbery, one

4  pertaining to each victim.  And two counts of

5  kidnapping, one, again, pertaining to each

6  victim.

7          And then the third incident was --

8  occurred on September 2nd in Cleveland in the

9  Edgewater neighborhood.  Counts 11 and 12 are

10  counts of rape.  Count 13 is a count of

11  kidnapping.  Count 14 is a count of aggravated

12  robbery.  Count 15 is a count of felonious

13  assault.  And Count 16 is a count of

14  kidnapping.

15          Many of these counts also carry with

16  them what we call specifications, more

17  specifically called firearm specifications.

18  And I'm not going to go into specifics of what

19  the firearm specifications are or read the

20  indictment to you at this time.  Many of the

21  counts are sometimes counts -- different forms

22  of the same offense or are separate incidents

23  themselves.  So 16 counts.

24          The jury instructions will be long,

25  and as you can tell from the type of counts I

1    read to you, it's a very serious case.  We

2    have thousands of very serious cases here in

3    this building every year.  They require the

4    same scrutiny that the lowest level felony

5    case would require from the jury.  We expect

6    you to pay the same attention to the evidence

7    whether you are on this rape-kidnapping case,

8    as you were on a fifth degree felony

9    possession of drugs case.

10            Your job as a jury will be to decide

11   whether the state has met their burden of

12   proof.  And how do you do that?  You decide

13   this case based upon the evidence, which

14   brings us to the question, is what is

15   evidence.  See these people at this table,

16   with the exception of Mr. Daniel if he

17   testifies?  Nothing that the lawyers say shall

18   be considered as evidence.  Evidence is what

19   the witnesses testify to.  And then we have

20   physical evidence in the form of exhibits.

21   And you'll have them with you in the jury room

22   to consider in deciding this case.

23            So opening statements, closing

24   arguments, are not to be considered by you as

25   evidence.  The indictment itself is not

1    evidence.  You decide this case from the

2    evidence that you hear in this courtroom.

3    Again, only in this courtroom.  You're not to

4    go out and do any homework or independent

5    investigation.

6         So you'll have witnesses who testify.

7    They'll all be under oath.  But that doesn't

8    mean that you have to believe everything they

9    have to say.  You can believe some of their

10   testimony, all of their testimony, or none of

11   their testimony.  You use your common sense

12   tests that you use in your daily lives to

13   determine their credibility and believability.

14        And what are those things that you

15   consider?  How do they sound or appear while

16   testifying before you?  How did their

17   testimony correspond to the other known facts

18   in the case?  Do they have any interest in the

19   outcome of the verdict?  What opportunities

20   the witnesses had to see, hear or know the

21   things that they've told you?  You can

22   consider all of those things in deciding upon

23   the weight to give to each witness's testimony

24   and the credibility that you should assign.

25        We obviously require that before you

1    return a verdict of guilt, you consider the

2    evidence carefully and conscientiously.  And

3    if you find that the state proved beyond a

4    reasonable doubt all of the elements of a

5    particular count, your finding must be guilty.

6    If you find that the state failed to prove all

7    the elements of a particular count beyond a

8    reasonable doubt, you must find the defendant

9    not guilty on that count.

10           You can find the defendant not guilty

11   on all counts, guilty on all the counts, or

12   some kind of combination of not guilty or

13   guilty.  Again, your findings will be based

14   upon what you perceive the evidence to be and

15   whether the state has met their burden of

16   proof.

17           Mr. Daniel -- again, can't emphasize

18   it enough -- sits here cloaked with the

19   presumption of innocence.  He and Mr. Cavallo

20   and Ms. Kennedy don't have to do anything

21   throughout the course of this trial.  They

22   don't have to call any witnesses.  Mr. Daniel

23   does not have to testify.  He has a

24   constitutional right not to be compelled to

25   testify against himself.  If he exercises that

1          right, you cannot use it in any way against

2          him.

3                    I do expect, however, that the

4          defense will cross-examine most, if not all,

5          of the state's witnesses.

6                    So that's the roadmap.  And that's

7          the burden of proof.  And that's a little bit

8          of what this case is about.

9                    Now who doesn't have a smart phone?

10         Couple people free of those burdens.  How many

11         with smart phones have any kind of media apps

12         on those smart phones?  Okay.

13                   Start with Mr. Thomas.  What kind of

14         media apps do you have on your phone?

15                   JUROR NUMBER 4:      Internet.

16                   THE COURT:           Specific?

17                   JUROR NUMBER 4:      Facebook.

18                   THE COURT:           Media like NBC,

19         CBS, cleveland.com?

20                   JUROR NUMBER 4:      No.

21                   THE COURT:           Ms. Vincent, how

22         about yourself?

23                   JUROR NUMBER 2:      I have the BBC

24         news app on my phone.

25                   THE COURT:           BBC news.  Okay.

1              Ms. Veeck.

2              Anybody else?

3              Mr. Lucak.

4              JUROR NUMBER 22:     I have CNN and

5      Channel 3 News.

6              THE COURT:          Ms. McMillon.

7              JUROR NUMBER 20:     I have the same,

8      CNN and Channel 8, I think.

9              THE COURT:          Anybody check

10     any of those apps over lunchtime?  It's okay

11     if you did.  No wrong.

12             A JUROR:            Weather.

13             THE COURT:      .   What's the

14     weather app tell you?

15             A JUROR:            Going to be bad.

16             THE COURT:          Never going to

17     stop snowing, right?

18             Okay.  I neglected to tell you, if

19     you are plaindealer.com or cleveland.com or

20     Plain Dealer readers, throughout the course of

21     this trial I'm going to ask you not to refer

22     to that media source.  It would be good

23     practice throughout the course of this trial

24     not to watch the local nightly news.  I don't

25     know whether this trial will make that.  But

```
 1            it would be better for the integrity of our

 2            justice system that you get all the evidence

 3            that you need to decide this case only from

 4            sources within the four walls of this

 5            courtroom.

 6                    Anybody think they might have a hard

 7       time with that?

 8                    Yes.

 9                    JUROR NUMBER 11:      Yes.

10                    THE COURT:            Speak up.

11                    JUROR NUMBER 11:      I check every

12       hour.

13                    THE COURT:            You check the

14       news every hour.

15                    Can you stop checking the news every

16       hour?

17                    JUROR NUMBER 11:      I can try.

18                    THE COURT:            Or do we need a

19       12 step program for that?  It is addictive.

20                    What do you check?

21                    JUROR NUMBER 11:      Cleveland.com

22       and the news.

23                    THE COURT:            Did you check

24       cleveland.com over the lunch hour?

25                    JUROR NUMBER 11:       This morning.
```

```
1              THE COURT:          This morning?

2              JUROR NUMBER 11:    This morning.

3              THE COURT:          You did not

4    check it over the lunch hour.

5              Well, are you going to be able to get

6    through this trial without checking

7    cleveland.com?

8              JUROR NUMBER 11:    I can try.

9              THE COURT:          What was the big

10   news story last week?

11             JUROR NUMBER 11:    No big news

12   story.

13             THE COURT:          Can't remember,

14   right?  It's all noise.  You can get by

15   through this trial without checking

16   cleveland.com or your other news sources.

17             Okay.  Now police officers.  Let's go

18   through.  Get our hands ready.  We have a

19   couple of police officers, I think.  Right?

20   Two.

21             Mr. Thomas, what force?

22             JUROR NUMBER 4:     Grand River.

23             THE COURT:          Grand River.

24   Okay.  You have the longest drive here, I'd

25   bet.
```

```
 1                    JUROR NUMBER 4:        Yeah.   Probably.
 2                    THE COURT:             And Officer
 3      Ortiz, not detective, sergeant, lieutenant?
 4                    JUROR NUMBER 21:       Lieutenant.
 5                    THE COURT:             Lieutenant
 6      Ortiz.
 7                    Okay.   Anybody else a police officer?
 8                    JUROR NUMBER 31:       Vehicle
 9      maintenance, Cleveland Heights Police.
10                    THE COURT:             I, too, live in
11      the people's republic.   Keep the police cars
12      in nice shape.
13                    How long have you been on vehicle
14      maintenance with Cleveland Heights PD?
15                    JUROR NUMBER 31:       About five
16      years.
17                    THE COURT:             Your wife works
18      for Maple Heights Police.   What does she do?
19                    JUROR NUMBER 31:       Corrections
20      officer.
21                    THE COURT:             That's my next
22      question.   Is anybody married to a police
23      officer, law enforcement officer?   And let's
24      be expensive.   We're talking about not just
25      your local Cleveland Police.
```

```
 1                    JUROR NUMBER 4:        My mother.

 2                    THE COURT:             DEA agent,

 3           border patrol?

 4                    JUROR NUMBER 4:        My mother is

 5           retire law enforcement.

 6                    THE COURT:             Okay.  Growing

 7           up you got nothing by her?

 8                    JUROR NUMBER 4:        That's right.

 9                    THE COURT:             How about the

10           rest of you?  Anybody with a spouse or other

11           close family member?

12                    Mr. Beltran, who do you have?

13                    JUROR NUMBER 5:        Most of my

14           family.  My grandpa, my uncle, my cousin.

15           They're all police officer.

16                    THE COURT:             What force are

17           they on?

18                    JUROR NUMBER 5:        Peruvian police.

19                    THE COURT:             Peruvian?

20                    JUROR NUMBER 5:        Yes.

21                    THE COURT:             Mr. Bathgate,

22           correct?

23                    JUROR NUMBER 16:       Yes.  My dad is

24           retired Strongsville PD.

25                    THE COURT:             Okay.  Anybody
```

```
 1          else?

 2                    Wardega.

 3                    JUROR NUMBER 18:     My son-in-law,

 4          Cleveland Clinic police force.  A detective.

 5                    THE COURT:          Anybody else?

 6                    Ms. Brandon.

 7                    JUROR NUMBER 6:     Yes.  My cousin,

 8          he's a police officer for Cleveland.

 9                    THE COURT:          Cousin is a

10          police officer for Cleveland?

11                    JUROR NUMBER 6:     Yeah.

12                    THE COURT:          Anybody else?

13                    Lynch.

14                    JUROR NUMBER 24:    Yes.  I have

15          three second cousins that are on Cleveland

16          Police Department.

17                    THE COURT:          What are their

18          names?

19                    JUROR NUMBER 24:    Jennifer Kemer,

20          Bobbie Kemer and --

21                    THE COURT:          How do you spell

22          Kemer?

23                    JUROR NUMBER 24:    K-e-m-e-r.  I

24          don't know.

25                    THE COURT:          Ms. Lynch, what
```

1    do you do?

2              JUROR NUMBER 24:     I'm retired from

3    the Department of Corrections.

4              THE COURT:          With the state?

5              JUROR NUMBER 24:     Yes.

6              THE COURT:          Where did you

7    work at?

8              JUROR NUMBER 24:     Northeast.

9              THE COURT:          Northeast.

10             How long have you been retired?

11             JUROR NUMBER 24:     Two years.

12             THE COURT:          Anybody else

13   with the friends, family members, police

14   officer question?

15             Okay.  Do we have any lawyers in the

16   bunch?

17             Mr. Fishman.  What type of practice

18   you do you engage in?

19             JUROR NUMBER 30:     Patent attorney.

20             THE COURT:          And anybody else

21   an attorney?  Anybody work for an attorney?

22   Have any friends or family members that are

23   attorneys and are willing to admit it?

24             Okay.  It's Mr. Alcox.

25             JUROR NUMBER 15:     Yes, sir.

```
 1                    THE COURT:          Who else had
 2        their hand raised?
 3                    Tell me your name.
 4                    JUROR NUMBER 28:     Moritz.
 5                    THE COURT:          Jeffrey Moritz.
 6                    Let's see.  Back to Mr. Bathgate.  So
 7        you have a retired Strongsville police officer
 8        in your family.  Does that mean you're from
 9        the area?
10                    JUROR NUMBER 16:     Yes, Your Honor.
11                    THE COURT:          You're not from
12        Pittsburgh.  I notice the Penguins.
13                    JUROR NUMBER 16:     My dad was
14        initially from Pennsylvania.  And I just
15        became a Penguins and Steelers fan.
16                    THE COURT:          Do we have other
17        Steelers fans on the jury?  Clear
18        disqualification.  Okay.  Ravens fans?  Okay.
19        Okay.  Well, hope we're feeling fully inflated
20        today.  Some people got it.  Okey-doke.
21                    Why don't we -- folks, as you've
22        heard, there's several counts of sexual
23        assault, rape, in this case.  I'm going to ask
24        you whether you've been a victim of crime or
25        somebody close has been a victim of a crime.
```

1    You need to answer the question.  But if you

2    want to do so privately, you have that option.

3    We'll bring you up to the side of the bench

4    and you can talk about it outside of

5    everybody's hearing, outside of myself and the

6    attorneys.

7              If you have been a victim of a

8    violent crime, such as a robbery, or even a

9    burglary, something we consider a felony,

10   could you -- or somebody close to you in your

11   family, same thing, could you raise your hand?

12   I'm not going to ask you what it is now.  I'm

13   just going to note a V on my sheet.

14              Ms. Marshall?

15              JUROR NUMBER 3:      Does it depend

16   how long it's been?

17              THE COURT:          Any time.

18              Ms. Vincent, Ms. Marshall,

19   Ms. Brandon, Mr. Banks, Mr. Lui, Mr. Bathgate.

20              Is it Cochran?

21              JUROR NUMBER 19:     Yes.

22              THE COURT:          I lose track of

23   where everybody is back there.

24              Is it Ms. Hardon?

25              JUROR NUMBER 27:     Yes.

```
 1              THE COURT:              Mr. Moritz.   And

 2    Mr. Fishman.

 3              Okay.   Mr. Muller.

 4              JUROR NUMBER 1:      Yes, sir.

 5              THE COURT:              Tell us about

 6    yourself.

 7              JUROR NUMBER 1:      Cleveland

 8    resident, or Cleveland area resident for about

 9    30 years.   I work for PNC Bank as a project

10    portfolio management director of that

11    organization.   I train a lot of project

12    managers, things of that nature.

13              THE COURT:              You've been with

14    National City before that?

15              JUROR NUMBER 1:      Yes, sir.

16    That's what PNC stands for:   Previously

17    National City.

18              THE COURT:              I have not heard

19    that.   That's good.   That's very good.

20              What do you like to do when you're

21    not managing project managers?

22              JUROR NUMBER 1:       I, until just

23    recently, was working on a doctorate program

24    at Cleveland State.   So between the two and

25    kids at home kept me pretty busy.
```

```
 1                  THE COURT:            What are you
 2      studying?
 3                  JUROR NUMBER 1:       Doctorate of
 4      business administration.
 5                  THE COURT:            You have to have
 6      one beyond an M.B.A.?
 7                  JUROR NUMBER 1:       Yes.
 8                  THE COURT:            And how old are
 9      your kids?
10                  JUROR NUMBER 1:       Well, I have
11      seven.  The oldest is 32, the youngest is 14.
12                  THE COURT:            That's good
13      enough.  Wow.
14                  You have time to do anything else?
15                  JUROR NUMBER 1:       Exactly.
16                  THE COURT:            And this is your
17      first time on jury duty?
18                  JUROR NUMBER 1:       Yes, sir.
19                  THE COURT:            Could you be a
20      fair and impartial juror on this case?
21                  JUROR NUMBER 1:       I believe so.
22                  THE COURT:            Is there anyone
23      who feels they could not be fair and impartial
24      to the State of Ohio and Mr. Daniel on this
25      case?  Okay.  Great.
```

1          Anybody needs to take a break at any

2     time, just raise your hand.  We usually try to

3     take a break every hour, hour and a half.  But

4     if you need one beforehand, just let us know.

