# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JAMES DANIEL,**  Case No. 1:18 CV 1661

    Petitioner,  Judge John R. Adams

    v.  Magistrate Judge James R. Knepp II

**WARDEN RONALD ERDOS,**

    Respondent.  **REPORT AND RECOMMENDATION**

## INTRODUCTION

Petitioner James Daniel ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Ronald Erdos ("Respondent") filed a Return of Writ/Answer (Doc. 7) and Petitioner filed a Traverse/Reply (Doc. 9).[1] The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated March 22, 2019). For the reasons discussed below, the undersigned recommends the Petition be denied.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524,

---

1. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth District Court of Appeals set forth the following relevant facts on direct appeal:

> {¶ 6} On the first night of trial, appellant feigned a suicide attempt. He was found on the floor of his holding cell, in the fetal position, with a sheet wrapped around his neck. On the second day of trial, appellant spread feces on himself and his holding cell. Appellant had been diagnosed with antisocial personality disorder and bipolar disorder. After one of appellant's medications was discontinued on January 27, 2015, appellant began complaining of auditory hallucinations. For all of these reasons, the trial court discharged the jurors—who had not yet been sworn in—continued appellant's trial, and referred appellant to the court psychiatric clinic for a competency evaluation.
>
> {¶ 7} On February 7, 2015, appellant filed a pro se motion to disqualify counsel.
>
> {¶ 8} Dr. Stephen Noffsinger evaluated appellant and diagnosed him with cannabis use disorder and malingering. Dr. Noffsinger determined that appellant suffers from antisocial personality disorder. Dr. Noffsinger indicated in his report that he was unable to form an opinion within a reasonable medical certainty whether appellant has the ability to understand the nature and objectives of the proceedings and is able to assist in his defense. Dr. Noffsinger explained, "while it is clear that [appellant] is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder." He recommended that the trial court order appellant to a 20–day inpatient competency to stand trial evaluation at Twin Valley Behavioral Healthcare ("Twin Valley")—a maximum security facility where appellant's behavior could be observed "round the clock."
>
> {¶ 9} On March 9, 2015, the trial court held a hearing to review Dr. Noffsinger's report. The trial court noted that in appellant's pro se motion to disqualify counsel, he demonstrated intelligence and clarity of thought. The trial court attempted to discuss Dr. Noffsinger's report and recommendation with appellant, but was unable to do so. The trial court noted on the record that appellant "had his head down the whole time and refused to make any eye contact. And his responses have been inaudible and not understandable to the court. They are barely audible." The trial court remanded appellant and ordered him to be transferred to Twin Valley for a 20–day observation period. Despite the trial court's order, appellant was not transferred to Twin Valley.
>
> {¶ 10} On April 8, 2015, the trial court held another hearing to determine whether appellant was competent to proceed to trial. The trial court noted that appellant had at least two prior felonies, and thus, is not a stranger to the criminal justice system. The trial court acknowledged that in a prior presentence investigation report,

appellant indicated that he did not suffer from any mental illness. The trial court further noted that because appellant neither cooperated with his counsel nor with the medical professionals who attempted to examine him, it is unclear whether any of the information that he is reporting is credible.

{¶ 11} The state argued that appellant was competent to stand trial. In support of its position, the state presented the following information obtained from appellant's jail phone calls: (1) appellant was using another inmate's corrections office number; (2) appellant was discussing information about his trial, including jury selection, the facts against him, his attorney, witnesses, an alibi, and circumstantial evidence; (3) he asked his girlfriend to look up symptoms of schizophrenia; (4) he called his brother so that he would not testify against him at trial; and (5) he reached out to Channel 5 and did an interview with a reporter.

{¶ 12} After hearing appellant's jail phone calls and reviewing Dr. Noffsinger's report, the trial court determined that appellant was competent to stand trial. Furthermore, the trial court stated that it was clear that appellant "is using the due process protections of the legal system to delay his inevitable trial." The matter proceeded to trial.