5          So I asked a couple of questions,

6     jury duty, lawyers, police officers.  We can

7     play 20 questions all day long and there might

8     be some stuff that's important to counsel on

9     this matter.  But we might not get to you.

10         For example, I had a neighbor

11    approach me years ago, and tell me how

12    surprised she was to be picked for a jury on a

13    criminal case.  Now, I didn't know her well.

14    I knew she was a wife of a physician, but that

15    was the extent of my knowledge about her.

16    Well, why were you so surprised.  She said,

17    well, I run a ministry in the county jail and

18    I was kind of surprised they picked me.  Well,

19    did you tell them?  No.  They never asked me.

20         So if there is something in your

21    background that you think would be relevant to

22    the attorneys in deciding who to keep, who to

23    not keep, let us know.

24         Mr. Muller, is there anything that

25    you think you should disclose that would be

1       relevant to this criminal case?

2               JUROR NUMBER 1:       I don't believe

3       so, sir.

4               THE COURT:            Okay.  Does

5       anybody work for any news organizations?

6               Okay.  On to Mrs. Vincent.  How are

7       you?

8               JUROR NUMBER 2:       Okay.

9               THE COURT:            What do you want

10      to tell us about yourself?

11              JUROR NUMBER 2:       I've been a stay

12      at home for awhile.  I just recently got a

13      part-time job.  I have two kids.  I've only

14      lived in Ohio for two years.

15              THE COURT:            Keep your voice

16      up.  We can't control this.

17              JUROR NUMBER 2:       I've only lived

18      in Ohio for about two years.  And I work part

19      time at an optical shop.

20              THE COURT:            What brought you

21      to Cuyahoga County?

22              JUROR NUMBER 2:       My husband's

23      job.

24              THE COURT:            Which is what?

25              JUROR NUMBER 2:       He opened a new

```
1     branch of the company that he works for.  He's

2     an engineer.

3                THE COURT:          What did you do

4     before you had a family?

5                JUROR NUMBER 2:     I was a genetics

6     counselor.

7                THE COURT:          Where did you

8     move from?

9                JUROR NUMBER 2:     Massachusetts.

10    So I'm a Patriots fan.

11               THE COURT:          There you go.

12    Congratulations.

13               Had you been on jury duty in the

14    commonwealth before?

15               JUROR NUMBER 2:     I never got

16    picked for a trial.

17               THE COURT:          You reported?

18               JUROR NUMBER 2:     Yes.

19               THE COURT:          Boston area or

20    someplace else?

21               JUROR NUMBER 2:     South of Boston,

22    in New Bedford.

23               THE COURT:          Okay.  Is there

24    anything else, Ms. Vincent, in your background

25    you think we should know?
```

1              JUROR NUMBER 2:      I don't think

2    so.

3              THE COURT:          Okay.  Thank you

4    very much.

5              Ms. Marshall, how are you?

6              JUROR NUMBER 3:      Okay.

7              THE COURT:          Okay.  Well,

8    tell us a little bit about yourself.

9              JUROR NUMBER 3:      I live here in

10   Cleveland.  I have three kids.  Right now I'm

11   going to a training class taking computers to

12   get a job.  My last job was SCO.  I was doing

13   home healthcare.  That's about it.

14             THE COURT:          Okay.  What do

15   you like to do in your spare time?

16             JUROR NUMBER 3:      Nothing really.

17   I don't do too much.

18             THE COURT:          Indians fan?

19             JUROR NUMBER 2:      Uh-uh.  No.  I

20   don't like baseball.

21             THE COURT:          Okay.  I just

22   asked the question based upon your sweatshirt.

23   See?  You can't always judge a book by its

24   cover.

25             You live in East Cleveland or

```
1        Cleveland?

2                 JUROR NUMBER 3:     East Cleveland.

3                 THE COURT:          You've been a

4        victim of crime.   Somebody close to you?

5                 JUROR NUMBER 3:     Yeah.  Me.

6                 THE COURT:          Is that

7        something you can share publically?

8                 JUROR NUMBER 3:     It happened when

9        I was 15.

10                THE COURT:          Were you

11       assaulted?

12                JUROR NUMBER 3:     Yes.

13                THE COURT:          Okay.  Was the

14       person ever brought to justice?

15                JUROR NUMBER 3:     Yeah and no.

16       Found not guilty.

17                THE COURT:          He went to

18       trial?

19                JUROR NUMBER 3:     Yeah, we did.

20                THE COURT:          Having gone

21       through that experience, could you give

22       Mr. Daniel the presumption of innocence that

23       he's afforded under our constitution?

24                JUROR NUMBER 3:     Well, with my

25       experience, I don't know how to answer that.
```

```
1        I mean, I went through something like that
2    years ago.  And I was sitting in that chair
3    right there.  They make it seem like it's your
4    fault.  Do you know what I'm saying?  I don't
5    know how to answer.
6              THE COURT:          You testified
7    then?
8              JUROR NUMBER 3:      Yeah.  I had to.
9    Yeah.
10             THE COURT:          Let me move off
11   of you and come back later.
12             Okay.  Ms. Vincent, you also
13   indicated you were a victim a crime or
14   somebody close to you.  Is that something you
15   can share with us?
16             JUROR NUMBER 2:      You mentioned
17   burglary.  My house had been broken in to.
18             THE COURT:          New Bedford?
19             JUROR NUMBER 2:      I lived in
20   Taunton, Massachusetts, at the time.
21             THE COURT:          Now a lot of
22   burglaries go unsolved.  Was yours the same
23   way?
24             JUROR NUMBER 2:      Yes.
25             THE COURT:          Were you
```

```
 1        satisfied with the police work?
 2                   JUROR NUMBER 2:      Yeah.
 3                   THE COURT:           Anything else
 4        about that?
 5                   JUROR NUMBER 2:      (Indicating).
 6                   THE COURT:           Okay.
 7        Mr. Thomas, how long have you been walking a
 8        beat in Grand River?
 9                   JUROR NUMBER 4:      Since 2008.  I
10        started in law enforcement in 1997 as a
11        corrections officer, and then in 2006 I went
12        federal police, and then in 2008 I went to
13        Grand River municipal.
14                   THE COURT:           Where were you a
15        CO?
16                   JUROR NUMBER 4:      Maple Heights.
17                   THE COURT:           Okay.  And you
18        were federal police, you said?
19                   JUROR NUMBER 4:      For Department
20        of Veterans Affairs.
21                   THE COURT:           So where did you
22        work?
23                   JUROR NUMBER 4:      Wade Park, Louis
24        Stokes VA Medical Center.
25                   THE COURT:           Okay.  Family?
```

1          JUROR NUMBER 4:      Yeah.  Married.

2    Lived in the Cleveland area.  Kids.

3          THE COURT:          What does your

4    wife do?

5          JUROR NUMBER 4:      School teacher.

6          THE COURT:          Where at?

7          JUROR NUMBER 4:      St. Joseph's and

8    John's in Strongsville.

9          THE COURT:          You live in

10   Brecksville?

11         JUROR NUMBER 4:      Yeah.

12         THE COURT:          What do you like

13   to do when you're not commuting or policing?

14         JUROR NUMBER 4:      Play guitar,

15   play with the kids and watch Raider games.

16         THE COURT:          How is that a

17   fan?  The Raiders.  The Browns.  Bad enough

18   for you.

19         JUROR NUMBER 4:      We had our good

20   days.

21         THE COURT:          Okay.  As a

22   police officer have you been called to jury

23   duty before?

24         JUROR NUMBER 4:      Never been

25   called to jury duty, no, sir.

1          THE COURT:          Could you be

2     fair and impartial?

3          JUROR NUMBER 4:          Absolutely.

4          THE COURT:          Okay.  Have you

5     had any experience investigating or working on

6     sexual assault cases?

7          JUROR NUMBER 4:     Yes.

8          THE COURT:          Could you tell

9     us about that experience, how extensive, how

10    minimal?

11         JUROR NUMBER 4:     Preliminary .

12    investigations, because it's turned over to

13    the detective unit.

14         THE COURT:          It's get turned

15    over to them.

16         Are you called to testify on any of

17    those cases?

18         JUROR NUMBER 4:     No.

19         THE COURT:          Is Grand River

20    Ashtabula or Lake County?

21         JUROR NUMBER 4:     Lake County.

22         THE COURT:          So you've been

23    called in to Painesville?

24         JUROR NUMBER 4:     Yeah, Lake

25    County Court.  Sheriff's office.

1      THE COURT:          Anything else in

2  your background you think counsel would want

3  to know?

4      JUROR NUMBER 4:      No.  Other than

5  I've never arrested anyone that I thought was

6  innocent.

7      THE COURT:          Okay.  Don't get

8  too comfortable in that seat.

9      JUROR NUMBER 4:      Just being

10  honest to you.

11      THE COURT:          I'm sure in

12  Grand River they have bar fights, right?

13      JUROR NUMBER 4:      Yeah.

14      THE COURT:          And who gets

15  arrested in those?

16      JUROR NUMBER 4:      People fighting.

17      THE COURT:          The winner of

18  the fight.  Now is the winner of the fight

19  always the person who started the fight?

20      JUROR NUMBER 4:      No.

21      THE COURT:          So sometimes it

22  appears that the person who won the fight

23  might have been the guilty party of starting

24  the fight, but later on --

25      JUROR NUMBER 4:      That's correct.

```
1                    THE COURT:              Okay.  Let's
2     move on to Mr. Beltran.
3               How are you?
4                    JUROR NUMBER 5:         I'm pretty good.
5                    THE COURT:              Peruvian
6     background?
7                    JUROR NUMBER 5:         Yes.  I'm from
8     Puru.
9                    THE COURT:              First
10    generation?
11                   JUROR NUMBER 5:         Second -- no,
12    first.  Sorry.
13                   THE COURT:              Where were you
14    born?
15                   JUROR NUMBER 5:         I was born in
16    Puru.
17                   THE COURT:              What brought you
18    to Cleveland?
19                   JUROR NUMBER 5:         My mom, she came
20    up here, better life.
21                   THE COURT:              I thought you
22    were going to say a plane or something.
23               Okay.  And how long have you been
24    working for Farnsworth Hill?
25                   JUROR NUMBER 5:         Yes.  Couple of
```

OFFICIAL COURT REPORTERS

1     months now.

2                THE COURT:          You tell us

3     about yourself.  What do you do and how long

4     have you been doing it?

5                JUROR NUMBER 5:      I work at

6     Farnsworth Hill Spectrum Brand.  Essentially

7     I've worked there for a couple of months,

8     since last July.  I go to school for IT

9     programming and development.

10               THE COURT:          What is

11    Farnsworth Hill?

12               JUROR NUMBER 5:      Customer

13    service.  We do warranties and stuff like

14    Black & Decker, George Foreman, all this,

15    Juice Man.  I take care of those matters.

16               THE COURT:          What are you

17    studying in school?

18               JUROR NUMBER 5:      IT programming

19    and development.  Just started it.

20               THE COURT:          What would your

21    job be?

22               JUROR NUMBER 5:      I am not a

23    hundred percent sure.  I think working on

24    computers is pretty good.

25               THE COURT:          Fairly technical

1    individual?

2              JUROR NUMBER 5:       Yes.

3              THE COURT:        What do you like

4    to do when you're not working or studying?

5              JUROR NUMBER 5:       I train

6    Brazilian jiu jitsu and play Dungeons &

7    Dragons.

8              THE COURT:          Did you grow up

9    in Parma?

10             JUROR NUMBER 5:       Yes.  I've been

11   here for 10 years now.

12             THE COURT:        Okay.  And your

13   family members, quite a few police officers

14   back in Puru?

15             JUROR NUMBER 5:       Yes.

16             THE COURT:        What part?

17             JUROR NUMBER 5:       Lima, the

18   capital.

19             THE COURT:          Anything,

20   Mr. Beltran, in your background that we should

21   know?

22             JUROR NUMBER 5:       I don't think

23   so.

24             THE COURT:        Do you have any

25   kind of connection to our justice system that

1    we haven't talked about?

2                 JUROR NUMBER 5:      I don't believe

3    so.  I mean, my uncle worked for the City of

4    Parma.  He was Anthony Stilinski.  He was the

5    treasurer.

6                 THE COURT:           He's your uncle?

7                 JUROR NUMBER 5:      He passed.  He

8    was.

9                 THE COURT:           Anybody else

10   have some kind of connection in the justice

11   system that I haven't asked you about?  Police

12   officer questions or anything?  Jail

13   volunteers?

14               Okay.  Ms. Lynch.

15                 JUROR NUMBER 24:     I know a couple

16   of bailiffs.

17                 THE COURT:           Okay.  That's

18   good.  Who do you know?

19                 JUROR NUMBER 24:     Brendan Campbell

20   and Mary Spellacy.

21                 THE COURT:           And did you go

22   to Mr. Campbell's wedding?

23                 JUROR NUMBER 5:     Yes, I did.

24                 THE COURT:           So did I.  He

25   used to be a scheduler.  It was great, until

```
1          Judge Clancy stole him.
2               JUROR NUMBER 24:     That's what he
3     said.
4               THE COURT:     Who else did
5     you --
6               A JUROR:     Mary Spellacy.
7               THE COURT:     I've heard of
8     her.
9               This is actually Judge Shannon
10    Gallagher here, just got elected, just
11    started, and sitting in with us.  And Mary
12    Spellacy is her bailiff.  Right?  Small world.
13    Okay.
14               And then up from you, Ms. McMillon.
15               JUROR NUMBER 20:     Yeah.
16               THE COURT:     Your connection?
17               A JUROR:          Roy Williams is
18    a court reporter here, is my cousin.  Juanita
19    Reed is a bailiff.  And Kathy Turner is also a
20    bailiff.
21               THE COURT:     I think they're
22    all in Cleveland municipal court, right?
23               JUROR NUMBER 20:     I think so.
24               THE COURT:          We're in common
25    pleas court.  Same building, though.
```

```
 1                  Ms. Cochran.

 2                  JUROR NUMBER 19:     My first cousin

 3        is Kathleen Sutula.

 4                  THE COURT:          Okay.  Rode the

 5        elevator with her this morning.

 6                  And how often do you see Judge

 7        Sutula?

 8                  JUROR NUMBER 19:     Six months.

 9                  THE COURT:          Family

10        functions?

11                  JUROR NUMBER 19:     The clambake.

12        Maybe I shouldn't have told you that.  I don't

13        know if you're invited.

14                  THE COURT:          We won't tell

15        her you're here.

16                  JUROR NUMBER 19:     She saw me.  She

17        did the jury thing this morning.

18                  THE COURT:          Okay.  It was

19        her turn to speak.  Good.  I'm glad somebody

20        showed up.

21                  Mr. Alcox, you had your hand raised.

22                  JUROR NUMBER 15:     My daughter is a

23        deputy clerk and paralegal.

24                  THE COURT:          Where is she?

25                  JUROR NUMBER 15:     Medina County.
```

1          She's a deputy clerk in Medina juvenile.

2                    THE COURT:          Muni or common

3     pleas?