.
*State v. Daniel*, 57 N.E.3d 1203, 1207-08 (Ohio Ct. App.).[2]

## PROCEDURAL HISTORY

State Court Conviction

In September 2014, a Cuyahoga County grand jury issued a 23-count indictment charging Petitioner with two counts of aggravated burglary, six counts of rape, seven counts of kidnapping, four counts of aggravated robbery, three counts of having weapons while under disability, and one count of felonious assault. (Ex. 1, Doc. 7-1, at 5-28). Many of these charges carried firearm

---

2. Petitioner takes issue with the state court's opinion characterization of the suicide attempt as "feigned", noting that "there's no evidence that Daniel 'feigned' that suicide attempt . . . [and] that observation is not entitled to deference now." (Doc. 9, at 4). In the transcript, during jury selection, Petitioner told the court: "I tried to hang myself last night." (Tr. Vol. 2, at 258). After conferring with his client, defense counsel stated: "he disclosed to me that he attempted to hang himself with a bed sheet in his cell last night." *Id.* at 260. Having reviewed the transcript, the undersigned found only a statement from the trial court, at the April 8, 2015 hearing that "Mr. Daniel had feigned a suicide attempt on the first night of trial", *id.* at 317, but nothing to support that it was "feigned" from the statements from counsel, or testimony from jail employees. The undersigned will therefore not defer to this particular factual finding, but notes that whether the suicide attempt was real or feigned has no bearing on the outcome of the instant habeas case.

3

specifications, repeat violent offender specifications, sexually violent predatory specifications, sexual motivation specifications, and/or notices of prior convictions. *See id.* Petitioner was assigned counsel and entered a not guilty plea. (Ex. 2, Doc. 7-1, at 29). The charges in the indictment arose from three separate incidents, *Daniel*, 57 N.E.3d at 1206, and Petitioner moved to sever the counts related to each incident (Ex. 3, Doc. 7-1, at 31-36). The trial court granted the motion as to the first five counts, and renumbered the remaining counts. *See* Ex. 4, Doc. 7-1, at 37; Ex. 10, Doc. 7-1, at 47; Tr. Vol. 1, at 35-36). The trial court also ordered bifurcation of the notice of prior conviction, repeat violent offender, sexual motivation, and sexually violent predator specifications. (Ex. 5, Doc. 7-1, at 38). Petitioner also elected to try the weapons under disability charge to the bench, rather than to a jury. (Tr. Vol. 1, , at 9-10).

On February 3, 2015, the trial court referred Petitioner to the court psychiatric clinic for an evaluation under Ohio Revised Code § 2945.37 to determine competency to stand trial and sanity at the time of the events. (Ex. 6, Doc. 7-1, at 39); *see also* Tr. Vol. 2, at 297-300.

Two days later, Petitioner filed a *pro se* motion to disqualify his counsel. (Ex. 7, Doc. 7-1, at 40-43). Therein, he noted his attorney had "neglected several issues pertaining to [his] case" including his "mental health issues an[d] history of diagnoses on medications." *Id.* at 41. He also complained of restrictions by the jail on his phone usage which prevented him from "gather[ing] information from potential witnesses" and delays in his incoming and outgoing mail. *Id.* He noted he had filed grievances to the Sheriff's Department on these matters, which counsel had not passed along and that counsel had "neglected to contact any of [his] witnesses." *Id.* He noted that he "[did not] even know what [counsel's] defense strategy is or what's going on" and that he would therefore hire his own attorney. *Id.* Finally, he asserted counsel had a conflict of interest because his fiancé, who was a witness, felt uncomfortable because counsel had represented someone who

4

had raped her. *Id.* at 41-42. The trial court denied this motion on April 20, 2015. (Ex. 11, Doc. 7-1, at 48).

On March 9, 2015, the trial court held a hearing and reviewed the court psychiatric clinic's report. *See* Ex. 8, Doc. 7-1, at 44; *see also* Tr. Vol. 2, at 301-16. The court noted that in the report, Dr. Noffsinger "opined that the Defendant refused or was unable to cooperate with the evaluation" and as a result, Dr. Noffsinger "was unable to render an opinion as to the Defendant's competency to stand trial." (Ex. 8, Doc. 7-1, at 44). Dr. Noffsinger also stated "while it is clear that Mr. Daniel is malingering the symptoms of a mental disorder, it is unclear whether he is wholesale faking the mental disorder or exaggerating the extent of a true mental disorder." (Tr. Vol. 2, at 302). Therefore, per the report's recommendation (Tr. Vol. 2, at 302), the court ordered Petitioner "to Twin Valley Behavioral Healthcare in Columbus, Ohio for an inpatient competency evaluation for a reasonable period of time not to exceed twenty (20) days", (Ex. 8, Doc. 7-1, at 44); (Tr. Vol. 2, at 314-15).