4                    JUROR NUMBER 15:     I believe it's

5     municipal court.  She's in the juvenile

6     division.

7                    THE COURT:          Does she talk

8     about her work?

9                    JUROR NUMBER 15:     Sometimes things

10    that she can talk about.

11                   THE COURT:          Okay.

12                   JUROR NUMBER 15:     She's very

13    professional.

14                 . THE COURT:           Anybody else

15    raise their hand, justice system connection?

16                   Ms. Liu.

17                   JUROR NUMBER 17:     I have a cousin,

18    one cousin's spouse, is a corporate lawyer.

19                   THE COURT:          Court reporter?

20                   JUROR NUMBER 17:     Corporate

21    lawyer.

22                   THE COURT:          Thank you for

23    disclosing that.

24                   Are you any relation to Mr. Lui up

25    here?

```
 1                    JUROR NUMBER 17:      No.

 2                    THE COURT:            Same last name,

 3          that's it?

 4                    JUROR NUMBER 11:      I'm Chinese

 5          origin.

 6                    THE COURT:            We left off

 7          Mr. Beltran.

 8                    Mr. Beltran, fair and impartial?

 9                    JUROR NUMBER 5:       Yes.

10                    THE COURT:            Excellent.

11                    Ms. Brandon, how you are?

12                    JUROR NUMBER 6:       I'm fine.

13                    How are you?

14                    THE COURT:            Good.

15                    Tell us about yourself.

16                    JUROR NUMBER 6:       I'm a housewife.

17                    THE COURT:            Speak up.

18                    JUROR NUMBER 6:       I'm sorry.  I'm

19          a housewife, a mother of three.  It's been

20          about 13 years since the last time I worked.

21          And I used to work for Janco Cleaning Company.

22                    THE COURT:            Ms. Marshall, do

23          you need some water?

24                    JUROR NUMBER 3:       I got some.  I'm

25          sorry.  I'm sorry.
```

OFFICIAL COURT REPORTERS

```
1               THE COURT:            That's all
2      right.
3               Ms. Brandon, Janco?
4               JUROR NUMBER 6:       Janco Cleaning
5      Company.
6               THE COURT:            You have been on
7      a jury before, I see?
8               JUROR NUMBER 6:       Yes.
9               THE COURT:            How long ago was
10     that?
11              JUROR NUMBER 6:       It's been about
12     three years ago.
13              THE COURT:            Common Pleas
14     Court?
15              JUROR NUMBER 6:       Yes.
16              THE COURT:            Do you remember
17     the judge or anything about the case?
18              JUROR NUMBER 6:       No.  I had been
19     dismissed by myself.
20              THE COURT:            Ms. Marshall,
21     we're going to let you take a break.  It
22     sounds like you can use one.  Colleen will
23     help you, Ms. Marshall.
24              Okay.  You've been a victim of crime?
25              JUROR NUMBER 6:       Yes.
```

```
 1              THE COURT:              Something you

 2    can share with us?

 3              JUROR NUMBER 6:         Yes.  It was a

 4    rape, sexual assault.

 5              THE COURT:              Okay.  How long

 6    ago did that occur?

 7              JUROR NUMBER 6:         About three

 8    years ago.

 9              THE COURT:              You were the

10    victim?

11              JUROR NUMBER 6:         Yes.

12              THE COURT:              Was the person

13    caught?

14              JUROR NUMBER 6:         Yes, he was.

15              THE COURT:              And were you

16    satisfied with the response of the police and

17    the justice system?

18              JUROR NUMBER 6:         Yes.

19              THE COURT:              Could you sit on

20    this case?

21              JUROR NUMBER 6:         Yes, I can.

22              THE COURT:              Having said

23    that, could you be fair to the defense?

24              JUROR NUMBER 6:         Yes.

25              THE COURT:              Was your
```

```
1    attacker known to you beforehand?

2              JUROR NUMBER 6:      No.

3              THE COURT:           Random?

4              JUROR NUMBER 6:      Never knew him.

5              THE COURT:           Okay.  Where did

6    this occur?

7              JUROR NUMBER 6:      At my house.

8              THE COURT:           Okay.  In

9    Cleveland?

10             JUROR NUMBER 6:      Yes.

11             THE COURT:           How was he

12   caught?

13             JUROR NUMBER 6:      Family called

14   the police and they came to my house and I

15   gave my story.  And he didn't leave.  Somebody

16   took him home.  And they went to the house

17   where he stayed and got him.

18             THE COURT:           Okay.  Thank you

19   for sharing that with us.

20             Moving on to happy topics.  What do

21   you like to do when you're not raising your

22   kids?

23             JUROR NUMBER 6:      I like to get

24   out and meet more people.  Shop is my favorite

25   thing to do.
```

```
 1                  THE COURT:           Where do you

 2      like to shop at?

 3                  JUROR NUMBER 6:      The malls.

 4      Beachwood Mall.

 5                  THE COURT:           Beachwood Place.

 6      About the only one left open.

 7                  JUROR NUMBER 6:      Yes.

 8                  THE COURT:           Is there

 9      anything else, Ms. Brandon, in your background

10      you think we should know?

11                  JUROR NUMBER 6:      Not to my

12      knowledge.

13                  THE COURT:           Okay.  Thank

14      you.

15                  Mr. Banks, good morning -- good

16      afternoon.

17                  JUROR NUMBER 7:      Good afternoon,

18      judge.

19                  THE COURT:           How we doing?

20                  JUROR NUMBER 7:      I'm doing.

21      How you doing?

22                  THE COURT:           Not in a cookie

23      coma yet.  But it's getting a little warm in

24      here.  Are you comfortable?

25                  Tell us about yourself.
```

1          JUROR NUMBER 7:       I'm employed.

2   I've been on my current job for 16 years.

3   Family man.  I go to work because I have to,

4   not because I want to.  That's about it.

5          THE COURT:        What kind of

6   work do you do?

7          JUROR NUMBER 6:       I work at a

8   forging plant.  I work in the shaving

9   department cutting round stock steel.

10         THE COURT:         Slow business?

11         JUROR NUMBER 7:       Great.  As long

12  as I'm employed, it's great.

13         THE COURT:         What kind of

14  industry do you serve?

15         JUROR NUMBER 7:       We make gears

16  for all types of machinery and automobiles.

17         THE COURT:         Okay.  So if the

18  automotive business is good, you're good?

19         JUROR NUMBER 7:       Exactly.

20         THE COURT:          I'd imagine it's

21  pretty loud in there.

22         JUROR NUMBER 7:       Very much so.

23         THE COURT:         Where is it?

24         JUROR NUMBER 7:       East 79th and

25  between Broadway and Aetna.

```
1              THE COURT:           You're not from

2    there in Garfield Heights?

3              JUROR NUMBER 7:      No, not at all.

4              THE COURT:           How long have

5    you lived in Garfield?

6              JUROR NUMBER 7:      2003.  12 years.

7              THE COURT:           Victim of crime?

8              JUROR NUMBER 7:      Yeah.  Years ago

9    when I was in high school I got rob for a

10   leather coat.

11             THE COURT:           Do you know who

12   did it?

13             JUROR NUMBER 7:      I wish I did.

14             THE COURT:           Very random.

15             Is there -- are you married?

16             JUROR NUMBER 7:      Yes, I am.  Been

17   married for 12 years.

18             THE COURT:           What does your

19   wife do?

20             JUROR NUMBER 7:      She works at the

21   hotel.

22             THE COURT:           Where?

23             JUROR NUMBER 7:      Extended Stay

24   Hotel.

25             THE COURT:           Okay.
```

1      JUROR NUMBER 7:     Two checks are

2  better than one.

3      THE COURT:     And how many

4  kids do you have?

5      JUROR NUMBER 7:     Four.  All grown

6  and gone.  Thank God.

7      THE COURT:     Is this your

8  first time on jury duty?

9      JUROR NUMBER 7:     Yes, sir.

10      THE COURT:     Do you have any

11  questions?

12      JUROR NUMBER 7:     No, sir.

13      THE COURT:     Anything in your

14  background you think we should know that we

15  haven't talked about?

16      JUROR NUMBER 7:     I can't think of

17  anything.

18      THE COURT:     Nothing.  I

19  thought there would be something.

20      JUROR NUMBER 7:     What do you want

21  me to tell you?

22      THE COURT:     You know what

23  you need to come clean with us.

24      JUROR NUMBER 7:     About my past

25  record?  I've been arrested before, but I've

1    never been convicted.  Is that what you want

2    to know?

3              THE COURT:           I was just

4    teasing you.

5              JUROR NUMBER 7:      I'm being

6    honest.  I ain't got nothing to hide.

7              THE COURT:           It just seemed

8    like we could get something funny out of you.

9              The afternoon gets slow and people

10   get bored.  We ran in to Mr. Banks, so we

11   good.

12             JUROR NUMBER 7:      It wasn't me.

13             THE COURT:           As you can tell,

14   I like to have fun with the jury selection.

15   Part of my personality.  But it also has the

16   intended effect to put you at ease, who are

17   all strangers this morning.  We walked in

18   here, kind of serious case.  When you're at

19   ease, you'll be better jurors.  You pay better

20   attention to the evidence.  You can listen

21   better.  So we want you to be comfortable.

22             If there's anything we can help do to

23   further that goal, within reason, let us know.

24             Mr. Banks, is there anything you

25   think we should --

```
1              JUROR NUMBER 7:      No.  You ain't
2     tricking me this time.
3              THE COURT:           Okay.
4              Back row to Mr. Sharma.
5              How are you?
6              JUROR NUMBER 8:      Fine, sir.
7              THE COURT:           Tell us about
8     yourself.
9              JUROR NUMBER 8:      I'm from India.
10    I came here in the USA 2004.  And a nursing
11    assistant in a charity.  Charity Hospital.
12             THE COURT:           I'm not sure I
13    understood.
14             JUROR NUMBER 7:      Charity
15    Hospital, working over there.
16             THE COURT:           Can you
17    understand me?
18             JUROR NUMBER 7:      Yes, sir.
19             THE COURT:           Okay.  What do
20    you do at St. Vincent's?
21             JUROR NUMBER 7:      Nursing
22    assistant.
23             THE COURT:           Okay.  First
24    time on jury duty?
25             JUROR NUMBER 7:      Yes, sir.
```

```
 1              THE COURT:          Is your command
 2   of English -- how is your command of the
 3   English language?  Do you think you will be
 4   able to understand the witnesses' testimony
 5   during this case?
 6              Did you understand me?
 7              JUROR NUMBER 7:      Yeah.
 8              THE COURT:          Do you have
 9   problems understanding English?
10              JUROR NUMBER 8:      No, I
11   understand, sir.  I understand.
12              THE COURT:          Do you have
13   trouble understanding English?
14              JUROR NUMBER 8:      A little bit.
15              THE COURT:          Okay.  Little
16   bit.  A lot of it?
17              JUROR NUMBER 8:      Little bit.
18              THE COURT:          Okay.  It's
19   important that you're able to follow the
20   witnesses' testimony.  Is your command of the
21   English language -- you would be able to do
22   that?
23              JUROR NUMBER 8:      The language?
24              THE COURT:          Okay.  I think
25   you answered the question.
```

1            We're going to move on to

2    Mrs. Gerald.

3            How are you?

4            JUROR NUMBER 9:        Pretty good.

5            THE COURT:             Tell us about

6    yourself.

7            JUROR NUMBER 9:       Well, I am

8    married with four children who are all grown.

9    Actually we just sent the last one off to

10   college.  And I am a registered nurse.  I work

11   with Centene Corp and I'm a nurse reviewer.

12           THE COURT:             What does that

13   mean, nurse reviewer?

14           JUROR NUMBER 9:        I review

15   information of people who are in the hospital

16   to see whether they meet the criteria to be in

17   the hospital.

18           THE COURT:             Your husband

19   works at Nestle?

20           JUROR NUMBER 9:       Yes, he does.

21           THE COURT:             What does he do?

22           JUROR NUMBER 9:        Lead sanitation,

23   preparing and production.

24           THE COURT:             And where is

25   your last child, still college?

1          JUROR NUMBER 9:          Yes.

2          THE COURT:               Where at?

3          JUROR NUMBER 9:          DePaul in

4     Chicago.

5          THE COURT:               Okay.  When were

6     you on jury duty?

7          JUROR NUMBER 9:           I believe it was

8     between four and five years ago.

9          THE COURT:               Okay.  Do you

10    remember the case?

11         JUROR NUMBER 9:          I remember it

12    was a female judge and I remember it was -- I

13    believe it was about robbery.

14         THE COURT:               Can't hear you.

15         JUROR NUMBER 9:          I believe it was

16    a robbery.

17         THE COURT:               Did you reach a

18    verdict?

19         JUROR NUMBER 9:          Yes, we did.

20         THE COURT:               Any of you on

21    the jury, anybody been a foreperson before?

22    That will change.  Somebody is going to be the

23    foreperson.

24         Ms. Gerald, any connection to the

25    justice system that we haven't talked about?