On April 8, 2015, the court held another hearing. (Tr. Vol. 2, at 317-55). At that hearing, the Court noted that "for reasons unclear to the Court, Mr. Daniel was not transferred" to Twin Valley. *Id.* at 318-19. At the hearing, the State offered evidence of Petitioner's recorded jail phone calls and testimony from the investigator who had monitored them as evidence it asserted demonstrated Petitioner's understanding of the proceedings and competency to stand trial. *Id.* at 320-42. After listening to the evidence and arguments, the trial judge explained it was "clear to the Court [that] Mr. Daniel is using the due process protections of the legal system to delay his inevitable trial." *Id.* at 350-51. He further explained:

> First point that must be made regarding these jail calls is that he used someone else's, another inmate's, pin. The only explanation that I see for that is that was calculated deception so he would not - - his thoughts would not be made known to the Prosecutor's Office or other law enforcement. There are signs in the jail that

5

> indicate, publicize, these conversations are taped, and this was an attempt to get around detection. It's hard to imagine any other legitimate reason for using another inmate's pin. This was not a one-time use. This was a several-time use.
>
> This one call made to a girlfriend of his half-brother, Barbara Diluzio. Ms. Diluzio was listed by [defense counsel] at the direction of his client as an alibi witness. These are in court filings. There was a conversation that's 20 minutes long between Mr. Daniel and Mr. Tyson Williams. Mr. Daniel appears to be very lucid in that conversation, has an extremely good recall. He talks about circumstantial evidence. He is able to recite what the prosecutors told the jury during the voir dire process. He went over in detail an explanation as to why the DNA evidence in this case may not necessarily show him to be guilty. He's working on his defense in this phone call with his half-brother. He talks about the advanced technical concept of cell phone pinging, in addition to the advanced technical concept involving DNA. These are matters that are not easily grasped by some lawyers, but this phone call shows this defendant to be aware of the relevant issues in this case, the relevant evidence, and is able to discuss them with a minimum degree of competency.
>
> These conversations show that Mr. Daniel is certainly capable of assisting in his defense. Now, whether or not he does so is his own choice. He has shown up to this point that he wishes to be obstructive, that he wishes to take severe means to delay these proceedings. I've been a judge for 17 years, I've never had a defendant purposely cause an interruption of trial by spreading his own fecal matter over himself in his cell.
>
> I find Mr. Daniel to be competent to stand trial.

*Id.* at 351-53; *see also* Ex. 9, Doc. 7-1, at 46 (journal entry stating "Hearing held 04/08/2015. Defendant found competent to stand trial.") (capitalization altered).

The case proceeded to jury trial, and on April 29, 2015, the jury found Petitioner guilty as charged on the renumbered charges;[3] the trial court found Petitioner guilty on the specifications and the having weapons under disability charges. (Ex. 13, Doc. 7-1, at 50-51).[4]

---

3. The bifurcated charges (original Counts 1-4), were set aside to be tried at a later date. (Ex. 13, Doc. 7-1, at 51). Petitioner later pleaded guilty to these charges and attached specifications. (Ex. 16-17, Doc. 7-1, at 56-57).
4. Petitioner again moved to disqualify trial counsel (Ex. 14, Doc. 7-1, at 52-54), but later withdrew the motion (Ex. 15, Doc. 7-1, at 55).

On June 22, 2015, the trial court sentenced Petitioner to an aggregate prison term of 144 years to life. *Daniel*, 57 N.E.3d at 1208; (Exs. 18-19, 26-27, Doc. 7-1, at 58-67, 158-64).

Direct Appeal

Petitioner filed a timely notice of appeal through new counsel. (Ex. 23, Doc. 7-1, at 83). In his brief, he raised four assignments of error:

1. The trial court erred and denied Defendant his constitutional right to due process when it declared that the Defendant was competent to stand trial in the absence of any medical opinion to a reasonable degree of medical certainty to support that decision.

2. The trial court's failure to provide the jury with an instruction on attempt as to the charge of rape constituted a violation of Defendant's right to a fair trial and plain error.

3. The trial court committed plain error in permitting a State's witness to vouch for the credibility of one of the alleged victims.