1          JUROR NUMBER 9:      I don't believe
2    so.  Not at all.
3          THE COURT:      What do you like
4    to do in your spare time?
5          JUROR NUMBER 9:      Well --
6          THE COURT:      Kids are gone.
7    What's that like?
8          JUROR NUMBER 9:      It's wonderful.
9    I love my children.  But really go to see them
10   all the time.  That's one of our favorite
11   things to we do.  We love to play Scrabble.
12         THE COURT:      You're good with
13   words?
14         JUROR NUMBER 9:      Well, you know,
15   it's good with words and also to see the score
16   go up.
17         THE COURT:      Okay.  Can you
18   be fair and impartial?
19         JUROR NUMBER 9:      I believe so.
20         THE COURT:      Okay.
21   Ms. Seiler.  Is that how I say it?
22         JUROR NUMBER 10:      Correct.
23         THE COURT:      Mrs. Seiler.
24         So you've worked with the ever
25   expanding Hyland Software.

```
1                    JUROR NUMBER 10:      I do.

2                    THE COURT:          How long have

3        you been with them?

4                    JUROR NUMBER 10:     Three and a half

5        years ago.

6                    THE COURT:          What do you do?

7                    JUROR NUMBER 10:      I work in

8        revenue, accounting.   Very exciting stuff.

9                    THE COURT:          Counting the

10       money.

11                   What did you do before this job?

12                   JUROR NUMBER 10:      I worked for --

13       my family owned a heating and air conditioning

14       company.  Accounting for them, as well.

15                   THE COURT:          Did you ever

16       work for a public accounting firm?

17                   JUROR NUMBER 10:      No.

18                   THE COURT:          Account major?

19                   JUROR NUMBER 10:      Finance major.

20                   THE COURT:          So was I.   I

21       don't know what happened.

22                   What is the Spyglass?

23                   JUROR NUMBER 10:      It's a telecom

24       expense auditing company.   They audit phone

25       records for large corporations, Cleveland
```

```
1        Clinic, school districts.
2              THE COURT:          What do you like
3    to do outside of work?  Tell us about
4    yourself.
5              JUROR NUMBER 10:     When I'm not
6    taking care of my kids, I like to run or do
7    nothing, if I don't have to watch them.
8              THE COURT:          Fun.  Good
9    stuff.
10             No connection with the justice
11   system.  Lawyers or neighbors from Rocky
12   River?
13             JUROR NUMBER 10:     I'm sure I do.
14             THE COURT:          But you don't
15   know any of them?
16             JUROR NUMBER 10:     No.
17             THE COURT:          Ms. Gerald, same
18   with you in Shaker Heights?
19             JUROR NUMBER 9:      Yes, sir.
20             THE COURT:          Do you have some
21   lawyer neighbors?
22             JUROR NUMBER 9:      Probably do.
23   I'm not sure.  I know my neighbor right now,
24   no, they're not lawyers.  But I'm sure there's
25   somebody somewhere.
```

```
1               THE COURT:          Okay.
2      Ms. Seiler, is there anything else in your
3      background you think we should know?
4               JUROR NUMBER 10:    No.
5               THE COURT:          Okay.  Mr. Lui,
6      how are you doing?
7               JUROR NUMBER 11:    Good, Your
8      Honor.
9               THE COURT:          Tell me about
10     yourself.
11              JUROR NUMBER 11:    I was planning
12     on -- born and raised in China and went to
13     high school in Cleveland.  I went to Ohio
14     State.  Go Bucks.  And I live next door.
15              THE COURT:          What do you do
16     for Key?
17              JUROR NUMBER 11:    I'm a
18     quantitative analyst.
19              THE COURT:          Some kind of
20     analyst.
21              JUROR NUMBER 11:    Math.
22              THE COURT:          You do math?
23              JUROR NUMBER 11:    Yeah.
24              THE COURT:          That's why I
25     went to law school.  I didn't do math.
```

1        What does your wife do at PNC?

2        JUROR NUMBER 11:      Her team, I'm

3   not sure what they do and they over.  So

4   projects.  So for two months -- she used to

5   work for Key Bank, too.

6        THE COURT:            You raised your

7   hand to the victim of crime question.  Is this

8   something you can share with us?

9        JUROR NUMBER 11:      My brother was

10  car jacked in China.  And my mother used to

11  live Shaker Square and she was very close.

12  Stop on the stop sign and two guys tried to

13  jump in her car and she just sped away.

14       THE COURT:            So she was not

15  car jacked but there was attempted car jacking

16  and --

17       JUROR NUMBER 11:      Yeah.  And my

18  brother car jacked and he got beaten up very

19  bad.

20       THE COURT:            How long ago did

21  it happen to your brother?

22       JUROR NUMBER 11:      Fifteen years

23  ago.

24       THE COURT:            They catch the

25  people?

```
1                    JUROR NUMBER 11:     No.
2                    THE COURT:           Okay.  How about
3      when your mom --
4                    JUROR NUMBER 11:     Never.  Never.
5      My mother just sped away and so it was the end
6      of it.
7                    THE COURT:           Okay.  Any other
8      connection with the justice system or anything
9      else we should know, Mr. Lui?
10                   JUROR NUMBER 11:     No.
11                   THE COURT:           Thank you very
12     much.
13                   JUROR NUMBER 11:     I think that I
14     was born and raised in China, that in a
15     society that had no crime, so anybody --
16     anything happen, robbery, the entire time we
17     know it, it was -- it was serious.  Never
18     heard anything like that before.
19                   THE COURT:           Okay.  That's
20     the little bit they let you know about.
21                   Okay.  Ms. Veeck.  Is that how you
22     say it?
23                   JUROR NUMBER 12:     Yes.
24                   THE COURT:           Tell us about
25     yourself.
```

```
1              JUROR NUMBER 12:      I lead a project
2     management team for a corporate wellness
3     company.  And I have one daughter.
4              THE COURT:           Corporate
5     wellness.  What is corporate wellness?
6              JUROR NUMBER 12:      We provide
7     incentives to corporations, generally to
8     either raise premiums or lower premiums for
9     the health insurance, based on the health of
10    certain individuals going through screenings
11    and lifestyle-related choices.
12             THE COURT:           Got it.  We have
13    something similar here with the county
14    Vitality program.
15             JUROR NUMBER 12:      We manage that
16    program.
17             THE COURT:           And how long
18    have you been with Bravo Wellness?
19             JUROR NUMBER 12:      Three years.
20             THE COURT:           And what do you
21    like to do in your spare time?
22             JUROR NUMBER 12:      Spend time with
23    friends, family.  Shop.  Decorate.
24             THE COURT:           Jury service?
25             JUROR NUMBER 12:      Yeah.  I served
```

1      maybe five years ago, but the case didn't go

2      to trial.

3                    THE COURT:           Okay.  So you

4      got called and sat around a lot.

5                    Husband?

6                    JUROR NUMBER 12:     Yeah.

7                    THE COURT:           What does he do?

8                    JUROR NUMBER 12:     Operations

9      analyst for The Cleveland Clinic.

10                   THE COURT:           Anything else in

11     your background or connection to the justice

12     system?

13                   JUROR NUMBER 12:     No.  I'd

14     forgotten -- as other people were sharing --

15     our house was broken into six years ago.  I

16     forgot about --

17                   THE COURT:           Olmsted Falls?

18                   JUROR NUMBER 12:     Yes.

19                   THE COURT:           Was that case

20     solved?

21                   JUROR NUMBER 12:     No.

22                   THE COURT:           Okay.  Thank you

23     very much.

24                   Ms. Rudolph.

25                   JUROR NUMBER 13:     Hello.

```
1              THE COURT:          Good afternoon.

2              JUROR NUMBER 13:    Hello.

3              THE COURT:          How are you?

4              JUROR NUMBER 13:    I'm well.

5         How are you?

6              THE COURT:          Good.

7         Do you have any good jokes?

8              JUROR NUMBER 13:    Not -- that's

9    not me.

10             THE COURT:          Tell us about

11   you.

12             JUROR NUMBER 13:    I've been

13   married for 10 years.  I have two kids.  And I

14   work at an insurance company.  I'm a medical

15   reviewer.  I've been there six years, almost

16   seven.

17             THE COURT:          So you say no

18   more often than yes?

19             JUROR NUMBER 13:    Yes more often

20   than no.

21             THE COURT:          Husband?

22             JUROR NUMBER 13:    Yes.

23             THE COURT:          What does he do?

24             JUROR NUMBER 13:    Supervisor for a

25   team at Home Depot.
```

```
1              THE COURT:          Say that again.

2              JUROR NUMBER 13:    He's a manager

3    for a department at Home Depot.

4              THE COURT:          Okay.  Which

5    Home Depot?

6              JUROR NUMBER 13:    Cleveland

7    Heights.

8              THE COURT:          Any connection

9    with the justice system or anything you can

10   think counsel would want to know?

11             JUROR NUMBER 13:    No.

12             THE COURT:          Nothing?

13             JUROR NUMBER 13:    Nothing.

14             THE COURT:          Shuffle down to

15   Mr. Shanofski.

16             JUROR NUMBER 14:    Born and raised

17   in northeast Ohio.  Lived here all my life.  I

18   work for the bank, collateral risk analyst.

19             THE COURT:           And how long

20   have you been an analyst?

21             JUROR NUMBER 14:    Ten years or

22   better.

23             THE COURT:          How long have

24   you been with Huntington?

25             JUROR NUMBER 14:    Since September.
```

```
 1          Just hired on.

 2                 THE COURT:          Where did you

 3   work before that?

 4                 JUROR NUMBER 14:     I work for LPS.

 5   They service loans and mortgages.

 6                 THE COURT:          And so you're

 7   downtown now?

 8                 JUROR NUMBER 14:     No.  I work from

 9   home.

10                 THE COURT:          Okay.  Wife

11   works for U.S. Bank?

12                 JUROR NUMBER 14:     Um-huh.

13                 THE COURT:          What does she

14   do?

15                 JUROR NUMBER 14:     Underwriting.

16                 THE COURT:          When were you on

17   jury duty?

18                 JUROR NUMBER 14:     About eight,

19   nine years ago.  Tim McGinty.

20                 THE COURT:          You remember the

21   judge.  That's unusual.

22                 JUROR NUMBER 14:     I remember

23   pretty much everything about it.  He had us

24   come in on a Saturday.  It was almost a hung

25   jury.  He was not happy.
```

1          THE COURT:          How did you feel

2    about Saturday?

3          JUROR NUMBER 14:     I didn't care

4    for it.

5          THE COURT:          Folks, I like my

6    Saturdays as much as I like my Sundays.   We

7    won't be working.

8          JUROR NUMBER 14:     He threatened us

9    with a Sunday, too.

10         THE COURT:          And you always

11   remember his name.

12         JUROR NUMBER 14:     He was a good

13   judge.

14         THE COURT:          These four

15   individuals work for Mr. McGinty, who is our

16   county prosecutor.   So you won't hold your

17   prior jury service against the State of Ohio?

18         JUROR NUMBER 14:     (Indicating).

19         I didn't say before, but I'm a

20   victim, not something I want to talk about in

21   public.

22         THE COURT:          Come on up.

23              - - - - -

24   (The following proceedings were held out

25   of the presence of the Jury at sidebar.)

```
 1                          - - - - -
 2               THE COURT:            Okay.
 3               JUROR NUMBER 14:      I was molested
 4      as a child.  Not much else I want to say
 5      about --
 6               THE COURT:            Okay.  Was there
 7      any justice in that situation?
 8               JUROR NUMBER 14:      No.
 9               THE COURT:            Family member?
10               JUROR NUMBER 14:      Somebody who had
11      known the family.
12               THE COURT:            Is there -- this
13      is not that type of case.
14               JUROR NUMBER 14:      Okay.
15               THE COURT:            This case
16      involves random victims.
17               Could you be -- could you serve as a
18      fair and impartial juror on this case?
19               JUROR NUMBER 14:      I can't honestly
20      tell you, yes, to be honest with you.
21               THE COURT:            Your emotions
22      are --
23               JUROR NUMBER 14:      It's pretty
24      emotional.
25               THE COURT:            Okay.  Counsel,
```

1      any questions?

2              MR. RADIGAN:          No.  Just thank

3      you for coming forward with that.  It's hard

4      to talk about obviously.  I can see the

5      emotion in you right now.  It's something you

6      don't think you would be able to sit here and

7      not think about what happened to you?

8              JUROR NUMBER 14:    I'm just being

9      honest.

10             THE COURT:          Mr. Cavallo.

11             MR. CAVALLO:         No, I have no

12     questions.  Thank you.

13             THE COURT:           Okay.  Do you

14     have anything back in the seat?  No.  We'll

15     let you go here.  You're going to be excused.

16     Thank you very much.

17                     - - - - -

18         (Discussion held off the record.)

19                     - - - - -

20             THE COURT:           We're talking

21     about Mr. Sharma, Number 8, born in India.

22     Any objection to sending him on his way?  I

23     can't understand a thing he says and I have no

24     idea whether he can understand me.

25             MR. CAVALLO:         I have exactly

```
 1    the same feeling, judge.   No objection.

 2                THE COURT:          Mr. Radigan?

 3                MR. RADIGAN:          No objection,

 4    Your Honor.

 5                THE COURT:          Okay.   Cause for

 6    8 and cause for 14.   Okay.   Take a break in a

 7    couple of minutes.

 8                MR. BELL:          Did the defense

 9    make the cause motion on 14?   Would you like

10    them to?

11                THE COURT:          I just made it.

12    I mean --

13                MR. CAVALLO:          There's no

14    objection.

15                MR. BELL:          No objection.

16                THE COURT:          Okay.   Just so

17    we're clear.

18                          - - - - -

19    (The following proceedings were held in open

20        court and in the presence of the Jury.)

21                          - - - - -

22                THE COURT:          Okay.

23    Mr. Sharma, we're going to dismiss you, as

24    well.   Colleen will get you back to the fourth

25    floor.   Thank you very much.
```

1          Counsel, Greg has indicated that

2     Ms. Marshall wants to come forward.  Sidebar.

3     Come on up.

4                    - - - - -

5     (The following proceedings were held out

6     of the presence of the Jury at sidebar.)

7                    - - - - -

8          THE COURT:          Okay.

9          JUROR NUMBER 3:     I was a rape

10    victim.

11         THE COURT:          Okay.

12         JUROR NUMBER 3:     And I was a rape

13    victim and it was hard.  I was young when it

14    happened to me.

15         THE COURT:          Was the person

16    known to you before?

17         JUROR NUMBER 3:     No, he didn't

18    know me.

19         THE COURT:          It was random.

20    This is a random type of case.  Victims were

21    not known to the defendant beforehand.  Could

22    you sit and be fair and impartial as a juror

23    on this case or would it cause too much

24    emotional turmoil?

25         JUROR NUMBER 3:     I ain't going to

```
1        lie to you.  No.
2                    THE COURT:          You could not?
3                    JUROR NUMBER 3:      No.
4                    THE COURT:          Counsel, do you
5        have any other questions?
6                    MR. RADIGAN:         No, Your Honor.
7                    MR. CAVALLO:         No, Your Honor.
8                    THE COURT:          Ms. Marshall,
9        thank you so much for your honesty.  And sorry
10       what you've gone through.
11                   JUROR NUMBER 3:      I was 15 when it
12       happened.  I've been through this before in
13       the courtroom, me and my mother.
14                   THE COURT:          Okay.  We're
15       going to let you go.  Put you back on the
16       fourth floor and maybe there's a different
17       kind of trial for you.  Okay.  Thank you.  You
18       just wait here.  We'll get Colleen.
19                   MR. RADIGAN:         No objection.
20                   MR. CAVALLO:         No objection.
21                           - - - - -
22       (The following proceedings were held in open
23          court and in the presence of the Jury.)
24                           - - - - -
25                   THE COURT:          Mr. Bathgate, do
```

1      you want to come forward?

2             Folks, we'll be taking a break

3      shortly.

4               - - - - -

5      (The following proceedings were held out

6      of the presence of the Jury at sidebar.)

7               - - - - -

8             THE COURT:        Good afternoon,

9      Mr. Bathgate.

10             JUROR NUMBER 16:    When you had

11     asked about the victim of crime, both my

12     sister and my fiancee were violently sexually

13     assaulted.  And I don't know if I can be

14     impartial in this case.

15            THE COURT:        These were

16     separate incidents, your sister and --

17            JUROR NUMBER 16:    Yes.

18            THE COURT:        And how long ago

19     did this occur?

20            JUROR NUMBER 16:    Fiancee was two

21     years ago.

22            THE COURT:        Did you know

23     your fiancee at the time?

24            JUROR NUMBER 16:    Yes.  She was

25     overseas in Georgia and she was doing like

1    teaching English as a second language in

2    Georgia, a different country.

3                THE COURT:              Yes.  And your

4    sister?

5                JUROR NUMBER 16:     That was four

6    years.  I didn't find out until very recently.

7                I didn't want to say it in front of

8    everyone.

9                THE COURT:              Is there any way

10   you can be fair and impartial to Mr. Daniel,

11   given what you've experienced?

12               JUROR NUMBER 16:     I can try.  I

13   can try.  I didn't want to say this in front

14   of everybody.