4. The trial court deprived Appellant of his constitutional rights to due process and a fair trial in failing to conduct a *Daubert* hearing concerning whether the analysis of historical cell phone records to determine location of an individual's phone is scientifically reliable, as requested by the defendant, and simply admitting such testimony at trial.

(Ex. 24, Doc. 7-1, at 95-123) (capitalization altered). The State submitted a brief in response (Ex. 25, Doc. 7-1, at 125-56), and on August 4, 2016, the appellate court affirmed the trial court's judgment (Ex. 28, Doc. 7-1, at 165-201); *Daniel*, 57 N.E.3d 1203.[5] Judge Mary J. Boyle dissented, explaining that she would have remanded on the competency issue. *Daniel*, 57 N.E.3d at 1219-20.

Petitioner filed a timely appeal to the Ohio Supreme Court (Ex. 29, Doc. 7-1, at 202-03), asserting two propositions of law:

1. A trial court violates the accused's state and federal rights to due process where it finds him competent to stand trial, even though mental health professionals

---

5. Prior to the appellate court's decision, it *sua sponte* remanded the case to correct a sentencing entry error. (Ex. 26, Doc. 7-1, at 158). The trial court complied. (Ex. 27, Doc. 7-1, at 159-64).

7

      and the court itself called that competence into question, without a medical or psychiatric opinion to the competency determination.

2. Admitting evidence of dubious scientific reliability without a *Daubert* hearing even though one is requested violated the accused's right to due process and a fair trial.

(Ex. 30, Doc. 7-1, at 204-17) (capitalization altered). The State filed a memorandum in opposition (Ex. 31, Doc. 7-1, at 236-52), and on April 19, 2017, the Ohio Supreme Court declined jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (Ex. 32, Doc. 7-1, at 253).

## FEDERAL HABEAS CORPUS

In his Petition, Petitioner raises a single ground for relief:

Where there are legitimate questions raised concerning the accused's competence to stand trial[,] the trial court violates his right to due process by proceeding to trial without proper competency determination.

(Doc. 1, at 6); *see also* Doc. 1-1 (memorandum in support of Petition).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the

8

state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Petitioner raised his sole ground for relief to the Ohio appellate and Ohio Supreme Courts. *See* Ex. 24, Doc. 7-1, at 112-15; Ex. 30, Doc. 7-1, at 210-14. It is thus fully exhausted and preserved for federal habeas review under AEDPA. *See* 28 U.S.C. § 2254(d)(1). However, the undersigned agrees with Respondent that the state court decision was not contrary to, or an unreasonable application of, federal law, and therefore the Petition must be denied.

Clearly established federal constitutional law establishes that "[a] criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). To be found competent, the

9

defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation omitted). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180. Due process requires a trial court to conduct a competency hearing "where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006). While a State may presume that the defendant is competent to stand trial and require him to prove his incompetence by the preponderance of the evidence, *Medina v. California*, 505 U.S. 437, 449 (1992); *Coe v. Bell*, 209 F.3d 815, 827-28 (6th Cir. 2000), the State violates his due process rights if it requires the defendant to prove his incompetence by clear and convincing evidence, *Cooper v. Oklahoma*, 517 U.S. 348, 368-69 (1996).

Further, the trial court's determination that the defendant is competent is presumed correct. *Mackey v. Dutton*, 217 F.3d 399, 411-14 (6th Cir. 2000). And, pursuant to 28 U.S.C. § 2254(e), the state court's findings are presumed correct unless rebutted by clear and convincing evidence. Finally, "it does not follow that because a person is mentally ill he is not competent to stand trial." *United States v. Miller*, 531 F.3d 340, 349 (6th Cir. 2008) (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996)).

The state appellate court rejected Petitioner's claim that the trial court violated his due process right:

!

### A. Competency

{¶ 17} In his first assignment of error, appellant argues that the trial court erred by finding him competent to stand trial because he was not evaluated at Twin Valley—as ordered by the trial court and recommended by Dr. Noffsinger—and the trial court's finding was not supported by any medical evidence.

{¶ 18} A defendant who is legally incompetent may not stand trial. *State v. Berry,* 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995), citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The conviction of an accused while he is not legally competent to stand trial violates due process of law. *See State v. Rubenstein,* 40 Ohio App.3d 57, 60, 531 N.E.2d 732 (8th Dist.1987).