15               THE COURT:              That's fine.

16   That's why we have this option available.  We

17   know people.  And you're not alone.  There's

18   other people have come up here and will come

19   up here in other trials.

20               Do you have any questions of

21   Mr. Bathgate?

22               MR. RADIGAN:           I would just ask

23   you -- thank you for coming forward.  But

24   obviously Mr. Daniels was not the one that did

25   this, correct?

1          JUROR NUMBER 16:     No.

2          MR. RADIGAN:      Do you think

3  that, as hard it could be -- you understand

4  that this is just about alleged incidents that

5  are being tried here, and put aside what

6  happened to your fiancee and your sister?

7          JUROR NUMBER 16:    I can try.  I

8  know how much -- it upsets.  It happening.

9  And trying to separate that, you know.  That's

10 what I'm thinking.  Obviously I have a hard

11 time doing it.  I might have a hard time

12 doing.

13         MR. RADIGAN:      Thank you,

14 judge.

15         THE COURT:      Mr. Cavallo,

16 any?

17         MR. CAVALLO:      Yes.  Real

18 quick, judge.

19         It's your duty -- you're struggling a

20 lot with this.  Is that fair characterization?

21         JUROR NUMBER 16:    Yes.

22         MR. CAVALLO:      You said you can

23 try, you would try to be.  Is it also fair to

24 say you have some doubts about how effective

25 you would be in being fair and impartial?

1              JUROR NUMBER 16:      Yes.

2              MR. CAVALLO:         Thank you.

3              THE COURT:           Okay.  We're

4    going to ask you to return to your seat at

5    this point.

6                    - - - - -

7    (The following proceedings were held out

8    of the presence of the Jury at sidebar.)

9                    - - - - -

10             MR. CAVALLO:         I would move to

11   excuse him for cause, Your Honor.

12             MR. RADIGAN:         Obviously,

13   judge, I think he said he would give it a

14   chance, he would try to be fair and impartial,

15   understanding that this is not an individual

16   that did this to his sister.  So we're asking

17   him to stay at this time.

18             THE COURT:           Okay.  He did

19   come forward on his own.  He appeared to be

20   taking the situation very seriously, seemed

21   somewhat troubled.  But I do not feel that he

22   was extremely comfortable.  I don't think he

23   wants to be here.  I think he's struggling

24   with his internal barometer.  I'm going to be

25   liberal here and let him go for cause.  And

1     note your objection.

2              MR. RADIGAN:          Thank you.

3                      - - - - -

4     (The following proceedings were held in open

5         court and in the presence of the Jury.)

6                      - - - - -

7              THE COURT:          Mr. Bathgate,

8     you're excused.

9              Ladies and gentlemen, it's break

10    time.  We'll come back and pick up with

11    Mr. Alcox, I think is next.

12             Well, as always, don't talk about the

13    case.  We're not going to have anybody leave

14    the floor.  There's a lot of you.  And there's

15    only two restrooms.  So first one there wins.

16    Good luck.

17                     - - - - -

18             (Recess taken.)

19                     - - - - -

20             THE COURT:          It's apparent

21    that we're not go to finish this process

22    today.  Try to get through my part and then in

23    the morning we'll hear from counsel.

24             Let's see.  We left off with

25    Mr. Alcox, I believe.  Holland Motor Company,

```
1          Berea Board of Education.

2                    Truckdriver?

3                    JUROR NUMBER 15:     No, sir.

4     Terminal manager.  140 employees.

5                    THE COURT:          Brookpark?

6                    JUROR NUMBER 15:     No, sir.

7     Youngstown, Ohio.  Ashland border.

8                    THE COURT:          So you have a

9     bit of a drive.

10                   JUROR NUMBER 15:     Yes, sir.

11                   THE COURT:           When were you in

12    the military?

13                   JUROR NUMBER 16:     I was not, sir.

14                   THE COURT:           The yes, sir, no

15    sir.

16                   JUROR NUMBER 16:     I was raised

17    that way, sir.

18                   THE COURT:           Well, thanks mom

19    and dad.

20                   JUROR NUMBER 16:     My father was in

21    the military.  My uncle was in the military.

22                   THE COURT:           Where did you

23    grow up?

24                   JUROR NUMBER 16:     In Cleveland and

25    then Brooklyn Heights, Ohio.  And then I live
```

```
 1        in --
 2                THE COURT:            Well, tell us
 3        about yourself.
 4                JUROR NUMBER 16:      Terminal
 5        manager.  Keeps me off the streets.  Keeps me
 6        pretty busy just doing that.  I have like --
 7        I'd say I have probably like 120, 130
 8        contractual employees that I deal with on a
 9        daily basis.
10                When I'm not doing that, like this
11        young man over here, I train in jiu jitsu and
12        some martial arts.  I'm an NRA certified
13        pistol instructor.  And I'm a living
14        historian.  I do living history for several
15        National Park Services, Gettysburg, Antietam,
16        and those type of things.  We're between the
17        states talking about battle.  And I'm an
18        aviation enthusiast.
19                THE COURT:            So you're kind
20        of boring.
21                You said a living historian?
22                JUROR NUMBER 15:     Yes, sir.
23                THE COURT:            We went to
24        Gettysburg.  We have public defenders who are
25        very active in the Gettysburg.  You know
```

1         George George?

2               JUROR NUMBER 15:     I'm sorry?

3               THE COURT:           George George.

4         He's from Shaker Heights, public defender.

5         And the late Tony Kellon.

6               JUROR NUMBER 16:     No, sir.  I

7         might have seen them.  Depends on what side

8         you were on.

9               THE COURT:           So are you Union

10        or Confederate when you dress?

11              JUROR NUMBER 16:     For 20 years I

12       was in the Army with Robert E. Lee.  My last

13       post I ended last year as a major in the 7th

14       Battalion Army with the Northern Virginia.

15       The A and B is a blanket organization for

16       liability and insurance and that kind of

17       thing.  You have to belong to one of these

18       organizations.  And I belong to the A and B.

19       I was a major in one of their battalions.

20             THE COURT:           Army in northern

21       Virginia?

22             JUROR NUMBER 15:     Yes, sir.

23           And I also ride on the 6th Ohio

24       Calvary.

25            THE COURT:           History major?

1      JUROR NUMBER 16:      No, sir.

2   Business.  Double major.  Production,

3   operation manager, industrial labor relation.

4   I would have like to have been a history major

5   at the time I was in college trying to stay

6   out of the jungle.

7      THE COURT:      How about a

8   connection to the justice system, anything?

9      JUROR NUMBER 16:      As I mentioned

10   earlier, my daughter is a paralegal and deputy

11   clerk.  Probably my best friend and reenactors

12   together is a lawyer in, I believe, Summit

13   County or over there by Canton.

14      THE COURT:      What kind of

15   law?

16      JUROR NUMBER 15:      Young man that I

17   partially raised.  I didn't partially raise

18   him.  He's a captain in the 82nd Airborne.  He

19   was a prosecutor for the Army.  He's in the

20   operation.

21      THE COURT:      Your Summit

22   County friend, what kind of law?

23      JUROR NUMBER 16:      I think he's

24   just practicing general law.  Initially he was

25   like in real estate.

1          THE COURT:          Do any criminal
2    defense work?
3          JUROR NUMBER 16:     I don't know.
4    We don't really discuss much, what kind of law
5    he does.
6          THE COURT:          When were you on
7    jury duty?
8          JUROR NUMBER 16:     About 1998.  I
9    was on a jury where they convicted an
10   individual of drug possession, so on and so
11   forth.  And then 2000 -- I think it was, I
12   want to say 2005, it was a civil trial.
13         THE COURT:          Okay.  Not the
14   foreperson?
15         JUROR NUMBER 16:     No, sir.
16         THE COURT:          Anything else,
17   Mr. Alcox, you think you should share?
18         JUROR NUMBER 16:     No.
19         THE COURT:          Could you be
20   fair and impartial?
21         JUROR NUMBER 16:     I think I can
22   be, yes.
23         I did have a good friend that was
24   murdered about 20 years ago.  Longer than that
25   now.  Probably 26 years ago.  He was murdered

1    in a domestic dispute.  And the guy that

2    killed him basically got off.

3              And I understand, you know, having

4    discussed that with police and stuff like

5    that, I kind of understand how that worked,

6    you know.  That was just one of those things

7    that happened, you know.  And I didn't mention

8    that before, but I thought about it.

9              THE COURT:              Okay.  And was

10   that Cuyahoga County?

11             JUROR NUMBER 16:      Actually that

12   probably happened just over the border from

13   Cuyahoga County, Lorain.  That would have been

14   in Columbia Station where he was actually

15   shot.  And then he died at Medina General

16   Hospital.

17             THE COURT:              You were told

18   why it happened that way.  What do you mean by

19   that?

20             JUROR NUMBER 16:      What happened

21   was a domestic dispute kind of thing, and it

22   involved both his wife and his mother-in-law.

23   And this was a fellow that his mother-in-law

24   happened to be living, I guess.  And words

25   were exchanged back and forth.  He lived not

1    too far from where I live today.  He went over

2    there to the house, kind of we'll straighten

3    this out kind of thing.  Walked in the house,

4    bang, bang.  He was dead.  And this guy

5    claimed he was --

6            So he shot him, a friend of mine.

7    And he died.  He had small kids, and my

8    daughter went to school.  So they were

9    probably four or five kids at the time.

10           THE COURT:           Okay.  Anything

11   else, Mr. Alcox?  You could be fair and

12   impartial.  You disclosed the victim part.

13   And you're pretty thorough in telling us about

14   yourself.

15           There is a seat at the end there,

16   you're welcome to take.  You're probably in a

17   much more comfortable chair.

18           You're fine.  If you can slide over a

19   little bit so I can see the back row better.

20           JUROR NUMBER 16:    I'll just go sit

21   over there.

22           THE COURT:           Even better.

23           Mrs. Liu.

24           JUROR NUMBER 17:    My maiden name.

25   I didn't change my name.  Mrs. Liu is fine.

```
 1                    THE COURT:          It's on here as
 2      Liu.  What should I call you?
 3                    JUROR NUMBER 6:     Liu.
 4                    THE COURT:          Tell me about
 5      yourself.
 6                    JUROR NUMBER 17:    I live in Solon.
 7      I'm married.  I'm a housewife, I guess.  I
 8      like to run.
 9                    THE COURT:          How extensive is
10      your exercise routine?
11                    JUROR NUMBER 17:    Well, I ran in a
12      couple of minor road races during the summer.
13      And then actually took my sister's spot to run
14      in the marathon.  I took my sister's spot to
15      run the Akron Marathon this past year because
16      she got injured.  So I ran a marathon.
17                    THE COURT:          First one?
18                    JUROR NUMBER 17:    First one, yeah.
19                    THE COURT:          Congratulations.
20                    JUROR NUMBER 17:    Thank you.
21                    THE COURT:          What did you do
22      for training for that?
23                    JUROR NUMBER 17:    Apparently not
24      long enough.  I started in July training for
25      the race that was in September.  So I don't
```

1     advise that.  But my longest run was like 20

2     miles, three and a half runs to run so --

3              THE COURT:            That's all

4     right.  You finished.

5              JUROR NUMBER 17:     Well, my

6     finishing time was actually four hours and 45

7     minutes.

8              THE COURT:            You're not going

9     to Boston, but you finished the marathon.

10    That's pretty good.

11             JUROR NUMBER 17:     Yeah.  It's good

12    enough.

13             THE COURT:            You train in the

14    day, in the morning, the evening?

15             JUROR NUMBER 17:     Well, during

16    summer when it was hot I just trained either

17    really early in the morning or later in the

18    evening when the sun went down, or indoors.

19             THE COURT:            And you run out

20    in Solon or --

21             JUROR NUMBER 17:     I run at the

22    rec. center there.  Community center.

23             THE COURT:            Any connections

24    to the justice system?

25             JUROR NUMBER 17:     My cousin, I

1   think he's in North Carolina now, working with

2   the military.  But he has a corporate law

3   degree.  And my other cousin's husband in

4   Chicago, I think he's also corporate law.  He

5   works for some sports company or sports

6   agency, something like that.

7           THE COURT:          Nothing

8   connected to criminal law or anything like

9   that?

10          JUROR NUMBER 17:     No.

11          THE COURT:          Did you work

12   before you had children?

13          JUROR NUMBER 17:     Well, I don't

14   have any kids now.  We're trying.  In 2010 I

15   got my veterinary degree, but we moved up here

16   to Solon and I haven't worked since.  I didn't

17   find a job that I was interested in.  So then

18   we were trying to have kids, so now that's put

19   on the back burner.

20          THE COURT:          Where did you

21   move from?

22          JUROR NUMBER 17:     I went to Ohio

23   State for veterinary school, but before that I

24   was Mayfield Heights since 1990.  And then

25   before that I was in Michigan.

```
1                   THE COURT:              What does your
2      husband do?
3                   JUROR NUMBER 17:     He's a dentist.
4                   THE COURT:              Is there
5      anything about that, about this case, that
6      would make you to be unable to be fair and
7      impartial?
8                   JUROR NUMBER 17:     No.
9                   THE COURT:              Okay.  Anything
10     else -- when were you on jury duty?
11                  JUROR NUMBER 17:     It was either
12     summer of 2005 or six.  It was at the
13     Lyndhurst Municipal Court.  It was a DUI case.
14     I was an alternate juror.  And we -- they had
15     the case ended up settling, so we didn't get
16     to deliberate or anything.
17                  THE COURT:              Okay.  Sometimes
18     that happens.  You would have no trouble going
19     in to next week if the case lasted that long?
20                  JUROR NUMBER 17:     No trouble.
21                  THE COURT:              You would be
22     able to serve.  We call you indefinitely.
23     Usually jury service lasts a week, but
24     sometimes some cases go over.
25                  I take it you would have no trouble
```

1      serving next week?

2                JUROR NUMBER 17:      No trouble.

3                THE COURT:            Okay.  Thank you

4      very much.

5                We'll move next door to Mrs. Wardega.

6                JUROR NUMBER 18:      Yes.

7                THE COURT:            That's right on.

8      How do you say it?

9                JUROR NUMBER 18:      Depends on which

10     side of the family you're on.

11               Wardego or Wardega.

12               THE COURT:            Tell us about

13     yourself.

14               JUROR NUMBER 18:      I am retired

15     for almost three years.  I have two children,

16     39 and 41.  And four grandchildren, one in

17     preschool, one in elementary, one in middle

18     school, and one in high school.  So I get to

19     experience the gamut of childhood.

20     Fortunately they're all local.

21               I've lived in Cleveland from 1967 for

22     four or five years.  Then I moved to Medina.

23     Then I moved back to Cleveland for like 20

24     some years.  And then they built a retirement

25     home in Berea and I live there.  And my

1          husband is an accountant at the IX Center.

2                    THE COURT:          What did you

3          retire from?

4                    JUROR NUMBER 18:     Forty one years

5          of teaching.

6                    THE COURT:          Where?

7                    JUROR NUMBER 18:     Mostly in the

8          inner city and Cleveland.  My last 23 years I

9          worked for the county education.  And I was in

10         Cleveland and in Garfield and in Parma Heights

11         the last three years.