{¶ 19} The test for determining whether a defendant is competent to stand trial is " 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Berry* at 359, 650 N.E.2d 433, quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). R.C. 2945.37(G) provides that a defendant is presumed to be competent to stand trial. The burden is on the defendant to prove by a preponderance of the evidence that he is not competent. *State v. Jordan,* 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28.

{¶ 20} A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings. *State v. Vrabel,* 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33; *State v. Williams,* 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986). Deference on these issues should be given "to those who see and hear what goes on in the courtroom." *State v. Cowans,* 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999).

{¶ 21} In the instant matter, it is undisputed that the issue of appellant's competency to stand trial was raised in the trial court. After appellant feigned a suicide attempt and smeared feces on himself and his holding cell, the trial court referred appellant to the court psychiatric clinic for a competency evaluation. Dr. Noffsinger evaluated appellant and submitted his report to the trial court.

{¶ 22} The trial court held two hearings to address the issue of appellant's competency to stand trial. First, the trial court held a hearing to review Dr. Noffsinger's report and recommendation. The trial court reviewed appellant's pro se motion to disqualify counsel with defense counsel in open court and acknowledged that appellant demonstrated intelligence and clarity of thought in the motion. Furthermore, the trial court attempted to discuss Dr. Noffsinger's report and recommendation and the motion to disqualify counsel with appellant. When appellant refused to answer the trial court's questions, the trial court noted that appellant's "command of the English language was substantially clearer in the

motion [to disqualify.]" The trial court ordered appellant to be transferred to Twin Valley for an evaluation. For reasons unclear to this court, appellant was neither transferred to nor evaluated by Twin Valley. Second, after learning that appellant was not transferred to Twin Valley for an evaluation, the trial court held another hearing to evaluate appellant's competency to proceed to trial. The state presented evidence of appellant's jail phone calls at the competency hearing. After hearing the state's evidence, the trial court concluded that appellant was competent to stand trial.

{¶ 23} Appellant emphasizes that Dr. Noffsinger was unable to form an opinion within a reasonable medical certainty about his ability to understand the nature and objectives of the proceedings and assist in his defense. Furthermore, appellant argues that because he was not evaluated at Twin Valley, there was neither a "definitive" psychiatric evaluation nor a determination about his competency. Appellant contends that the trial court's competency finding was not supported by any medical evidence and was based solely on the testimony of a prosecutor's office investigator regarding appellant's jail phone calls. We disagree.

{¶ 24} After reviewing the record, we find that the trial court complied with R.C. 2945.37 in determining whether appellant was competent to stand trial. Furthermore, we find that the trial court's competency determination is supported by reliable and credible evidence. The trial court's finding was based on (1) Dr. Noffsinger's report, (2) the trial court's review of appellant's motion to disqualify counsel, (3) the fact that appellant was uncooperative with defense counsel, the medical professionals who sought to evaluate him, and the trial court during the first competency hearing, (4) the state's evidence of appellant's jail phone calls and the testimony of the prosecutor's office investigator, and (5) the trial court's own observations of appellant. Thus, reliable and credible evidence supports the trial court's decision, and the trial court did not abuse its discretion in finding that appellant was competent to stand trial.

{¶ 25} Appellant's outrageous behavior, as displayed by the feigned suicide attempt and the feces incident, does not undermine the trial court's finding of his competence to stand trial. *Vrabel,* 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, at ¶¶ 25–29. In *State v. Bock,* 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), the Ohio Supreme Court noted that "[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.* at 110, 502 N.E.2d 1016. In light of the aptitude and intuition that appellant demonstrated in his motion to disqualify counsel and the jail phone calls during which he discussed his case in detail, the trial court reasonably determined that despite his outlandish conduct, appellant had the present ability to consult with his lawyer and a sufficient understanding of the proceedings against him.

{¶ 26} Accordingly, appellant's first assignment of error is overruled.

*Daniel*, 57 N.E.3d at 1209–10.[6]

The undersigned finds the state court's decision is neither contrary to, nor an unreasonable application of federal law. First, contrary to Petitioner's contention that the state court failed to conduct a hearing at which Petitioner's competency could be evaluated (Doc. 9, at 6-7), as the state court held, the "trial court held two hearings to address the issue of [Petitioner's] competency to stand trial". *Daniel*, 57 N.E.3d at 1209; *see also* Tr. Vol. 2, at 301-16 (March 9, 2015 hearing); Tr. Vol. 2, at 317-55 (April 8, 2015 hearing). Petitioner's main argument to the state courts, and to this Court is "the trial court's sua sponte decision to reverse itself in the absence of the very expert opinion he himself had ordered" (Doc. 9, at 7) violated his due process rights. But Petitioner has presented no clearly established federal law indicating that such a reversal, in light of the additional evidence of competency the trial court considered, violates due process.