12                   THE COURT:          Okay.

13                   JUROR NUMBER 18:     But we served

14         kids from the whole county.

15                   THE COURT:          Your son-in-law

16         is a detective with The Clinic?

17                   JUROR NUMBER 18:     He's a detective

18         in special escort.  Like if the Pope might

19         come to town, he might need a special escort

20         of Cleveland Clinic.  They have their own

21         police force.  It's not secure.

22                   THE COURT:          I understand.

23         We deal with them, too.

24                   Is there anything in your background

25         that you think counsel would want to know that

OFFICIAL COURT REPORTERS

1    would be relevant to this case?  You've been

2    very thorough in telling us about yourself,

3    but sometimes there's other stuff.

4              JUROR NUMBER 18:     I guess the only

5    thing, doesn't have to do with law, but

6    government.  We've been working so long, is my

7    daughter has cystic fibrosis and we've been

8    advocating for that a long time.  And on the

9    29th of December they approved her miracle

10   drug.  So I have that contact with a lot of

11   people through trying to advocate for this in

12   the past.  Kalydeco became a reality for her a

13   month ago.  And she's on the drug and it's a

14   miracle.

15             THE COURT:          Congratulations.

16   Good.  Okay.  Thank you.

17             Mrs. Cochran, Judge Sutula's first

18   cousin.  First cousin?

19             JUROR NUMBER 19:     Yes.

20             THE COURT:          Where did you

21   grow up?

22             JUROR NUMBER 19:     Cleveland.

23   Independence.  Cleveland.  Then I moved to

24   Parma.

25             THE COURT:          Okay.  When did

1    you live in Independence?

2         JUROR NUMBER 19:    Oh, boy.  2013,

3    ages 12 and 17.  My mother died young.  We --

4    I have a sibling, one significant sibling and

5    a brother two years old.  And my father worked

6    in steel mills and he wanted to make sure we

7    were in a good area.  And we moved in with

8    some actual second cousins and we lived with

9    them for awhile in Independence and they were

10   legal guardians.

11        THE COURT:         What street?

12        JUROR NUMBER 19:    Kleber Court,

13   the street when you come across the bridge

14   right over 480, when you go over the bridge.

15        THE COURT:         By Fontanas?

16        JUROR NUMBER 19:    Yes.

17        THE COURT:         I, too, grew up

18   in Independence.

19        JUROR NUMBER 19:    We were the last

20   house on the street.

21        THE COURT:         Any connection

22   with the justice system other than Judge

23   Sutula?

24        JUROR NUMBER 19:    No.

25        THE COURT:         Sherwood Foods.

1       What do you do?

2               JUROR NUMBER 19:    I'm in sales.

3       We're a food distributor.  I've been working

4       with them now will be 30 years.  They were

5       originally A&W, and then A&W was sold, State

6       A&W, then Sherwood bought us out of Detroit

7       about 20 years ago.

8               THE COURT:          Okay.  And

9       inside sales, outside sales?

10              JUROR NUMBER 19:    Both.  I have

11      customers that I take care of on a daily

12      basis.  And I also go out and do cold calls

13      and see customers and introduce items.  So

14      responsible for both.

15              THE COURT:          Okay.  Jogger?

16              JUROR NUMBER 19:    No.

17              THE COURT:          I thought we

18      might be on a roll there.

19              JUROR NUMBER 19:    Walker.  Can't

20      jog.  I had back surgery.

21              THE COURT:          Are you married?

22              JUROR NUMBER 19:    Divorced.

23              THE COURT:          Okay.  Victim of

24      crime?

25              JUROR NUMBER 19:    Yes.

1             THE COURT:       Anything you can

2      share?

3             JUROR NUMBER 19:    It's a relative.

4      I'm a victim of crime.  We have a -- just be

5      honest with you.  My son was accused of rape

6      and robbery.  And this happened about 12 years

7      ago.  And we were right here in this court.

8      And it was a neighbor thing.  And this person

9      said this person said that.  When it first

10     happened I asked him what happened.  It was

11     consensual.  But there was lies drawn up.  He

12     said that it wasn't -- he ended up with a --

13     they -- it ended up being sexual harassment

14     or -- what do you call that?  It wasn't rape.

15     But what's the other term that he ended up

16     accused for?

17            THE COURT:       Gross sexual

18     imposition.

19            JUROR NUMBER 19:    Yes.  Thank you.

20     He ended up to gross sexual imposition.

21            THE COURT:       He pled to that?

22            JUROR NUMBER 19:    Yeah.  He was

23     told by our attorney, which is the public

24     defender, to do that.  I feel that our public

25     defender failed us, but not the whole court

1    system.  We had a public defender that was

2    very rude and disrespectful to me.  And at the

3    time I didn't know what to do.  I was scared

4    for my son.

5             THE COURT:            How long ago was

6    this?

7             JUROR NUMBER 19:      Twelve years

8    ago.

9             THE COURT:           Do you remember

10    the name of the public defender?

11             JUROR NUMBER 19:    Oh, yes.  He's

12    deceased now, I heard.  Sullivan, Mark

13    Sullivan.

14             THE COURT:           He was assigned

15    counsel.

16             JUROR NUMBER 19:    He was assigned

17    counsel.

18             And I had asked if he was good

19    counsel and they said, yeah.  And I went to

20    his office with my ex-husband to see if, hey,

21    because he wasn't answering any phone calls,

22    he wasn't responding, he wasn't doing

23    anything, if we pay you, take a loan on the

24    house or whatever, can we get some better

25    cooperation from you.  And when we were in his

1    office, he was talking to clients on the phone

2    like they were dogs. And I asked again about

3    him, I said, are you sure he's a good

4    attorney. He's a good attorney. He's good in

5    the courtroom. I go, okay.

6         Well, the day of when my son was

7    sentenced, it was just him and I came here.

8    And Mr. Sullivan gave us some paperwork, fill

9    out, said, do this, this, this, this. And

10   okay, we filled out our parts that we were

11   supposed to fill out.

12        And apparently we missed something

13   because he came back and he handed to me, he

14   was being very rude and mean, and my son said,

15   Mr. Sullivan, there's no reason to be rude to

16   my mother. And my son was only 19 at the time

17   this happened. He just turned 19. And

18   Mr. Sullivan said, listen here, punk, and

19   couple of four letter words. Your life is in

20   my hands right now.

21        And I was so blown away that I was

22   afraid to say anything. I just have -- you're

23   afraid to speak. You just don't know. Now

24   that I'm old, I know how I would have handled

25   it. But back then I was fearful for him.

1          And he gave us false information,

2     telling us that, well, if you go this route --

3     because my son wanted to go in the box.  He

4     told him not to.  If you go in the box and

5     you're found guilty, you're going to go to

6     prison for this many years.  And we really

7     wanted to take it to the box and he did not

8     want to.  And so, you know, that's what

9     happened.

10          And I -- and my son, actually, I want

11    to say four years ago, hired a private

12    investigator to go back over everything to

13    pull records from the city, the jails,

14    everything he could get his hands on, because

15    he wanted to hire an appeal attorney and go

16    back and get this straightened out.  Because

17    it bothers him that he had that label on him.

18    And --

19          THE COURT:          What happened to

20    him?

21          JUROR NUMBER 19:     My son?

22          THE COURT:          Probation,

23    prison?

24          JUROR NUMBER 19:     He ended up

25    staying in county until it came to time of

OFFICIAL COURT REPORTERS

1    sentencing.  Then he ended up on probation.

2    And he had to register as a sex offender for

3    ten years.  And it hurt him as far as

4    employment goes.

5         But he is no longer on that and he is

6    doing very well.  He works for a good company.

7    He has his own business, just had a daughter

8    on the 20th.  And he's learned to accept what

9    happened.  He says, you know, mom, I was

10   hanging out with the wrong people.  Maybe it

11   saved my life.  So he learned from it.

12        The only part that upset me was the

13   fact that I was afraid to open my mouth inside

14   the courtroom or to report our attorney to

15   somebody.  I didn't know how to handled that

16   and I feel bad because I feel in some ways I

17   failed my son.  Because maybe things would

18   have been different.

19        And then on the -- whenever they --

20   when everything was said and done, at the time

21   I'm not sure who the county prosecutor was, I

22   looked at the victim, because this was all

23   neighborhood people that lived like across the

24   street caddy corner to each other.  And I want

25   to make sure I looked at the woman so I

```
 1            wouldn't run in to her.  I remember her as a

 2            little girl.  I knew her.  I knew her and her

 3            mother.  And I knew her mother.  And I looked

 4            up at her, just so I could make sure who she

 5            looked like.  I didn't want to run into her.

 6            And the prosecutor got this close in my face

 7            and said, you better put your eyes back up in

 8            front or your son is going to go right back to

 9            jail.

10                 THE COURT:            You don't

11            remember who the prosecutor was?

12                 JUROR NUMBER 19:      Yeah, I do.

13                 THE COURT:            Who was that?

14                 JUROR NUMBER 19:      Mr. Mason.

15                 THE COURT:            But he was not

16            the county prosecutor at the time?

17                 JUROR NUMBER 19:      He was -- it was

18            one of his assistants.  It wasn't the one who

19            said it to me, but at the time --

20                 THE COURT:            That's what I'm

21            asking.  Who was the assistant?

22                 JUROR NUMBER 19:      I don't know who

23            the gentleman was that walked towards me.  I'm

24            sure I have it in the records at home.  We

25            have a binder this thick from the private
```

1       investigator.

2                       THE COURT:            So it seems like

3       you had a bad experience with the criminal

4       justice system.

5                       JUROR NUMBER 19:      Well, just part

6       of it.  Single bit of it.

7                       THE COURT:            Could you be

8       fair and impartial, fair and impartial to the

9       State of Ohio on this case?

10                      JUROR NUMBER 19:      I believe so.

11                      THE COURT:            Could you be

12      fair and impartial to Mr. Cavallo here, who

13      does work for the public defender, but is not

14      a private attorney like Mr. Sullivan was?

15                      JUROR NUMBER 19:      Yes, I could.

16                      THE COURT:            And of course,

17      could you be fair and impartial to his client,

18      Mr. Daniel?

19                      JUROR NUMBER 19:      Yes, I could.

20                      I feel like I've been on both sides

21      of the situation.

22                      THE COURT:            Okay.  To my

23      understanding, this is not a case where the

24      victims were familiar with the defendant prior

25      to the acts.  This is not what we would call a

1    date rape case.  It's a little different than

2    your son's situation, where consent generally

3    is the biggest issue at the trial.

4            Let me move on to Ms. McMillon.

5            What do you do, Ms. McMillon?

6            JUROR NUMBER 20:     I work for the

7    Department of Veterans Affairs.

8            THE COURT:          Specifically?

9            JUROR NUMBER 20:     VA hospital

10   emergency room.  I'm a clerk.

11           THE COURT:          Clerk in the ER?

12           JUROR NUMBER 20:     Yes, sir.

13           THE COURT:          They have an ER?

14           JUROR NUMBER 20:     Yes, sir.

15           THE COURT:          Dumb question.

16   Maybe I don't understand how the VA works.

17   But they're not like a typical walk-in

18   hospital even for vets?

19           JUROR NUMBER 20:     Yes, they are,

20   sir.

21           THE COURT:          I thought

22   generally they serve --

23           JUROR NUMBER 20:     They only serve

24   vets, but it's just like any other hospital.

25           THE COURT:          For injuries

1       that are related to their service?

2              JUROR NUMBER 20:     As long as

3       they're a veteran, they can go to that

4       hospital.

5              THE COURT:           Okay.  How long

6       have you been working for Wade Park VA?

7              JUROR NUMBER 20:     Ten years.

8              THE COURT:           When you're not

9       in the ER what do you like to do?

10             JUROR NUMBER 20:     Sleeping.  I

11      work third shift.  But when I'm not sleeping I

12      have a seven year old, three year old, and 27

13      year old niece who thinks that I'm their

14      mother.

15             THE COURT:           Okay.  And

16      how -- you're not going to work during trial,

17      correct?

18             JUROR NUMBER 20:     No, sir.

19             THE COURT:           Is there

20      anything about this case you have questions

21      about or --

22             JUROR NUMBER 20:     No, sir.

23             THE COURT:           You didn't have

24      your hand raised to any of my general

25      questions or any connection to the justice

```
1              system.
2                       Can you be fair and impartial?
3                       JUROR NUMBER 20:    Yes, sir.
4                       THE COURT:          Okay.  Thank you
5              very much.
6                       JUROR NUMBER 20:    Thank you.
7                       THE COURT:          Lieutenant,
8              should we even ask you any questions?  What do
9              you want to share?
10                      JUROR NUMBER 21:    Twenty eight
11             years with the Cleveland Police.  Married.
12             Two girls.
13                      THE COURT:          How many more?
14                      JUROR NUMBER 21:    No more than
15             five.
16                      THE COURT:          What's your wife
17             do?
18                      JUROR NUMBER 21:    She's a clerk at
19             Fairview Hospital.
20                      THE COURT:          In the ER?
21                      JUROR NUMBER 21:    Yes.
22                      THE COURT:          Really?
23                      JUROR NUMBER 21:    Yeah.  Part
24             time.  She works at an off-sight facility
25             also.
```

```
 1                 THE COURT:          Where's that?

 2                 JUROR NUMBER 21:    In North

 3      Olmsted.

 4                 THE COURT:          Okay.  You've

 5      never been on jury duty before, correct?

 6                 JUROR NUMBER 21:    No.

 7                 THE COURT:          How many times

 8      have you testified?

 9                 JUROR NUMBER 21:    A few.  I don't

10      have the exact number.

11                 THE COURT:          Do you ever work

12      any sexual assault cases?

13                 JUROR NUMBER 21:    Just doing the

14      initial reports.

15                 THE COURT:          Do you know what

16      case we're trying?

17                 JUROR NUMBER 21:    I think I do.

18                 THE COURT:          Okay.  Anything

19      else you think you should disclose?

20                 JUROR NUMBER 21:    No.  I think

21      that's about it.

22                 THE COURT:          Okay.  On to

23      Mr. Lucak.

24                 I have a big blank here on

25      employment.  Retired?
```

1          JUROR NUMBER 22:      Yeah, I retired.

2     30 years I spent at RTA, Regional Transit

3     Authority. And I'm enjoying retirement and I

4     work part time. And I have a wife. And I

5     have two children. One lives in Charlotte and

6     one lives in Lewisburg, Pennsylvania.

7          THE COURT:           And how long ago

8     did you retire?

9          JUROR NUMBER 22:      I retired in

10    2005.

11         THE COURT:            Okay. And if

12    you weren't down here on this beautiful Monday

13    how would you be spending your day?

14         JUROR NUMBER 22:      I would either

15    be at the gym exercising and doing my routine.

16    I also am a guitar player and singer. I used

17    to be like a semi professional. And I'm

18    learning classic guitar now. And I try to

19    keep occupied. My wife and I do things

20    together.

21         My mother is sick. She's 95. And

22    one day she's up, one day she's down. And I

23    would be in Florida right now. So I decided

24    to stay right here because we think she might

25    pass.

1          THE COURT:          Okay.  You were

2     on jury duty when?

3          JUROR NUMBER 22:     I was on jury

4     duty, I believe nine, eight years ago in the

5     old courthouse.  I don't remember the judge.