Petitioner makes much of his behavior before trial – his need for psychiatric medication, his suicide attempt (feigned or real), and his actions to smear feces on himself and his cell. But these were considered by the state court and, as noted above, "it does not follow that because a person is mentally ill he is not competent to stand trial." *Miller*, 531 F.3d at 349 (quoting *Davis*, 93 F.3d at 1290). Further, the state appellate court reasonably found that the trial court relied on several factors indicating Petitioner's competency. *Daniel*, 57 N.E.3d at 1210. These included: (1) Dr. Noffsinger's report, which indicated that, although he could not render a final opinion, it was "clear that [Petitioner was] malingering the symptoms of a mental disorder" but "unclear whether

---

6. Preliminarily, to the extent Petitioner argues the state court violated Ohio Revised Code § 2945.37, such a claim is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). On review, the state court held the trial court complied with the state statute, *Daniel*, 57 N.E.3d at 1210, and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Estelle*, 502 U.S. at 68 ("federal habeas corpus relief does not lie for errors of state law").

he [was] wholesale faking the mental disorder or exaggerating the extent of a true mental disorder" (Tr. Vol. 2, at 302); *see also Daniel*, 57 N.E.3d at 1207; (2) Petitioner's motion to disqualify counsel which was clearly written and demonstrated some understanding of the proceedings (Tr. Vol. 2, at 310-11) (trial court's statement that the motion "demonstrate[d] . . . relative intelligence and clarity of thought" and ability to "make . . . [the] subtle differentiation between the main who runs the jail [warden] and the man who is over the main who runs the jail [sheriff]"); *see also* Ex. 7, Doc. 7-1, at 40-43) (motion); (3) the State's evidence of Petitioner's jail phone calls and the prosecutor's office investigator's testimony (Tr. Vol. 2, at 320-41); *see also Daniel*, 57 N.E.3d at 1208; (4) the fact that Petitioner was uncooperative with the court, defense counsel, and Dr. Noffsinger; *Daniel*, 57 N.E.3d at 1210; and 5) the trial court's own observations of Petitioner, *Daniel*, 57 N.E.3d at 1210. Further, as the state court noted, "[t]he trial court noted that appellant had at least two prior felonies, and thus, is not a stranger to the criminal justice system" and that "in a prior presentence investigation report, appellant indicated that he did not suffer from any mental illness." *Daniel*, 57 N.E.3d at 1207-08. Again, to be found competent one must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.[7] And a trial court's determination that the defendant is competent is presumed correct. *Mackey*, 217 F.3d at 411-14.

---

7. Petitioner also contends that "the evidence is clear that Daniel could not consult with his attorney – he twice sought to disqualify his attorney." (Doc. 9, at 8). But this conflates willingness and ability; seeking to disqualify one's attorney does not necessarily demonstrate inability. That is, being *unwilling* to consult with, or disagreeing with, one's attorney is not the same as an *inability* to consult. *See United States v. Coleman*, 871 F.3d 470,478 (6th Cir. 2017) ("Defendant's refusal to discuss the facts of his case with [counsel] and further refusal to allow [counsel] to make arguments on his behalf, demonstrate an unwillingness to communicate, not an inability to communicate."). Here, in his motion to disqualify, Petitioner complained of counsel's actions (and

At base, the undersigned finds the appellate court's decision – that the trial court had sufficient evidence of Petitioner's competence to stand trial – is not contrary to, or an unreasonable application of, federal law. That is, Petitioner has not presented any clearly established federal law that the state court's decision contravenes. Although it perhaps would have been better practice for the trial judge to follow through with his original recommendation and obtain the requested and recommended in-patient psychiatric evaluation, habeas relief is reserved for when "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This is not that case.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

inactions) and alleged counsel had a conflict of interest. (Ex. 7, Doc. 7-1, at 40-43). This does not demonstrate Petitioner's *inability* to consult with his attorney.