6     He was a retired judge.  However, I remember

7     the case.  It was a man who bought a Jeep.  He

8     belonged to a Jeep club and they go out to

9     Arizona.  And he bought a brand new Jeep.  He

10    put 1,400 miles going out to Arizona and back.

11    And it broke down on the way back.  And he

12    wanted a new Jeep from Chrysler.  That's all I

13    remember.  So he sued Chrysler.  Or something

14    happened where he wanted a new Jeep from

15    Chrysler.  And the attorneys were there

16    arguing the case on both sides.

17         THE COURT:          Okay.  Did he

18    win?

19         JUROR NUMBER 22:     At that time he

20    did not.

21         THE COURT:          Okay.  Any other

22    connection?

23         JUROR NUMBER 22:     Well, I had -- I

24    just thought of it now.  I have a cousin that

25    retired from the Garfield Heights Police.  He

```
 1          was a patrolman -- I'm sorry -- a detective.

 2     He retired about 15 years ago from that.   In

 3     Garfield Heights.

 4              THE COURT:          Okay.   Thank you

 5     very much.

 6              Fair and impartial?

 7              JUROR NUMBER 22:     Oh, yeah.

 8     Definitely.

 9              THE COURT:          How about

10     Mrs. Marconi, are you fair and impartial?

11              JUROR NUMBER 23:     Yes.

12              THE COURT:          What do you do

13     for the Strongsville City School?

14              JUROR NUMBER 23:     Elementary

15     school secretary.

16              THE COURT:          What would you

17     like to share?

18              JUROR NUMBER 23:     Two kids.   Been

19     married forever.   I've been married for 28

20     years.   I have two wonderful daughters.   Kind

21     of boring person.   I don't do much.   Read and

22     love to walk my dog.

23              THE COURT:          Where do you do

24     that?

25              JUROR NUMBER 23:     Strongsville.
```

1          THE COURT:          Reservation?

2          JUROR NUMBER 23:    No.  Just

3    neighborhood, four miles.

4          THE COURT:          Your husband

5    works for Brewer-Garrett.

6          JUROR NUMBER 23:    It's an HVAC.

7    They could fix that.  He doesn't personally do

8    that.  He's the director of accounting.

9          THE COURT:          Okay.  First

10   time on jury duty?

11         JUROR NUMBER 23:    Yes.

12         THE COURT:          Anything else we

13   should know about you?

14         JUROR NUMBER 23:    The only thing

15   my brother -- my sister's boyfriend was just

16   convicted of drug and burglary charges like

17   last week so -- I think it was here.

18         THE COURT:          Sister's

19   boyfriend.

20         JUROR NUMBER 23:    Sister's

21   boyfriend.

22         THE COURT:          And did you come

23   down for it?

24         JUROR NUMBER 23:    I did not.

25         THE COURT:          Do you feel he

1    was treated fairly?

2              JUROR NUMBER 23:     I really don't

3    know because I haven't been paying attention

4    to his -- it's something that she's handling.

5    He's not really part of the family or -- I

6    know it wasn't his first offense.  It was a

7    fourth or fifth.

8              THE COURT:          So I'm guessing

9    that you're not upset --

10             JUROR NUMBER 23:     No.

11             THE COURT:           -- by the empty

12   seat at the holiday table.

13             JUROR NUMBER 23:     (Indicating).

14             THE COURT:          Well, we'll

15   refine that filter on match.com.

16             JUROR NUMBER 23:     I just don't

17   want it to hurt my nephew.

18             THE COURT:          Thank you.

19             Do you remember whose room he was in?

20             JUROR NUMBER 23:     I don't.  I know

21   absolutely nothing other than my mom said he

22   was sentenced to four years.  And I think it

23   was just on the 29th.

24             THE COURT:          Okay.  On to

25   Mrs. Lynch.

1          Husband is an iron worker?

2          JUROR NUMBER 24:     Retired iron

3    worker slash building inspector, merchant

4    marine.

5          THE COURT:          Done a lot of

6    stuff?

7          JUROR NUMBER 24:     Yeah.

8          THE COURT:          One of the --

9    lunch I went outside and there's a guy on that

10   crane and he's out on the arm that goes out

11   like this because they had to go out and get

12   some snow off one of the pulleys or something.

13   Doesn't get paid enough.

14         JUROR NUMBER 24:     Been doing that

15   for years.

16         THE COURT:          So you told us

17   that you're retired from North Coast

18   Prerelease.

19         Jury duty was when?

20         JUROR NUMBER 24:     It was like ten

21   years ago I was summoned, but I was never

22   picked for a case.

23         THE COURT:          Okay.  You've

24   been a CO for how many years?

25         JUROR NUMBER 24:     Actually I was

1     not a CO.  I worked for the department of

2     corrections.  I worked in the record office.

3     I just made sure their paperwork was correct,

4     they were getting out when they were supposed

5     to, jail time credit and things like that.

6              THE COURT:          How many years

7     did you work there?

8              JUROR NUMBER 24:      Twenty.

9              THE COURT:          Okay.

10             JUROR NUMBER 24:      I'm sorry.  I

11    worked at unemployment before that and I got

12    laid off from unemployment.

13             THE COURT:          So when that

14    happens you just like slide down a window?

15             JUROR NUMBER 24:      Yeah.  No.  I

16    have to go through the whole --

17             THE COURT:          So when that

18    happened you had some PERS time in and you

19    wanted to stay in the system, I take it?

20             JUROR NUMBER 24:      Yeah.

21             THE COURT:          What do you do

22    now for fun?

23             JUROR NUMBER 24:      Actually I watch

24    my niece's twin daughters.  They're one year

25    old.  They keep me busy.

```
1                    THE COURT:            Sure.   Okay.

2    Any other connection to our justice system?

3                    JUROR NUMBER 24:      No.

4                    THE COURT:            Okay.   Thank

5    you.

6                    Ms. Kyles, hi.  Way back there.  How

7    are you?

8                    JUROR NUMBER 25:      Okay.

9                    THE COURT:            When were you on

10   jury duty?

11                   JUROR NUMBER 25:      It was in the

12   '90's.  I can't remember the exact date.

13                   THE COURT:            Keep your voice

14   up as loud as you can.

15                   Tell me about yourself.

16                   JUROR NUMBER 25:      Unemployed

17   machine operator.  I have five grown children.

18   And that's about it.

19                   THE COURT:            Was this a good

20   week for you to be on jury duty?

21                   JUROR NUMBER 25:      Yes.

22                   THE COURT:            Weather aside.

23                   Can you be fair and impartial?

24                   JUROR NUMBER 25:      Yes.

25                   THE COURT:            Do you have any
```

1      questions?

2                    JUROR NUMBER 25:      No.

3                    THE COURT:      Okay.  Thank you

4      very much.

5                    Mr. Cedeno, how are you?

6                    JUROR NUMBER 26:      I'm doing great.

7                    THE COURT:      Tell us about

8      yourself.  What do you do?

9                    JUROR NUMBER 26:      I work for the

10     Cleveland Housing Network.  I am a home

11     ownership counselor.  I've been there about

12     two years.  I was a music director at a church

13     before that.  And outside of work I'm a

14     musician.  I play all around town.

15                    THE COURT:      What do you

16     play?

17                    JUROR NUMBER 26:      I play Motorboat

18     genre.

19                    THE COURT:      Where do you

20     play?

21                    JUROR NUMBER 26:      Everywhere.

22     Anywhere from corporate to country clubs to

23     church every Sunday, to local clubs.  Wherever

24     they need me.

25                    THE COURT:      Excellent.

1        What does your wife do?

2        JUROR NUMBER 26:    She is a PSR,

3   patient service representative, at MetroHealth

4   hospital.

5        THE COURT:        Does she play,

6   as well?

7        JUROR NUMBER 26:    No.  She's not

8   musically inclined at all.

9        THE COURT:        She's the

10  groupie?

11        JUROR NUMBER 26:    No.  She cost me

12  a couple of years going after her.  Not at

13  all.  I think that's what attracted me the

14  most to her.

15        THE COURT:        And this is your

16  first connection with the justice system,

17  first time on jury duty?

18        JUROR NUMBER 26:    Yes, sir.

19        THE COURT:        Do you have

20  anything counsel would want to know about you?

21        JUROR NUMBER 26:    I don't believe

22  so, no.

23        THE COURT:        Fair and

24  impartial?

25        JUROR NUMBER 26:    Yes, sir.

```
 1                 THE COURT:          Okay.

 2     Mrs. Hardon, how are you?

 3                 JUROR NUMBER 27:     I'm great.

 4     Thank you.

 5                 THE COURT:          Do you have any

 6     special needs?  Let us know and we'll be glad

 7     to accommodate you.

 8                 JUROR NUMBER 27:     Thank you.

 9                 THE COURT:          What do you do

10     for Key Bank?

11                 JUROR NUMBER 27:     I work on the

12     investment side and I work with the annuity

13     group and with the Michael Sullivan Group.

14                 THE COURT:          First one?

15                 JUROR NUMBER 27:     Annuity.  We run

16     all the annuities through, all the financial

17     advice throughout the United States in our

18     small little office.

19                 THE COURT:          Do you work with

20     Barb Meyers by chance?

21                 JUROR NUMBER 27:     Name isn't

22     familiar.

23                 THE COURT:          Your husband?

24                 JUROR NUMBER 27:     Cleveland

25     Restaurant Group.  General manager of a couple
```

1    wine bars in Cleveland.

2            THE COURT:          Okay.  And is

3    this your first?

4            JUROR NUMBER 27:     Yes.

5            THE COURT:          And what do you

6    like to do outside of work?

7            JUROR NUMBER 27:     I like to

8    exercise.  I was running a lot more than I am

9    now.  We go out to eat a lot, try new

10   restaurants and new local places that are up

11   and coming all the time.  Spend time with

12   family.

13           THE COURT:          What are some of

14   your current favorite restaurants?

15           JUROR NUMBER 27:     We just tried a

16   new place in Lakewood.

17           THE COURT:          Staff attorney

18   just mentioned that this morning.

19           JUROR NUMBER 27:     Their good stuff

20   is the penne.  Trentina.

21           THE COURT:          How do you know

22   Mr. Sawyer?

23           JUROR NUMBER 27:     I went to

24   Strongsville High School.

25           THE COURT:          With him or his

```
 1          wife?

 2                    JUROR NUMBER 27:      He's a couple

 3          years older than me.   He graduated with my

 4          sister, so I know him.

 5                    THE COURT:            What's he like?

 6                    JUROR NUMBER 27:      Different.   He's

 7          a nice guy.

 8                    THE COURT:            Is he?

 9                    JUROR NUMBER 27:      Yes.

10                    THE COURT:            He's my new

11          neighbor.

12                    Put on the record we're not --   I

13          hope his cooking is better than his white

14          fence.

15                    Is there anything else that you would

16          like to share?

17                    JUROR NUMBER 27:      I worked as a

18          teller in a branch and I was robbed when I was

19          working there.   That was an experience.

20                    THE COURT:            When was that?

21                    JUROR NUMBER 27:      About six years

22          ago, I want to say.

23                    THE COURT:            Okay.   Did they

24          solve that crime?

25                    JUROR NUMBER 27:      Yes.   I believe
```

```
 1        it was -- it was only a couple of weeks.  They
 2        were caught fairly quickly after they robbed
 3        my branch.  There was multiple men involved.
 4              THE COURT:          And was that in
 5        common pleas court or federal court, do you
 6        know?
 7              JUROR NUMBER 27:    I'm not sure.
 8              THE COURT:          Anything else?
 9              JUROR NUMBER 27:    No.
10              THE COURT:          Okay.  Forgive
11        me if I mispronounce the last name.  Same name
12        at the Ohio State law school, which I did not
13        attend.  Moritz.
14              JUROR NUMBER 28:    Moritz.
15              THE COURT:          Tell us about
16        yourself.  Self-employed.
17              JUROR NUMBER 28:    Married.  Three
18        children.  Live in Rocky River.  Private
19        investor.  Play golf, tennis.
20              THE COURT:          And what does
21        your spouse do?
22              JUROR NUMBER 28:    She's a
23        stay-at-home mom.
24              THE COURT:          Okay.  Do you
25        know some attorneys?
```

1          JUROR NUMBER 28:     I know quite a

2     few attorneys.  So many of -- not so many of

3     them are criminal.

4          THE COURT:          Let's start with

5     those.

6          JUROR NUMBER 28:    Well, my

7     neighbor is the assistant law director for

8     Rocky River.

9          THE COURT:          Who's that?

10          JUROR NUMBER 28:    Name escapes me

11     right now.  I have a bunch of friends who are

12     corporate attorneys.  Various law firms.  And

13     bankruptcy attorney.

14          THE COURT:          Anybody in the

15     criminal defense or works for the prosecutor

16     we would be interested in.

17          JUROR NUMBER 28:    No.

18          THE COURT:          First time on

19     jury duty?

20          JUROR NUMBER 28:    Yes.

21          THE COURT:          Victim of crime

22     you raised your hand.

23          JUROR NUMBER 28:    My father was

24     killed by a hit and run driver.

25          THE COURT:          And where and

1    when?

2                    JUROR NUMBER 28:       Naples, Florida.

3    2002.

4                    THE COURT:       Did they ever

5    solve the crime?

6                    JUROR NUMBER 28:    Yes.

7                    THE COURT:       And I take it

8    you followed the case closely?

9                    JUROR NUMBER 28:    Yes.

10                   THE COURT:       Were you

11   satisfied with how the Collier County justice

12   system worked?

13                   JUROR NUMBER 28:    In the end, yes.

14                   THE COURT:       What happened to

15   the defendant?

16                   JUROR NUMBER 28:    Twenty years for

17   manslaughter.

18                   THE COURT:       Was he

19   intoxicated?

20                   JUROR NUMBER 28:    They could not

21   prove it, no.

22                   THE COURT:       How did they

23   catch him?

24                   JUROR NUMBER 28:    Well, we had to

25   hire a private investigator.  And it took

1    about five years.  But the private

2    investigator recreated the case, offered a

3    reward.  A neighbor through the reward came

4    forward and provided a witness to help the

5    victim.

6              THE COURT:          This was all

7    done through you and your family and the

8    private investigator?

9              JUROR NUMBER 28:     Correct.

10             THE COURT:          And not the

11   Collier County Sheriff's Department or Naples?

12             JUROR NUMBER 28:     It was Collier

13   County Sheriff's, but mostly our private

14   investigator who recreated the entire case and

15   found the witnesses and worked with the

16   prosecutors in Fort Myers to get the case.

17             THE COURT:          Was there

18   anything other than just an eyewitness?  Any

19   video?

20             JUROR NUMBER 28:     No.  I mean

21   there were a couple of other corroborating

22   witnesses.  No one who identified him leaving

23   the scene.  There was some other evidence.  I

24   don't know how much you want me to get in to.

25             THE COURT:          How did they

1    identify the guy as being the driver of a

2    certain car?  Did he have a --

3              JUROR NUMBER 28:    It was his car,

4    his truck.  He said his truck was stolen.  He

5    said he was home and he lived with his

6    parents.  He was home at his parents' house

7    with his wife the entire time.  This

8    neighbor --

9              THE COURT:        If somebody came

10   forward five years later and said, I saw this

11   truck and this license plate, how did they

12   find the guy with the truck?  That's what I'm

13   not following.

14             JUROR NUMBER 28:    The neighbor

15   across the street said, yes, I remember him

16   coming home that night because his dad drove

17   him home and he fell out of his dad's car and

18   his dad helped him into his house.  So this --

19   so his statement was that he was home all

20   night with his wife, and the neighbor said, I

21   saw him come home that night.  It was unusual.

22   He was injured.  His dad helped him inside.

23   So that was --

24             THE COURT:        Okay.  So you

25   said, we hired a private investigator.  Who?

```
1              JUROR NUMBER 28:     My family.

2              THE COURT:           Your mom

3    survived?

4              JUROR NUMBER 28:     My mom wasn't in

5    the car.  She --

6              THE COURT:           Was your parents

7    retired down there?

8              JUROR NUMBER 28:     They were

9    retired.

10             THE COURT:           Are you from

11   Cleveland originally?

12             JUROR NUMBER 28:     No.  From

13   Columbus.

14             THE COURT:           Any relation to

15   the name on the law school?

16             JUROR NUMBER 28:     That was the man

17   who died, was my father.

18             THE COURT:           When did they

19   name the law school?

20             JUROR NUMBER 28:     When?  2001, the

21   year before he died.

22             THE COURT:           Because they

23   went through a big rehab of the new building.

24             JUROR NUMBER 28:     Well, no.  That

25   didn't have -- that was not related to -- they
```

```
 1         named it after him.
 2                   THE COURT:          Your dad was a
 3         lawyer?
 4                   JUROR NUMBER 28:     He was.
 5                   THE COURT:          What type of
 6         practice did he have?
 7                   JUROR NUMBER 28:     Corporate.
 8                   THE COURT:          What brought you
 9         to Cleveland?
10                   JUROR NUMBER 28:     Work.
11                   THE COURT:          Okay.  Well,
12         thank you very much.
13                   We're going to move on to
14         Mr. Burrows.  Mr. Burrows, good afternoon.
15                   JUROR NUMBER 29:     Good afternoon.
16                   THE COURT:          What is Joy
17         Global?
18                   JUROR NUMBER 29:     Underground
19         mining machinery.  Anything from the cartoon,
20         make tunnels and dig underground.  We make
21         that stuff.
22                   THE COURT:          What do you do?
23                   JUROR NUMBER 29:     I run a
24         horizontal boring mill considered heavy
25         manufacturing work with like 25 ton parts.
```

1            THE COURT:        Did you go down?

2            JUROR NUMBER 29:    I machine them

3 above ground here.  You machine pieces parts.

4 They go to the mine.  They put them together

5 in the mine, put gears in them.  It cuts your

6 bowl to -- goes on with that.  Everything we

7 do aboveground.  Our parts have to be good to

8 go underground and actually work.

9            THE COURT:       These are not

10 sewer project size tunnels?

11           JUROR NUMBER 29:    Yes and no.

12 Some of the tunnels.  We do a lot of stuff for

13 the salt plant, so it would actually be

14 bigger.  Everything is put in pieces parts,

15 stuff for the salt machines, machined in

16 multisized pieces.  They cannot have a 22 ton

17 gear going on the elevator system and get it

18 down.

19         But like we go out west, we can put a

20 20 ton piece on a rail car to get it there

21 that can drive it underground when it's

22 assembled.  It's big.

23           THE COURT:       It is big.  I

24 just coincidentally had a conversation with a

25 guy last week.  It was involving the San

1        Francisco Bay tunnel water project.

2                JUROR NUMBER 29:      Some of the

3        stuff, the hard rock, will go into stuff like

4        that.  But most of our stuff, believe it or

5        not, is still combines, gold mining, your

6        potash mining, stuff like that.

7                THE COURT:          How long have

8        you been working there?

9                JUROR NUMBER 29:    Be 20 years here

10       this year.

11               THE COURT:          Long time.  And

12       what do you like to do for kicks and giggles?

13               JUROR NUMBER 29:     I really don't

14       fix the vehicles much any more.  I'm at a

15       point I'm tired of crawling around under --

16               THE COURT:          What do you like

17       to do for fun?

18               JUROR NUMBER 29:    For fun we hit

19       the tow path.  Metroparks area.  Do a lot of

20       biking, fishing.  Some camping.  We'll camp

21       Kellys Island once, twice a year.

22               THE COURT:          What does your

23       wife do for the Strongsville schools?

24               JUROR NUMBER 29:    Lunch lady.

25               THE COURT:          Okay.  Lunch

1     lady.

2                    JUROR NUMBER 29:     Cafeteria.

3                    THE COURT:           Okay.  Can you

4     be fair and impartial on this case?

5                    JUROR NUMBER 29:     I would hope so.

6     I believe I will.  It sounds like it's a big

7     case and sure wouldn't want to destroy

8     anybody's life, you know, being dumb about it,

9     you know.

10                   THE COURT:           So you would

11    give careful consideration?

12                   JUROR NUMBER 29:     Oh, God, yes.

13                   THE COURT:           How do you feel

14    about your ability to judge credibility?  How

15    confident are you?

16                   JUROR NUMBER 29:     I think I'm

17    pretty good character.  I have people like me.

18    They like having me around.  I'm asked

19    opinions on a lot of different things so --

20                   THE COURT:           Thank you,

21    Mr. Burrows.

22                   JUROR NUMBER 29:     You're welcome.

23                   THE COURT:           Mr. Fishman, how

24    are you?

25                   JUROR NUMBER 30:     Good.  Thank

1    you.

2            THE COURT:          Glad you work in

3    patent law and not litigation?

4            JUROR NUMBER 30:     At times.

5            THE COURT:          Has it been hard

6    not to check back with the office?

7            JUROR NUMBER 30:     Yeah.  Things

8    are pretty busy right now.

9            THE COURT:          So you're

10   thrilled to hear about next week?

11           JUROR NUMBER 30:     Not

12   particularly, but I'll do what I have to do.

13           THE COURT:          That's right.

14       Well, have you been -- I assume

15   you've been a patent lawyer since you left law

16   school.

17           JUROR NUMBER 30:     Yeah.  I went

18   into law school with that plan.  I have an

19   undergraduate degree in electronic

20   engineering.

21           THE COURT:          Did you work a

22   little before law school?

23           THE DEFENDANT:       Well, not

24   really.  I was a co-op engineering student.  I

25   worked summers and things like that.

1          THE COURT:          And you've been

2     with Perne & Gordon since law school?

3          JUROR NUMBER 30:     Yeah.   Graduated

4     from law school and got hired right out of law

5     school.

6          THE COURT:          Where is your

7     office here?

8          JUROR NUMBER 30:     Ohio Savings

9     Building.   9th Street.

10         THE COURT:          You indicated a

11    victim of crime before.   What?

12         JUROR NUMBER 30:     Nothing huge.

13    But my car was broke in to and cleaned out,

14    about $4,000 worth of personal property.

15         THE COURT:          Okay.   Anything

16    else connecting you --

17         JUROR NUMBER 30:     I do have a

18    friend that, just occurred to me, that lives

19    in Mansfield, a cop.

20         THE COURT:          How about any

21    law school classmates who are prosecutors or

22    criminal defense attorneys?

23         JUROR NUMBER 30:     No.   In fact I

24    don't have a lot of contact with former law

25    school classmates.   I do have a friend now

```
 1      through the kids' school who's an attorney in

 2      Broadview Heights.

 3              THE COURT:          Okay.  Thank you

 4      very much.

 5              Mr. Elam, how are you?

 6              JUROR NUMBER 31:    All right.

 7              How about yourself?

 8              THE COURT:          Good.

 9              How long have you worked for

10      Cleveland Heights?

11              JUROR NUMBER 31:    About five

12      years.

13              THE COURT:          And what did you

14      do before that?

15              JUROR NUMBER 31:    Mechanic for the

16      City of Maple Heights.

17              THE COURT:          Okay.  And why

18      did you switch?

19              JUROR NUMBER 31:    Got laid off.  I

20      had to switch.

21              THE COURT:          Okay.  You're in

22      Bedford Heights?

23              JUROR NUMBER 31:    Yes.

24              THE COURT:          Okay.  What do

25      you like to do when you're not at work?
```

```
1                    JUROR NUMBER 31:     Drink beer and
2        fish.
3                    THE COURT:           Where are some
4        of your favorite spots to go fishing?
5                    JUROR NUMBER 31:     Do a lot of
6        inland lake fishing, Mosquito, West Branch,
7        LaDue.
8                    THE COURT:           Do you have a
9        little boat?
10                   JUROR NUMBER 31:     Two little
11       boats, yeah.
12                   THE COURT:           West Branch and
13       LaDue are nice.  I have not been to Mosquito.
14                   Anything else in your background you
15       think we should know?
16                   JUROR NUMBER 31:     No.  No.  I mean
17       I've got a snowplow business.
18                   THE COURT:           Okay.  We'll
19       follow you home.
20                   Do you have much interaction with the
21       folks on the police force?
22                   JUROR NUMBER 31:     Quite a bit
23       every day.
24                   THE COURT:           Other than
25       talking about the mechanics?
```

OFFICIAL COURT REPORTERS

1          JUROR NUMBER 31:     I'm a wrecker

2      for the City of Cleveland Heights.

3          THE COURT:          Okay.  And you

4      drive a snowplow on the side?

5          JUROR NUMBER 31:     Yes.  I have my

6      own trucks.

7          THE COURT:          Okay.  Thank

8      you.

9          And then last Ms. McDonald.  How are

10     you?

11         JUROR NUMBER 32:     Good.

12         How are you?

13         THE COURT:          Good.

14         Do you have any questions for me?

15         JUROR NUMBER 32:     No.

16         THE COURT:          Is this the name

17     of your company, Liturgical Publications?

18         JUROR NUMBER 32:     Liturgical.

19         THE COURT:          Really?

20         And exactly what do you do and how?

21         JUROR NUMBER 32:     We print church

22     bulletins.  It's a printing company.

23     Liturgical is a Catholic term.

24         THE COURT:          What do you do

25     for them?

1          JUROR NUMBER 32:     Technical

2    support for customers.  I basically remote

3    into their computers and help them with all of

4    all their problems.

5          THE COURT:          Do they put it

6    together and send it to you electronically and

7    you print it?

8          JUROR NUMBER 32:     Yeah.

9          THE COURT:          Okay.

10         JUROR NUMBER 32:     I don't do the

11    actual printing myself, but I log in to their

12    computers and telephone them when they're

13    having issues with their programs or they

14    can't figure out why, you know, they minimized

15    the page and they can't see it anymore.  Just

16    stuff like that.

17         THE COURT:          Okay.  Do you

18    have any family?

19         JUROR NUMBER 32:     I do.  I have

20    two children.  I have a 14 year old, a

21    daughter, and eight year old daughter.  Single

22    mother.

23         THE COURT:          Any connection

24    to the justice system?

25         JUROR NUMBER 32:     No.

OFFICIAL COURT REPORTERS

1          THE COURT:          Okay.  Anything

2     else you want to share?

3          JUROR NUMBER 32:     No.

4          THE COURT:          Has anything

5     come to anybody else's mind as we listened to

6     each other's questions and answers that

7     somebody thinks they should disclose at this

8     point?

9          JUROR NUMBER 8:      My oldest son's

10    girlfriend is a lawyer.  She works for the

11    Attorney General Eric Holder.

12         THE COURT:          She works in the

13    justice department?

14         JUROR NUMBER 8:      Yeah.

15         THE COURT:          This is someone

16    he's been dating for awhile or --

17         JUROR NUMBER 8:      Yeah.  About

18    couple -- about two, three years.

19         THE COURT:          You've met her?

20         JUROR NUMBER 8:      Yeah.

21         THE COURT:          What kind of

22    work does she do?  Do you know?  Is it

23    criminal work or --

24         JUROR NUMBER 8:      Well, she works,

25    I guess, with the attorney general.  They work

1   in the department for human trafficking.

2           THE COURT:              Okay.  Does she

3   ever talk about her work?

4           JUROR NUMBER 8:        No, not really.

5   I -- just that's what she does.

6           THE COURT:              Anybody else?

7           Okay.  Ladies and gentlemen, it's

8   been a long day.  Thank you for your patience.

9   We're not going to get much of a jump out of

10  here today.  But we would like you to come

11  back fairly early tomorrow.  Have you

12  downstairs at 8:30.  We'll bring you up here

13  on the elevator.  We're down to 28 from 32

14  already.  And the herd will be further thinned

15  tomorrow morning.

16          Counsel will address you and follow

17  up some questions, and then we'll move on to

18  our -- what's formally called a peremptory

19  challenge phase.  And maybe by late morning

20  and certainly by early afternoon we'll begin

21  with opening statements.

22          So rules to remember when you go home

23  tonight.  Do not talk about the case.  Refrain

24  from the nightly news and cleveland.com.  And

25  no social media.  And number four, most

1       important, enjoy yourself and be safe.

2               So the roads are not ideal.  Try to

3       leave extra time tomorrow so we don't have to

4       go out hunting for you.  And we'll see you

5       tomorrow.

6               All rise.

7                       - - - - -

8       (The following proceedings were had in open

9       court and out of the presence of the jury.)

10                      - - - - -

11              THE COURT:          Is there

12      anything else we need to talk about before we

13      adjourn for the evening?

14              MR. RADIGAN:          I don't believe

15      so, Your Honor.

16              MR. CAVALLO:          I have one last

17      issue my client wants me to bring to the

18      court's attention, Your Honor.

19              He's asking me to ask the court if

20      there's any way to put an entry -- he says the

21      jail is restricting his access to the phone

22      and his mail.  I've made a couple of calls to

23      the warden's office.  I do not get a response.

24      So he asked me if I would put that on the

25      record and let the court know that his

1    communication is being restricted.  He wants

2    to know if the court can do anything about

3    that.

4              THE COURT:          What do you

5    mean, he's being restricted?  He can't make a

6    phone call?

7              THE DEFENDANT:          Yes, sir.  Yes,

8    sir.

9              I want to make a phone call.  They're

10   not giving me my mail.  I have statements

11   coming through the mail that was supposed to

12   come in, I've been waiting on.  I'm having a

13   problem with this.  I was initially put in

14   lockup.

15             THE COURT:          I understand

16   there was an incident upon your initial --

17             THE DEFENDANT:          When I first

18   came here.  Tried to say I escape.  That's not

19   what happened.  The window was broken.  They

20   tried to say I escaped.

21             THE COURT:          Okay.  You know,

22   Mr. Cavallo, I'm not sure how this pertains to

23   his representation, so this is a matter that I

24   do not consider within the jurisdiction of the

25   court.  I'm not in the business of telling the

1    sheriff how to run their show.  And I don't

2    know what to enter at this time.  So we assign

3    counsel for that reason.

4              Anything else?

5         MR. CAVALLO:          Nothing else

6    from us, judge.

7         MR. RADIGAN:          Nothing, judge.

8    Thank you.

9         THE COURT:          Have a good

10   night.

11              - - - - -

12         (Court adjourned.)

13              - - - - -

14

15

16

17

18

19

20

21

22

23

24

25

OFFICIAL COURT REPORTERS